## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT COLUMBIA

| | | |
|---|---|---|
| VALERIE R. WHITE, 700 Decatur St. NE, Washington DC 20017, EVA JUNEAU, 730 Gordon Ave., Reno NV 89509, PETER BETANCOURT, 1270 Wilshire Circle East, Pembroke Pines, FL 33027, individually and on behalf of all others similarly situated, | ) ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | Case No. 16 CV - 856 |
| HILTON HOTELS RETIREMENT PLAN, 7930 Jones Branch Drive, Suite 1100, McLean, VA 22102, HILTON WORLDWIDE, INC., 7930 Jones Branch Drive, Suite 1100, McLean, VA 22102, GLOBAL BENEFITS ADMINISTRATIVE COMMITTEE, MARY NELL BILLINGS, S. TED NELSON, CASEY YOUNG, and UNNAMED MEMBERS OF THE GLOBAL BENEFITS ADMINISTRATIVE COMMITTEE, 755 Crossover Ln, Memphis, TN 38117, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |
| _____ | ) | |

## CLASS ACTION COMPLAINT

The named Plaintiffs, Valerie R. White, Eva Juneau, and Peter Betancourt, seek to enforce their rights, and the rights of others similarly situated, to receive vested retirement benefits in accordance with the District Court's decisions in a related case, *Kifafi, et al., v. Hilton Hotels Retirement Plan, et al.*, C.A. 98-1517 (D.D.C.), and the standards set forth in ERISA and the Hilton Hotels Retirement Plan. The Plaintiffs allege that by requiring

1

improperly long periods of service to become vested in retirement benefits, Hilton Hotels

has not maintained its pension plan according to the standards required by ERISA and the

District Court's decisions in *Kifafi*.

## JURISDICTION AND VENUE

1.      The Court has jurisdiction over the subject matter of this action pursuant to

the Employee Retirement Income Security Act of 1974 ("ERISA"). 29 U.S.C. §

1132(e)(1), and 28 U.S.C. § 1331. Venue is proper in this Court under 29 U.S.C. § 1132(e)

because Defendants may be found in the District of Columbia and breaches of duty took

place in this District, including Defendants' failure to comply with the District Court's

decisions in the related *Kifafi* litigation.

## RELATED CASE DESIGNATION

2.      This case is a "related case" to *Kifafi, et al., v. Hilton Hotels Retirement

Plan, et al.*, C.A. 98-1517, within the meaning of L. Civ. R. 40.5(a)(4), because *Kifafi* was

"dismissed" and this "second case is filed involving the same parties and relating to the

same subject matter."

## THE PARTIES

3.      Plaintiff Valerie White resides in Northeast Washington, D.C. Ms. White

began work for the Washington Hilton on June 21, 1972 starting as a bus girl and becoming

a waitress. After a June 1975 accident, she was transferred to a front desk cashier position.

She terminated employment with the Washington Hilton on March 26, 1982 and is

currently age 63. Ms. White is a "participant" in the Hilton Hotels Retirement Plan under

ERISA § 3(7), 29 U.S.C. §1002(7) because she is a "former employee" of Hilton Hotels "who is or may become eligible to receive a benefit" from the Plan.

4.      Plaintiff Eva Juneau resides in Reno, NV. Ms. Juneau worked for the Reno Hilton as a showroom server from April 22, 1991 until May 16, 1996, and then worked at the Flamingo Hilton Reno from May 17, 1996 until November 10, 2000 as a banquet server and bartender. She is currently age 54. Ms. White is a "participant" in the Hilton Hotels Retirement Plan under ERISA § 3(7), 29 U.S.C. §1002(7) because she is a "former employee" of Hilton Hotels "who is or may become eligible to receive a benefit" from the Plan.

5.      Plaintiff Peter Betancourt resides in Pembroke Pines, FL. Mr. Betancourt is the only child of Pedro Betancourt, who died on February 11, 1985 at the age of 71. Pedro Betancourt began working for the New York Hilton on October 3, 1947 as a busboy and terminated on January 13, 1979 as executive chief steward. Peter Betancourt is a "beneficiary" "who is or may become entitled to a benefit" under the Hilton Hotels Retirement Plan, under ERISA § 3(8), 29 U.S.C. §1002(8), and also under the District Court's decisions in *Kifafi*.

6.      On information and belief, Defendant Hilton Worldwide, Inc. is a Delaware corporation with headquarters in McLean, VA, and more than 50,000 employees and hotels in 91 different countries and territories, including 40 states and the District of Columbia, where Defendant operates the Washington Hilton and the Capital Hilton as well as Hilton Garden Inn, Doubletree, Hampton Inn, and Homewood Suites hotels.

3

7.     Defendant Hilton Hotels Retirement Plan is an employee pension benefit plan based in the Woodlands, Texas, which is established and maintained by Hilton Worldwide, Inc. to provide retirement income to Hilton employees. Defendant Hilton Hotels Retirement Plan is an "employee pension benefit plan" as defined in ERISA §3(2)(A), 29 U.S.C. §1002(2)(A).

8.     The employer that established and maintains the Defendant Hilton Hotels Retirement Plan was formerly named Hilton Hotels Corp. and has now been renamed Hilton Worldwide, Inc. Defendant Hilton Worldwide, Inc. is the "plan sponsor" of the Hilton Hotels Retirement Plan within the meaning of ERISA §3(16)(B), 29 U.S.C. §1002(16)(B). Defendant Hilton Worldwide, Inc. also functions as the "Plan administrator" for the Pension Plan within the meaning of §3(16)(A) of ERISA, 29 U.S.C. §1002(16)(A), and is a "fiduciary" for the Pension Plan's participants and beneficiaries within the meaning of ERISA §3(21)(A), 29 U.S.C. §1002(21)(A).

9.     Defendant Hilton Worldwide, Inc. administers the Plan through an unincorporated "Global Benefits Administrative Committee" located in Memphis, Tennessee, which consists of Hilton executives appointed by Hilton Worldwide, including Mary Nell Billings, Senior Director Global Retirement Programs and Chair of the Global Benefits Administrative Committee, S. Ted Nelson, Vice President Benefits Americas, and Casey Young, Senior Manager Retirement Programs.  Ms. Billings, Mr. Nelson, Mr. Young, and other unnamed members of the Global Benefits Administrative Committee of Hilton are also "fiduciaries" for the Pension Plan's participants and beneficiaries within the

meaning of ERISA §3(21)(A), 29 U.S.C. §1002(21)(A).

## CLASS ACTION ALLEGATIONS

10.    Plaintiffs bring this action on their own and on behalf of all other similarly-situated employees in accordance with Federal Rule of Civil Procedure 23 in order to resolve disputes under the Employee Retirement Income Security Act of 1974 as amended.

11.    The proposed class is defined as any and all persons who:

    (a)    Are former or current employees of Hilton Worldwide, Inc. or Hilton Hotels Corp.;

    (b)    Submitted a claim for vested retirement benefits from Hilton under the claim procedures ordered by the District Court and the Court of Appeals in *Kifafi, et al., v. Hilton Hotels Retirement Plan, et al.*, C.A. 98-1517; and

    (c)    Whose vesting claim has been denied by Defendants because of the unlawful:

        (1)    Use of "fractional years of vesting service" under an "elapsed time" method to count periods of employment before 1976;

        (2)    Refusal to count "non-participating" service for vesting by not recognizing Hilton properties as "Related Companies" whether or not they participate in the Plan, or failing to apply the proper equivalencies for non-participating service; or

        (3)    Denial of vesting claims solely on the ground that the claimant is "not the surviving spouse" or because the claimant "died prior to a date he could have retired."

12.    On information and belief, the members of the proposed class reside throughout the United States and number over 220 individuals, making joinder impracticable.

13.     The common questions of fact and law set out below affect the rights of the members of the class.

14.     The named Plaintiffs' claims for vested retirement benefits are typical of the claims of the members of the class, and the named Plaintiffs will fairly and adequately protect the interests of the class.

15.     Plaintiffs' counsel are experienced in class action litigation involving pension plans, having handled, *inter alia*, the *Kifafi* class action litigation referenced above.

16.     This action is best maintained as a class action because Defendant has acted and/or refused to act on grounds generally applicable to the class the Plaintiffs represent, thereby making appropriate final injunctive and other equitable relief in favor of Plaintiffs and the class.

## FACTUAL ALLEGATIONS

17.     *Kifafi, et al. v. Hilton Hotels Retirement Plan, et al.*, C.A. 98-1517 (D.D.C.), is a nationwide class action that was initiated on June 17, 1998 to redress Hilton's failure to comply with the vesting rules and the benefit accrual rules under ERISA in determining retirement benefits for over 22,000 former and current employees.

18.     On May 15, 2009, and in a series of decisions thereafter, the District Court found violations of the vesting and benefit accrual rules and ordered equitable relief for those violations in the form of benefits. 616 F.Supp.2d 7, 23-24, 30-33 (D.D.C. 2009); 736 F.Supp.2d 64, 72-73, 76-82 (D.D.C. 2010); 826 F.Supp.2d 25, 31-34 (D.D.C. 2011).

The Court of Appeals affirmed the District Court's decisions on December 14, 2012. 701 F.3d 718, 726-28, 731-33 (D.C. Cir. 2012).

19.     The District Court supervised administration of the relief from February 2013 to December 2015. On December 7, 2015, the District Court in *Kifafi* terminated its supervisory jurisdiction over the equitable relief it had ordered, including for vesting, and dismissed the case, while simultaneously stating that its equitable orders remain fully in effect. Dkt.#436 (in C.A. 98-1517) at 8. The District Court's dismissal of the case in *Kifafi* with the equitable orders fully in place but without requiring compliance certifications or other reporting to enforce its orders is currently on appeal before the United States Court of Appeals for the D.C. Circuit, No. 16-7002.

20.     As indicated, on May 15, 2009, the District Court ruled in *Kifafi* that Hilton had systematically not properly counted periods of employment with Hilton in determining whether employees had enough years of service for a vested right to a pension benefit as modified by ERISA. 616 F.Supp.2d 7, 29-32. The District Court ruled that while Hilton "initially asserted that it complied fully with the Plan's vesting provisions that allowed employees to earn a year of vesting credit by completing 1,000 hours of service," "the record is replete with uncontested evidence that Hilton failed to properly implement the 1,000 hours standard for calculating employees' vesting credit, often because it lacked the necessary records to do so." 616 F.Supp. 2d at 29. The Court illustrated with emails from Hilton's benefits administrator which stated, "[w]e have not previously given vesting [credit] prior to benefits service" and "[f]or as far back as we can go, no one kept track of the non-

participating properties' employees (hours/earnings) to give them vesting." *Id*. The Court stated that "Hilton's counsel even conceded [to the Court] that the Plan could not have fully complied with the 1,000 standard because Hilton lacked the requisite records." *Id*.

21.     To remedy the vesting violations, the District Court on September 7, 2010, ordered the "870/750 'hours worked' equivalency to be applied in lieu of the 1000 hours of service standard where an employee's records are sufficient to indicate the hours worked." 736 F. Supp. 2d 64, 76. The District Court required Hilton to "award[] vesting credit under an hours standard" for "periods of non-participating service," including union service. *Id*. at 78. "Under the 'hours worked' equivalency, an employee is credited with a year of service if he has 870 hours worked during a twelve-month period (or 750 for a salaried employee)." *Id*. (citing 29 C.F.R. §2530.200b-3(d)). If "records of hours worked are unavailable (or where a record indicates 500 hours of service as a placeholder)," the Court also required a "190 hours of service per month equivalency" to be used. *Id*. The Court ordered that "participants whose hours are calculated under the 190-hour equivalency shall be credited with a year of service if they have 870 hours during the year (750 for salaried employees)." *Id*. at 77 (citing 29 C.F.R. § 2530.200b-3(e)(7)).

22.     The District Court rejected Hilton's approach of using an "elapsed time" method in which "the participant earns a year of vesting service for each 365-day period of service (including partial years) regardless of the hours completed." 616 F.Supp.2d at 32. The Court determined that the elapsed time method leaves "some participants with fractional years of vesting service" and ordered Hilton to "credit participants for service

based on the hours reflected in the Plan records and the proper equivalencies, not the elapsed time method." 736 F.Supp.2d 64, 82; *see also* 616 F.Supp.2d at 34 (rejecting Hilton's attempt to "retroactively apply the elapsed time method to periods of non-participating service" because it is "mathematically possible for an employee to have fewer years of vesting service under the elapsed time method than under an hours standard").

23.    In orders dated September 7, 2010 and August 31, 2011, the District Court specifically ordered Hilton to vest over 700 individuals. *See* 736 F.Supp.2d at 82-83 and Dkt.#258 (in C.A. 98-1517) at 2, 9-10.

24.    The District Court further ordered Defendants to "send a notice and claim form to members of the subclass whose records show a service date or a hire date that precedes the first year of participation in the Plan and who may become vested if such additional service is credited." Dkt.#258 (in C.A. 98-1517) at 7.

25.    In November 2011, Hilton mailed claim forms to 2,612 class members who had sufficient years to be vested based on Hilton's existing records. However, Hilton negligently failed to update any of the 15-20 year old addresses to which it was mailing. The result was that close to 60% of the notices were returned as undeliverable. Dkt.#332 (in C.A. 98-1517) at 2-4. On August 16, 2012, the District Court ordered Hilton to re-mail the claim forms and to use a "qualified locator service" to "search for and locate current addresses" for these class members. *Id*. at 5.

26.     On December 14, 2012, the D.C. Circuit affirmed the District Court's decisions on Hilton's violations of the vesting and backloading rules and the remedies for those violations, including the new claim procedure for additional vesting claims. 701 F.3d 718, 726-27 and 731-33. While the D.C. Circuit denied the Class' appeal on the vesting claims, the D.C. Circuit ordered Hilton to "fund and administer a claim procedure open to all participants whose vesting status turns on nonparticipating service." *Id*. at 733.

27.     After the remand, the District Court found in a February 4, 2015 Order that Hilton's letters to individuals whose claims had been denied were still insufficient and ordered Hilton to revise the denial letters "to provide notice of the claimant's right to review if his or her claim to additional vesting service does not result in a benefit under the Plan." 79 F. Supp. 3d 93, 108. In a June 4, 2015 order, the Court further agreed with the Class that Hilton's letters had failed to state the "specific reasons" for denying the claims and ordered Hilton to amend the denial letters "to state that a class member does not qualify for benefits under the Plan because he or she does not have the minimum number of years of vesting service." 107 F. Supp. 3d 154, 166.

28.     Ultimately, Hilton vested another 171 individuals under this claims procedure but denied or did not act on 381 others.

29.     The District Court ordered Defendants "to share with Plaintiff the information received from any claimants so that Plaintiff may challenge Defendants' decisions regarding whether they should credit additional vesting service." 826 F.Supp.2d at 34; *see also* Dkt.#304 at 5 (December 28, 2011 Order requiring Hilton to "provide

Plaintiff with copies of all ... communications related to the dispositions of the claims").

30.    Plaintiffs' counsel reviewed the addresses used in Hilton's 2011-2012 mailing further and found that over 1,100 of 2,612 participants would not have received the notice on the opportunity to file a vesting claim because the addresses Hilton used were still not current, despite the Court's August 16, 2012 Order. To address the gaps in the addresses used in Hilton's October 2012 mailing and in Hilton's processing, Plaintiffs' counsel remailed claim forms to 1,359 participants who Plaintiffs' counsel believed might be vested, including 360 whose claims had been denied by Hilton before.

31.    Before conducting this mailing, Plaintiffs' counsel sought an agreement with Hilton to vest these individuals. In a September 19, 2014 email, Hilton's counsel refused to agree but represented that if an individual "pursues a claim for additional vesting according to Plan procedures, Hilton will fulfill its obligations to evaluate such claims according to ERISA and the Plan in full."

32.    Plaintiffs' counsel hired the Garden City Group (GCG) to conduct the mailing, which went out on October 10, 2014. The mailing invited individuals to make a claim for vesting by confirming or correcting the periods of service shown in Hilton's existing records and to identify any additional period or periods of employment with Hilton. As a result of that mailing, Class counsel collected vesting claims on behalf of 770 individuals and submitted them to Hilton in its capacity as Plan administrator for the Hilton Hotels Retirement Plan in four batches on December 3, 2014, February 13, 2015, April 24, 2015, and October 5, 2015. The claim forms Class counsel submitted on behalf of these

770 claimants identified the claimants' relevant periods of service with Hilton properties, including service added by the claimants. Class counsel provided Excel spreadsheets for each batch of claims summarizing and organizing the information and provided scanned and paper copies of the claims.

33.     Relying on new counsel, Alston & Bird, Hilton vested the claims for 169 of these individuals over a period that stretched from March 2015 to April 2016, but refused to credit sufficient vesting service for 601 participants. Hilton's form denial letters acknowledged that "your service dates are correct," but uniformly concluded "you do not meet the minimum number of years of vesting service."

34.     Despite the lack of specificity in the denials, Class counsel reviewed the denied claims and records previously provided in discovery to determine whether an appeal should be taken and appealed 429 denials. The appeals detailed the number of years of vesting service the participant should have based on the 190-hour equivalency recognized by the District Court and the elapsed time method. *See* 616 F.Supp.2d at 34; 736 F.Supp.2d at 76.

35.     Based on Department of Labor regulations, the appeals submitted on behalf of the vesting claimants asked that Hilton provide "all documents relevant to the basis for the initial denial in accordance with 29 C.F.R. 2560.503-1(h)." 29 C.F.R. 2560.503-1(h) requires that claimants be provided with "all documents, records, and other information relevant to the claimant's claim for benefits."

36.     In response to the appeals, Hilton reversed its initial denials for 62

12

individuals but upheld the denials for 358 individuals (Hilton's responses to 9 appeals are due in June 2016).

37.     Before the District Court closed its supervisory jurisdiction in *Kifafi*, Plaintiffs' counsel submitted evidence showing that Hilton was denying vesting claims under the Court-ordered process on grounds that the District Court had already specifically rejected, and that Hilton's decisions on those issues were not even consistent. *See* Dkt.#426 (in C.A. 98-1517) at 11-16. But on December 7, 2015, the District Court ruled that Hilton's denial of the vesting claims were "outside the scope of the narrow jurisdiction retained by the Court" and "are properly addressed through Hilton's appeals process." Dkt.#436 (in C.A. 98-1517) at 7.

38.     Plaintiffs' counsel in *Kifafi* filed an appeal to the U.S. Court of Appeals for the D.C. Circuit on January 5, 2016 (No. 16-7002). In opposing a February 16, 2016 motion to hold the appeal in abeyance, which remains pending before the Court, Hilton stated that the "proper recourse" for "Hilton's vesting determinations" "is an appeal on the current record for class members, or separate litigation with respect to the claims." Doc. #1601721 (in No. 16-7002) at 8. With the appeal and this "related case," Plaintiffs' counsel are pursuing both avenues of recourse that Hilton identified.

39.     Class counsel have determined that Hilton has denied at least 226 of the 358 appeals on grounds that the District Court in *Kifafi* specifically addressed and rejected, including:

(1)     Leaving claimants short of vesting by using "fractional years of

13

vesting service" under the "elapsed time" method for periods of employment before 1976;

(2)    Not counting "non-participating" service by not recognizing Hilton properties as "Related Companies" whether or not they participate in the Plan, and not applying the proper equivalencies to non-participating service; and

(3)    Denying vesting claims by the beneficiaries of deceased participants solely on the basis that the claimant is "not the surviving spouse" or because the claimant "died prior to a date he could have retired," without regard to whether the participant had sufficient years of service to be vested.

**Claim One: Unlawful Application of Elapsed Time Method Before 1976 to Leave "Fractional" Years**

40.    Plaintiffs incorporate by reference all of the preceding allegations as though fully set forth herein.

41.    Hilton has denied the appeals of at least 57 individuals on the ground that:

a portion of your employment history with Hilton was prior to January 1, 1976. Prior to 1976, vesting credit is calculated using an elapsed time method. The elapsed time method calculates service by measuring the time, in years and fractional years, between the date you began employment and December 31, 1976. The amount of service credited does not depend on the hours worked during a time period, but rather depends on the years and fractions of years during which you were employed by Hilton prior to January 1, 1976.

42.    As set forth above, the District Court in *Kifafi* already specifically rejected Hilton's approach because it leaves "some participants with fractional years of vesting service." 736 F.Supp.2d at 82. *Accord*, 616 F.Supp.2d at 34 ("elapsed time alternative can cause employees to lose years of service which they would have earned"). The Court has

ordered Hilton to "credit participants for service based on the hours reflected in the Plan records and the proper equivalencies, not the elapsed time method." 736 F.Supp.2d at 82.

43.     The District Court has already determined that Hilton's use of an elapsed time method to count service before 1976 leaves participants with "fractional years of vesting service" as of 12/31/1975. Since the hours of service method used thereafter only credits service in whole years, "fractional years" are left hanging under this approach without rounding up or combining them with another fractional period of service.

44.     As an example, Hilton credited named Plaintiff Valerie White with 3.52957 years for her service at the Washington Hilton from 6/21/1972-12/31/1975 and then with 6 years for service from 1/1/1976 to 3/26/1982, giving her a total of 9.52957 years of vesting service. This is exactly the kind of hanging "fractional year" with no rounding up consistent with ERISA that the District Court rejected.

45.     Under the doctrines of res judicata and collateral estoppel, Hilton is bound to use "the proper equivalencies, not the elapsed time method," in accordance with the District Court's decisions. *See Cooper v. Federal Reserve Bank*, 467 U.S. 867, 874 (1984) ("There is of course no dispute" under "[b]asic principles of res judicata" that "a judgment in a properly entertained class action is binding on class members in any subsequent litigation"); *Nat'l Ass'n of Home Builders v. EPA*, 786 F.3d 34, 41 (D.C. Cir. 2015) ("collateral estoppel bars successive litigation of an issue of fact or law actually litigated and resolved that was essential to the prior judgment, even if the issue recurs in the context of a different claim").

46.     The DOL regulations also mandate this result. Under 29 C.F.R 2530.200b-3(b), if a plan changes from elapsed time to hours of service, the plan is required to "determine the approximate number of **hours of service** completed" for years prior to the date the "hours of service" method became "effective." "A plan may use any of the equivalencies permitted under this section, or the elapsed time method of crediting service permitted under this section" "to determine hours of service completed before the effective date." *Id*. The Treasury regulations at 26 C.F.R. 1.410(a)-7(f) and (g) require a similar transition, requiring that the employee "receive credit...for a number of hours of service determined by applying one of the equivalencies ... to any fractional part of a year credited to the employee" under the elapsed time method.

47.     Hilton's application of elapsed time before January 1, 1976 does not take into account the District Court's decision on fractional years or the DOL and Treasury regulations on transitioning from an elapsed time method to an hours of service method for service. Without the transition between elapsed time and hours of service required by the District Court and the regulations, a fractional 0.52957 year for Ms. White will be frozen forever in place, and the only way she can attain the additional 0.47043 year of vesting service would be to earn another full year of vesting service. This would mean that participants "actually would need more than ten calendar years of employment for his pension to vest." *Gennamore v. Buffalo Sheet Metals, Inc. Pension Plan*, 568 F.Supp. 931, 934 (W.D.N.Y. 1983).

48.     On July 31, 2015, Plaintiffs' counsel sent an email asking for the "pertinent

documents" on which Hilton's application of the elapsed time method was based, "including the Plan provisions adopting the 'elapsed time method' for service before December 31, 1975 and transitioning from that method to the 'hours of service' method for service thereafter" as well as documents "that show the computation of these claimants' 'elapsed time' service in years and fractional years and how that service was added to the service credited to them based on 'hours of service'."

49.     The only document Hilton's outside counsel produced in response was a copy of Hilton's Plan document as amended and restated effective January 1, 1976. In an August 31, 2015 letter, Hilton's counsel stated that "[t]he Plan describes the two different methodologies for calculating vesting credit before 1976 and after." The August 31, 2015 letter did not address at all Plaintiffs' request for pertinent documents related to "transitioning from [the elapsed time] method to the 'hours of service' method for service" after December 31, 1975.

50.     Hilton's application of the elapsed time method is also inconsistent with its practice before this Court in *Kifafi* in 2009-2011 when hundreds of similar vesting claims were decided. When Class counsel provided Hilton with a list of 3,071 individuals who "should be vested" in September 2009, *see* Dkt.#211 (in C.A. 98-1517) at 22-23, Hilton's consultants, Ian Altman and Constance Hiatt, reviewed those individuals' service records to "determine if participants were properly credited with vesting service." Dkt.#224-3 (in C.A. 98-1517) at 2. As a result, Hilton vested over 100 individuals by applying equivalencies without leaving any "fractional years" in counting vesting service before 1976. *See*

Dkt.#219-9 at 21; Dkt.#240-4 at 8.

51.     Under 29 C.F.R. 2560.503-1(b)(5), a plan's claim procedures must "contain administrative processes and safeguards designed to ensure and to verify that...plan provisions have been applied consistently with respect to similarly situated claimants." *Accord*, *Canada Life Assurance Co. v. Estate of Lebowitz*, 185 F.3d 231, 238 (4th Cir. 1999) ("plan administrator must administer the provisions of a policy 'consistently'"); *Lutheran Medical Ctr. v. Contractors, Laborers, Teamsters & Eng'rs Health and Welfare Plan*, 25 F.3d 616, 621 (8th Cir. 1994) ("The trustees' payment of Doe's claim and their denial for Rodriguez's claim is an unreasonable inconsistency"). Here, Hilton's application of the Plan provisions is not only unlawful, but it is also inconsistent with respect to similarly situated claimants.

**Claim Two: Unlawful Failure to Count "Non-Participating" Service**

52.     Plaintiffs incorporate by reference all of the preceding allegations as though fully set forth herein.

53.     For at least 107 claimants, Hilton was required "to count all of [the] employee's years of service," including non-participating service, to determine vesting. 616 F.Supp.2d at 12.

54.     ERISA §203(b)(1), 29 U.S.C. §1053(b)(1), requires that "all of an employee's years of service with the employer or employers maintaining the plan shall be taken into account" for vesting purposes. Article I of the Hilton Pension Plan document likewise defines "Vesting Computation Period" as a period "during which the Employee is

18

employed with a Participating Employer or a Related Company."

55.    The District Court in *Kifafi* ruled in August 2000 that the Plan's definition of "Related Companies" encompasses any "Hilton Property," which is defined in the Plan document as any property in which Hilton "has an interest or with which it has a contractual relationship for hotel management." Dkt.#88 (in 98-1517) at 4. Thus, the District Court ruled that the Plan's definition of "Related Company" encompasses all related or affiliated Hilton properties–whether or not they participate in the Plan.

56.    The District Court's May 5, 2009 decision also held that "employers are required to count all of an employee's years of service for calculating his or her years toward vesting." *Kifafi*, 616 F. Supp. 2d at 12. Thus,

> An employee's years of service must be counted even if they occur prior to participation in the retirement plan. *See Holt* [*v. Winpisinger*,] 811 F.2d [1532,] 1537 [(D.C. Cir. 1987)] (citing H.R. Conf. Rep. No. 1280, 93rd Cong., 2d Sess. 268 (1974), reprinted in 1974 U.S. Code Cong. & A. News 5038, 5050 ("generally, ... once an employee becomes eligible to participate in a pension plan, all his years of service with an employer (including pre-participation service, and service performed before the effective date of [ERISA]) are to be taken into account for purposes of determining his place on the vesting schedule")).

57.    Despite the District Court's rulings, which Hilton is bound to follow, Hilton is not counting service at "non-participating" properties and has stated that it is only counting service "at either a Participating Employer or Related Company for vesting credit." Not only does this contradict the District Court's ruling that the definition of "Related Company" encompasses all related or affiliated Hilton properties, whether or not

they participate in the Plan, but Hilton has not provided any documents in response to Plaintiffs' requests to identify any non-participating properties that are not "Related Companies."

58.    For example, Hilton's records show that named Plaintiff Eva Juneau worked for the Reno Hilton from April 22, 1991 until May 16, 1996, and then at the Flamingo Hilton from May 17, 1996 until February 21, 1997. Hilton is crediting Ms. Juneau with four years of service between August 1, 1992 and February 21, 1997, but Hilton is not counting her service before the date the Reno Hilton began participating in the Plan:

> [Y]ou were employed at a non-participating property during a portion of your employment with Hilton properties. Specifically, Reno Hilton was a non-participating property prior to August 1, 1992. Vesting credit is not available for your employment with a non-participating property. The Plan looks to the 'Hours of Service' completed during each 'Vesting Computation Period' by an 'Employee' in determining whether to award vesting credit. Pursuant to these defined terms, the Plan requires employment at either a Participating Employer or Related Company for vesting credit. Since you had service at a non-participating property that is not a Related Company or Participating Employer, you are not entitled to any vesting credit for such service.

59.    Under the doctrines of res judicata and collateral estoppel, Hilton is bound to follow the District Court's rulings on counting non-participating service for vesting purposes. But contrary to these basic doctrines, Hilton is not following those decisions. *See, e.g., Cooper v. Federal Reserve Bank*, 467 U.S. 867, 874 (1984); *Nat'l Ass'n of Home Builders v. EPA*, 786 F.3d 34, 41 (D.C. Cir. 2015).

60.    On June 10, 2015 and July 16, 2015, Plaintiffs' counsel sent two emails to

Hilton's counsel, Alston & Bird, to request the pertinent documents identifying the non-participating properties that are not "Related Companies" and the pertinent documents related to "Hilton's administrative practices on not counting vesting service before properties...bec[a]me a participating property."

61.     On July 10, 2015, Hilton's counsel produced a list of Hilton "Properties" printed from Hilton's Retirement Calculator Database that lists both participating and non-participating properties. This list, which Class counsel already had from the *Kifafi* litigation, does not identify any "non-participating property" as a property "that is not a Related Company." In an August 17, 2015 letter, Hilton's counsel stated they would provide a list of Hilton's "control group members," conflating the term "control group members" with the term "Related Companies." This is the same argument that Hilton's previous counsel made and that the District Court rejected before. *See* Dkt.#65 in C.A. 98-1517 (Defs. 12/13/1999 Opp. to Mot. to Clarify) at 2-3 (arguing that class definition only included Hilton and "the controlled group hotels" and not the "managed properties," which are not "owned or controlled by Hilton").

62.     Hilton's counsel never provided any documents responsive to Plaintiffs' requests as required by 29 C.F.R. 2560.503-1(h).  Hilton has yet to identify a single "non-participating property that is not a Related Company." Hilton's counsel has also never provided any documents related to the Administrative Committee's practices on whether service before a property became a participating property would count for vesting purposes.

63.     As the Ninth Circuit recently found, "[i]t should not greatly burden an ERISA-

compliant entity to determine what companies were authorized as 'participating employers'

so the entity, not the claimant, should bear the risk of insufficient records." *Estate of*

*Barton v. ADT Sec. Servs. Pension Plan*, __F.3d__, 2016 U.S. App. LEXIS 7216, *15 (9th

Cir. 4/21/2016). If a plaintiff "has made a prima facie case that he is entitled to pension

benefits, it is properly defendants' burden to clarify what entities are covered under the

Plans in the first instance." *Id.* A plan's failure to comply with the DOL's claims procedure

regulations, including the document production requirement, "will result in that claim being

reviewed *de novo* in federal court." *Halo v. Yale Health Plan*, __F.3d __, 2016 U.S. App.

LEXIS 6659, *34 (2d Cir. 4/12/2016).

64.     Hilton's practices in the claim processing that produced these denials is also

inconsistent with Hilton's previous representations to the District Court in *Kifafi* that it

credits "employment with a property not participating in the Plan...for vesting service."

Dkt.#210 (in C.A. 98-1517) at 21. In the 2012 appellate briefing, Hilton further

represented to the Court of Appeals that "The Plan provides that 'non-participating service

– which primarily is employment in a unionized position (i.e., 'union service') or with a

Hilton property that does not participate in the Plan ... does count for vesting in the Plan'."

7/3/2012 Br. (in C.A. 11-7113) at 49.

65.     Hilton's current denials based on "non-participating" service are also

inconsistent with Hilton's practices before this Court in 2009-2011. Years of service for

vesting were counted at 12 non-participating properties (including the Newark Airport

Hilton, Hilton Suites at Squaw Peak, Troy Hilton, Atlanta Hilton, Hilton Suites Phoenix

22

Place, Hilton Suites So. Mountain, Oakbrook Terrace Suites, Hilton Suites Dallas, Hilton

Suites Auburn Hills, Brentwood Hilton Suites, Hilton Suites Orange CA, and Hilton Suites

Tapatio Cliffs.). *See* Dkt.#426-17 (in C.A. 98-1517) at 4-5. Hilton's new counsel, Alston

& Bird, and its new Committee, however, have not provided vesting credit for service at any

of the very ***same*** 12 properties, even though Hilton and its fiduciaries are required to apply

plan provisions "consistently with respect to similarly situated claimants." 29 C.F.R.

2560.503-1(b)(5); *accord*, *Canada Life Assurance Co. v. Estate of Lebowitz*, 185 F.3d

231, 238 (4th Cir. 1999).

66.     Still more recently, Hilton reversed a decision to deny a vesting claim in a

letter dated February 4, 2016, for an individual who worked at the Atlanta Hilton, which is a

"non-participating" property. Inconsistently, Hilton is continuing to deny vesting service to

over 20 other individuals who worked at the same Atlanta Hilton on the basis that "[s]ince

you had service at a non-participating property that is not a Related Company or

Participating Employer, you are not entitled to any vesting credit for such service."

67.     The District Court required Hilton to "award[] vesting credit under an hours

standard" for all "periods of non-participating service." 736 F.Supp.2d at 78. "Where

records of hours worked are unavailable (or where a record indicates 500 hours of service

as a placeholder)," the District Court required Hilton "to use the 190 hours of service per

month equivalency, and participants whose hours are calculated under the 190-hour

equivalency shall be credited with a year of service if they have 870 hours during the year

(750 for salaried employees)." *Id*.

68.     Despite the District Court's rulings, Hilton has denied the appeals for at least

29 vesting claimants by failing to count years of union service or other years at non-

participating properties on the ground that there are no hours or a "500" hour "placeholder"

in Hilton's Retirement Plan records. Rather than apply the "equivalencies" to those periods

of employment as the District Court ordered, Hilton is improperly refusing to count those

years because of the absence of  "actual hours records" or because the "Plan's records

indicate that you had insufficient earnings."

69.     The District Court has already ruled that Hilton is required to apply

equivalencies "[w]here records of hours worked are unavailable." 736 F.Supp.2d at 78.

Requiring the claimant to "prove his hours over the course of two decades is unreasonable

and inconsistent with the goals of ERISA." *Estate of Barton v. ADT Sec. Servs. Pension

Plan*, __F.3d__, 2016 U.S. App. LEXIS 7216, *19 (9th Cir. 4/21/2016) ("[w]e have

previously shifted the burden of proving the number of hours an employee works where the

calculation of damages is uncertain due to defendants' failure to keep statutorily required

records").

70.     Hilton has not applied the equivalencies to service for at least another ten

individuals who submitted claims for additional periods of non-participating service that

were not contained in Hilton's database records.

71.     Hilton's stated reason for denying these individuals' appeals is because

"[h]aving thoroughly reviewed the record, we find there is currently insufficient evidence

that you had service with Hilton during the additional dates identified in your appeal letter,

and thus we find as a factual matter that this service should not be included in determining whether you are vested."

72.     Hilton's decision to deny credit for these additional periods of service is inconsistent with its prior practice of crediting the additional periods of service based on the claim forms for vesting. A 5/19/2014 declaration by Aon Hewitt, which provides administrative and recordkeeping services for Hilton's Plan, represented that "At Hilton's direction, Aon Hewitt ... counted any claimed vesting service regardless of whether the service was supported by any documentary proof." Dkt.#387-2 (in C.A. 98-1517) at 7. Following Hilton's 2011-2012 mailing, Hilton's counsel also stated in an April 17, 2014 letter that "Defendants reviewed each of the claim forms received and credited any additional uncredited service." Dkt.#385-5 (in C.A. 98-1517) at 6.

73.     Inconsistently, Hilton has vested 44 other individuals who submitted vesting claims after the mailing in 2014 and who claimed additional periods of service that were not in Hilton's records. Even for individuals whose claims have been denied, Hilton has represented that it is "giving full credit for the additional or different dates of employment identified on your claim form."

**Claim Three: Unlawful Denying of Vesting Claims by Surviving Spouses or Beneficiaries**

74.     Plaintiffs incorporate by reference all of the preceding allegations as though fully set forth herein.

75.      Hilton has denied appeals submitted by the beneficiaries of at least 33

deceased participants through the claim process ordered by the Court without regard to whether the participant had sufficient years of service to be vested, solely on the grounds that the claimant is "not the surviving spouse" or because the participant "died prior to a date he could have retired." This is not the basis for a denial of a *vesting* claim, nor is it a basis for denying the benefits required by the Court's order of equitable relief.

76.     For example, named Plaintiff Peter Betancourt, the son of deceased participant Pedro Betancourt, who worked at the New York Hilton from October 3, 1947 to January 13, 1979 and who died in 1985 at the age of 71, appealed his vesting denial in July 2015. Pedro Betancourt's spouse died in 1998 at the age of 78. Peter Betancourt is their only child. Documents provided by Hilton show that Hilton is crediting Pedro Betancourt with 19 years of vesting service. But Hilton has denied his son Peter's vesting appeal ***not*** on the grounds that his father did not have more than enough years of vesting service, but solely "because you [Peter Betancourt] are not the surviving spouse of P. Betancourt." Hilton's denial letter states that "the "Plan document does not provide for a death benefit to anyone other than a spouse."

77.     Not only is this no basis to deny a *vesting* claim, but the District Court already ruled in *Kifafi* on August 31, 2011 and November 23, 2011 that, consistent with the Plan, "If there is no surviving spouse, then the Participant's estate shall be the beneficiary." 825 F.Supp.2d at 304; *see* 826 F.Supp. 2d at 43-44 (payments are to be made to "surviving spouses and heirs of deceased participants"). The District Court's Court's August 31, 2011

Order ruled that "[b]ack payments for deceased participants shall be made in a manner that is consistent with § 4.13(e)(6) of the 2007 Plan, which provides that any additional benefits payable to the participant shall be payable to the surviving beneficiary or beneficiaries, if any, under the optional form of benefit, if any, elected by the participant, or, if there is no such surviving beneficiary, to the participant's surviving spouse or, if there is no surviving beneficiary or surviving spouse, to the participant's estate." Dkt.#358 at 10.

78.     Hilton has also started denying claims for vested retirement benefits even by surviving spouses on the basis that the participant "died prior to a date he could have retired." This disregards the District Court's August 31, 2011 decision that "surviving spouses of deferred vested participants who died before electing any annuity should be paid the present value of the original and increased deferred benefit obligations discounted from the earliest retirement age," "consistent with the Plan's existing provisions." 826 F.Supp.2d at 44.

79.     Under the doctrines of res judicata and collateral estoppel, Hilton is required to comply with the District Court's August 31, 2011 and November 23, 2011 rulings.

80.     ERISA §205(a)(2), 29 U.S.C. §1055(a)(2) and Section 4.7 of the Plan document are also violated by denying vesting claims because a participant "died prior to a date he could have retired." ERISA §205(a)(2) provides that for a vested participant "who dies before the annuity starting date and who has a surviving spouse, a qualified pre-retirement survivor annuity shall be provided to the surviving spouse of such participant." Under § 4.7(b) of the Plan, "the Surviving Spouse Benefit shall be payable" "[i]f a vested

27

Participant dies before a date on which he could have retired." Section 4.13(e)(6) of the

Plan document further provides that if a participant dies, benefits "shall be payable to the

surviving beneficiary or beneficiaries, ... or if there is no such surviving beneficiary, to the

Participant's surviving Spouse, or if there is no surviving beneficiary or surviving Spouse,

to the Participant's estate."

81.     Hilton's denials of beneficiaries' claims to vested retirement benefits

because they are not the "surviving spouse" of the participant are also inconsistent with

Hilton's payments to non-spousal beneficiaries in the "newly vested" group. The "newly

vested" group included the over 700 individuals who the District Court specifically ordered

Hilton to vest in its September 2010 and August 2011 rulings. *See* 736 F.Supp.2d at 82-83

and Dkt.#258 (in C.A. 98-1517) at 2, 9-10. Hilton is required to make payments

"consistently with respect to similarly situated claimants." *See* 29 C.F.R. 2560.503-

1(b)(5); *Canada Life Assurance Co. v. Estate of Lebowitz*, 185 F.3d 231, 238 (4th Cir.

1999).

**Claim Four - Breaches of Fiduciary Duty**

82.     Plaintiffs incorporate by reference all of the preceding allegations as though

fully set forth herein.

83.     Under ERISA §404(a)(1), 29 U.S.C. §1104(a)(1), a fiduciary must act "in

accordance with the documents and instruments governing the plan" with "care, skill,

prudence, and diligence" and for the "exclusive purpose of...providing benefits to

participants and their beneficiaries." This fiduciary duty ensures that "benefit claim

28

determinations are made in accordance with governing plan documents" and that "plan provisions have been applied consistently with respect to similarly situated claimants." 29 C.F.R. 2560.503-1(a)(5).

84.     Defendants, including Hilton Worldwide, Inc., Mary Nell Billings, Senior Director Global Retirement Programs, S. Ted Nelson, Vice President Benefits Americas, Casey Young, Senior Manager Retirement Programs, and other unnamed members of the Global Benefits Administrative Committee, have breached and are breaching their fiduciary duties by failing to make vesting determinations in compliance with ERISA, the regulations, and the District Court's decisions in *Kifafi*, including the rulings on using equivalencies instead of elapsed time, crediting "non-participating" service, and paying the beneficiaries of deceased participants.

85.     Defendants also breached and continue to breach their fiduciary duties by failing to make vesting determinations in accordance with the claim processing regulations and by failing to apply these rules consistently with respect to similarly situated claimants.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs pray that this Court:

A.     Declare that the Defendants are bound under the doctrines of res judicata and collateral estoppel to conform with the District Court's vesting rulings in *Kifafi, et al., v. Hilton Hotels Retirement Plan, et al.*, C.A. 98-1517 on:

> (1)     Not using "fractional years of vesting service" under an "elapsed time" method to count periods of employment before 1976;

(2) Counting "non-participating" service for vesting at Hilton properties which are "Related Companies" whether or not they participate in the Plan, and by applying the proper equivalencies for non-participating service; and

(3) Vesting the claims and paying the benefits due surviving spouses and beneficiaries of deceased participants, regardless of whether the claimant is "not the surviving spouse" or "died prior to a date he could have retired."

B. Declare that Defendants have improperly denied the vesting claims of the named Plaintiffs and the members of the proposed class who submitted vesting claims under the claim procedure ordered in *Kifafi* and have sufficient years of vesting service in compliance with ERISA, the regulations, and the District Court's vesting decisions in *Kifafi,* as described above.

C. Declare that Defendants have failed to comply and continue to fail to comply with their fiduciary duties in denying the vesting claims of named Plaintiffs and the members of the class.

D. Order Defendants to grant the vesting claims of the named Plaintiffs and the class members and to pay the vested retirement benefits to which they are entitled.

E. Award such other legal, equitable, and remedial relief as the Court deems appropriate to ensure receipt of all retirement benefits and other amounts required to give full effect to the Court's declarations, including interest.

F. Order the Defendants to pay Plaintiffs' attorneys' fees and expenses.

**DATED** this 6th day of May 2016.

Respectfully submitted,

/s/ Stephen R. Bruce
Stephen R. Bruce (D.C. Bar No. 289066)
Allison C. Pienta (D.C. Bar No. 494372)
STEPHEN R. BRUCE LAW OFFICES
1667 K Street, N.W., Suite 410
Washington, D.C. 20006
(202) 289-1117
stephen.bruce@prodigy.net
acaalim@verizon.net

Attorneys for named Plaintiffs and the Plaintiff
Class

31