UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

VALERIE R. WHITE, *et al.*,

    Plaintiffs,

    v.

HILTON HOTELS RETIREMENT PLAN, *et al.*,

    Defendants.

Civil Action No. 16-856 (CKK)

## MEMORANDUM OPINION AND ORDER
(August 18, 2017)

Pending before the Court is Defendants' [18] Motion to Dismiss the Amended Class Action Complaint, brought pursuant Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).[1] Plaintiffs Valerie R. White, Eva Juneau, and Peter Betancourt ("Named Plaintiffs") bring this putative class action under the Employee Income Security Act of 1974 ("ERISA") with respect to certain vesting determinations made by the Hilton Hotels Retirement Plan (the "Plan"). This matter was noticed as related to *Kifafi v. Hilton Hotels Retirement Plan*, No. 98-cv-1517 (CKK) ("*Kifafi*"), an action over which the Court concluded its jurisdiction in December 2015, after more than 17 years of litigation. *See Kifafi*, Mem. Op., ECF No. 434, at 1. In *Kifafi*, the Court certified a benefit-accrual class and certain vesting subclasses. *See Kifafi*, 701 F.3d 718, 723 (D.C. Cir. 2012); *Kifafi*, 616 F. Supp. 2d 7, 21 (D.D.C. 2009).

The instant action concerns claimants with alleged grievances that are not alleged to fall within the narrow classes certified in *Kifafi*. Nonetheless, the Amended Complaint, ECF No. 17 ("Compl."), is replete with allegations that the legal issues underlying this new putative class action have already been decided by the Court in *Kifafi*, and that such determinations are binding under the doctrines of res judicata and offensive collateral estoppel. For two of the Named Plaintiffs and their associated categories of claims, the Court need not decide what if any effect its prior rulings in *Kifafi* may have, because these claims are sufficient to survive a motion to dismiss on their own accord. With respect to the third Named Plaintiff, Peter Betancourt, the Court finds that his claim (and by extension, those of the associated putative subclass) are not plausible, and that dismissal without prejudice is appropriate pursuant to Rule 12(b)(6). This conclusion is unchanged by Plaintiffs' arguments regarding the Court's prior rulings.

## **LEGAL STANDARD**

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1), Plaintiffs bear the burden of establishing that the Court has subject-matter jurisdiction over their

---

[1] In an exercise of its discretion, the Court finds that holding oral argument on this motion would not be of assistance in rendering a decision. *See* LCvR 7(f).

1

claims. *Moms Against Mercury v. FDA*, 483 F.3d 824, 828 (D.C. Cir. 2007). Pursuant to Rule 12(b)(6), a party may move to dismiss a complaint on the grounds that it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "[A] complaint [does not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). Rather, a complaint must contain sufficient factual allegations that, if accepted as true, "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

In deciding a Rule 12(b)(6) motion, a court may consider "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint," or "documents upon which the plaintiff's complaint necessarily relies even if the document is produced not by the plaintiff in the complaint but by the defendant in a motion to dismiss." *Ward v. District of Columbia Dep't of Youth Rehab. Servs.*, 768 F. Supp. 2d 117, 119 (D.D.C. 2011) (internal quotation marks omitted).[2]

## DISCUSSION

For purposes of the pending motion, the Court assumes that the benefit determinations underlying this matter must be assessed under a deferential standard of review. *Foster v. Sedgwick Claims Mgmt. Servs., Inc.*, 842 F.3d 721, 730 (D.C. Cir. 2016). Defendant Global Benefits Administrative Committee is named as Plan Administrator pursuant to section 6.1(a) of the Plan. 2012 Plan, § 6.1(a). Under sections 7.1(a) and 7.3(a), the Committee is granted "the discretionary authority to grant or deny benefits under the Plan[,]" and "the authority to act with respect to any appeal from a denial of a claim for benefits." *Id.* §§ 7.1(a), 7.3(a). Because "the terms of [the Plan] confer such discretion, [the] administrator's denial of benefits is reviewed under an abuse of discretion or arbitrary and capricious standard, a standard which, in this particular context, [the United States Court of Appeals for the District of Columbia Circuit has] referred to as 'reasonableness.'" *Foster*, 842 F.3d at 730.

### Claim One: Valerie White (Use of the Elapsed Time Method)

Plaintiff Valerie White was employed at the Washington Hilton between June 21, 1972 and March 26, 1982. Her service prior to January 1, 1976 has been calculated pursuant to the "elapsed time method,"[3] and her claim for retirement benefits was denied because she failed to meet the

---

[2] For purposes of the pending motion, the Court has reviewed the Hilton Hotels Retirement Plan, as Amended and Restated Effective January 1, 2012, ECF No. 18-3 (the "2012 Plan"), and the correspondence between the parties that is referenced and necessarily relied upon by the Complaint.

[3] An employee who is credited with 1,000 hours of service during an "eligibility computation period" must generally be credited with one year of service. 29 C.F.R. § 2530.200b–1. However, under the elapsed time method, "an employee's years of service for vesting purposes is not based on an employee's hours, but rather, [is] based upon the total time elapsed while the employee is employed with the employer or employers maintaining the plan." *Kifafi*, 616 F. Supp. 2d at 13. Put differently, a "year of service in an elapsed-time plan is a twelve-month period, or a bunch of shorter periods tacked together to add up to twelve months, in which the employee was on the company's payroll." *Coleman*, 933 F.2d at 551. When years are tacked together, there may be a remainder (e.g., if an employee works 3.7 years, and then works 4.8 years, their total will be 8.5). The question here is what to do with that remainder (i.e., the .5), because

2

minimum ten years of vesting service required under the Plan for employees who terminated their employment prior to 1989. Compl. ¶¶ 41, 44. Plaintiffs contend that it was improper for the Plan to use the "elapsed time method" for pre-1976 service, and consequently, that the denial of her benefits was in error.

As an initial matter, Defendants are correct that there is nothing inherently wrong about the use of the elapsed time method. *See Coleman v. Interco Inc. Divs.' Plans*, 933 F.2d 550, 552 (7th Cir. 1991). The method is sanctioned by regulations promulgated by the Treasury Department, which have been upheld upon appellate review. *See* 26 C.F.R. § 1.410(a)-7; *Johnson v. Buckley*, 356 F.3d 1067, 1072 (9th Cir. 2004). Nonetheless, Plaintiffs have plausibly alleged that the denial of Ms. White's claim was arbitrary and capricious. The issue here is not whether the elapsed time method is appropriate in isolation, but rather, how time calculated originally under the elapsed time method should be treated given that the Plan in January 1976 shifted away from the elapsed time method to an hourly method. The permanent Treasury regulations promulgated in June 1980 provide some guidance, but apparently only apply to transfers between the two systems of computation that occurred after December 31, 1983. *See* 26 C.F.R. §§ 1.410(a)-7(f); 1.410(a)-7(g).

However, the Department of Labor promulgated temporary regulations in December 1976. *See Swaida v. IBM Ret. Plan*, 570 F. Supp. 482, 485 (S.D.N.Y. 1983), *aff'd*, 728 F.2d 159 (2d Cir. 1984) (explaining that the permanent Treasury regulations were preceded by temporary Department of Labor regulations, which were later withdrawn). The temporary regulations, like the permanent Treasury regulations, provide guidance for how plans are to transfer vesting credit between the elapsed time and hourly methods. *See* 41 Fed. Reg. 56,462 (1976); 29 C.F.R. § 2530.200b-9(f) ("*Transfers between methods of crediting service*"). Unlike the permanent regulations, the temporary regulations do not have a delayed effective date with respect to the transfer provisions. Furthermore, the temporary regulations suggest, to some degree, that when vesting credit is transferred from the elapsed time system to an hourly system, fractional years should be converted to an hourly amount. *See, e.g., id*. § 2530.200b-9(f)(2) ("all service required to be credited under the plan to which the employee transfers shall be determined under the method of determining service used by such plan"). This is not conclusive of the issue, but it does create some doubt as to whether it was proper for the Plan not to convert Plaintiff White's fractional year to an hourly basis for the purposes of the Plan's vesting determination. That doubt is coupled with the allegation of inconsistent treatment by Defendants of employees with fractional years. Nonetheless, the Court does not discount the possibility that the Plan's decision not to convert fractional years may have been reasonable. But without insight into how that decision was made, and on what basis—information not available at this stage of the case—the Court cannot so conclude.

Furthermore, although Defendants contend that Plaintiff White failed to meet the contractual 180-day limitations period in the Plan for bringing suit, the complaint alleges that even if that shortened limitations period were enforceable, it should be tolled because Plaintiffs had allegedly requested that this Court adjudicate their claims in the *Kifafi* litigation, and because Defendants had represented that a new lawsuit was the appropriate mechanism for Plaintiffs to

---

in some circumstances, if it is converted to an hourly basis, it may equate to a year (e.g., if the .5 is converted to 1000 hours).

3

bring their new vesting claims. Compl. ¶ 85D. Because the propriety of tolling will turn on the factual circumstances underlying these allegations, dismissal on statute of limitations grounds is inappropriate at this procedural juncture. *See Firestone v. Firestone*, 76 F.3d 1205, 1209 (D.C. Cir. 1996) ("because statute of limitations issues often depend on contested questions of fact, dismissal is appropriate only if the complaint on its face is *conclusively* time-barred" (emphasis added)).

### Claim Two: Plaintiff Eva Juneau (Non-Participating Service)

Plaintiff Juneau seeks retirement benefits for alleged employment with Hilton properties between April 22, 1991 and November 10, 2000. Compl. ¶ 4. Defendants informed Plaintiff Juneau by letter dated February 24, 2015 that a portion of her claimed employment was not reflected in their records, and asked her to submit additional evidence of that employment. ECF No. 18-6. Despite this and another opportunity to do so, no additional evidence was provided, and the claim was denied. ECF No. 18-7. However, a separate portion of Plaintiff Juneau's employment was discounted for vesting purposes because Defendants determined that she was employed at a "non-participating property that is not a Related Company" from April 1991 to July 31, 1992. Compl. ¶ 58. Plaintiffs contend that had that period been appropriately credited, then Plaintiff Juneau should have been vested, regardless of whether the other contested period of employment was credited or not. *See* ECF No. 18-9. Defendants oppose this claim primarily on the basis that the Court's prior rulings in *Kifafi* are inapposite. But, the fact that the Court did not address this claim in *Kifafi* does not render it inactionable within the confines of this matter. Furthermore, Plaintiffs have pleaded sufficient factual matter to stake out a plausible claim under Rule 12(b)(6). A letter sent to Plaintiff Juneau informed her that the Reno Hilton was a non-participating property, and that she would not receive credit for her employment there because the property was neither a Participating Employer or a Related Company. Compl. ¶ 58. Plaintiffs allege, however, that records requested and received from Defendants do not identify any non-participating property that is also not a Related Company. *Id*. ¶¶ 61–62. Defendants have not contested this allegation (e.g., by submitting the referenced list). Plaintiffs also allege that Defendants have made inconsistent determinations regarding vesting credit for non-participating properties. *Id*. ¶¶ 65–66. Accordingly, this claim shall not be dismissed pursuant to Rule 12(b)(6).

### Claim Three: Peter Betancourt (Beneficiaries of Deceased Participants)

Plaintiff Betancourt seeks benefits as an alleged beneficiary of his father, Pedro Betancourt, who worked for Hilton between 1947 and 1979, and died in 1985. His claim was denied by letter dated June 3, 2015, which indicated that "the applicable Plan document does not provide for a death benefit to anyone other than the surviving spouse," and because Defendants determined that his claim was untimely. The Complaint alleges that Pedro Betancourt is vested. Compl. ¶¶ 76–77. Consequently, the question is purely one of whether Plaintiff Betancourt is entitled to benefits, assuming his claim for them is timely, even though his father is deceased. To answer this question, Plaintiffs principally rely on determinations that the Court made in fashioning relief with respect to the narrow class claims that were certified in *Kifafi*. However, these remedial rulings, made in the context of the narrow claims certified in *Kifafi*, are not determinative of whether Plaintiff Betancourt is entitled to benefits on a claim not adjudicated in that litigation. Nor does the Amended Complaint allege that Peter Betancourt was part of a *Kifafi* subclass.

Moving beyond *Kifafi*, under the definition of "Beneficiary," the Plan provides that a "participant shall be required to designate a Beneficiary . . . only if the Participant elects to receive his retirement benefit in the form of a Ten-Year Certain and Life Annuity described in Section 4.8(a)(iv) . . . ." 2012 Plan, at 4. Why is a designation necessary only in that circumstance? Because otherwise, retirement benefits under the Plan are paid only until the participant's death. *See, e.g.*, 2012 Plan § 4.5(a) (with respect to the "Normal Form of Retirement Benefit," "the last payment [is] made for the month in which the Participant's death occurs"). Unless the participant elects the payment option described in section 4.8(a)(iv), the only exception to this rule is the spousal death benefit, described in section 4.7. Here, Plaintiff Betancourt has not alleged that his father made the election in section 4.8(a)(iv) or an equivalent election; he is not the spouse; and he has not alleged that prior versions of the Plan differed materially so that the terms of the 2012 Plan are not sufficiently representative of the options that would have been available to his father. Furthermore, although Plaintiffs rely heavily on section 4.13(e)(6), *see* Compl. ¶ 77., that provision only applies to certain benefit increases, and Plaintiffs have not alleged that Peter Betancourt was entitled to an increase. Accordingly, Plaintiff Betancourt's claim, and those of the subclass associated with him, are dismissed without prejudice. *See Nelson v. Greenspan*, 163 F. Supp. 2d 12, 19 (D.D.C. 2001).

## OTHER ISSUES

Two provisions of ERISA underlie the allegations of the Complaint: sections 502(a)(1)(B) and 502(a)(3) (codified respectively as 29 U.S.C. §§ 1132(a)(1)(B) and 1132(a)(3)). Section 502(a)(1)(B) creates a civil cause of action for "a participant or beneficiary . . . to recover benefits due to him under the terms of his plan . . . ." Section 502(a)(3) provides for injunctive relief against a fiduciary, and other forms of equitable relief. Courts in this circuit, in agreement with the majority of circuits to have addressed this issue, have uniformly held that a claim pursuant to section 502(a)(3) cannot stand where an adequate remedy is provided through a claim for benefits under section 502(a)(1)(B). *See Lewis v. Pension Benefit Guar. Corp.*, 197 F. Supp. 3d 16, 22 (D.D.C. 2016) (collecting cases). However, at this procedural juncture, the Court cannot conclude that Plaintiffs will necessarily receive adequate and complete relief pursuant to section 502(a)(1)(B), which would make relief under 502(a)(3) merely duplicative. Accordingly, the section 502(a)(3) claims of Plaintiffs White and Juneau survive as alternative bases of relief. *See Silva v. Metro. Life Ins. Co.*, 762 F.3d 711, 727 (8th Cir. 2014) (permitting alternative pleading of claims under sections 502(a)(1)(B) and 502(a)(3) because "[a]t the motion to dismiss stage . . . it is difficult for a court to discern the intricacies of the plaintiff's claims to determine if the claims are indeed duplicative, rather than alternative, and determine if one or both could provide adequate relief").[4]

Defendants also challenge the "class standing" of Plaintiffs White and Juneau, relying on out-of-circuit authority. In particular, the United States Court of Appeals for the Second Circuit has held that a putative class representative must plausibly allege "(1) that he personally has suffered some actual injury as a result of the putatively illegal conduct of the defendant, and (2) that such conduct implicates the same set of concerns as the conduct alleged to have caused injury to other members of the putative class by the same defendants." *Ret. Bd. of the Policemen's*

---

[4] As a result of this determination, the Court does not reach Defendants' contention that certain Defendants must be dismissed, because that argument is predicated on section 502(a)(1)(B) being Plaintiffs' only avenue of redress.

*Annuity & Ben. Fund of the City of Chicago v. Bank of New York Mellon*, 775 F.3d 154, 161 (2d Cir. 2014) (internal quotation marks omitted). First, even if this authority were controlling, Plaintiffs White and Juneau have satisfied the two criterions. In both instances, Plaintiffs have plausibly alleged that the named plaintiff and the putative class were denied benefits on the same allegedly erroneous principle. Furthermore, Defendants' challenge, at heart, is to the typicality of these named plaintiffs vis-à-vis the putative class; an issue that, in this Court's view, should be decided upon a motion for class certification.

Finally, Defendants' laches argument is not appropriately resolved upon a motion to dismiss, given the fact-intensive nature of this equitable defense, and because dismissal based on the defense is not self-evident from the face of the complaint. *See Major v. Plumbers Local Union No. 5 of United Ass'n of Journeymen & Apprentices of Plumbing & Pipe-Fitting Indus. of U.S. & Canada, AFL-CIO*, 370 F. Supp. 2d 118, 128 (D.D.C. 2005) (concluding that it was inappropriate to resolve laches defense upon a motion to dismiss because "the circumstances of any delay or the prejudice suffered by the defendant is fundamentally a factual inquiry").

## CONCLUSION AND ORDER

For the foregoing reasons, Defendants' [18] Motion to Dismiss is **GRANTED-IN-PART** and **DENIED-IN-PART**. The claims of Plaintiffs White and Juneau, and those of the putative subclasses associated with those claims, may proceed pursuant to ERISA sections 502(a)(1)(B) and 502(a)(3). All other claims are **DISMISSED WITHOUT PREJUDICE**.

**SO ORDERED.**

    /s/
COLLEEN KOLLAR-KOTELLY
United States District Judge