## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT COLUMBIA

| | |
|---|---|
| VALERIE R. WHITE, 700 Decatur St. NE, Washington DC 20017, EVA JUNEAU, 730 Gordon Ave., Reno NV 89509, PETER BETANCOURT, 1270 Wilshire Circle East, Pembroke Pines, FL 33027, individually and on behalf of all others similarly situated,<br><br>                 Plaintiffs,<br><br>   vs.<br><br>HILTON HOTELS RETIREMENT PLAN, 7930 Jones Branch Drive, Suite 1100, McLean, VA 22102, HILTON WORLDWIDE, INC., 7930 Jones Branch Drive, Suite 1100, McLean, VA 22102, GLOBAL BENEFITS ADMINISTRATIVE COMMITTEE, MARY NELL BILLINGS, S. TED NELSON, CASEY YOUNG, and UNNAMED MEMBERS OF THE GLOBAL BENEFITS ADMINISTRATIVE COMMITTEE, 755 Crossover Ln, Memphis, TN 38117,<br><br>                Defendants.<br>_____ | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    Case No. 16-CV-856 (CKK)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## SECOND AMENDED CLASS ACTION COMPLAINT

The named Plaintiffs, Valerie R. White, Eva Juneau, and Peter Betancourt, seek to

enforce their rights, and the rights of others similarly situated, to receive vested retirement

benefits in accordance with the District Court's decisions in a related case, *Kifafi, et al., v.

Hilton Hotels Retirement Plan, et al.*, C.A. 98-1517 (D.D.C.), and the standards set forth

in ERISA and the Hilton Hotels Retirement Plan. The Plaintiffs allege that by requiring

improperly long periods of service to become vested in retirement benefits, Hilton Hotels

has not maintained its pension plan according to the standards required by ERISA and the

District Court's decisions in *Kifafi*.

## JURISDICTION AND VENUE

1.     The Court has jurisdiction over the subject matter of this action pursuant to

the Employee Retirement Income Security Act of 1974 ("ERISA"). 29 U.S.C. §

1132(e)(1), and 28 U.S.C. § 1331. Venue is proper in this Court under 29 U.S.C. §

1132(e) because Defendants may be found in the District of Columbia and breaches of

duty took place in this District, including Defendants' failure to comply with the District

Court's decisions in the related *Kifafi* litigation.

## RELATED CASE DESIGNATION

2.     This case is a "related case" to *Kifafi, et al., v. Hilton Hotels Retirement

Plan, et al.*, C.A. 98-1517, within the meaning of L. Civ. R. 40.5(a)(4), because *Kifafi*

was "dismissed" and this "second case is filed involving the same parties and relating to

the same subject matter."

## THE PARTIES

3.     Plaintiff Valerie White resides in Northeast Washington, D.C. Ms. White

began work for the Washington Hilton on June 21, 1972 starting as a bus girl and

becoming a waitress. After a June 1975 accident, she was transferred to a front desk

cashier position. She terminated employment with the Washington Hilton on March 26, 1982 and is currently age 63. Ms. White is a "participant" in the Hilton Hotels Retirement Plan under ERISA § 3(7), 29 U.S.C. §1002(7) because she is a "former employee" of Hilton Hotels "who is or may become eligible to receive a benefit" from the Plan.

4.     Plaintiff Eva Juneau resides in Reno, NV. Ms. Juneau worked for the Reno Hilton as a showroom server from April 22, 1991 until May 16, 1996, and then worked at the Flamingo Hilton Reno from May 17, 1996 until November 10, 2000 as a banquet server and bartender. She is currently age 54. Ms. White is a "participant" in the Hilton Hotels Retirement Plan under ERISA § 3(7), 29 U.S.C. §1002(7) because she is a "former employee" of Hilton Hotels "who is or may become eligible to receive a benefit" from the Plan.

5.     Plaintiff Peter Betancourt resides in Pembroke Pines, FL. Mr. Betancourt is the only child of Pedro Betancourt, who died on February 11, 1985 at the age of 71. Pedro Betancourt began working for the New York Hilton on October 3, 1947 as a busboy and terminated on January 13, 1979 as executive chief steward. Peter Betancourt is a "beneficiary" "who is or may become entitled to a benefit" under the Hilton Hotels Retirement Plan, under ERISA § 3(8), 29 U.S.C. §1002(8), and also under the District Court's decisions in *Kifafi*.

6.     On information and belief, Defendant Hilton Worldwide, Inc. is a Delaware corporation with headquarters in McLean, VA, and more than 50,000 employees and

hotels in 91 different countries and territories, including 40 states and the District of Columbia, where Defendant operates the Washington Hilton and the Capital Hilton as well as Hilton Garden Inn, Doubletree, Hampton Inn, and Homewood Suites hotels.

7.     Defendant Hilton Hotels Retirement Plan is an employee pension benefit plan based in the Woodlands, Texas, which is established and maintained by Hilton Worldwide, Inc. to provide retirement income to Hilton employees. Defendant Hilton Hotels Retirement Plan is an "employee pension benefit plan" as defined in ERISA §3(2)(A), 29 U.S.C. §1002(2)(A).

8.     The employer that established and maintains the Defendant Hilton Hotels Retirement Plan was formerly named Hilton Hotels Corp. and has now been renamed Hilton Worldwide, Inc. Defendant Hilton Worldwide, Inc. is the "plan sponsor" of the Hilton Hotels Retirement Plan within the meaning of ERISA §3(16)(B), 29 U.S.C. §1002(16)(B). Defendant Hilton Worldwide, Inc. also functions as the "Plan administrator" for the Pension Plan within the meaning of §3(16)(A) of ERISA, 29 U.S.C. §1002(16)(A), and is a "fiduciary" for the Pension Plan's participants and beneficiaries within the meaning of ERISA §3(21)(A), 29 U.S.C. §1002(21)(A).

9.     Defendant Hilton Worldwide, Inc. administers the Plan through an unincorporated "Global Benefits Administrative Committee" located in Memphis, Tennessee, which consists of Hilton executives appointed by Hilton Worldwide, including Mary Nell Billings, Senior Director Global Retirement Programs and Chair of

the Global Benefits Administrative Committee, S. Ted Nelson, Vice President Benefits Americas, and Casey Young, Senior Manager Retirement Programs.

9A.   Ms. Billings, Mr. Young and at least one unnamed individual are delegates to an unincorporated committee known as the U.S. Appeals Committee. The Hilton Plan document does not identify the U.S. Appeals Committee or the Global Benefits Administrative Committee by name, but both have been created by Hilton Worldwide under the umbrella of the "Administrative Committee" as defined in the Plan. The Global Benefits Administrative Committee makes determinations on initial claims and the U.S. Appeals Committee reviews and make final determinations on appeals from the denials of initial claims. Ms. Billings, Mr. Nelson, Mr. Young, and other unnamed members of the Global Benefits Administrative Committee and the U.S. Appeals Committee are "fiduciaries" for the Pension Plan's participants and beneficiaries within the meaning of ERISA §3(21)(A), 29 U.S.C. §1002(21)(A).

## CLASS ACTION ALLEGATIONS

10.   Plaintiffs bring this action on their own and on behalf of all other similarly-situated employees in accordance with Federal Rule of Civil Procedure 23 in order to resolve disputes under the Employee Retirement Income Security Act of 1974 as amended.

11.   The proposed class is defined as any and all persons who:

(a)   Are former or current employees of Hilton Worldwide, Inc. or Hilton Hotels Corp.;

(b)     Submitted a claim for vested retirement benefits from Hilton under the claim procedures ordered by the District Court and the Court of Appeals in *Kifafi, et al., v. Hilton Hotels Retirement Plan, et al.*, C.A. 98-1517; and

(c)     Whose vesting claim has been denied by Defendants because of the unlawful:

(1)     Use of "fractional years of vesting service" under an "elapsed time" method to count periods of employment before 1976;

(2)     Refusal to count "non-participating" service for vesting by not recognizing Hilton properties as "Related Companies" whether or not they participate in the Plan, or failing to apply the proper equivalencies for non-participating service; or

(3)     Denial of claims to retroactive benefits solely on the ground that the claimant is "not the surviving spouse."

12.     On information and belief, the members of the proposed class reside throughout the United States and number over 220 individuals, making joinder impracticable.

13.     The common questions of fact and law set out below affect the rights of the members of the class.

14.     The named Plaintiffs' claims for vested retirement benefits are typical of the claims of the members of the class, and the named Plaintiffs will fairly and adequately protect the interests of the class.

15.     Plaintiffs' counsel are experienced in class action litigation involving

6

pension plans, having handled, *inter alia*, the *Kifafi* class action litigation referenced above.

16.     This action is best maintained as a class action because Defendant has acted and/or refused to act on grounds generally applicable to the class the Plaintiffs represent, thereby making appropriate final injunctive and other equitable relief in favor of Plaintiffs and the class.

## FACTUAL ALLEGATIONS

17.     *Kifafi, et al. v. Hilton Hotels Retirement Plan, et al.*, C.A. 98-1517 (D.D.C.), is a nationwide class action that was initiated on June 17, 1998 to redress Hilton's failure to comply with the vesting rules and the benefit accrual rules under ERISA in determining retirement benefits for over 22,000 former and current employees.

18.     On May 15, 2009, and in a series of decisions thereafter, the District Court found violations of the vesting and benefit accrual rules and ordered equitable relief for those violations in the form of benefits. 616 F.Supp.2d 7, 23-24, 30-33 (D.D.C. 2009); 736 F.Supp.2d 64, 72-73, 76-82 (D.D.C. 2010); 826 F.Supp.2d 25, 31-34 (D.D.C. 2011). The Court of Appeals affirmed the District Court's decisions on December 14, 2012. 701 F.3d 718, 726-28, 731-33 (D.C. Cir. 2012).

19.     The District Court supervised administration of the relief from February 2013 to December 2015. On December 7, 2015, the District Court in *Kifafi* terminated its supervisory jurisdiction over the equitable relief it had ordered, including for vesting, and

dismissed the case, while simultaneously stating that its equitable orders remain fully in effect. Dkt.#436 (in C.A. 98-1517) at 8. The District Court's dismissal of the case in *Kifafi* with the equitable orders fully in place but without requiring compliance certifications or other reporting to enforce its orders is currently on appeal before the United States Court of Appeals for the D.C. Circuit, No. 16-7002.

20.    As indicated, on May 15, 2009, the District Court ruled in *Kifafi* that Hilton had systematically not properly counted periods of employment with Hilton in determining whether employees had enough years of service for a vested right to a pension benefit as modified by ERISA. 616 F.Supp.2d 7, 29-32. The District Court ruled that while Hilton "initially asserted that it complied fully with the Plan's vesting provisions that allowed employees to earn a year of vesting credit by completing 1,000 hours of service," "the record is replete with uncontested evidence that Hilton failed to properly implement the 1,000 hours standard for calculating employees' vesting credit, often because it lacked the necessary records to do so." 616 F.Supp. 2d at 29. The Court illustrated with emails from Hilton's benefits administrator which stated, "[w]e have not previously given vesting [credit] prior to benefits service" and "[f]or as far back as we can go, no one kept track of the non-participating properties' employees (hours/earnings) to give them vesting." *Id*. The Court stated that "Hilton's counsel even conceded [to the Court] that the Plan could not have fully complied with the 1,000 standard because Hilton lacked the requisite records." *Id*.

21.     To remedy the vesting violations, the District Court on September 7, 2010,

ordered the "870/750 'hours worked' equivalency to be applied in lieu of the 1000 hours

of service standard where an employee's records are sufficient to indicate the hours

worked." 736 F. Supp. 2d 64, 76. The District Court required Hilton to "award[] vesting

credit under an hours standard" for "periods of non-participating service," including

union service. *Id*. at 78. "Under the 'hours worked' equivalency, an employee is credited

with a year of service if he has 870 hours worked during a twelve-month period (or 750

for a salaried employee)." *Id*. (citing 29 C.F.R. §2530.200b-3(d)). If "records of hours

worked are unavailable (or where a record indicates 500 hours of service as a

placeholder)," the Court also required a "190 hours of service per month equivalency" to

be used. *Id*. The Court ordered that "participants whose hours are calculated under the

190-hour equivalency shall be credited with a year of service if they have 870 hours

during the year (750 for salaried employees)." *Id*. at 77 (citing 29 C.F.R. §

2530.200b-3(e)(7)).

22.     The District Court rejected Hilton's approach of using an "elapsed time"

method in which "the participant earns a year of vesting service for each 365-day period

of service (including partial years) regardless of the hours completed." 616 F.Supp.2d at

32. The Court determined that the elapsed time method leaves "some participants with

fractional years of vesting service" and ordered Hilton to "credit participants for service

based on the hours reflected in the Plan records and the proper equivalencies, not the

elapsed time method." 736 F.Supp.2d 64, 82; *see also* 616 F.Supp.2d at 34 (rejecting Hilton's attempt to "retroactively apply the elapsed time method to periods of non-participating service" because it is "mathematically possible for an employee to have fewer years of vesting service under the elapsed time method than under an hours standard").

23.    In orders dated September 7, 2010 and August 31, 2011, the District Court specifically ordered Hilton to vest over 700 individuals. *See* 736 F.Supp.2d at 82-83 and Dkt.#258 (in C.A. 98-1517) at 2, 9-10.

24.    The District Court further ordered Defendants to "send a notice and claim form to members of the subclass whose records show a service date or a hire date that precedes the first year of participation in the Plan and who may become vested if such additional service is credited." Dkt.#258 (in C.A. 98-1517) at 7.

25.    In November 2011, Hilton mailed claim forms to 2,612 class members who had sufficient years to be vested based on Hilton's existing records. However, Hilton negligently failed to update any of the 15-20 year old addresses to which it was mailing. The result was that close to 60% of the notices were returned as undeliverable. Dkt.#332 (in C.A. 98-1517) at 2-4. On August 16, 2012, the District Court ordered Hilton to re-mail the claim forms and to use a "qualified locator service" to "search for and locate current addresses" for these class members. *Id*. at 5.

26.    On December 14, 2012, the D.C. Circuit affirmed the District Court's

decisions on Hilton's violations of the vesting and backloading rules and the remedies for those violations, including the new claim procedure for additional vesting claims. 701 F.3d 718, 726-27 and 731-33. While the D.C. Circuit denied the Class' appeal on the vesting claims, the D.C. Circuit ordered Hilton to "fund and administer a claim procedure open to all participants whose vesting status turns on nonparticipating service." *Id*. at 733.

27.     After the remand, the District Court found in a February 4, 2015 Order that Hilton's letters to individuals whose claims had been denied were still insufficient and ordered Hilton to revise the denial letters "to provide notice of the claimant's right to review if his or her claim to additional vesting service does not result in a benefit under the Plan." 79 F. Supp. 3d 93, 108. In a June 4, 2015 order, the Court further agreed with the Class that Hilton's letters had failed to state the "specific reasons" for denying the claims and ordered Hilton to amend the denial letters "to state that a class member does not qualify for benefits under the Plan because he or she does not have the minimum number of years of vesting service." 107 F. Supp. 3d 154, 166.

28.     Ultimately, Hilton vested another 171 individuals under this claims procedure but denied or did not act on 381 others.

29.     The District Court ordered Defendants "to share with Plaintiff the information received from any claimants so that Plaintiff may challenge Defendants' decisions regarding whether they should credit additional vesting service." 826 F.Supp.2d at 34; *see also* Dkt.#304 at 5 (December 28, 2011 Order requiring Hilton to "provide

Plaintiff with copies of all ... communications related to the dispositions of the claims").

30.     Plaintiffs' counsel reviewed the addresses used in Hilton's 2011-2012 mailing further and found that over 1,100 of 2,612 participants would not have received the notice on the opportunity to file a vesting claim because the addresses Hilton used were still not current, despite the Court's August 16, 2012 Order. To address the gaps in the addresses used in Hilton's October 2012 mailing and in Hilton's processing, Plaintiffs' counsel remailed claim forms to 1,359 participants who Plaintiffs' counsel believed might be vested, including 360 whose claims had been denied by Hilton before.

31.     Before conducting this mailing, Plaintiffs' counsel sought an agreement with Hilton to vest these individuals. In a September 19, 2014 email, Hilton's counsel refused to agree but represented that if an individual "pursues a claim for additional vesting according to Plan procedures, Hilton will fulfill its obligations to evaluate such claims according to ERISA and the Plan in full."

32.     Plaintiffs' counsel hired the Garden City Group (GCG) to conduct the mailing, which went out on October 10, 2014. The mailing invited individuals to make a claim for vesting by confirming or correcting the periods of service shown in Hilton's existing records and to identify any additional period or periods of employment with Hilton. As a result of that mailing, Class counsel collected vesting claims on behalf of 770 individuals and submitted them to Hilton in its capacity as Plan administrator for the Hilton Hotels Retirement Plan in four batches on December 3, 2014, February 13, 2015,

April 24, 2015, and October 5, 2015. The claim forms Class counsel submitted on behalf of these 770 claimants identified the claimants' relevant periods of service with Hilton properties, including service added by the claimants. Class counsel provided Excel spreadsheets for each batch of claims summarizing and organizing the information and provided scanned and paper copies of the claims.

33.    Relying on new counsel, Alston & Bird, Hilton vested the claims for 169 of these individuals over a period that stretched from March 2015 to April 2016, but refused to credit sufficient vesting service for 601 participants. Hilton's form denial letters acknowledged that "your service dates are correct," but uniformly concluded "you do not meet the minimum number of years of vesting service."

34.    Despite the lack of specificity in the denials, Class counsel reviewed the denied claims and records previously provided in discovery to determine whether an appeal should be taken and appealed 429 denials. The appeals detailed the number of years of vesting service the participant should have based on the 190-hour equivalency recognized by the District Court and the elapsed time method. *See* 616 F.Supp.2d at 34; 736 F.Supp.2d at 76.

35.    Based on Department of Labor regulations, the appeals submitted on behalf of the vesting claimants asked that Hilton provide "all documents relevant to the basis for the initial denial in accordance with 29 C.F.R. 2560.503-1(h)." 29 C.F.R. 2560.503-1(h) requires that claimants be provided with "all documents, records, and other information

relevant to the claimant's claim for benefits."

36.    In response to the appeals, Hilton reversed its initial denials for 62 individuals but upheld the denials for 358 individuals (Hilton's responses to 9 appeals are due in June 2016).

37.    Before the District Court closed its supervisory jurisdiction in *Kifafi*, Plaintiffs' counsel submitted evidence showing that Hilton was denying vesting claims under the Court-ordered process on grounds that the District Court had already specifically rejected, and that Hilton's decisions on those issues were not even consistent. *See* Dkt.#426 (in C.A. 98-1517) at 11-16. But on December 7, 2015, the District Court ruled that Hilton's denial of the vesting claims were "outside the scope of the narrow jurisdiction retained by the Court" and "are properly addressed through Hilton's appeals process." Dkt.#436 (in C.A. 98-1517) at 7.

38.    Plaintiffs' counsel in *Kifafi* filed an appeal to the U.S. Court of Appeals for the D.C. Circuit on January 5, 2016 (No. 16-7002). In opposing a February 16, 2016 motion to hold the appeal in abeyance, which remains pending before the Court, Hilton stated that the "proper recourse" for "Hilton's vesting determinations" "is an appeal on the current record for class members, or separate litigation with respect to the claims." Doc. #1601721 (in No. 16-7002) at 8. With the appeal and this "related case," Plaintiffs' counsel are pursuing both avenues of recourse that Hilton identified.

39.    Class counsel have determined that Hilton has denied at least 221 of the 358

14

appeals on grounds that the District Court in *Kifafi* specifically addressed and rejected,

including:

    (1)    Leaving claimants short of vesting by using "fractional years of vesting service" under the "elapsed time" method for periods of employment before 1976;

    (2)    Not counting "non-participating" service by not recognizing Hilton properties as "Related Companies" whether or not they participate in the Plan, and not applying the proper equivalencies to non-participating service; and

    (3)    Denying claims to retroactive benefits by the beneficiaries of deceased participants solely on the basis that the claimant is "not the surviving spouse," without regard to whether the participant had sufficient years of service to be vested.

**Claim One: Unlawful Application of Elapsed Time Method Before 1976 to Leave "Fractional" Years**

    40.    Plaintiffs incorporate by reference all of the preceding allegations as though

fully set forth herein.

    41.    Hilton has denied the appeals of at least 57 individuals on the ground that:

    a portion of your employment history with Hilton was prior to January 1, 1976. Prior to 1976, vesting credit is calculated using an elapsed time method. The elapsed time method calculates service by measuring the time, in years and fractional years, between the date you began employment and December 31, 1976. The amount of service credited does not depend on the hours worked during a time period, but rather depends on the years and fractions of years during which you were employed by Hilton prior to January 1, 1976.

    42.    As set forth above, the District Court in *Kifafi* already specifically rejected

Hilton's approach because it leaves "some participants with fractional years of vesting

15

service." 736 F.Supp.2d at 82. *Accord*, 616 F.Supp.2d at 34 ("elapsed time alternative can cause employees to lose years of service which they would have earned"). The Court has ordered Hilton to "credit participants for service based on the hours reflected in the Plan records and the proper equivalencies, not the elapsed time method." 736 F.Supp.2d at 82.

43.     The District Court has already determined that Hilton's use of an elapsed time method to count service before 1976 leaves participants with "fractional years of vesting service" as of 12/31/1975. Since the hours of service method used thereafter only credits service in whole years,"fractional years" are left hanging under this approach without rounding up or combining them with another fractional period of service.

44.     As an example, Hilton credited named Plaintiff Valerie White with 3.52957 years for her service at the Washington Hilton from 6/21/1972-12/31/1975 and then with 6 years for service from 1/1/1976 to 3/26/1982, giving her a total of 9.52957 years of vesting service. This is exactly the kind of hanging "fractional year" with no rounding up consistent with ERISA that the District Court rejected.

45.     Under the doctrines of res judicata and collateral estoppel, Hilton is bound to use "the proper equivalencies, not the elapsed time method," in accordance with the District Court's decisions. *See Cooper v. Federal Reserve Bank*, 467 U.S. 867, 874 (1984) ("There is of course no dispute" under "[b]asic principles of res judicata" that "a judgment in a properly entertained class action is binding on class members in any subsequent litigation"); *Nat'l Ass'n of Home Builders v. EPA*, 786 F.3d 34, 41 (D.C. Cir.

16

2015) ("collateral estoppel bars successive litigation of an issue of fact or law actually litigated and resolved that was essential to the prior judgment, even if the issue recurs in the context of a different claim").

46.    The DOL regulations also mandate this result. Under 29 C.F.R 2530.200b-3(b), if a plan changes from elapsed time to hours of service, the plan is required to "determine the approximate number of *hours of service* completed" for years prior to the date the "hours of service" method became "effective." "A plan may use any of the equivalencies permitted under this section, or the elapsed time method of crediting service permitted under this section" "to determine hours of service completed before the effective date." *Id*. The Treasury regulations at 26 C.F.R. 1.410(a)-7(f) and (g) require a similar transition, requiring that the employee "receive credit...for a number of hours of service determined by applying one of the equivalencies ... to any fractional part of a year credited to the employee" under the elapsed time method.

47.    Hilton's application of elapsed time before January 1, 1976 does not take into account the District Court's decision on fractional years or the DOL and Treasury regulations on transitioning from an elapsed time method to an hours of service method for service. Without the transition between elapsed time and hours of service required by the District Court and the regulations, a fractional 0.52957 year for Ms. White will be frozen forever in place, and the only way she can attain the additional 0.47043 year of vesting service would be to earn another full year of vesting service. This would mean

17

that participants "actually would need more than ten calendar years of employment for his

pension to vest." *Gennamore v. Buffalo Sheet Metals, Inc. Pension Plan*, 568 F.Supp.

931, 934 (W.D.N.Y. 1983).

48.     On July 31, 2015, Plaintiffs' counsel sent an email asking for the "pertinent

documents" on which Hilton's application of the elapsed time method was based,

"including the Plan provisions adopting the 'elapsed time method' for service before

December 31, 1975 and transitioning from that method to the 'hours of service' method

for service thereafter" as well as documents "that show the computation of these

claimants' 'elapsed time' service in years and fractional years and how that service was

added to the service credited to them based on 'hours of service'."

49.     The only document Hilton's outside counsel produced in response was a

copy of Hilton's Plan document as amended and restated effective January 1, 1976. In an

August 31, 2015 letter, Hilton's counsel stated that "[t]he Plan describes the two different

methodologies for calculating vesting credit before 1976 and after." The August 31, 2015

letter did not address at all Plaintiffs' request for pertinent documents related to

"transitioning from [the elapsed time] method to the 'hours of service' method for

service" after December 31, 1975.

50.     Hilton's application of the elapsed time method is also inconsistent with its

practice before this Court in *Kifafi* in 2009-2011 when hundreds of similar vesting claims

were decided. When Class counsel provided Hilton with a list of 3,071 individuals who

18

"should be vested" in September 2009, *see* Dkt.#211 (in C.A. 98-1517) at 22-23, Hilton's

consultants, Ian Altman and Constance Hiatt, reviewed those individuals' service records

to "determine if participants were properly credited with vesting service." Dkt.#224-3 (in

C.A. 98-1517) at 2. As a result, Hilton vested over 100 individuals by applying

equivalencies without leaving any "fractional years" in counting vesting service before

1976. *See* Dkt.#219-9 at 21; Dkt.#240-4 at 8.

50A.   Defendants' experts identified these individuals in sealed Exhibits by name

and with code "1b" to designate the individuals "To Be Vested" with equivalencies but

not elapsed time. *See* Dkt. #219, Altman Ex. 5; Dkt. #240, Hiatt Ex. 1. Examples of

individuals who vested as a result include Susan Doroba who had 9.78763 years when

elapsed time was applied in a manner that left a fraction and James Larsen who had

9.90823 years when elapsed time was applied leaving a fraction. Contrary to unsupported

assertions in Defendants' motion to dismiss, *see* Dkt. #14-1 at 3, 20, individuals like Ms.

Doroba and Mr. Larsen did not "mistakenly receive[] credit for fractional years of service

prior to 1976" nor were they "mistakenly paid."

51.   Under 29 C.F.R. 2560.503-1(b)(5), a plan's claim procedures must "contain

administrative processes and safeguards designed to ensure and to verify that...plan

provisions have been applied consistently with respect to similarly situated claimants."

*Accord*, *Canada Life Assurance Co. v. Estate of Lebowitz*, 185 F.3d 231, 238 (4th Cir.

1999) ("plan administrator must administer the provisions of a policy 'consistently'");

19

*Lutheran Medical Ctr. v. Contractors, Laborers, Teamsters & Eng'rs Health and Welfare Plan*, 25 F.3d 616, 621 (8th Cir. 1994) ("The trustees' payment of Doe's claim and their denial for Rodriguez's claim is an unreasonable inconsistency"). Here, Hilton's application of the Plan provisions is not only unlawful, but it is also inconsistent with respect to similarly situated claimants.

**Claim Two: Unlawful Failure to Count "Non-Participating" Service**

52.     Plaintiffs incorporate by reference all of the preceding allegations as though fully set forth herein.

53.     For at least 107 claimants, Hilton was required "to count all of [the] employee's years of service," including non-participating service, to determine vesting. 616 F.Supp.2d at 12.

54.     ERISA §203(b)(1), 29 U.S.C. §1053(b)(1), requires that "all of an employee's years of service with the employer or employers maintaining the plan shall be taken into account" for vesting purposes. Article I of the Hilton Pension Plan document likewise defines "Vesting Computation Period" as a period "during which the Employee is employed with a Participating Employer or a Related Company."

55.     The District Court in *Kifafi* ruled in August 2000 that the Plan's definition of "Related Companies" encompasses any "Hilton Property," which is defined in the Plan document as any property in which Hilton "has an interest or with which it has a contractual relationship for hotel management." Dkt.#88 (in 98-1517) at 4. Thus, the

District Court ruled that the Plan's definition of "Related Company" encompasses all related or affiliated Hilton properties–whether or not they participate in the Plan.

56.     The District Court's May 5, 2009 decision also held that "employers are required to count all of an employee's years of service for calculating his or her years toward vesting." *Kifafi*, 616 F. Supp. 2d at 12. Thus,

> An employee's years of service must be counted even if they occur prior to participation in the retirement plan. *See Holt* [*v. Winpisinger*,] 811 F.2d [1532,] 1537 [(D.C. Cir. 1987)] (citing H.R. Conf. Rep. No. 1280, 93rd Cong., 2d Sess. 268 (1974), reprinted in 1974 U.S. Code Cong. & A. News 5038, 5050 ("generally, ... once an employee becomes eligible to participate in a pension plan, all his years of service with an employer (including pre-participation service, and service performed before the effective date of [ERISA]) are to be taken into account for purposes of determining his place on the vesting schedule")).

57.     Despite the District Court's rulings, which Hilton is bound to follow, Hilton is not counting service at "non-participating" properties and has stated that it is only counting service "at either a Participating Employer or Related Company for vesting credit." Not only does this contradict the District Court's ruling that the definition of "Related Company" encompasses all related or affiliated Hilton properties, whether or not they participate in the Plan, but Hilton has not provided any documents in response to Plaintiffs' requests to identify any non-participating properties that are not "Related Companies."

58.     For example, Hilton's records show that named Plaintiff Eva Juneau worked for the Reno Hilton from April 22, 1991 until May 16, 1996, and then at the

Flamingo Hilton from May 17, 1996 until February 21, 1997. Hilton is crediting Ms.

Juneau with four years of service between August 1, 1992 and February 21, 1997, but

Hilton is not counting her service before the date the Reno Hilton began participating in

the Plan:

> [Y]ou were employed at a non-participating property during a
> portion of your employment with Hilton properties.
> Specifically, Reno Hilton was a non-participating property
> prior to August 1, 1992. Vesting credit is not available for
> your employment with a non-participating property. The Plan
> looks to the 'Hours of Service' completed during each
> 'Vesting Computation Period' by an 'Employee' in
> determining whether to award vesting credit. Pursuant to
> these defined terms, the Plan requires employment at either a
> Participating Employer or Related Company for vesting
> credit. Since you had service at a non-participating property
> that is not a Related Company or Participating Employer, you
> are not entitled to any vesting credit for such service.

59.     Under the doctrines of res judicata and collateral estoppel, Hilton is bound

to follow the District Court's rulings on counting non-participating service for vesting

purposes. But contrary to these basic doctrines, Hilton is not following those decisions.

*See, e.g., Cooper v. Federal Reserve Bank*, 467 U.S. 867, 874 (1984); *Nat'l Ass'n of

Home Builders v. EPA*, 786 F.3d 34, 41 (D.C. Cir. 2015).

59A.    Under this Court's decisions, ERISA §203(b)(1), 29 U.S.C. §1053(b)(1),

and the Plan's definition of Years of Vesting Service, all of Ms. Juneau's non-

participating service with the Reno Hilton is required to count for vesting. Ms. Juneau's

employment with the Reno Hilton from April 22, 1991 until July 31, 1992 employment

satisfies the definition of "non-participating service" as Hilton service that has not been

credited for benefit accrual purposes under the Plan (called Years of Benefit Service

under the Plan). The Reno Hilton is a "Hilton Property" that is also a "Participating

Employer" because it participates in the Plan. The Reno Hilton is even identified by

named in the Plan as part of the "Gaming Group."  The Reno Hilton is also a member of

Hilton's "Controlled Group" and thus a "Related Company" under the Plan's definition of

that term. Finally, Ms. Juneau's service with the Reno Hilton when it was owned by Bally

also falls under the Plan's definition of service with the "Company" because Hilton and

Bally merged in 1996 so that service with Bally is service with a "predecessor

corporation."

60.     On June 10, 2015 and July 16, 2015, Plaintiffs' counsel sent two emails to

Hilton's counsel, Alston & Bird, to request the pertinent documents identifying the non-

participating properties that are not "Related Companies" and the pertinent documents

related to "Hilton's administrative practices on not counting vesting service before

properties...bec[a]me a participating property."

61.     On July 10, 2015, Hilton's counsel produced a list of Hilton "Properties"

printed from Hilton's Retirement Calculator Database that lists both participating and

non-participating properties. This list, which Class counsel already had from the *Kifafi*

litigation, does not identify any "non-participating property" as a property "that is not a

Related Company." In an August 17, 2015 letter, Hilton's counsel stated they would

provide a list of Hilton's "control group members," conflating the term "control group members" with the term "Related Companies." This is the same argument that Hilton's previous counsel made and that the District Court rejected before. *See* Dkt.#65 in C.A. 98-1517 (Defs. 12/13/1999 Opp. to Mot. to Clarify) at 2-3 (arguing that class definition only included Hilton and "the controlled group hotels" and not the "managed properties," which are not "owned or controlled by Hilton").

62.     Hilton's counsel never provided any documents responsive to Plaintiffs' requests as required by 29 C.F.R. 2560.503-1(h).  Hilton has yet to identify a single "non-participating property that is not a Related Company." Hilton's counsel has also never provided any documents related to the Administrative Committee's practices on whether service before a property became a participating property would count for vesting purposes.

63.     As the Ninth Circuit recently found, "[i]t should not greatly burden an ERISA-compliant entity to determine what companies were authorized as 'participating employers' so the entity, not the claimant, should bear the risk of insufficient records." *Estate of Barton v. ADT Sec. Servs. Pension Plan*, __F.3d__, 2016 U.S. App. LEXIS 7216, *15 (9th Cir. 4/21/2016). If a plaintiff "has made a prima facie case that he is entitled to pension benefits, it is properly defendants' burden to clarify what entities are covered under the Plans in the first instance." *Id.* A plan's failure to comply with the DOL's claims procedure regulations, including the document production requirement,

"will result in that claim being reviewed *de novo* in federal court." *Halo v. Yale Health Plan*, __F.3d __, 2016 U.S. App. LEXIS 6659, *34 (2d Cir. 4/12/2016).

64.     Hilton's practices in the claim processing that produced these denials are also inconsistent with Hilton's previous representations to the District Court in *Kifafi* that it credits "employment with a property not participating in the Plan...for vesting service." Dkt.#210 (in C.A. 98-1517) at 21. In the 2012 appellate briefing, Hilton further represented to the Court of Appeals that "The Plan provides that 'non-participating service – which primarily is employment in a unionized position (i.e., 'union service') or with a Hilton property that does not participate in the Plan ... does count for vesting in the Plan'." 7/3/2012 Br. (in C.A. 11-7113) at 49.

64A.   Previously, Hilton specifically represented that vesting service had been credited "for employees of the Reno Hilton when Hilton acquired that property on August 1, 1992" under a provision in the definition of Years of Vesting Service that "an Employee's employment with a predecessor employer shall be considered as employment with the Participating Employers" "[t]o the extent provided by the Committee." Defs.' 8/22/2003 Opp. to Renewed Class Motion, at 13. Hilton's own pension records show that Ms. Juneau was previously credited with a "Hire Dt" of 4/22/1991 with the Reno Hilton.

65.     Hilton's current denials based on "non-participating" service are also inconsistent with Hilton's practices before this Court in 2009-2011. Years of service for vesting were counted at 12 non-participating properties (including the Newark Airport

25

Hilton, Hilton Suites at Squaw Peak, Troy Hilton, Atlanta Hilton, Hilton Suites Phoenix Place, Hilton Suites So. Mountain, Oakbrook Terrace Suites, Hilton Suites Dallas, Hilton Suites Auburn Hills, Brentwood Hilton Suites, Hilton Suites Orange CA, and Hilton Suites Tapatio Cliffs.). *See* Dkt.#426-17 (in C.A. 98-1517) at 4-5. Hilton's new counsel, Alston & Bird, and its new Committee, however, have not provided vesting credit for service at any of the very ***same*** 12 properties, even though Hilton and its fiduciaries are required to apply plan provisions "consistently with respect to similarly situated claimants." 29 C.F.R. 2560.503-1(b)(5); *accord*, *Canada Life Assurance Co. v. Estate of Lebowitz*, 185 F.3d 231, 238 (4th Cir. 1999).

66.     Still more recently, Hilton reversed a decision to deny a vesting claim in a letter dated February 4, 2016, for an individual who worked at the Atlanta Hilton, which is a "non-participating" property. Inconsistently, Hilton is continuing to deny vesting service to over 20 other individuals who worked at the same Atlanta Hilton on the basis that "[s]ince you had service at a non-participating property that is not a Related Company or Participating Employer, you are not entitled to any vesting credit for such service."

67.     The District Court required Hilton to "award[] vesting credit under an hours standard" for all "periods of non-participating service." 736 F.Supp.2d at 78. "Where records of hours worked are unavailable (or where a record indicates 500 hours of service as a placeholder)," the District Court required Hilton "to use the 190 hours of service per

month equivalency, and participants whose hours are calculated under the 190-hour equivalency shall be credited with a year of service if they have 870 hours during the year (750 for salaried employees)." *Id*.

68.    Despite the District Court's rulings, Hilton has denied the appeals for at least 29 vesting claimants by failing to count years of union service or other years at non-participating properties on the ground that there are no hours or a "500" hour "placeholder" in Hilton's Retirement Plan records. Rather than apply the "equivalencies" to those periods of employment as the District Court ordered, Hilton is improperly refusing to count those years because of the absence of  "actual hours records" or because the "Plan's records indicate that you had insufficient earnings."

69.    The District Court has already ruled that Hilton is required to apply equivalencies "[w]here records of hours worked are unavailable." 736 F.Supp.2d at 78. Requiring the claimant to "prove his hours over the course of two decades is unreasonable and inconsistent with the goals of ERISA." *Estate of Barton v. ADT Sec. Servs. Pension Plan*, __F.3d__, 2016 U.S. App. LEXIS 7216, *19 (9th Cir. 4/21/2016) ("[w]e have previously shifted the burden of proving the number of hours an employee works where the calculation of damages is uncertain due to defendants' failure to keep statutorily required records").

69A.   Even if Ms. Juneau's Reno Hilton service prior to August 1, 1992 was not credited for vesting (despite the reasons given above), her Hilton service from August 1,

1992 to February 21, 1997 is enough for five years of vesting service when the 190-hour per month equivalency is applied to that period of employment. This Court has already found that "[t]he evidence in the record indisputably supports Kifafi's argument that Hilton failed to maintain the records necessary to implement the 1,000 hours standard," and that entries of "500 hours" such as shown in Hilton's records for Ms. Juneau in 1997 were "placeholders." 736 F.Supp.2d at 76. When the 190-hour equivalency is applied to Ms. Juneau's employment in the period from August 1, 1992 to February 21, 1997, except for the 1994-95 years when she is credited with two Years of Benefit and Vesting Service, she has five years of vesting service.

69B.    In an October 11, 2013 Order, this Court affirmed the parties' agreement to resolve a conflict with prior Orders under which Hilton removed the "temporal limitation" from subsection (j) in the definition of "Years of Vesting Service" so that it requires vesting credit under the 870 hour standard for "any period in which an Employee is not earning Years of Benefit Service" after January 1, 1976, "unless use of the elapsed time rules ... during such period results in a larger benefit to the Employee." Dkt. #366 in 98-1517 (incorporating Dkt. #348 by reference); see also Dkt. 14-2, Ex. A ("Amendment One"). If Ms. Juneau "is not earning Years of Benefit Service" in 1996 or 1997, the elapsed time rules require an additional year of vesting service for that period.

70.    Hilton has not applied the equivalencies or subsection (j) to service for at least another ten individuals who submitted claims for additional periods of non-

participating service that were not contained in Hilton's database records.

70A.   Eva Juneau,whose name was Eva Cirne for part of her employment with Hilton, supplied information about an additional period of service with the Flamingo Hilton Reno. In particular, Ms. Juneau-Cirne attested that her service with the Flamingo Hilton Reno started on May 17, 1996 and did not end until November 10, 2000, whereas Hilton's pension records stopped on February 22, 1997, less than two months after benefit accrual reporting under the Plan stopped.

71.   Hilton's stated reason for denying these individuals' appeals is because "[h]aving thoroughly reviewed the record, we find there is currently insufficient evidence that you had service with Hilton during the additional dates identified in your appeal letter, and thus we find as a factual matter that this service should not be included in determining whether you are vested."

72.   Hilton's decision to deny credit for these additional periods of service is inconsistent with its prior practice of crediting the additional periods of service based on the claim forms for vesting. A 5/19/2014 declaration by Aon Hewitt, which provides administrative and recordkeeping services for Hilton's Plan, represented that "At Hilton's direction, Aon Hewitt ... counted any claimed vesting service regardless of whether the service was supported by any documentary proof." Dkt.#387-2 (in C.A. 98-1517) at 7. Following Hilton's 2011-2012 mailing, Hilton's counsel also stated in an April 17, 2014 letter that "Defendants reviewed each of the claim forms received and credited any

29

additional uncredited service." Dkt.#385-5 (in C.A. 98-1517) at 6.

73.     Inconsistently, Hilton has vested 44 other individuals who submitted vesting claims after the mailing in 2014 and who claimed additional periods of service that were not in Hilton's records. Even for individuals whose claims have been denied, Hilton has represented that it is "giving full credit for the additional or different dates of employment identified on your claim form."

**Claim Three: Unlawful Denying of Vesting Claims by Surviving Spouses or Beneficiaries**

74.     Plaintiffs incorporate by reference all of the preceding allegations as though fully set forth herein.

75.      Hilton has denied appeals submitted by the beneficiaries of at least 28 deceased participants through the vesting claim process ordered by the Court without regard to whether the participant had sufficient years of service to be vested, solely on the grounds that the claimant is "not the surviving spouse." This is not the basis for a denial of a claim to retroactive benefits, nor is it a basis for denying the benefits required by the Court's order of equitable relief.

76.     For example, named Plaintiff Peter Betancourt, the son of deceased participant Pedro Betancourt, who worked at the New York Hilton from October 3, 1947 to January 13, 1979 and who died in 1985 at the age of 71, appealed his vesting denial in July 2015. Pedro Betancourt's spouse died in 1998 at the age of 78. Peter Betancourt is their only child. Documents provided by Hilton show that Hilton is crediting Pedro

Betancourt with 19 years of vesting service. But Hilton has denied his son Peter's vesting appeal ***not*** on the grounds that his father did not have more than enough years of vesting service, but solely "because you [Peter Betancourt] are not the surviving spouse of P. Betancourt." Hilton's November 18, 2015 denial letter states that "the Plan document does not provide for a death benefit to anyone other than a spouse."

76A.   Before the vesting claims process this Court and the D.C. Circuit ordered in the *Kifafi* litigation, Peter Betancourt's father, Pedro Betancourt, was not vested. Hilton did not previously vest Pedro Betancourt because Hilton's "Calculator" records showed his participation in the Plan began on June 26, 1973, even though the same records also showed a hire date of October 3, 1943. In determining his vesting service, Hilton was only crediting his participating service and had not credited Mr. Betancourt with vesting service for his employment with Hilton between 1943 and 1973. Mr. Betancourt was included in the October 2014 vesting claim mailing ordered by the Court to "members of the subclass whose records show a service date or a hire date that precedes the first year of participation in the Plan and who may become vested if such additional service is credited." Dkt.#258 (in C.A. 98-1517) at 7. As a result of the vesting claim process ordered in *Kifafi*, the Hilton Administrative Committee's worksheet, which was produced to Class counsel on August 18, 2015, changed Mr. Betancourt's vesting service to show that he was "Vested" based on "19 years of vesting service." Contrary to Defendants' unsupported assertion (*see* Dkt. #14-1 at 25), Pedro Betancourt was thus "newly-vested"

as a result of the *Kifafi* litigation and due a retirement benefit under Hilton's Retirement Plan as ordered by the Court. *See* 736 F.Supp.2d at 85.

76B.   Shortly before Pedro Betancourt reached age 65 in February 1979, Hilton terminated his employment. Mr. Betancourt was never notified of the denial or grant of any vested retirement benefit, and he died on February 11,1985, leaving a surviving spouse who lived for another 13 years until 1998.

76C.   Because Hilton did not determine Pedro Betancourt was vested until the vesting claim process, no retirement benefit had previously been calculated for him. The "true up" calculations to prevent backloading had already been done and were not redone when newly-vested rights were recognized. Instead, "newly-vested" rights were simply computed without any backloading. If the original calculations with backloading and the "true up" calculations were redone, Mr. Betancourt would be due a "New Benefit" under section 4.13(e)(6) of the Plan to prevent the backloading that *Kifafi* prohibits.

77.   In *Kifafi*, the District Court ruled on August 31, 2011 that "[b]ack payments for deceased participants shall be made in a manner that is consistent with § 4.13(e)(6) of the 2007 Plan, which provides that any additional benefits payable to the participant shall be payable to the surviving beneficiary or beneficiaries, if any, under the optional form of benefit, if any, elected by the participant, or, if there is no such surviving beneficiary, to the participant's surviving spouse or, if there is no surviving beneficiary or surviving spouse, to the participant's estate." Dkt.#358 at 10. *Accord*, 825 F.Supp.2d at 304

(consistent with the Plan, "If there is no surviving spouse, then the Participant's estate shall be the beneficiary"); 826 F.Supp. 2d at 43-44 (payments are to be made to "surviving spouses and heirs of deceased participants").

77A.   As the only child and sole heir of Pedro Betancourt, Peter Betancourt is claiming the back benefits, with interest, that Hilton should have paid his father from February 2, 1979 to February 11, 1985, a six-year period. Contrary to Hilton's misleading assertions (see Dkt. #14-1 at 13, 24-25), Mr. Betancourt is not claiming an ongoing annuity for himself as the son of Pedro Betancourt (nor does he claim "death benefits" under Section 4.8 of the Plan).

77B.   Peter Betancourt also claims the back monthly benefits that Hilton should have paid his mother, Delia Betancourt, as the surviving spouse of his father, from the first of the month after his death March 1, 1985, until her death on April 11, 1998. In conformity with ERISA §205(a), 29 U.S.C. §1055(a), Section 4.5(a) of the  Plan document provides for an annuity benefit to "the Participant's Spouse." Under that provision, unless there was an earlier waiver by the surviving spouse, the benefit due Pedro Betancourt was a qualified joint & 50% survivor's annuity. Thus, after Pedro Betancourt died, 50% of his retirement benefit was due Delia Betancourt from March 1985 until her death in April 1998, an over 13-year period. As the sole heir of his mother, Peter Betancourt is due the back benefits due her before her death–as well as the six years of back benefits due his father before his death.

33

77C.   Independent of the Court's August 31, 2011 Order, Section 4.11 of the

Hilton Plan provides for "retroactive" payments of benefits to participants or beneficiaries

"to whom payment is due":

> In the case of any benefit payable under this Plan, if the Administrative
> Committee is unable, within the time period established by the
> Administrative Committee in accordance with its procedures to locate the
> Participant or Beneficiary to whom payment is due, such benefit shall be
> forfeited and the assets of the Plan shall be relieved of the liability for
> payment of such benefit. ***If after such forfeiture, the Participant or
> Beneficiary later claims such benefit, such benefit shall be reinstated and
> shall be paid retroactive to the date that such benefit first became payable***.

Under ERISA §3(8), 29 U.S.C. §1002(8), a beneficiary is defined as "a person designated

by a participant or by the terms of an employee benefit plan who is or may become

entitled to a benefit thereunder." This "retroactive payment" requirement is also codified

in Treas. Reg. 1.401(a)-14(d), which provides that "If the amount of the payment required

to commence on the date determined under this section cannot be ascertained by such

date, or if it is not possible to make such payment on such date because the plan

administrator has been unable to locate the participant after making reasonable efforts to

do so, a payment retroactive to such date may be made no later than 60 days after the

earliest date on which the amount of such payment can be ascertained under the plan or

the date on which the participant is located."

77D.   ERISA §203(a), 29 U.S.C. §1053(a), furthermore requires that a plan

"provide that an employee's right to his normal retirement benefit is nonforfeitable upon

the attainment of normal retirement age." *Accord,* Treas. Reg. 1.411(a)-4(b)(6) (requiring

"reinstatement of the benefit if a claim is made by the participant or beneficiary for the forfeited benefit"). While a plan may require a retirement application in order to commence a benefit, a late application cannot result in a forfeiture of a vested benefits, and a forfeiture includes not paying any back benefits to the estate "for months that have been lost." *Contilli v. Local 705 Int'l Brotherhood of Teamsters Pension Fund*, 559 F.3d 720, 722 (7th Cir. 2009); *accord*, *Canseco v. Construction Laborers Pension Trust for Southern California*, 93 F.3d 600, 606-8 (9th Cir. 1996).

77E.   Defendants have also breached their fiduciary duties under ERISA §404(a)(1), 29 U.S.C. §1104(a)(1), by refusing to make retroactive payments to Peter Betancourt and other beneficiaries of participants who were "newly vested" by Hilton, but never previously paid, resulting in both an unlawful forfeiture and inconsistent treatment with others who have been paid. Under the fiduciary duty standard and the Department of Labor's claims procedures, Hilton is required to make payments "consistently with respect to similarly situated claimants." 29 C.F.R. 2560.503-1(b)(5); *accord, Canada Life Assurance Co. v. Estate of Lebowitz*, 185 F.3d 231, 238 (4th Cir. 1999). But Hilton's denials of beneficiaries' claims to vested retirement benefits because they are not the "surviving spouse" of the participant are inconsistent with Hilton's payments to non-spousal beneficiaries in the "newly vested" group in the *Kifafi* litigation.

77F.   Independently of res judicata and collateral estoppel, the Court can award retroactive payments under ERISA Section 502(a)(3) as "appropriate equitable relief" for

35

"an act or practice which violates any provision of this title" of ERISA, including ERISA's protection against forfeitures and ERISA's fiduciary duties.

78.     [Removed.]

79.     Under the doctrines of res judicata and collateral estoppel, Hilton is also required to comply with the District Court's August 31, 2011 rulings in the related *Kifafi* case that are quoted in ¶77 above.

80.     [Removed.]

81.     Hilton's denials of beneficiaries' claims to vested retirement benefits because they are not the "surviving spouse" of the participant are also inconsistent with Hilton's payments to non-spousal beneficiaries in the "newly vested" group in *Kifafi*. Under the Court's Order in *Kifafi*, the Hilton fiduciaries made a number of retroactive payments to children of deceased class members like Peter Betancourt. For example, Leonard Walch, Jr. passed away at the age of 73 without ever receiving a retirement benefit from Hilton because he was not aware he was entitled to a benefit. After the *Kifafi* class action, Hilton paid his only son, Leonard Walch, III, the back payments for the original retirement benefits due to Mr. Walch as well as the "true up" increase he was due from the *Kifafi* litigation. As another example, Anne Rinaldi was a "newly vested" *Kifafi* participant who died in April 2009. Class counsel located her daughter, Connie Friedman, and provided Hilton with her contact information in February 2014, and Hilton's records show a lump sum was paid to Connie Friedman in 2015.

36

**Claim Four - Breaches of Fiduciary Duty**

82.     Plaintiffs incorporate by reference all of the preceding allegations as though fully set forth herein.

83.     Under ERISA §404(a)(1), 29 U.S.C. §1104(a)(1), a fiduciary must act "in accordance with the documents and instruments governing the plan" with "care, skill, prudence, and diligence" and for the "exclusive purpose of...providing benefits to participants and their beneficiaries." This fiduciary duty ensures that "benefit claim determinations are made in accordance with governing plan documents" and that "plan provisions have been applied consistently with respect to similarly situated claimants." 29 C.F.R. 2560.503-1(a)(5).

84.     Defendants, including Hilton Worldwide, Inc., Mary Nell Billings, Senior Director Global Retirement Programs, S. Ted Nelson, Vice President Benefits Americas, Casey Young, Senior Manager Retirement Programs, and other unnamed members of the Global Benefits Administrative Committee, have breached and are breaching their fiduciary duties by failing to make vesting determinations in compliance with ERISA, the regulations, and the District Court's decisions in *Kifafi*, including the rulings on using equivalencies instead of elapsed time, crediting "non-participating" service, and paying the beneficiaries of deceased participants.

85.     Defendants also breached and continue to breach their fiduciary duties by failing to make vesting determinations in accordance with the claim processing

regulations and by failing to apply these rules consistently with respect to similarly situated claimants.

85A.   Hilton's Committees and the delegates assigned to those Committees failed to engage in individualized or fact-intensive denials of the claims of any of the named Plaintiffs or other members of the proposed class. An outside law firm, Alston & Bird, prepared forms with boilerplate language for the Committees to use and instructed the Committees on which form was to be signed and mailed to each claimant. On information and belief, the members of the Committees never disagreed with any of Alston & Bird's instructions, asked questions about the instructions, or conducted any other investigation. The members of the Committees were never advised by Hilton's counsel or otherwise that they had a fiduciary duty under ERISA and under the doctrines of res judicata and collateral estoppel to follow this Court's rulings on vesting and they were never advised by counsel about the substance of this Court's vesting rulings.

**Statutes of Limitations**

85B.   Without answering the Complaint, the Hilton Defendants assert that Plaintiffs have not pled facts showing that a statute of limitations should be tolled for any of them. Dkt. #14-1 at 28. FRCP 8(c) requires that statute of limitations be pled as an affirmative defense. Once affirmatively pled, statutes of limitations should in any case be tolled based on the absence of any "clear repudiation" by the Hilton Defendants of the vested rights of any of the three named Plaintiffs or any other member of the proposed

class.  In its December 2012 decision, the D.C. Circuit rejected the Hilton Defendants'

statute of limitations arguments where no repudiation was "clear and made known to the

plan beneficiary." 701 F.3d at 729. This Court also ruled that "[a]bsent any showing that

class members received information putting them on notice of their claims, and any

indication that Hilton made a "clear repudiation" with respect to those claims, the Court

cannot find that the class members' claims are barred by the statute of limitations."*Kifafi*,

616 F.Supp.2d 7, 37 (2009)  *Compare Bond v. Marriott Int'l, Inc.*, 637 Fed.Appx. 726 (4th

Cir. 1/29/2016) (vesting claims that Marriott "clearly repudiated" in 1978 could not be

brought).

85C.   In December 2013, Hilton Worldwide appended a shortened 180-day limit

at the end of the Hilton Plan's article on "Claims Review" to limit legal actions under the

terms of the Plan. Defendants otherwise admit that the statute of limitations would be at

least four years. Dkt. #14-1 at 26 n.2. This 180-day limit was not part of the vesting

claims process that this Court or the D.C. Circuit ordered because it was not part of the

Hilton Plan at that time. The "Preamble" to the 2012 Plan document makes clear that the

180-day limit: (a) only applies to benefit claims "under the terms of the Plan," and (b)

only applies to "Employees who retire or otherwise terminate employment on or after

January 1, 2012," and that the rights of "Employees who retire or otherwise terminate

employment prior to January 1, 2012 shall be determined in accordance with the terms of

the Plan in effect at the time of their retirement or termination of employment." The

Hilton Defendants never prepared or distributed a Summary of Material Modification or updated Summary Plan Description ("SPD") to notify the named Plaintiffs or any other member of the proposed class of any such limitation as required by 29 C.F.R. 2520.102-3(l) and (s). *Accord*, *Spinedex Physical Therapy USA, Inc. v. United Healthcare of Ariz.*, 770 F.3d 1282, 1295 (9th Cir. 2014). Nor was any approval sought from this Court or the Court of Appeals to shorten the limitations period for legal actions after the vesting claims process.

85D.   If, despite these reasons, the 180-day limit somehow still applies, it is tolled because named Plaintiff Kifafi asked this Court to consider these vesting claims and this Court did not deny that request until December 7, 2015–which is less than 180-days before the Complaint was filed on May 6, 2016. On March 1, 2016, the Hilton Defendants represented to the U.S. Court of Appeals for the District of Columbia, moreover, that "separate litigation" was the "proper recourse" for individuals dissatisfied with "Hilton's vesting determinations." Doc. #1601721 in USCA Case #16-7002, at 8. If review of "Hilton's vesting determinations" for the named Plaintiffs or other members of the proposed class was already barred under a 180-day period, that representation would be false and misleading at the time it was made.

### PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs pray that this Court:

A.      Declare that the Defendants are bound under the doctrines of res judicata

and collateral estoppel to conform with the District Court's vesting rulings in *Kifafi, et al., v. Hilton Hotels Retirement Plan, et al.*, C.A. 98-1517 on:

> (1)    Not using "fractional years of vesting service" under an "elapsed time" method to count periods of employment before 1976;
>
> (2)    Counting "non-participating" service for vesting at Hilton properties which are "Related Companies" whether or not they participate in the Plan, and by applying the proper equivalencies for non-participating service; and
>
> (3)    Vesting the claims and paying the retroactive benefits due the beneficiaries of deceased participants, regardless of whether the claimant is "not the surviving spouse."

B.    Declare that Defendants have improperly denied the vesting claims of the named Plaintiffs and the members of the proposed class who submitted vesting claims under the claim procedure ordered in *Kifafi* and have sufficient years of vesting service in compliance with ERISA, the regulations, and the District Court's vesting decisions in *Kifafi,* as described above.

C.    Declare that Defendants have failed to comply and continue to fail to comply with their fiduciary duties in denying the vesting claims of named Plaintiffs and the  members of the class.

D.    Order Defendants to grant the vesting claims of the named Plaintiffs and the class members and to pay the vested retirement benefits to which they are entitled and, pursuant to ERISA §502(a)(3), 29 U.S.C. §1132(a)(3), enjoin Defendants to act in accordance with the Court's declarations and not to take any actions inconsistent with the

41

Court's declarations or orders.

      E.    Award such other legal, equitable, and remedial relief as the Court deems appropriate to ensure receipt of all retirement benefits and other amounts required to give full effect to the Court's declarations, including interest.

      F.    Order the Defendants to pay Plaintiffs' attorneys' fees and expenses.

**DATED** this 8th day of November 2017.

                         Respectfully submitted,

                         /s/ Stephen R. Bruce
                         Stephen R. Bruce (D.C. Bar No. 289066)
                         Allison C. Pienta (D.C. Bar No. 494372)
                         STEPHEN R. BRUCE LAW OFFICES
                         1667 K Street, N.W., Suite 410
                         Washington, D.C. 20006
                         (202) 289-1117
                         stephen.bruce@prodigy.net
                         acaalim@verizon.net

                         Attorneys for named Plaintiffs and the Plaintiff Class