# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| VALERIE R. WHITE, *et al.*, | |
| Plaintiffs, | |
| v. | Civil Action No. 16-856 (CKK) |
| HILTON HOTELS RETIREMENT PLAN, *et al.*, | |
| Defendants. | |

## MEMORANDUM OPINION
(March 31, 2019)

Plaintiffs Valerie R. White, Eva Juneau, and Peter Betancourt seek leave to amend their operative complaint yet again. This time Plaintiffs propose adding a further plaintiff, Darryl Hemphill, to remedy a potential defect in their proposed representation of a putative subclass. *See* Pls.' Mot. for Leave to Amend Compl. to Add Additional Named Representative, ECF No. 58, at 1-3 & n.2. Yet, an examination of one factor for the Court's consideration—the amendment's futility—indicates that Plaintiffs are unable to prevail, though for a reason not squarely addressed by Plaintiffs or Defendant Hilton entities and executives.[1] The Court need not reach Plaintiffs' request, in the alternative, for Mr. Hemphill's intervention. Upon consideration of the briefing,[2] the relevant legal authorities, and the record as a whole, the Court shall, in an exercise of its

---

[1] Defendants listed in the Second Amended Complaint consist of Hilton Hotels Retirement Plan, Hilton Worldwide, Inc., Global Benefits Administrative Committee, Mary Nell Billings, S. Ted Nelson, Casey Young, and Unnamed Members of the Global Benefits Administrative Committee.

[2] The Court's consideration has focused on the following documents:

- Pls.' Mot. for Leave to Amend Compl. to Add Additional Named Representative, ECF No. 58 ("Pls.' Mot.");
- Mem. of P&A in Opp'n to Pls.' Mot. for Leave to Amend Compl. to Add Additional Named Representative, ECF No. 60 ("Defs.' Opp'n"); and
- Pls.' Reply in Supp. of Mot. to Add Additional Named Representative, ECF No. 61 ("Pls.' Reply").

discretion, **DENY** Plaintiffs' [58] Motion for Leave to Amend Complaint to Add Additional Named Representative.

## I. BACKGROUND

Plaintiffs bring this putative class action under the Employee Income Security Act of 1974 ("ERISA") with respect to certain vesting determinations made by the Hilton Hotels Retirement Plan (the "Plan"). This matter was noticed as related to *Kifafi v. Hilton Hotels Retirement Plan*, No. 98–cv–1517 (CKK) (D.D.C.) ("*Kifafi*"), an action over which the Court concluded its jurisdiction in December 2015, after more than 17 years of litigation. *See Kifafi*, 752 F. App'x 8, 9 (D.C. Cir. Feb. 15, 2019) (Mem.) (per curiam); Order at ECF p. 3, *Kifafi*, ECF No. 447.[3] In *Kifafi*, the Court certified a benefit-accrual class and certain vesting subclasses. *See Kifafi*, 701 F.3d 718, 723-24 (D.C. Cir. 2012); *Kifafi*, 616 F. Supp. 2d 7, 10 (D.D.C. 2009).

The Second Amended Complaint, ECF No. 50, is replete with allegations that the legal issues underlying this new putative class action have already been decided by the Court in *Kifafi*, and that such determinations are binding under the doctrines of res judicata and offensive collateral estoppel.

The Court addressed those legal issues in varying degrees when it granted-in-part and denied-in-part Defendants' motion to dismiss the (First) Amended Complaint, and granted Plaintiffs' motion for leave to file the Second Amended Complaint. *See* Mem. Op. and Order, *White v. Hilton Hotels Retirement Plan*, 263 F. Supp. 3d 8 (D.D.C. 2017), ECF No. 21; Mem. Op., ECF No. 49. In the former instance, the Court touched on *Kifafi* but focused on the viability of Plaintiffs' individual claims, rather than those of the subclasses they proposed to represent. *See*

---

[3] In this decision, all references to docket numbers in *Kifafi* pertain to the litigation in district court. The only references to Circuit proceedings include the citation to the respective Federal Reporter.

*White*, 263 F. Supp. 3d at 9, 11-12.  When it later considered the motion to amend, the Court

expressly refrained from diving into the *Kifafi* depths:

> Defendants effectively ask this Court to decide these and other disputes [related in part to *Kifafi*] in determining whether to grant the Motion to Amend. But they cannot argue that the Court is *required* to resolve such issues at this stage. In an exercise of this Court's discretion under Federal Rule of Civil Procedure 15(a)(2), the Court finds that the Motion to Amend is not the proper posture to resolve these disputes. Plaintiffs have reasonably attempted to address the reasons for which this Court initially dismissed Claim Three [associated with a putative subclass other than the proposed "non-participating service" subclass], and accordingly the litigation shall proceed on the basis of their Second Amended Complaint.

Mem. Op., ECF No. 49, at 2-3.  Despite the fact that the presently pending motion also seeks leave

to amend, or in the alternative to intervene, the Court now finds that attention to *Kifafi* is crucial.

And because of the intersection between the latest proposed amendment and one of the proposed

subclasses, the Court denied the motion for class certification without prejudice pending the

Court's decision as to this motion.  Order, ECF No. 62.

## II. LEGAL STANDARD

In cases where plaintiffs have already amended their Complaint, Federal Rule of Civil

Procedure 15(a)(2) provides that "a party may amend its pleading only with the opposing party's

written consent or the court's leave," which should be "freely give[n] . . . when justice so requires."

Fed. R. Civ. P. 15(a)(2); *see Willoughby v. Potomac Elec. Power Co.*, 100 F.3d 999, 1003 (D.C.

Cir. 1996) (finding that leave to amend a complaint is within the court's discretion and "should be

freely given unless there is a good reason . . . to the contrary"); *Firestone v. Firestone*, 76 F.3d

1205, 1208 (D.C. Cir. 1996) (noting that "it is an abuse of discretion to deny leave to amend unless

there is sufficient reason").

"When evaluating whether to grant leave to amend, the Court must consider (1) undue

delay; (2) prejudice to the opposing party; (3) futility of the amendment; (4) bad faith; and (5)

whether the plaintiff has previously amended the complaint." *Howell v. Gray*, 843 F. Supp. 2d 49, 54 (D.D.C. 2012) (citing *Atchinson v. District of Columbia*, 73 F.3d 418 (D.C. Cir. 1996) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

"Courts that have found an undue delay in filing [a proposed amended complaint] have generally confronted cases in which the movants failed to promptly allege a claim for which they already possessed evidence." *United States ex rel. Westrick v. Second Chance Body Armor, Inc.*, 301 F.R.D. 5, 9 (D.D.C. 2013). An amendment would be unduly prejudicial if it "substantially changes the theory on which the case has been proceeding and is proposed late enough so that the opponent would be required to engage in significant new preparation"; it would "put [the opponent] to added expense and the burden of a more complicated and lengthy trial"; or it raises "issues . . . [that] are remote from the other issues in the case." *Djourabchi v. Self*, 240 F.R.D. 5, 13 (D.D.C. 2006) (quoting 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1487 (2d ed. 1990)) (internal quotation marks omitted). With respect to the futility of an amendment, a district court may properly deny a motion to amend if "the amended pleading would not survive a motion to dismiss." *In re Interbank Funding Corp. Sec. Litig.*, 629 F.3d 213, 218 (D.C. Cir. 2010) (citing, e.g., *Foman*, 371 U.S. at 182). "With respect to bad faith, courts generally consider the length of the delay between the latest pleading and the amendment sought. However, delay alone is an insufficient ground to deny the motion unless it prejudices the opposing party." *Djourabchi*, 240 F.R.D. at 13 (citing Wright, Miller & Kane, *supra*, § 1488).

"Because amendments are to be liberally granted, the non-movant bears the burden of showing why an amendment should not be allowed." *Abdullah v. Washington*, 530 F. Supp. 2d 112, 115 (D.D.C. 2008).

# III. DISCUSSION

## A. Undue Delay, Prejudice, and Previous Amendment[4]

Defendants rightly observe that Plaintiffs' latest request to amend their operative complaint is dilatory in various respects, several of which the Court shall highlight.[5] First, Plaintiffs filed this motion long past their proposed deadline—which the Court adopted—for motions to amend. *See* Order, ECF No. 62, at 1-2. They do not explain why the motion that they did timely file did not address this issue. *See generally* Mem. Op., ECF No. 49 (dealing with other grounds for leave to amend their (First) Amended Complaint). Plaintiffs do not dispute Defendants' contention that they have represented Mr. Hemphill before, including through Defendants' internal appeals process. *See* Defs.' Opp'n at 7 (citing Pls.' Mot. at 5); Pls.' Reply at 2. Nor do Plaintiffs dispute that they were aware—before their motion for leave to amend their (First) Amended Complaint, and before their class certification motion—of the potential defect in Plaintiff Juneau's ability to represent the putative "non-participating service" subclass. *See* Defs.' Opp'n at 7; Order, ECF No. 62, at 1-2 (discussing Plaintiffs' comments, in class certification memorandum and reply, about this issue). Plaintiffs now try to explain the delay simply by saying that Defendants had not yet opposed their class certification motion. Pls.' Reply at 2-3. But that does not justify Plaintiffs' failure to act sooner upon their awareness.

---

[4] Defendants also refer to the "bad faith" factor when they recite the relevant standard for leave to amend, but they do not specifically explain how Plaintiffs' motion runs afoul of this factor. *See* Defs.' Opp'n at 9, 14-15.

[5] Although Defendants address Plaintiffs' delay in part through the lens of Rule 16(b)(4)—governing modification of a scheduling order—the Court shall instead deal with this issue in the context of Rule 15(a)(2), as the present posture is a motion for leave to amend the operative complaint. *See* Defs.' Opp'n at 5-9, 14-15. However, the Court's treatment of this issue shall not be construed as suggesting that Rule 16(b)(4) is never an appropriate means of addressing delay in similar circumstances.

Defendants furthermore argue that they have been prejudiced by, *inter alia*, briefing multiple rounds of motions to amend, as well as the motion for class certification. *See* Defs.' Opp'n at 8. Because of the pending second motion to amend, the Court denied the motion for class certification without prejudice, which may result in re-briefing. *See* Order, ECF No. 62.

Notwithstanding these factors weighing against amendment, the Court ultimately shall deny the proposed amendment on different grounds.

**B. Futility of Amendment**

Defendants also argue the futility of Plaintiffs' motion to the extent that Plaintiffs try to correct a perceived deficiency in their Second Amended Complaint. In deciding whether to grant leave to amend, the Court has considered whether Mr. Hemphill would be an appropriate representative of the proposed "non-participating service" subclass, as that is Plaintiffs' motive for requesting this amendment. The Court has reviewed that proposed subclass and ultimately decides not to grant leave to amend, but on grounds *other than* Mr. Hemphill's relative ability to represent that subclass.

The reason for Plaintiffs' difficulty goes back to the foundations of this case. As discussed above, Plaintiffs designated this case as related to *Kifafi*. *See* ECF Nos. 2, 30. The operative Second Amended Complaint in this case, like the proposed Third Amended Complaint, specifically styles this case as an "enforcement" of rulings in *Kifafi*. *See, e.g.*, 2d Am. Class Action Compl., ECF No. 50 ("SAC"), at 1 ("The named Plaintiffs . . . *seek to enforce* their rights, and the rights of others similarly situated, to receive vested retirement benefits in accordance with the District Court's decisions in a related case, *Kifafi* . . . , and the standards set forth in ERISA and the Hilton Hotels Retirement Plan." (emphasis added)).

But briefing of the pending motion has elucidated problems with this premise as it applies to the proposed "non-participating service" subclass: it is not clear that the *Kifafi* litigation established the right that Plaintiff Juneau, and proposed Plaintiff Hemphill, seek to vindicate.

In theory, that's fine: This is a new lawsuit, and Plaintiffs can pursue as-yet-unlitigated claims. Earlier in this case, the Court indeed found that Plaintiffs had stated a claim with respect to the proposed "non-participating service" subclass. *White*, 263 F. Supp. 3d at 11-12. A closer examination now casts doubt on that conclusion. The flawed premise is that Plaintiff Juneau, and would-be Plaintiff Hemphill, want to enforce a right generated by *Kifafi*—without giving a valid basis in the operative complaint, or proposed amendment, for believing that the right was in fact established in *Kifafi*, as the Court's review of the history of that case has revealed.

In a May 11, 1999, decision in *Kifafi*, this Court provisionally certified a "benefit-accrual class" limited to "all former and current employees of Hilton Hotels Corporation" meeting certain additional criteria. *Kifafi*, 189 F.R.D. 174, 176, 180 (D.D.C. 1999). The Court's ruling does not refer to former and current employees of a "Hilton Property," the relevance of which the Court shall address shortly.

An August 11, 2000, decision revisited that benefit-accrual class definition to consider certain proposed clarifications or modifications at the parties' request. Mem. Order, *Kifafi*, Civil Action No. 98-1517 (CKK) (D.D.C. Aug. 11, 2000), ECF No. 88. That Memorandum Order cites the Court's May 11, 1999, ruling discussed above for the definition of the benefit-accrual class. However, inexplicably, the definition differs in a way material to the present decision: it includes "[a]ll former or current employees of Hilton Hotels Corporation *or a Hilton Property*." *Id.* at 1. At this time, the Court has not discerned how the "Hilton Property" aspect was included in a definition that supposedly did not differ from what the Court provisionally certified on May 11,

1999.  In any case, the August 11, 2000, Memorandum Order proceeds to recognize that "Hilton Property" is defined by the Hilton Hotels Retirement Plan to consist of "each business entity . . . in which the [Hilton Hotels Corporation], directly or indirectly has an interest or with which it has a contractual relationship for hotel management."  *Id.* at 4 (alteration in original); Pls.' Reply, Ex. 1, ECF No. 61-1 (Hilton Hotels Retirement Plan, as amended and restated effective January 1, 1987 ("1987 Plan"), at 17).[6]

In the presently operative and proposed complaints, Plaintiffs are correct to observe that the August 11, 2000, decision found the definition of "Hilton Property" to include entities under contract for management.  *E.g.*, SAC ¶ 55.  But Plaintiffs do not identify any support in that decision for their contention that "this Court ruled in *Kifafi* that the Plan's definition of 'Related Companies' encompasses any 'Hilton Property.'"  Pl.'s Mot. at 6 n.5 (citing Mem. Order at 4, *Kifafi*, Civil Action No. 98-1517 (CKK) (D.D.C. Aug. 11, 2000), ECF No. 88).  The Court's August 11, 2000, ruling does not refer at all to "Related Companies."  In fact, the Court's decision even omitted that part of the "Hilton Property" definition; after all, the 1987 Plan defined "Hilton Property" to "mean each [designated] business entity (including a Related Company of [Hilton Hotels Corporation])," that met the other criteria—such as being under contract for management—

---

[6] Because the August 11, 2000, decision in *Kifafi* predates electronic docketing, the plaintiff's exhibit from which the Court quoted is not readily retrievable.  Accordingly, it is not clear which version of the Plan is referenced.  However, the Court finds the same definition of "Hilton Property" in the 1987 version of the Plan, which is the operative version for these purposes.  *See* 1987 Plan at 2 (indicating that 1987 version is applicable to "Employees who retire or otherwise terminate employment on or after January 1, 1987"); Defs.' Opp'n, ECF No. 60-3 (Decl. of Andrew M. Lacy, Ex. A (Hilton Hotels Retirement Plan, as amended and restated effective Jan. 1, 2012, at 2 (providing that prior versions of Plan are applicable to "Employees who retire or otherwise terminate employment prior to January 1, 2012")).  Mr. Hemphill allegedly left a Hilton entity for the second time in 1991, when it appears that he would have been subject to the 1987 Plan.  [Proposed] 3d Am. Class Action Compl., ECF No. 58-2, ¶ 4A; *see also* Pls.' Reply at 6-7 (citing 1987 Plan).

that the Court did quote in its August 11, 2000, ruling. *See* 1987 Plan at 17. Nor do Plaintiffs articulate how that August 11, 2000, ruling establishes any relationship between the Related Company definition and the Hilton Property definition without referring at all to a Related Company. The Court's review of *Kifafi* strongly suggests that the "Related Company" definition was never at issue in that litigation.

The importance of that lacuna is that Plaintiffs' presently operative and proposed complaints propose a subclass definition that seeks to rely on something that purportedly was established in *Kifafi*, but was not. That subclass would seek to hold Defendants liable for, in pertinent part, their alleged "refusal to count 'non-participating' service for vesting by not recognizing Hilton properties as 'Related Companies' whether or not they participate in the Plan." SAC ¶ 11(C)(2).[7] But, as described above, Plaintiffs have not established their contention that "Related Company" is a category that includes "Hilton Property." The Plan establishes instead the opposite relationship: "Hilton Property" is a category that includes, but appears to be not limited to, a "Related Company." Accordingly, Plaintiffs cannot purport to enforce something established in *Kifafi* when their basis for saying that it was established in *Kifafi* is wrong.

This brings the Court to an associated issue: Whether the Court ever recognized a subclass in *Kifafi* regarding service at a non-participating entity. The answer to that question is a qualified "no." The qualification is that the Court did certify a subclass regarding union service, which can include service at a non-participating entity, but the Court expressly rejected the plaintiff's belated

---

[7] The Court notes that Plaintiffs' proposed subclass definition does not specifically invoke the term "Hilton Property," which uses the capital letter "P" and is defined in the Plan, but the present litigation concerns the use of that defined term. Also, and separately, Plaintiffs' motion appears not to concern the aspect of the proposed "non-participating service" subclass that would seek a remedy for "failing to apply the proper equivalencies for non-participating service." SAC ¶ 11(c)(2). Accordingly, the Court does not express a view on whether that aspect of the subclass is enforceable based on *Kifafi*.

argument that the remedy for failure to credit union service should include all non-participating service. *Kifafi*, 736 F. Supp. 2d 64, 73-74 (D.D.C. 2010) (citing *Kifafi*, 616 F. Supp. 2d at 30 n.18) (recognizing that "the Court never certified a 'non-participating service' subclass");[8] *see also id.* at 79 (rejecting another of plaintiff's proposals that would result in credit for non-participating service). The Circuit affirmed that this Court had not abused its discretion in rejecting the plaintiff's attempt to expand the class or the remedy beyond union service to include all non-participating service. *See Kifafi*, 701 F.3d at 731-32 ("Even if it would have been reasonable to certify a broader nonparticipating service class, the district court's actual certification decision was no less reasonable. The same is true of its later refusals to expand the certified subclass."); *Kifafi*, 752 F. App'x at 10 (recognizing Circuit's prior affirmance of this Court's decision not to reach non-union, non-participating service). In short, *Kifafi* specifically refrained from adjudicating a right to claim credit for non-participating service. As a result, the *Kifafi* claims process would not be expected to recognize that right.

Nevertheless, in an effort to establish that service at a non-participating Hilton Property that is not a Related Company can count towards vesting, Plaintiffs rely on, *inter alia*, the Court's finding in *Kifafi* that "ERISA requires employers to count all of an employee's years of service for calculating his or her years toward vesting, even if they occur prior to participation in the retirement plan." *Kifafi*, 826 F. Supp. 2d 25, 28-29 (D.D.C. 2011) (citing 29 U.S.C. § 1053(b)(1); *Kifafi*, 616 F. Supp. 2d at 12); Pls.' Mot. at 5 (citing *Kifafi*, 616 F. Supp. 2d at 12; *Holt v. Winpisinger*, 811 F.2d 1532, 1537 (D.C. Cir. 1987)). Yet, that proposition is not directly at issue.

---

[8] The Court also indicated that "[a]lternatively, if Defendants prefer to avoid the costs of searching corporate records and establishing a claims procedure, they may agree to Plaintiff's proposal to credit all non-participating service." *Kifafi*, 736 F. Supp. 2d at 76. But, in its review of the *Kifafi* docket, the Court has not found that the *Kifafi* defendants ever opted for the latter option.

The Court made the observation about counting all years in the separate context of assessing *Kifafi* defendants' compliance with their "1,000 hours standard for calculating employees' vesting credit." *Kifafi*, 616 F. Supp. 2d at 12, 29. Here, instead, Plaintiffs are not trying to enforce an hours-based standard for calculating the amount of service, but rather to establish that service at a non-participating Hilton Property that is not a Related Company can count towards vesting. The latter right was not adjudicated in *Kifafi*.

***

Although *Kifafi* spawned a veritable hydra, one head that hydra evidently lacks is a subclass regarding service at non-participating Hilton Properties that are not Related Companies.[9] Plaintiffs must establish afresh their entitlement to credit for that service, rather than try to claim a mythological trophy attributable to *Kifafi*.

Granting leave to amend the Second Amended Complaint to add Mr. Hemphill as a putative representative of this proposed subclass would not cure the deficiencies discussed in this decision. The Court has pointed out a flaw in that subclass insofar as *Kifafi* did not specifically decide the right that Plaintiffs now purport to enforce based on *Kifafi*. It would be futile to add a new person to represent that subclass when the subclass is not actually enforcing a right determined by *Kifafi*.

The Court is not persuaded otherwise by any of Plaintiffs' remaining arguments, including their brief invocation of the "law of the case" doctrine to defend the Court's denial of Defendants' motion to dismiss Plaintiff Juneau's claim in the (First) Amended Complaint. *See* Pls.' Mot. at 6 (citing *LaShawn A. v. Barry*, 87 F.3d 1389, 1393 (D.C. Cir. 1996) (en banc)). Briefing of the present motion has required analysis of *Kifafi* to an extent that the Court has not previously

---

[9] The Court need not delve into the parties' dispute about whether Defendants have ever created and, if so, produced, a list of non-participating Hilton Properties that are not Related Companies. *See, e.g.*, Defs.' Opp'n at 11 n.6; Pls.' Reply at 10-11 & n.3.

performed in this case; that analysis supports a denial of the pending motion on grounds of futility, albeit different such grounds than Defendants have specifically contemplated. Separately, Plaintiffs also refer to various instances in Defendants' *Kifafi* briefing that purportedly suggest that the Plan counts service at non-participating properties towards vesting. *See* Pls.' Reply at 11-12. But, even if that is true, that would not change the Court's finding that *Kifafi* did not adjudicate whether service at a non-participating Hilton Property that is not a Related Company must be counted towards vesting.

Because adding Mr. Hemphill would not solve the problems identified in this decision, the Court need not reach Plaintiffs' arguments for intervention—whether by right or permission.

## IV. CONCLUSION

For the foregoing reasons, and in an exercise of its discretion, the Court shall **DENY** Plaintiffs' [58] Motion for Leave to Amend Complaint to Add Additional Named Representative. *Kifafi* never made a determination as to a "non-participating service" subclass as Plaintiffs define it; therefore, there are no rights to be vindicated as to any such subclass pursuant to *Kifafi*. In light of the delay and prejudice that their actions in this litigation already have entailed, Plaintiffs are prohibited from seeking further leave to amend their Second Amended Complaint, unless Plaintiffs decide to forego this claim in this lawsuit.

By **APRIL 15, 2019**, the parties shall file a Joint Status Report identifying how they propose to proceed and a schedule for such proceedings.

A separate Order accompanies this Memorandum Opinion.

Dated: March 31, 2019

                        _____
                              /s/
                        COLLEEN KOLLAR-KOTELLY
                        United States District Judge