**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| VALERIE R. WHITE, *et al.*,<br><br>    Plaintiffs,<br><br>    v.<br><br>HILTON HOTELS RETIREMENT<br>PLAN, *et al.*,<br><br>    Defendants. | Civil Action No. 16-856 (CKK) |

**Memorandum Opinion**
(October 7, 2020)

Presently pending before the Court is Plaintiffs' [74] Renewed Motion for Class Certification.  As explained in detail herein, Plaintiffs' proposed class definition is impermissibly "fail-safe."  This threshold defect renders certification of the proposed class improper.  Yet, because this deficiency may be susceptible to remedy, the Court will permit Plaintiffs a final opportunity to renew their motion for class certification.  The Court will also discuss additional impediments to class certification it has identified at this stage of the litigation.  Accordingly, upon consideration of the briefing,[1] the relevant legal authorities, and the record as a whole, the Court shall **DENY** Plaintiffs' [74] Renewed Motion for Class Certification **WITHOUT PREJUDICE**.

## I.    BACKGROUND

Plaintiffs Valerie R. White, Eva Juneau, and Peter Betancourt ("Plaintiffs") bring this putative class action under the Employee Retirement Income Security Act of 1974 ("ERISA") with respect to certain vesting determinations made by the Hilton Hotels Retirement Plan (the "Plan").  This matter

---

[1] The Court's consideration has focused on the following documents:

- Second Am. Class Action Compl. ("Second Am. Compl."), ECF No. 50;
- Mem. in Supp. of Pls.' Renewed Mot. for Class Cert. ("Pls.' Mot."), ECF No. 74-2;
- Mem. of P. & A. in Opp'n to Pls.' Renewed Mot. for Class Cert., ("Defs.' Opp'n"), ECF No. 79; and
- Pls.' Reply in Supp. of Mot. for Class Cert., ("Pls.' Reply"), ECF No. 76.

was noticed as related to *Kifafi v. Hilton Hotels Retirement Plan*, No. 98–cv–1517 (CKK) (D.D.C.) ("*Kifafi*"), an action over which the Court concluded its jurisdiction in December 2015, after more than 17 years of litigation. *See Kifafi*, 752 F. App'x 8, 9 (D.C. Cir. Feb. 15, 2019) (Mem.) (per curiam). In this action, Plaintiffs, who are former Hilton employees and putative beneficiaries of the Plan, seek to address grievances that did not fall within the narrow classes certified in the *Kifafi* litigation. Now, after the Court denied their initial motion for certification without prejudice, *see* Order, ECF No. 62, at 1, Plaintiffs have renewed their motion for class certification, which is presently pending before the Court, *see* Pls.' Mot., ECF No. 74. Plaintiffs ground this motion in the allegations within their Second Amended Complaint. *See id.* at 2.

Specifically, Plaintiffs seek to represent three separate subclasses of claimants. First, Plaintiff Valerie R. White alleges that Hilton unlawfully applied a so-called "elapsed time method" to employee service rendered before 1976, resulting in an improper calculation of her years of vesting credit under the Plan. *See* Second Am. Compl. ¶¶ 41–44; Pls.' Mot., Ex. 1 (White Service Sheet). Plaintiff Eva Juneau alleges that Hilton improperly denied vesting credit to employees, like her, for service rendered at certain "non-participating" locations. *See* Second Am. Compl. ¶¶ 57–58; Pls.' Mot, Ex. 2 (Juneau Service Sheet). Additionally, Plaintiffs allege that Hilton failed to keep proper documentation for services rendered by certain employees, like Ms. Juneau, and that Hilton should have, but failed to, credit appropriate time "equivalencies" to these employees, in the absence of that proper documentation. *See* Second Am. Compl. ¶¶ 68–73. Finally, Plaintiff Peter Betancourt alleges that Hilton also improperly denied claims made by surviving beneficiaries "solely on the grounds that the claimant is 'not the surviving spouse'" of the original Plan participant. *Id.* ¶ 75. According to Plaintiffs, this is not a valid "basis for a denial of a claim to retroactive benefits." *Id.*

Now, in their renewed motion for class certification, Plaintiff seek to certify a class that comprises three distinct subclasses corresponding to the Plaintiffs' distinctive claims outlined above. In full, Plaintiffs seek to certify a class of "any and all persons who:

> (a) Are former or current employees of Hilton Worldwide, Inc. or Hilton Hotels Corp., or the surviving spouses or beneficiaries of former Hilton employees;

> (b) Submitted a claim for vested retirement benefits from Hilton under the claim procedures ordered by the District Court and the Court of Appeals in *Kifafi, et al., v. Hilton Hotels Retirement Plan, et al.*, C.A. 98-1517; and

> (c) Have vested rights to retirement benefits that have been denied by the Hilton Defendants':

> (1) Use of "fractional" years of vesting service under an "elapsed time" method to count periods of employment before 1976 with no resolution of whether the fractions constitute a "year of service" under ERISA;

> (2) Refusal to count "non-participating" service for vesting purposes notwithstanding that the service was with the "employer" under ERISA §3(5), that the Hilton Defendants counted service at the same "Hilton Properties" in *Kifafi* and represented to this Court and the D.C. Circuit in *Kifafi* that Hilton had counted "non-participating" service with Hilton for vesting, and that the "records requested and received from Defendants do not identify any non-participating property that is also not a Related Company"; and

> (3) Denial of retroactive/back retirement benefit payments to heirs and estates on the sole basis that the claimants are "not the surviving spouse" of deceased vested participants."

Pls.' Proposed Order on Class Cert., ECF No. 74-1; *see also* Pls.' Mot. at 2. Plaintiffs allege that this class comprises at least 220 distinct individuals throughout the United States. *See* Second Am. Compl. ¶ 12; Pls.' Mot. at 12. Defendants, however, have once again opposed the certification of this class for myriad reasons. *See generally* Defs.' Opp'n, ECF No. 79. In turn, Plaintiffs have submitted their reply brief, and, accordingly, Plaintiffs' renewed motion for class certification is ripe for this Court's review.

## II.     LEGAL STANDARD

In deciding whether to certify a class, a court must consider whether the proposed class meets the requirements of Federal Rule of Civil Procedure 23. *Kottaras v. Whole Foods Mkt., Inc.*, 281 F.R.D. 16, 20 (D.D.C. 2012). The party seeking class certification must "affirmatively demonstrate" that the requirements of Rule 23 have, in fact, been satisfied. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). "Certification is proper only if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied," and that "actual, not presumed, conformance with Rule 23(a) remains indispensable." *Id.* at 350–51 (cleaned up). At the certification stage, "[m]erits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013).

The Rule 23 analysis proceeds in two parts. First, the putative "class plaintiff has the burden of showing that the requirements of Rule 23(a)" are met. *Richards v. Delta Air Lines, Inc.*, 453 F.3d 525, 529 (D.C. Cir. 2006). Under Rule 23(a), a member of a class may sue on behalf of the class if "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). Next, the putative class plaintiff must also demonstrate "that the class is maintainable pursuant to one of Rule 23(b)'s subdivisions." *Richards*, 453 F.3d at 529. Here, Plaintiffs request certification under Rule 23(b)(2) or, alternatively, Rule 23(b)(3). *See* Pls.' Mot. at 31–33. Certification under Rule 23(b)(2) is proper where "final injunctive relief or corresponding declaratory relief is appropriate respecting

the class as a whole." Fed. R. Civ. P. 23(b)(2). Certification under Rule 23(b)(3) is appropriate where common questions within the proposed class predominate over non-common questions, and where class resolution is superior to other methods of adjudication. Fed. R. Civ. P. 23(b)(3); *see also Cohen v. Warner Chilcott Public Ltd. Co.*, 522 F. Supp. 2d 105, 116–17 (D.D.C. 2007).

Finally, in addition to the strictures of Rule 23, courts also consider the "implied requirement" of "definiteness" before certifying a class. *Thorpe v. District of Columbia*, 303 F.R.D. 120, 139 (D.D.C. 2014). Traditionally, the "definiteness" requirement is not excessively stringent. *Id.* Nonetheless, it does demand that plaintiffs are "able to establish that the general outlines of the membership of the class are determinable at the outset of the litigation." *Id.* (quotation omitted). "Accordingly, a class may be certified only when 'an individual would be able to determine, simply by reading the [class] definition, whether he or she [is] a member of the proposed class.'" *Campbell v. Nat'l R.R. Passenger Corp.*, 311 F. Supp. 3d 281, 313 (D.D.C. 2018) (quoting *Artis v. Yellen*, 307 F.R.D. 13, 23 (D.D.C. 2014)).

## III.   DISCUSSION

For the reasons set forth herein, the Court concludes that Plaintiffs' proposed class is impermissibly "fail-safe," as presently defined. This precludes certification. Additionally, Plaintiffs' individual subclasses also suffer from unique deficiencies under Fed. R. Civ. P. 23, as set forth below. The Court will address these issues in turn.

### A.  Plaintiffs' Proposed Class Is Impermissibly "Fail Safe"

Defendants argue, in part, that class certification is improper because Plaintiffs' proposed class is fail-safe. *See* Defs.' Mot. at 33–34. A so-called "fail-safe" class does not satisfy the definiteness requirement for class certification. *Campbell*, 311 F. Supp. 3d at 313. A fail-safe class exists where the class definition "depend[s] on the merits of the underlying claim." *Id.* Put

otherwise, a fail-safe class arises where the class "is defined so that whether a person qualifies as a member depends on whether the person has a valid claim." *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 825 (7th Cir. 2012). For example, the class definition: "*All Black CBA employees who have been discriminated against because of their race or color in regard to competitive promotion selections*," is impermissibly "fail-safe" because it "makes membership in the class contingent on individualized merits determinations as to whether the individual suffered discrimination because of his race." *Campbell*, 311 F. Supp. 3d at 314. "Such a class definition is improper because a class member either wins or, by virtue of losing, is defined out of the class and is therefore not bound by the judgment." *Messner*, 669 F.3d at 825. "Moreover, by using a future decision on the merits to specify the scope of the class, a fail-safe class definition makes it impossible to determine who [is] in the class until the case ends." *Campbell*, 311 F. Supp. 3d at 314 (quotation omitted and cleaned up).

The Court agrees with Defendants that Plaintiffs' proposed class is impermissibly fail-safe. *See* Defs.' Mot. at 33–34. Here, the fail-safe arises because Plaintiffs' class includes only those persons who "*have vested rights to retirement benefits that have been denied . . .*" Pls.' Proposed Order on Class Cert., ECF No. 74-1, at ¶ 2(c). On its face, this class requirement may appear objective, but, in fact, the question of whose rights have vested is central to the merits of this action. Consider each of Plaintiffs' proposed class representatives. Ms. Valerie White, for example, possesses "a total of 9.52957 years of vesting service," leaving her a fraction short of the ten years of credit needed for her rights to vest. Second Am. Compl. ¶ 44; *see also* Pls.' Mot. at 14–17. Therefore, Ms. White will "have vested rights" and become a member of the proposed class, only if the Court agrees with her merits assertion that fractional years of service must be "rounded up." *See* Second. Am. Compl. ¶ 44. But of course, this is the very question at the heart

of Plaintiffs' claim in Count I of the Second Amended Complaint. *See id.* ¶¶ 40–51. As such, Ms. White, and putative class members like her, would not know whether they were class members until after the Court made a determination on the merits of her claim.

Similar problems apply to Ms. Eva Juneau, Mr. Peter Betancourt, and the subclasses they represent. Ms. Juneau, for example, asserts that Hilton improperly denied her vesting credit for service rendered at the Reno Hilton, while the location was designated as a "non-participating" property. *Id.* ¶ 58. Plaintiffs allege that employees like Ms. Juneau *should* have vested rights, because Hilton's denial of such vesting credit for service at "non-participating" properties is unlawful under ERISA. *Id.* ¶¶ 53–54. Therefore, a merits decision from the Court on the "non-participating" service claim, would be necessary to determine whether employees like Ms. Juneau ultimately will receive the credit needed for their retirement rights to vest. And the same problem applies to Mr. Betancourt. For Mr. Betancourt, and the subclass he purports to represent, the vesting of their rights hinges on a decision from this Court regarding whether Hilton may properly deny retirement benefits to a beneficiary, "solely on the grounds that the claimant is 'not the surviving spouse.'" *Id.* ¶ 75. In sum, membership for each proposed subclass manifests only upon an affirmative merits ruling from the Court. As explained, "[s]uch a class definition is improper because a class member either wins or, by virtue of losing, is defined out of the class and is therefore not bound by the judgment." *Messner*, 669 F.3d at 825. For these reasons, Plaintiffs' proposed class is fail-safe.

Despite the presence of this fail-safe class, however, the Court notes that the rule against such classes is not entirely settled. In this jurisdiction, at least one district court has adopted the rule and denied certification thereunder, *see Campbell*, 311 F. Supp. 3d at 313–15, while two other district courts have considered the rule against fail-safe classes, without concluding that it is

definitively established as a criteria for class certification, *see Ramirez v. United States Immigration & Customs Enf't*, 338 F. Supp. 3d 1, 49 (D.D.C. 2018); *Afghan & Iraqi Allies Under Serious Threat Because of Their Faithful Serv. to the United States v. Pompeo*, 334 F.R.D. 449, 464 (D.D.C. 2020).  The D.C. Circuit has not opined directly on this matter.  Yet, the absence of a clear directive from the D.C. Circuit does not negate the rule against fail-safe classes, but rather leaves open the question of the rule's applicability.

And here, the Court finds multiple factors weighing strongly in favor of an operative rule against fail-safe classes.  First, of the nine circuits to consider the matter, eight circuits have either adopted a categorical rule against fail-safe classes[2] or discussed such a rule with approval.[3]  Only the Fifth Circuit has rejected the applicability of the rule against fail-safe classes.  *See In re Rodriguez*, 695 F.3d 360, 370 (5th Cir. 2012).  This Fifth Circuit precedent, however, stands as an outlier amongst the circuits and is post-dated by more recent circuit precedent adopting the rule against fail-safe classes.  *See supra* at Note 2.  Moreover, numerous district courts throughout the

---

[2] *See, e.g.*, *Orduno v. Pietrzak*, 932 F.3d 710, 716 (8th Cir. 2019) ("That sort of class is prohibited because it would allow putative class members to seek a remedy but not be bound by an adverse judgment . . . "); *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 660 (7th Cir. 2015) ("[C]lasses that are defined in terms of success on the merits—so-called 'fail-safe classes'—also are not properly defined."); *In re Nexium Antitrust Litig.*, 777 F.3d 9, 22 (1st Cir. 2015) ("[E]xcluding all uninjured class members at the certification stage is almost impossible in many cases, given the inappropriateness of certifying what is known as a 'fail-safe class'—a class defined in terms of the legal injury."); *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 538 (6th Cir. 2012) ("[A] class definition is impermissible where it is a 'fail-safe' class, that is, a class that cannot be defined until the case is resolved on its merits.").

[3] *See, e.g.*, *Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1276–77 (11th Cir. 2019) ("We do not hold today that a court is required to ensure that the class definition does not include any individuals who do not have standing before certifying a class. Such a rule would run the risk of promoting so-called 'fail-safe' classes, whose membership can only be determined after the entire case has been litigated and the court can determine who actually suffered an injury."); *Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1138 n.7 (9th Cir. 2016) ("[D]efining the class to include only those individuals who were 'injured' by non-disclosure threatens to create a 'fail safe' class."); *Byrd v. Aaron's Inc.*, 784 F.3d 154, 167 (3d Cir. 2015) ("[R]equiring such specificity may be unworkable in some cases and approaches requiring a fail-safe class."); *EQT Prod. Co. v. Adair*, 764 F.3d 347, 360 n.9 (4th Cir. 2014) ("Although the issue was briefed and argued below, the district court did not address whether it is possible to define the classes without creating a fail-safe class . . . . On remand, the district court should consider this issue as part of its class-definition analysis.").

country have applied the rule against fail-safe classes in denying class certification.[4]  And even where debate exists regarding the contours of a broader "ascertainability" requirement for class certification, the narrow rule against fail-safe classes has persisted.  *See Mullins*, 795 F.3d at 660 (rejecting an expanded "ascertainability" requirement while applying the rule against "fail-safe" classes as "well-settled").

Furthermore, beyond the weight of this precedent, the gravamen of the rule itself is rooted in compelling principles of fairness and common-sense.  As a practical matter, putative members of a fail-safe class are not identifiable after class certification, because the definition of a class member turns on the final result of the litigation itself.  This creates tangible administrative problems for the courts, including difficulty in providing proper notice to class members.  *See Orduno*, 932 F.3d at 716–17.  Fail-safe classes are also inherently unfair to the defendant, who "is forced to defend against the class, but if a plaintiff loses, she drops out and can subject the defendant to another round of litigation."  *Mullins*, 795 F.3d at 660.  In this way, fail-safe classes also contravene the notions of efficiency critical to Rule 23 and the class action mechanism.  A merits ruling against a fail-safe class does not resolve a class-wide dispute, but instead hollows out the fail-safe class at issue, leaving further litigation for a later date.

---

[4] *See, e.g.*, *Day v. Humana Ins. Co.*, 335 F.R.D. 181, 200 (N.D. Ill. 2020) (denying certification of an ERISA class where "the class Plaintiff [ ] attempted to define [wa]s 'fail-safe'—that is, defined so that whether a person qualifies as a member depends on whether the person has a valid claim") (quotation omitted); *Bais Yaakov of Spring Valley v. ACT, INC.*, 328 F.R.D. 6, 14 (D. Mass. 2018) (denying class certification where "the class fit[ ] squarely within the definition of a 'fail-safe class' because class membership [wa]s defined by whether or not members have a valid claim"); *Quevedo v. Macy's, Inc.*, No. CV091522GAFMANX, 2011 WL 13124445, at *5 (C.D. Cal. Mar. 9, 2011) ("For the independent reason that Plaintiff's proposed sub-classes constitute such impermissible 'fail-safe' classes against which no adverse judgment could be entered, the Court denies certification.").

In view of the foregoing, the Court will apply the rule against fail-safe classes in this case. Indeed, it would be improvident to certify a fail-safe class like Plaintiffs' where the D.C. Circuit has not approved of such classes and where numerous circuit courts, and at least one district court in this jurisdiction, have applied a common-sense rule against them. Nonetheless, "the fail-safe problem is more of an art than a science," which "can and often should be solved by refining the class definition rather than by flatly denying class certification on that basis." *Messner*, 669 F.3d at 825. Accordingly, the Court finds that it is most appropriate to **DENY** Plaintiffs' Renewed Motion for Class Certification **WITHOUT PREJUDICE**, and to permit Plaintiffs a final opportunity to amend their class definition in accordance with this Memorandum Opinion.

### B.  Additional Barriers To Class Certification

Because the Court will permit Plaintiffs a final opportunity to cure the fail-safe deficiency in their proposed class definition, the Court, in the interest of judicial economy, will also note additional defects in Plaintiffs' proposed subclasses. *See Campbell*, 311 F. Supp. 3d at 315. At this juncture, two such defects are readily apparent: (1) Plaintiffs' "non-participating service" subclass lacks commonality, and (2) Mr. Betancourt's claim is not "typical" of the subclass he purports to represent.

#### 1.  Non-Participating Service Subclass

Plaintiffs' cumbersome "non-participating service" subclass presents multiple problems at the certification stage of this litigation. Foremost among these deficiencies is the lack of commonality within the subclass. Here, Rule 23(a)(2) demands that "there are questions of law or fact common to the class" proposed. The Supreme Court has stated that a "common" question is one that is "of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one

of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). "The touchstone of the commonality inquiry is 'the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation.'" *Coleman ex rel. Bunn v. District of Columbia*, 306 F.R.D. 68, 82 (D.D.C. 2015) (quoting *Wal-Mart*, 564 U.S. at 350).

The Court is not persuaded that a classwide proceeding would generate such common answers for the non-participating service subclass at issue here. As a threshold matter, the Court notes that Plaintiffs' present class certification order functionally amends the definition of its non-participating service subclass offered in the Second Amended Complaint. Specifically, in the Second Amended Complaint, this subclass covered:

> Refusal to count "non-participating" service for vesting by not recognizing Hilton properties as "Related Companies" whether or not they participate in the Plan, or failing to apply the proper equivalencies for non-participating service

Second Am. Compl. ¶ 11(c)(2). Plaintiffs, however, have changed the definition of this subclass in the proposed class certification order, accompanying their present motion, to:

> Refusal to count "non-participating" service for vesting purposes notwithstanding that the service was with the "employer" under ERISA §3(5), that the Hilton Defendants counted service at the same "Hilton Properties" in *Kifafi* and represented to this Court and the D.C. Circuit in *Kifafi* that Hilton had counted "non-participating" service with Hilton for vesting, and that the "records requested and received from Defendants do not identify any non-participating property that is also not a Related Company"

Pls.' Proposed Order on Class Cert., ECF No. 74-1, at ¶ 2(c)(2). Tellingly, this de facto amendment comes after the Court's express decision to deny Plaintiffs' leave to amend their Second Amended Complaint. *See* Mem. Op., ECF No. 64, at 12. And this alteration was no doubt motivated by the merits implications of the Court's conclusion that "*Kifafi* specifically refrained from adjudicating a right to claim credit for non-participating service," and that "Plaintiffs cannot purport to enforce something established in *Kifafi* when their basis for saying that it was established in *Kifafi* is wrong." *Id.* at 9–10.

11

Nonetheless, this change does not rectify the non-participating service subclass Plaintiffs seek to advance.  First, the question of whether a class member's "non-participating service" was rendered while Hilton was "the 'employer' under ERISA § 3(5)" is not susceptible to common resolution amongst the proposed subclass.  Indeed, the recognition of an "employer" under ERISA § 3(5) is a distinct legal inquiry, which requires an individualized assessment of the management relationship in effect with each of the individualized non-participating properties at issue.  *See* 29 U.S.C. § 1002(5).  And, as Defendants note, the Second Amended Complaint references at least twelve of these non-participating properties to be considered within this subclass.  Second Am. Compl. ¶ 65.

For example, Ms. Juneau rendered service at the Reno Hilton while it "was a non-participating property prior to August 1, 1992."  *Id.* ¶ 58; *see also* Pls.' Mot., Ex. 2 (Juneau Service Sheet).  But an assessment of whether that particular service was rendered while Hilton was Ms. Juneau's "employer" does not readily supply an answer common to the claims of employees who rendered service at a different non-participating property, *see* Second Am. Compl. ¶ 65, such as the alleged 20 employees also within this proposed subclass who were denied credit for non-participating service at the Atlanta Hilton, *id.* ¶ 66.  Indeed, whether Hilton was an "employer" under ERISA § 3(5) will turn on its specific contractual relationship with each of the various non-participating properties, not a uniform policy.  *See* Pls.' Mot., Ex. 12 (Management Agreements). In response, Plaintiffs argue that they will "show that all of the 'managed property' agreements that Hilton enters into give Hilton the power to hire, fire, promote, and supervise performance" — "in other words, managed property agreements give Hilton the power to function as the 'employer.'"  Pls.' Mot. at 18–19.  But this assertion only *supports* the conclusion that an individualized assessment of the various non-participating properties, including their operative

management agreements, is needed to resolve the various class members' claims embedded within Plaintiffs' non-participating service subclass. The presence of such disparate questions in this subclass impedes the Court's ability to "resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart*, 564 U.S. at 350.

Plaintiffs' proposed non-participating service subclass also suffers from a second "commonality" problem: it seeks to collapse distinct legal issues under ERISA into a single subclass. *See* Defs.' Opp'n at 14–16; *DL v. Dist. Of Columbia*, 713 F.3d 120, 128 (D.C. Cir. 2013). Specifically, this subclass includes at least 29 claimants, for whom Hilton has allegedly kept inadequate records and has failed to apply the proper time "equivalencies" for those undocumented periods of employment. *See* Second Am. Compl. ¶ 68. Notably, Plaintiffs' original subclass definition expressly carved out a position for these distinct claimants whose claims were denied because Hilton "fail[ed] to apply the proper equivalencies for non-participating service." *Id.* ¶ 11(c)(2). And while Plaintiffs' revised subclass definition omits such language, *see* Pls.' Proposed Order on Class Cert., ECF No. 74-1, at ¶ 2(c), their present motion makes clear that these unique claimants remain part of the non-participating service subclass, *see* Pls.' Mot. at 18, n.6 (citing Second Am. Compl. ¶¶ 67–73)). Yet, as Defendants note, the application of "proper equivalencies" folds a unique ERISA issue into the non-participating service subclass, distinct from the question of whether an employee's non-participating service was rendered to Hilton as an "employer." *See* Defs.' Opp'n at 15. Packing "multiple, disparate failures to comply" with ERISA into a single subclass further vitiates the existence of commonality under Rule 23 here. *DL v. Dist. Of Columbia*, 713 F.3d at 128 (quotation omitted); *see also Kifafi v. Hilton Hotels Ret. Plan*, 189 F.R.D. 174, 179–80 (D.D.C. 1999) (denying certification of class that "encompasse[d] a variety of alleged ERISA violations").

Finally, beyond these issues of commonality with the proposed non-participating service subclass, one additional problem merits discussion. As noted, Plaintiffs have defined this subclass to cover claimants who provided service to Hilton, as an "employer" under ERISA § 3(5). Pls.' Proposed Order on Class Cert., ECF No. 74-1, at ¶ 2(c). But the question of whether any non-participating service was rendered for Hilton as an "employer" as defined in the statute is, itself, another "contested issue in this case" and, therefore, "not a proper way to determine the class." *Alexander v. F.B.I.*, 971 F. Supp. 603, 612 (D.D.C. 1997). In fact, Plaintiffs motion states plainly that they "*will* show that . . . managed property agreements give Hilton the power to function as the 'employer.'" Pls.' Mot. at 18–19 (emphasis added). Implicit in this assertion is the fact that they have not yet done so, and, in this way, Plaintiffs leave membership in their proposed non-participating service subclass open to a disputed matter of statutory interpretation. *See* 29 U.S.C. § 1002(5). Consequently, Plaintiffs have created yet another fail-safe class here, as no putative class member can presently determine whether he or she rendered service to Hilton as an "employer" under ERISA § 3(5), until the Court considers the merits of that legal issue. *See Campbell*, 311 F. Supp. 3d at 313. This flaw, in conjunction with the defects outlined above, makes certification of the non-participating service subclass improper, as presently defined. *See* Fed. R. Civ. P. 23(a).

### 2.  Mr. Betancourt's "Surviving Beneficiary" Claim

In addition to the aforementioned problems with Plaintiffs' "non-participating service" subclass, a distinct defect is also apparent with regards to the "surviving beneficiary" subclass Plaintiffs seek to certify. Namely, Mr. Betancourt, the proposed class representative, possesses a claim that is not "typical" of the subclass he purports to represent. Generally speaking, "[t]ypicality is . . . satisfied when the plaintiff's claims arise from the same course of conduct,

series of events, or legal theories as the claims of other class members." *In re XM Satellite Radio*

*Holdings Secs. Litig.*, 237 F.R.D. 13, 18 (D.D.C. 2006).  Inherent in this standard, however, is "the

requirement that the class representatives be members of the class" they represent and fit that

proposed class definition. *Gatore v. United States Dep't of Homeland Sec.*, 327 F. Supp. 3d 76,

103 (D.D.C. 2018) (quotation omitted); *see also Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 156

(1982) ("We have repeatedly held that a class representative must be part of the class and possess

the same interest and suffer the same injury as the class members.").

 Mr. Betancourt's claim is atypical on its face.  Here, Mr. Betancourt purports to represent

a subclass of individuals who have been denied "retroactive/back retirement benefit payments . . .

*on the sole basis* that the claimants are 'not the surviving spouse' of deceased vested participants."

Pls.' Proposed Order on Class Cert., ECF No. 74-1, at ¶ 2(c)(3) (emphasis added).  In their reply

brief, for example, Plaintiffs explain that "Hilton uniformly denied at least 28 beneficiaries like

Mr. Betancourt back payment using the same form language:

> Your claim is denied because you are not the surviving spouse of [Participant]. Under the Plan, a surviving spouse benefit is payable in certain situations. *See* Hilton Hotels Retirement Plan §4.7. However, the applicable Plan document does not provide for a death benefit to anyone other than the surviving spouse. Because you are not the surviving spouse, you are not entitled to a death benefit under the Plan."

Pls.' Reply at 11.  Indeed, Plaintiffs further elaborate that because "there is no factual variation

among these denials," the "defining characteristic" of Mr. Betancourt's subclass is "the fact that

the claim was denied 'on the sole basis' that the individual who submitted the claim is not a

surviving spouse of a Plan participant." *Id.*; *see also* Second Am. Compl., ¶¶ 75–76.

 The record, however, does not bear this out.  To the contrary, the denial letter Plaintiffs cite

contains *additional* bases for the denial of Mr. Betancourt's benefits claim under the Plan. *See*

Defs.' Opp'n, Ex. I (June 2015 Letter), at 1–2.  In addition to the fact that Mr. Betancourt was not

a "surviving spouse" of the Plan participant (his father), Hilton also denied Mr. Betancourt's claim because it was untimely and, relatedly, because his father (a Hilton employee) died after the age of 70.5, without commencing his retirement benefits. *See id.*; *see also* Pls.' Mot., Ex. 10 (Appeals Analysis Spreadsheet), at 2. As such, Mr. Betancourt's claim was not denied "*solely on the basis*" that he was not a "surviving spouse," but also for multiple, additional reasons stated plainly in his denial letter. And importantly, these additional grounds for Mr. Betancourt's denial are not simply ancillary litigation defenses that could "skew the focus of the litigation." *Meijer, Inc. v. Warner Chilcott Holdings Co. III*, 246 F.R.D. 293, 302 (D.D.C. 2007); *see also* Pls.' Reply at 13, 17–20. Instead, they are fundamental components of Mr. Betancourt's claim placing him outside the definition of the very subclass he purports to represent. *See Gatore*, 327 F. Supp. 3d at 103 (denying class certification where proposed representatives did not fit the class definition). This defect precludes the certification of the surviving beneficiary subclass. *See* Fed. R. Civ. P. 23(a)

## IV.    CONCLUSION

For the reasons set forth in this Memorandum Opinion, the Court **DENIES** Plaintiffs' [74] Renewed Motion for Class Certification **WITHOUT PREJUDICE**. By **NOVEMBER 6, 2020**, the parties shall file a Joint Status Report identifying how they propose to proceed and a schedule for such proceedings.

An appropriate order accompanies this Memorandum Opinion.


**Date**: October 7, 2020                                   _____/s/_____
                                                             **COLLEEN KOLLAR-KOTELLY**
                                                             United States District Judge