MINUTES OF THE U.S. APPEALS SUBCOMMITTEE OF
HILTON WORLDWIDE, INC.

June 15, 2015

A meeting of the U.S. Appeals Subcommittee of Hilton Worldwide, Inc. (the "Subcommittee") was held telephonically on June 15, 2015, commencing at 10:00 AM Eastern time. Subcommittee members Mary Nell Billings, Marcia Buie, and Jill Olander attended the meeting. Also attending were Tom Schendt, Patrick DiCarlo and Emily Hootkins of Alston & Bird LLP, as well as Frank Connolly of Hilton Worldwide. Emily Hootkins and Patrick DiCarlo took the minutes of the meeting.

1. Introduction

Mr. DiCarlo opened the meeting by explaining that the issues the Subcommittee would be considering today were whether the former employees who had submitted the appeals under consideration were vested under the Hilton Hotels Retirement Plan (the "Plan"). Mr. DiCarlo reminded the Subcommittee of the various rules for determining Years of Vesting Service including, but not limited to, the following:

- Employees who terminate after January 1, 1989 need five years of service to become vested; employees who terminate prior to that date need ten years.

- Years of Vesting Service prior to January 1, 1976 are calculated on an elapsed time basis. Under the elapsed time method, service is calculated by measuring the time, in years and fractional years, between the date the employee began employment and December 31, 1975.

- Years of Vesting Service after January 1, 1976 are determined based on the employees' records of actual hours worked. If the employees' records of actual hours worked are not available after January 1, 1976, ERISA equivalencies of 190 hours per month are used instead. Vesting credit is given if the employee worked at least 870 hours during the year (750 for salaried employees).

- Service at non-participating properties does not count for vesting purposes – the focus is on whether the employer is a Related Company or a Participating Employer, as those terms are defined in the Plan.

Mr. DiCarlo also explained that additional defenses may apply to certain of the appeals. For example, some of the claims may be untimely. A limitations period of, at most, five years applies to benefit claims under the Plan. If an employee turned age 70.5 more than five years before filing their initial claim, the claim may be time-barred. Further, for deceased employees, there may be additional issues depending on who is making the claim on behalf of the employee and the former employee's age at death.

LEGAL02/35659782v1

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

WHITEDEFS0001257

Generally, only the former employee's surviving spouse has standing to assert a claim under the Plan.

After an overview of the rules that would apply in reviewing today's appeals, Mr. DiCarlo confirmed that the Subcommittee members had access to Alston & Bird's extranet site containing the claims files for the 84 Appeals. Prior to the meeting, the Subcommittee members were sent an email containing instructions for accessing this site, and all Subcommittee members confirmed that they had logged into the site and reviewed claim file documents for the appeals under consideration.

In advance of the meeting, the Subcommittee members also reviewed a memorandum from Alston & Bird regarding the use of actual hours, equivalencies and/or elapsed time in calculating vesting credit, the key vesting rules under the Plan, and a guide to the status codes from Renny on the Employee Profile contained in each claimant's claim file.

**2.      84 Appeals**

On December 5, 2014, Hilton received 542 claims (the "542 Vesting Claims") from Stephen Bruce on behalf of former Hilton Hotel employees who claim sufficient years of service with Hilton Hotels to be entitled to vested retirement benefits from the Plan. On March 5, 2015, Hilton denied 188 of the 542 Vesting Claims and extended the response deadline for the remaining 354 claims. Of the 188 initial denials from the 542 Vesting Claims, Stephen Bruce filed 84 appeals (the "84 Appeals"). The 84 Appeals were under consideration by the Subcommittee in today's meetings.

In advance of the meeting, the Subcommittee members were sent a tracking spreadsheet of the 84 Appeals that provided Alston & Bird's analysis of whether the former employees under consideration were vested under the Plan. This spreadsheet was used to guide the Subcommittee's consideration of each individual appeal. Each individual appeal was separately considered on the merits, and separately voted on.

During review of each of the 84 Appeals, the Subcommittee members asked several questions. A question was asked as to whether the Subcommittee had the authority to lower the Plan's threshold for vesting (i.e., lower the requirement from ten or five years). Mr. DiCarlo responded that the Subcommittee had a duty under ERISA to follow the Plan terms.

Another question was asked as to why these 84 Appeals were filed in the first place since the employees were obviously not vested based on the Plan records and claim files. Mr. DiCarlo responded that Mr. Bruce may not have had access to the employees' records of actual hours, and Mr. Bruce simply appeared to submit an appeal for anyone who theoretically could be vested if you looked only at their starting and ending dates.

During the course of the review, additional discussion focused on employees' who came very close to vesting. For example, William Mendez had 9.96 Years of

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

WHITEDEFS0001258

Vesting Service. A subcommittee member asked why such employees would not have worked just a little longer to become vested. Mr. DiCarlo responded that such employees may not have realized how close they were to vesting. In reference to such employees, Mr. DiCarlo also raised the issue of whether it was appropriate to "round-up" the Years of Vesting Service. After a full discussion of this topic, the Subcommittee members unanimously agreed that rounding-up would not be consistent with the terms of the Plan, which does not provide for rounding and requires a full five or ten years for vesting. The Subcommittee also discussed the difficulty in determining where to draw the line on rounding.

In reviewing each individual 84 Appeal, the Subcommittee considered the appeals in the order listed on the spreadsheet. Mr. DiCarlo and Ms. Hootkins alternated in leading the discussion of each individual appeal. Mr. DiCarlo discussed appeals 1-20, 41-60, and 81-84, while Ms. Hootkins discussed appeals 21-40 and 61-80. Each appeal was separately considered on the merits with Mr. DiCarlo and Ms. Hootkins outlining the analysis for why the former employee was not vested. Following a discussion on each individual appeal, Ms. Billings called for a vote as to whether the Subcommittee members determined to reverse or affirm the initial claim denial for that individual appeal. For all 84 Appeals, Ms. Buie, Ms. Billings, and Ms. Olander unanimously voted to affirm the initial decisions, finding that the former employees who had submitted the 84 Appeals were not vested under the terms of the Plan. Ms. Buie, Ms. Billings, and Ms. Olander also agreed that the additional defenses for untimely claims and deceased former employees applied as outlined in the spreadsheet.

3. REDACTED

# REDACTED

# REDACTED

**4.    Minutes**

The minutes of the previous meeting of the Committee, held on March 26, 2015, were previously distributed to the Subcommittee members for review. Upon motion duly made and seconded, the Subcommittee unanimously approved the minutes as presented.

**5.    Adjournment**

The Committee adjourned the meeting at 12:05 PM Eastern time.

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

WHITEDEFS0001260