## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

```
-----------------------------------------------------------------x
                                                      :
VALERIE R. WHITE, et al.,                             :
                                                      :
                            Plaintiffs,               :
                                                      :
               v.                                     :  Case No. 1:16-cv-00856-CKK
                                                      :
HILTON HOTELS RETIREMENT PLAN, et al.,                :  ORAL HEARING REQUESTED
                                                      :
                            Defendants.               :
                                                      :
-----------------------------------------------------------------x
```

## MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
## PLAINTIFFS' SECOND RENEWED MOTION FOR CLASS CERTIFICATION

SIMPSON THACHER & BARTLETT LLP
900 G St. NW
Washington, D.C.  20001
Telephone:  (202) 636-5500
Facsimile:  (202) 636-5502

425 Lexington Avenue
New York, New York
Telephone:  (212) 455-2000
Facsimile:  (212) 455-2502

*Counsel for Defendants Hilton Hotels
Retirement Plan, Hilton Worldwide, Inc.,
Global Benefits Administrative Committee,
Mary Nell Billings, S. Ted Nelson, and Casey
Young*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................. 1

BACKGROUND ...................................................................................................................... 4

    A.   The Plan's Administrative Claims Process .................................................................4

    B.   Procedural History ...................................................................................................7

LEGAL STANDARDS ........................................................................................................... 10

ARGUMENT .......................................................................................................................... 11

I.    Plaintiffs' Second Renewed Motion Fails To Remedy the Barriers to Class
    Certification Identified in This Court's Decision............................................................ 11

    A.   The Proposed Class Definition Remains Indefinite and Indeterminable...............11

    B.   Plaintiffs' Non-Participating Properties Subclass Lacks Commonality ...............15

    C.   Plaintiff Peter Betancourt Remains Atypical Of The Proposed Heirs
        Subclass..................................................................................................................22

II.    Plaintiffs Do Not Meet Their Burden Under Rule 23 for Additional Reasons Not
    Addressed in the October 2020 Decision ...................................................................... 29

    A.   None of the Proposed Class Claims Meets the Commonality Requirement
        of Rule 23(a) .........................................................................................................29

    B.   Named Plaintiffs' Claims Are Not Typical of the Class and Named
        Plaintiffs Are Not Adequate Representatives Under Rule 23(a) ...........................34

    C.   Plaintiffs Fail To Meet the Requirements of Rule 23(b) .......................................39

CONCLUSION....................................................................................................................... 42

# TABLE OF AUTHORITIES

## Cases

*Alexander v. F.B.I.*,
    971 F. Supp. 603 (D.D.C. 1997) ................................................................................. 12, 15

*Allison v. Citgo Petroleum Corp.*,
    151 F.3d 402 (5th Cir. 1998) ........................................................................................... 41

*Amchem Products, Inc. v. George Windsor*,
    521 U.S. 591 (1997) ......................................................................................................... 41

*Arabian v. Sony Electronics, Inc.*,
    No. 05-CV-1741 WHQ (NLS), 2007 WL 627977 (S.D. Cal. Feb. 22, 2007) ...................... 39

*Artis v. Yellen*,
    307 F.R.D. 13 (D.D.C. 2014) .................................................................................... 11, 12

*Ballard v. Branch Banking & Tr. Co.*,
    284 F.R.D. 9 (D.D.C. 2012) ........................................................................................... 22

*Becker v. Weinberg Grp., Inc. Pension Tr.*,
    473 F. Supp. 2d 48 (D.D.C. 2007) ................................................................................. 25

*Bolden v. Walsh Const. Co.*,
    688 F.3d 893 (7th Cir. 2012) ........................................................................................ 12

*Brennan v. Arnheim & Neely, Inc.*,
    410 U.S. 512 (1972) ........................................................................................................ 19

*Brown v. Dist. of Columbia*,
    928 F.3d 1070 (D.C. Cir. 2019) .................................................................................... 30

*Campbell v. Nat'l R.R. Passenger Corp.*,
    311 F. Supp. 3d 281 (D.D.C. 2018) ......................................................................... 11, 30

*Carter v. Butz*,
    479 F.2d 1084 (3d Cir. 1973) ........................................................................................ 39

*Commc'ns Workers of Am. v. Am. Tel. & Tel. Co.*,
    40 F.3d 426 (D.C. Cir. 1994) ........................................................................................ 25

*Connors v. Hallmark & Son Coal Co.*,
    935 F.2d 336 (D.C. Cir. 1991) ...................................................................................... 27

*Corley v. Hecht Co.*,
    530 F. Supp. 1155 (D.D.C. 1982) ................................................................................. 38

*Council of Athabascan Tribal Gov'ts v. United States,*
    693 F. Supp. 2d 116 (D.D.C. 2010) ................................................................. 38

*Daskalea v. Washington Humane Soc.,*
    275 F.R.D. 346 (D.D.C. 2011) ......................................................................... 36

*DiMarco v. Mich. Conference of Teamsters Welfare Fund,*
    861 F. Supp. 599 (E.D. Mich. 1994) ............................................................... 29

*DL v. Dist. of Columbia,*
    713 F.3d 120 (D.C. Cir. 2013) ................................................................. passim

*East Texas Motor Freight System, Inc. v. Rodriguez,*
    431 U.S. 395 (1977) ......................................................................................... 22

*Eubanks v. Billington,*
    110 F.3d 87 (D.C. Cir. 1997) ........................................................................... 39

*Fleck v. Cablevision VII, Inc.,*
    763 F. Supp. 622 (D.D.C. 1991) ...................................................................... 23

*Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,*
    903 F.2d 176 (2d Cir. 1990) ............................................................................. 23

*Gates v. Rohm & Haas Co.,*
    655 F.3d 255 (3d Cir. 2011) ............................................................................. 40

*Gen. Tel. Co. of Sw. v. Falcon,*
    457 U.S. 147 (1982) .................................................................................... 10, 36

*Harris v. Koenig,*
    271 F.R.D. 383 (D.D.C. 2010) ......................................................................... 10

*Healthy Futures of Texas v. Dep't of Health and Human Services,*
    326 F.R.D. 1 (D.D.C. 2018) ............................................................................. 22

*Heimeshoff v. Hartford Life & Accident Ins. Co.,*
    134 S. Ct. 604 (2013) ....................................................................................... 35

*Holt v. Winpisinger,*
    811 F.2d 1532 (D.C. Cir. 1987) ....................................................................... 18

*Horton v. Hilton Ret. Plan,*
    No. CV 17-9015, 2017 WL 5992096 (E.D. La. Dec. 4, 2017) ........................ 35

*In re APA Assessment Fee Litig.,*
    311 F.R.D. 8 (D.D.C. 2015) ............................................................................. 15

*In re Rail Freight Fuel Surcharge Antitrust Litig.*,
  725 F.3d 244 (D.C. Cir. 2013) ........................................................................... 42

*In re Vitamins Antitrust Litig.*,
  209 F.R.D. 251 (D.D.C. 2002) ............................................................................ 41

*Intel Corp. Inv. Policy Comm, v. Sulyma*,
  140 S. Ct. 768 (2020) ......................................................................................... 28

*J.H. Cohn & Co. v. Am. Appraisal Assocs.*,
  628 F.2d 994 (7th Cir. 1980) .............................................................................. 23

*Jamie S. v. Milwaukee Pub. Sch.*,
  668 F.3d 481 (7th Cir. 2012) ......................................................................... 29, 39

*Kas v. Fin. Gen. Bankshares, Inc.*,
  105 F.R.D. 453 (D.D.C. 1984) ............................................................................ 23

*Kifafi v. Hilton Hotels Ret. Plan*,
  189 F.R.D. 174 (D.D.C. 1999) ...................................................................... 21, 40

*Kifafi v. Hilton Hotels Ret. Plan*,
  228 F.R.D. 382 (D.D.C. 2005) ............................................................................ 10

*Kifafi v. Hilton Hotels Ret. Plan*,
  701 F.3d 718, 728 (D.C. Cir. 2012) .................................................................... 27

*Kifafi v. Hilton Hotels Ret. Plan*,
  736 F. Supp. 2d 64 (D.D.C. 2010) ................................................................. 14, 15

*Kifafi v. Hilton Hotels Ret. Plan*,
  826 F. Supp. 2d 25 (D.D.C. 2011) ...................................................................... 35

*Kifafi v. Hilton Hotels Ret. Plan*,
  No. 98-cv-1517 CKK, 2004 WL 3619156 (D.D.C. Sept. 27, 2004) ...................... 25

*McCaster v. Darden Rests., Inc.*,
  845 F.3d 794 (7th Cir. 2017) .............................................................................. 11

*McIntyre v. Household Bank*,
  No. 02 C 1537, 2004 WL 2958690 (N.D. Ill. Dec. 21, 2004) ............................... 36

*O.A. v. Trump*,
  404 F. Supp. 3d 109  (D.D.C. 2019) .................................................................... 37

*Powell v. Zuckert*,
  366 F.2d 634 (D.C. Cir. 1966) ............................................................................ 38

*Preston v. Am. Fed'n of Television & Radio Artists Health Fund*,
　No. 90 Civ. 7094(RJW), 2002 WL 1009458 (S.D.N.Y. May 16, 2002),
　*aff'd*, 63 F. App'x 536 (2d Cir. 2003) ................................................................ 26

*Romberio v. Unumprovident Corp.*,
　385 F. App'x 423 (6th Cir. 2009) ...................................................................... 12

*Springer v. Wal–Mart Assocs. Group Health Plan*,
　908 F.2d 897 (11th Cir. 1990) ........................................................................... 25

*Tesoro Ref. & Mktg. Co. v. F.E.R.C.*,
　552 F.3d 868 (D.C. Cir. 2009) ........................................................................... 26

*Thompson v. Cont'l Cas. Co.*,
　602 F. Supp. 2d 943 (N.D. Ill. 2009) ................................................................ 29

*Thorpe v. District of Columbia*,
　303 F.R.D. 120 (D.D.C. 2014) ........................................................................... 11

*Virtue v. Int'l Bhd. of Teamsters Ret. & Family Prot. Plan*,
　997 F. Supp. 2d 10 (D.D.C. 2013),
　*aff'd*, 584 F. App'x 3 (D.C. Cir. 2014) ....................................................... 27, 28

*Wal-Mart Stores, Inc. v. Dukes*,
　564 U.S. 338 (2011) ................................................................................... passim

*Williams v. Glickman*,
　No. CIV.A. 95-1149 (TAF), 1997 WL 33772612 (D.D.C. Feb. 14, 1997) ........................... 12

*Witt v. Metropolitan Life Ins. Co.*,
　772 F.3d 1269 (11th Cir. 2014) .......................................................................... 28

*Zalduondo v. Aetna Life Ins. Co.*,
　845 F. Supp. 2d 146 (D.D.C. 2012) .................................................................... 25

## Statutes

29 U.S.C. § 1002(5) ............................................................................................. 14

Fed. R. Civ. P. 23 ....................................................................................... passim

## Other Authorities

1 McLaughlin on Class Actions § 4:2 (16th ed.) ..................................................... 12

Defendants Hilton Hotels Retirement Plan (the "Plan"), Hilton Worldwide, Inc. ("Hilton"),[1] the Global Benefits Administrative Committee (the "Committee"), Mary Nell Billings, S. Ted Nelson, and Casey Young (collectively, "Individual Defendants"; and together with the Plan, Hilton, and the Committee, "Defendants") respectfully submit this Memorandum of Points and Authorities, the accompanying Declaration of Andrew M. Lacy ("Lacy Decl."), and exhibits thereto in opposition to Plaintiffs' second renewed motion for class certification.

## PRELIMINARY STATEMENT

This litigation has been pending for three and a half years.  In that time, Plaintiffs have sought to amend their complaint three times, and moved for class certification an equal number of times.  Plaintiffs continue to assert that the issues and claims raised by this lawsuit were previously decided in the *Kifafi* litigation.  That contention, however, has no support in the *Kifafi* record and has been rejected by this Court.  Last fall, the Court denied Plaintiffs' second motion for class certification without prejudice, affording them one more opportunity to propose a class that complies with the requirements of Rule 23.  Plaintiffs' third and final motion fails to do so.  Rather than remedying serious defects identified in this Court's prior opinion (likely because they cannot do so), Plaintiffs double down on arguments this Court has rejected several times and offer only superficial changes to their proposed certification order.  Defendants respectfully request that the Court deny Plaintiffs' latest motion with prejudice and proceed to the merits of the named Plaintiffs' claims.

*First*, Plaintiffs' minor changes to the proposed class definition do not cure the "fail-safe" class defect identified by the Court.  Altering the proposed class definition from individuals who

---

[1]      Hilton Worldwide, Inc. is now known as Hilton Domestic Operating Company Inc.

"have vested rights to retirement benefits" to those who "have been denied vested rights to retirement benefits" is substantively meaningless.  Under either definition, class membership turns on a central merits question: whether Hilton's vesting decisions with respect to the elapsed time method, non-participating properties, and/or heir benefits are improper, and individuals denied benefits for these reasons should have been vested.  The class definition is also unworkable, as it relies on Plaintiffs' rejected theory that they are entitled to relief under *Kifafi* and fails to exclude time-barred claims.

*Second*, Plaintiffs have not removed the significant barriers to certification identified by this Court: the lack of commonality in the non-participating properties subclass and the atypicality of proposed representative Betancourt's claims.

Plaintiffs frame their "common issue" for the non-participating properties subclass as whether operating a hotel via management agreement made Hilton an "employer" required to grant vesting credit to the hotel employees.  But as Plaintiffs' own brief illustrates, answering that question is fact-intensive, varying by property, time period, and management arrangement. Plaintiffs' attempt to force under one umbrella both benefit denials referencing non-participating service directly and denials stating the claimant lacked sufficient hours or earnings underscores the disparate legal claims in this subclass.

Plaintiffs attempt to remedy the atypicality of Betancourt by amending the heirs subclass definition from claimants who were denied benefits "on the *sole* basis" they are not the surviving spouse to those denied "on the basis" they are not the surviving spouse.  Omission of the word "sole" does not make Betancourt's claims—which rely on a time-barred and waived argument that his father *did* have a surviving spouse who was wrongfully denied benefits—typical of a

subclass containing claimants where the beneficiary died without a surviving spouse.  To the contrary, Betancourt remains subject to significant, unique defenses.

These defects alone are sufficient to defeat class certification.  But Plaintiffs' class certification motion fails for additional reasons identified in the parties' prior briefing and not yet addressed by this Court:

**Commonality:**  Plaintiffs cannot meet the commonality requirement of Rule 23(a) for their remaining subclasses, which fail to present a set of common questions with common answers.  For example, the proposed subclass of claimants seeking benefits owed to deceased Plan participants lumps together individuals allegedly entitled to relief under *Kifafi*'s narrow classes and other individuals not in the *Kifafi* classes who seek benefits that allegedly should have been paid to them during their lifetimes, as well as rightful heirs and those who have no entitlement to benefits owed, if at all, to the participant's estate.

**Typicality:** Like Betancourt, plaintiffs Juneau and White are not typical of the class and are inadequate class representatives because they are, individually and collectively, subject to a number of unique defenses that would distract from class-wide adjudication and relief.  Ms. White failed to file suit within a contractual limitations period, and must defend herself against a statute of limitations defense.  Ms. Juneau's claim is based on work at a single non-participating property, although Plaintiffs' proposed subclass implicates nearly two dozen differently situated properties.  Thus, Ms. Juneau is differently situated from most, if not all, of the proposed subclass members she seeks to represent.  Moreover, in its decisions on Plaintiffs' motions for leave to amend and reconsideration, this Court cast significant doubt on its prior decisions upholding each of Plaintiffs' individual claims, which seek to vindicate rights created by the *Kifafi*

3

litigation—although *Kifafi* did not address any of the key merits issues in dispute.  Finally, all three named plaintiffs are subject to laches defenses.

***Rule 23(b)***:  Plaintiffs cannot show that a class should be certified under Rule 23(b)(2), as the proposed subclasses so lack cohesion that any injunction awarded could not be class-wide; rather, individualized benefits determinations, applying multiple legal and factual rulings, would be required.  Plaintiffs' alternative basis for certification, Rule 23(b)(3), is inappropriate as Plaintiffs have not attempted to meaningfully demonstrate that common questions predominate over the myriad factual and legal individualized inquiries that stand between class members and their requested benefits.

As Plaintiffs fail to propose a class that complies with the requirements of Rule 23, Defendants respectfully request that the Court deny Plaintiffs' third and final motion with prejudice.

## BACKGROUND

### A.      The Plan's Administrative Claims Process

Participants under the Plan qualify for retirement benefits if they have (1) five years of vesting service, for employees who terminated their employment on or after January 1, 1989, or (2) ten years of vesting service, for employees who terminated their employment prior to January 1, 1989.  Ex. A (2012 Plan) § 4.6(b).  The Committee "shall have the discretionary authority to grant or deny benefits under the Plan" and "the authority to act with respect to any appeal from a denial of a claim for benefits."  *Id.* §§ 7.1(a), 7.3(a).  The Plan permits the Committee to delegate authority to decide claims.  *Id.* § 6.6.

If the Committee (or its delegate) denies a claim for benefits, a claimant may appeal the denial if they do so within sixty days.  *Id.* § 7.3(b).  As part of the appeal process, the claimant

"may submit written comments, documents, records and other information" relevant to the claim. *Id.* The Committee also "may require the claimant to submit such additional facts, documents or other material as it may deem necessary or appropriate in making its review." *Id.*

A claimant may bring a legal action for benefits under the Plan only if the claimant has submitted an application for benefits, received written notice from the Committee that the application is denied, filed a written request for review of the application, and received written notice that the Committee has affirmed the denial of the application. *Id.* § 7.4. All suits for claims filed on or after January 1, 2011 "must be brought by the claimant no later than one hundred eighty (180) days following a final decision on the claim for benefits by the [Committee]." *Id.*

### 1.      Plaintiffs' Administrative Claims

Plaintiff **Valerie White** seeks vested retirement benefits on the basis of her employment at the Washington Hilton between June 21, 1972, and March 26, 1982. *See* Dkt. 83-3 (White Decl.). She disputes the use of the elapsed time method for counting her service prior to 1976. Ms. White's claim was denied by letter dated March 4, 2015, because she failed to meet the minimum ten years of vesting service required under the Plan for employees who terminated their employment prior to 1989. Ex. B (Ltr. from C. Young to V. White, dated Mar. 4, 2015). Her appeal was subsequently denied on July 21, 2015. Ex. C (Ltr. from M. Billings to V. White, dated July 21, 2015).

Plaintiff **Eva Juneau** seeks vested retirement benefits, claiming employment with Hilton properties between April 22, 1991, and November 10, 2000. Dkt. 50 (Compl.) ¶ 4. By letter dated February 24, 2015, Hilton Worldwide Pension Center informed Ms. Juneau that a portion of her claimed employment dates was "not reflected in Hilton's records" or required "further evidence of actual hours worked." Ex. D (Ltr. to E. Juneau, dated Feb. 24, 2015). Because she

was claiming service for a period of time not supported by the Plan's records, Ms. Juneau was asked to provide evidence documenting her claimed service, such as, "among other things, any tax returns, paystub records, or social security records," as well as "information [she had] on the hours worked during the claimed dates of employment," including whether it was full or part-time.  *Id.*  The letter disclosed that, "[i]f no additional information is provided or received, we will complete our review using the information currently on file."  *Id.*  Ms. Juneau did not respond, and her claim subsequently was denied by letter dated May 29, 2015, because she lacked "the minimum number of years of vesting service"—*i.e.*, five years.  Ex. E (Ltr. from C. Young to E. Juneau, dated May 29, 2015); *see also* Ex. A (2012 Plan) § 4.6(b).  The letter explained that Ms. Juneau's claim form "identifie[d] additional or different dates of employment . . . not supported by the Plan's records or other corroborating documentation."  Ex. E (Ltr. from C. Young to E. Juneau, dated May 29, 2015).  In addition, "[v]esting credit [was] not available" for her employment at a "non-participating property that is not a Related Company or Participating Employer."  *Id.*  The letter informed Ms. Juneau of her appeal rights and invited her to "submit evidence and arguments" in support of her claim, such as, "among other things, any tax returns, paystub records, or employment records."  *Id.*  Plaintiffs' counsel submitted a written appeal letter on Ms. Juneau's behalf on July 22, 2015, Ex. F (Ltr. from S. Bruce, dated July 22, 2015), but did not submit a single piece of evidence corroborating Ms. Juneau's claimed service.  Ms. Juneau's appeal was denied on November 20, 2015.  Ex. G (Ltr. to E. Juneau, dated Nov. 20, 2015).

Plaintiff **Peter Betancourt** submitted a claim solely for benefits as a beneficiary of his father, Pedro Betancourt, who worked for Hilton between 1947 and 1979 and died in February 1985 at the age of 71.  *See* Ex. H (Claim Form).  Mr. Betancourt's claim did not state that he was

seeking benefits also on behalf of his mother, the purported surviving spouse of his father.  *Id.*

Indeed, Mr. Betancourt did not even inform the Committee that his father had a surviving

spouse.  Mr. Betancourt's claim was denied by letter dated June 3, 2015, because "the applicable

Plan document does not provide for a death benefit to anyone other than the surviving spouse"

and because his claim was untimely under all applicable statutes of limitations.  Ex. I (Ltr. from

C. Young to P. Betancourt, dated June 3, 2015).  Mr. Betancourt's subsequent appeal, which also

failed to identify any surviving spouse, was denied on November 18, 2015.  Ex. J (Ltr. from S.

Bruce dated July 22, 2015); Ex. K  (Ltr. to P. Betancourt, dated Nov. 18, 2015).

### B.    Procedural History

#### 1.    Plaintiffs' Pleadings

Plaintiffs filed this putative class action on May 6, 2016, contending that the Plan has

improperly denied vesting credit and/or benefits to certain (1) individuals who served prior to

1976 (including Plaintiff Valerie White); (2) individuals who were employed at properties that

did not participate in the Plan (including Plaintiff Eva Juneau); and (3) purported beneficiaries

who are not the surviving spouse of a Plan participant (including Plaintiff Peter Betancourt) or

who seek to recover benefits of a participant who died prior to retirement age.   Plaintiffs also

assert a claim against Hilton, the Committee, and the Individual Defendants for breaches of

fiduciary duty (Claim Four).

On August 18, 2017, the Court granted Defendants' motion to dismiss the Amended

Complaint with respect to Mr. Betancourt's claim but permitted the claims of Ms. White and Ms.

Juneau to proceed.  *See* Dkt. 21.  The Court granted Plaintiffs' subsequent motion for leave to

amend their complaint a second time on January 24, 2018.  Dkt. 49.  Although the Court

acknowledged a number of factual disputes about Mr. Betancourt's allegations, the Court granted

leave to Plaintiffs to file a Second Amended Complaint (the "Complaint").  As amended, Claim

Three seeks to recover benefits only on behalf of claimants whose administrative claim was denied "solely on the ground that the claimant is 'not the surviving spouse'" of the relevant Plan participant.  Dkt. 50 (Compl.) ¶ 11(c)(3).

### 2.      The Court's Denial of Plaintiffs' Motion for Leave to Amend Their Complaint and Motion for Reconsideration

While Plaintiffs' prior motion for class certification was pending, Plaintiffs moved to amend their complaint once again to add a fourth proposed class representative.  Plaintiffs conceded they were seeking "to remedy a potential defect in their proposed representation of a putative subclass," in response to arguments by Defendants that Eva Juneau did not meet the typicality requirement of Rule 23.  Dkt. 64 at 1; *see also* Dkt. No. 58 at 1-3 & n.2.  The Court first denied Plaintiffs' motion for class certification without prejudice, pending its decision on the motion for leave to amend.  In March 2019, the Court denied Plaintiffs leave to amend on futility grounds, ruling that its previous decision finding Ms. Juneau has stated a claim "with respect to the proposed 'non-participating service' subclass" was based on a "flawed premise": "that Plaintiff Juneau, and would-be Plaintiff Hemphill, want to enforce a right generated by *Kifafi*—without giving a valid basis in the operative complaint, or proposed amendment, for believing that the right was in fact established in *Kifafi*."  Dkt. 64 at 17.  In December 2019, the Court denied Plaintiffs' motion for reconsideration.  *See* Dkt. 70.

### 3.      Plaintiffs' Renewed Motions for Class Certification

In January 2020, Plaintiffs renewed their motion to certify subclasses of "former or current employees of" Hilton "or the surviving spouses or beneficiaries of former Hilton employees" who "[s]ubmitted a claim for vested retirement benefits from Hilton under the claim procedures ordered by the District Court and the Court of Appeals in *Kifafi* []" and whose vesting claim was denied because (1) of the use of an elapsed time method to count pre-ERISA

service; (2) no vesting credit was awarded for "non-participating" service; or (3) the claimant is "not the surviving spouse" of the Plan participant.  Dkt. 74-1 (Proposed Order) ¶ 2.

On October 7, 2020, this Court denied the renewed motion for class certification because Plaintiffs impermissibly sought to establish a "fail-safe" class in which "membership for each proposed subclass manifests only upon an affirmative merits ruling from the Court."  It also detailed two "additional impediments to class certification" under Rule 23(a): the non-participating subclass lacked commonality, and proposed class representative Peter Betancourt was atypical of the heirs subclass (or "surviving beneficiary" claim) he sought to represent.

Plaintiffs have now filed a third motion for class certification, but have failed to meaningfully address the myriad problems identified in the Court's October 7, 2020 order or in Defendants' prior class certification opposition briefs.  Plaintiffs have adjusted their proposed class definition as follows:

> [T]he Plaintiffs are moving to certify a class consisting of any and all persons who:
>
> (a) Are former or current employees of Hilton Worldwide, Inc. or Hilton Hotels Corp., or the surviving spouses or beneficiaries of former Hilton employees,
>
> (b) Submitted a claim for vested retirement benefits from Hilton under the claims procedures ordered by the District Court and the Court of Appeals in *Kifafi, et al, v. Hilton Hotels Retirement Plan, et al.*, C.A. 98-1517; and
>
> (c) Have **been denied** vested rights to retirement benefits ~~that have been denied~~ by the Hilton Defendants':
>
> > (1) Use of 'fractional' years of vesting service under an 'elapsed time' method to count periods of employment before 1976 with no resolution of whether the fractions constitute a 'year of service' under ERISA;
> >
> > (2) Refusal to count "non-participating" service for vesting purposes, notwithstanding that the service was with ~~the "employer" under ERISA §3(5)~~ **a hotel property that Hilton operated under a management agreement**, that the Hilton Defendants counted service at the same "Hilton Properties" in *Kifafi* and represented to this Court and the D.C. Circuit in *Kifafi* that Hilton had counted "non-participating" service with

Hilton for vesting, and that the "records requested and received from Defendants do not identify any non-participating property that is also not a Related Company; and

(3) Denial of retroactive/back retirement benefit payments to heirs and estates on the ~~sole~~ basis that the claimants are "not the surviving spouse" of deceased vested participants.

*See* Dkt. 83-2 (Proposed Order); Ex. M (Redline to Prior Order).

## LEGAL STANDARDS

Rule 23(a) permits a class action "only if (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). On a motion for class certification, Plaintiffs "bear[] the burden of proof on each element of Rule 23." *Harris v. Koenig*, 271 F.R.D. 383, 388 (D.D.C. 2010) (citing *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 614 (1997)). Thus, Plaintiffs "must affirmatively demonstrate [their] compliance with the Rule" by "prov[ing] that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (emphasis in original). The Court may only certify a class if it is "satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." *Id.* at 350–51 (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982)).

After proving that the requirements of Rule 23(a) have been met, the Plaintiff "must show that its putative class can be certified under one of the Rule 23(b) subsections." *Kifafi v. Hilton Hotels Ret. Plan*, 228 F.R.D. 382, 385 (D.D.C. 2005). Here, Plaintiffs seek to certify a class under Rule 23(b)(2), which applies only if Plaintiffs can show Defendants "acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding

declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).  Rule

23(b)(2) "does not authorize class certification when each individual class member would be

entitled to a *different* injunction or declaratory judgment against the defendant." *DL v. Dist. of*

*Columbia*, 713 F.3d 120, 125 (D.C. Cir. 2013) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S.

at 350).  In the alternative, Plaintiffs argue that they are entitled to relief under Rule 23(b)(3),

which applies only if "the court finds that the questions of law or fact common to class members

predominate over any questions affecting only individual members, and that a class action is

superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed.

R. Civ. P. 23(b)(3).

## ARGUMENT

**I.**   **Plaintiffs' Second Renewed Motion Fails To Remedy the Barriers to Class Certification Identified in This Court's Decision**

    **A.**   **The Proposed Class Definition Remains Indefinite and Indeterminable**

To meet the requirements of Rule 23, a class must be "definite" such that plaintiffs are

"able to establish that the general outlines of the membership of the class are determinable at the

outset of the litigation."  *Thorpe v. District of Columbia*, 303 F.R.D. 120, 139 (D.D.C. 2014)

(quotation omitted).  In simple terms, this means "an individual would be able to determine,

simply by reading the [class] definition, whether he or she [is] a member of the proposed class."

*Campbell v. Nat'l R.R. Passenger Corp.*, 311 F. Supp. 3d 281, 313 (D.D.C. 2018) (quoting *Artis*

*v. Yellen*, 307 F.R.D. 13, 23 (D.D.C. 2014)).  An impermissible "fail-safe" class, in contrast, "is

defined so that whether a person qualifies as a member depends on whether the person has a

valid claim."  *Campbell v. Nat'l R.R. Passenger Corp.*, 311 F. Supp. 3d 281, 316 (D.D.C. 2018)

(quoting *McCaster v. Darden Rests., Inc.*, 845 F.3d 794, 799 (7th Cir. 2017)).

        **1.**   **Plaintiffs Again Propose an Impermissible Fail-Safe Class Consisting of Individuals Who Have Been Denied Vested Rights**

The Court denied class certification because Plaintiffs' prior motion proposed a "fail-safe" class that "include[d] only those persons who 'have vested rights to retirement benefits that have been denied . . . '" Dkt. 81 at 6. On this motion, Plaintiffs have "refined" their class definition to include persons who "have **been denied** vested rights to retirement benefits." Dkt. 83-2 (Proposed Order) (emphasis added). Reordering the words is a superficial change that does nothing to remedy the problem identified by the Court: Plaintiffs' class definition still illogically and improperly assumes that each potential class member should be vested, the central disputed merits issue underlying all of the plaintiffs' claims. It therefore still requires the Court to "answer several fact-intensive questions" to determine whether an individual should be vested and therefore would qualify as a member of the class. *Williams v. Glickman*, No. CIV.A. 95-1149 (TAF), 1997 WL 33772612, at *4 (D.D.C. Feb. 14, 1997). *See also Alexander v. F.B.I.*, 971 F. Supp. 603, 612 (D.D.C. 1997) (observing that "a contested issue" in a case is "not a proper way to determine the class"); *Romberio v. Unumprovident Corp.*, 385 F. App'x 423, 431 (6th Cir. 2009) (reversing a district court order that certified class of beneficiaries who had long-term disability claims denied, terminated, or suspended on or after June 30, 1999, "after being subjected to any of the practices alleged in the Complaint").

Because the "process of ascertaining class membership will necessitate delving into individualized or subjective determinations," 1 McLaughlin on Class Actions § 4:2 (16th ed.), Plaintiffs' fail-safe class definition "makes it impossible to determine who in the class until the case ends," *Artis v. Yellen*, 307 F.R.D. 13, 24 (D.D.C. 2014) (quoting *Bolden v. Walsh Const. Co.*, 688 F.3d 893, 895 (7th Cir. 2012)). This flaw pervades Plaintiffs' subclass definitions, as well. Under the proposed subclass definition for the "elapsed time subclass" (which has not changed), "Ms. White, and putative class members like her, would not know whether they were

class members until after the Court made a determination on the merits of her claim," Dkt. 81 at

7-8, because Ms. White "has been denied vested rights to retirement benefits" only if she is

correct that the use of 'fractional years' under the elapsed time method for pre-1976 service was

improper.

Plaintiffs have amended their non-participating properties subclass definition and heirs

subclass definition, but their changes do not cure the problems identified by the Court's October

2020 decision.  For the second subclass, the Court observed that a merits determination on a

"disputed matter of statutory interpretation" would be required before a potential class member

could "determine whether he or she rendered service to Hilton as an 'employer' under ERISA §

3(5)."  Dkt. 81 at 24 (citing 29 U.S.C. § 1002(5)).  *See also id.* at 7 ("Plaintiffs allege that

employees like Ms. Juneau *should* have vested rights, because Hilton's denial of such vesting

credit for service at 'non-participating' properties is unlawful under ERISA.  Therefore, a merits

decision from the Court on the 'non-participating' service claim, would be necessary to

determine whether employees like Ms. Juneau ultimately will receive the credit needed for their

retirement rights to vest.").   Plaintiffs have eliminated the reference to ERISA § 3(5) from their

subclass definition, but their motion continues to assert their non-participating claim relies on the

definition of "employer" in that section.  *See* Dkt. 83-1 (Mem. of Law) at 20; *see also* Dkt. 83-2

(Proposed Order) at 2-3 (proposing as claim certified for class treatment "[w]hether the Hilton

Defendants' refusal to count 'non-participating' service for vesting, notwithstanding that the

service was with the 'employer' under ERISA § 3(5), is a violation of ERISA §§3(5) and

203(b)(1) and the related case law").

This time, Plaintiffs seek to certify individuals who have been denied vested retirement

benefits because the Plan did not count non-participating service at "a hotel property that Hilton

operated under a management agreement."  Plaintiffs do not identify those properties because it would require incorporating a list of nearly two dozen properties, with different time periods for periods of participation versus nonparticipation in the Plan.  *See* Ex. L (WHITEDEFS0018034–37).

Likewise, rather than more precisely define the heirs subclass, Plaintiffs have introduced greater confusion:  They eliminate the requirement that vested retirements benefits were denied on the "sole basis" that the claimants are not the surviving spouse of deceased vested participants.  This change—intended to shoehorn Peter Betancourt into the subclass he seeks to represent—would incorporate individuals who were denied for one or more reasons, and whose vested status would therefore depend on multiple merits determinations.

Plaintiffs' failure to appropriately revise their class and subclass definitions *on their third try* is not merely a drafting error, but a manifestation of the impracticability of class-wide treatment of disparate claims that do not challenge a common practice or policy but rather the *fact* of denial of benefits (for a myriad of individualized reasons).

## 2.      Plaintiffs' Class Definition Is Otherwise Unworkable

The proposed class is limited to individuals who "[s]ubmitted a claim for vested retirement benefits . . .  under the claim procedures ordered in . . . *Kifafi*."  Dkt. 83-2 (Proposed Order) at 1.  This aspect of the definition is also unworkable because it mischaracterizes the *Kifafi* record and contains no time limitation.  The only claims process ordered in *Kifafi* was to remedy violations in connection with the union vesting subclass at issue in that suit.  *See Kifafi v. Hilton Hotels Ret. Plan*, 736 F. Supp. 2d 64, 75–6 (D.D.C. 2010) ("Defendants shall administer a claims procedure that will notify ***all subclass members for whom union service has not been identified*** that they may submit a claim ***if they believe they have union service that is not reflected in the records***." (emphases added)).  The claims procedure was specifically ordered as

an alternative to Kifafi's request that the Court require the Plan to "credit[] participants with vesting credit for all years of non-participating service reflected in the Plan records (which would presumably include some union service and some other non-participating service)," as such proposal could "constitute an end-run around the Court's class certification ruling." *Id.* at 75.

Relatedly, Plaintiffs' class definition contains no time limitation, yet another reason that the Plan (or the Court) would be unable to determine who is a member of the proposed subclass. *See Alexander v. F.B.I.*, 971 F. Supp. at 612 ("[T]he suggested class definition provided by plaintiffs does not provide any relevant time frame, and thus would not limit the class to those who have typical complaints as the named plaintiffs.").

### B.  Plaintiffs' Non-Participating Properties Subclass Lacks Commonality

The commonality requirement of Rule 23(a)(2) requires that "there are questions of law or fact common to the class."  Fed. R. Civ. P. 23(a).  The Supreme Court has cautioned that this language is "easy to misread, since any competently crafted class complaint literally raises common questions."  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. at 349 (internal quotations and citations omitted).  Thus, properly understood, "[c]ommonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'"  *In re APA Assessment Fee Litig.*, 311 F.R.D. 8, 14 (D.D.C. 2015) (quoting *Wal–Mart Stores, Inc. v. Dukes*, 564 U.S. at 350).  "The class's 'claims must depend upon a common contention' that is 'capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.'"  *Id.*; *see also DL v. Dist. of Columbia*, 713 F.3d at 125 (vacating order certifying class).

This Court held that Plaintiffs' prior motion failed to demonstrate commonality in the non-participating properties subclass for two reasons.  First, "the recognition of an 'employer' under ERISA § 3(5) is a distinct legal inquiry, which requires an individualized assessment of

the management relationship in effect with each of the individualized non-participating properties at issue." Dkt. 81 at 12.  The Complaint identifies 12 of these properties by name, Dkt. 50 (Compl.) ¶¶ 65–66, and in total, nearly two dozen properties are implicated.  Second, Plaintiffs "seek[] to collapse distinct legal issues under ERISA into a single subclass," Dkt. 81 at 13, including claims for 10 individuals who claimed employment for periods undocumented in Hilton's records, Dkt. 50 (Compl.) ¶¶ 70–72, and 29 other claimants denied benefits for various reasons, including the absence of records documenting their "actual hours" worked or because they made insufficient earnings to qualify, *id.* ¶ 68.  Plaintiffs' renewed motion for class certification fails to cure either of these problems.

### 1.    Each Non-Participating Property Requires An Individualized Merits Determination

Under *Wal-Mart*, commonality is shown only where a plaintiff can identify a "uniform policy or practice that affects all class members."  *DL v. Dist. of Columbia*, 713 F.3d at 128 (citing *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. at 350).  Plaintiffs' assertion that there is a "common practice of not counting 'non-participating' service for vesting," Dkt. 83-1 (Mem. of Law) at 18-19, is a gross over-simplification.

In the administrative claims process, certain claimants, like Ms. Juneau, were informed that they would receive no vesting credit for "service at a non-participating property that is not a Related Company or Participating Employer."  *Id.* at 19.  Those rulings were consistent with the terms of the Plan, which defines "Hours of Service," to be counted for "Years of Vesting Service," to mean an hour for which an employee is paid for performing "duties for a Participating Employer or a Related Company," or for which an employee is paid "by a Participating Employer or Related Company" during a period in which no duties are performed due to vacation, holiday, illness, etc.  Ex. A (2012 Plan) at 9, 18.  "Participating Employer" and

"Related Company" are defined by the Plan.  *Id.* at 9, 13.  A Related Company includes a company within Hilton's control group.  *Id.*  In relevant part, a Participating Employer means an entity in which Hilton has an ownership interest and/or hotel management contract that "elects to participate" in the Plan.  *Id.* at 12-13.[2]

Because vesting credit for certain properties (and thus, certain proposed class members) depends on whether there was an "elect[ion]" to participate in the Plan, which in turn depends, in many cases, on unique management contracts, Plaintiffs cannot point to a single, uniform practice with respect to those properties that the Plan has determined were "non-participating." Plaintiffs' counsel has been provided, multiple times, with the list used by the Committee to make vesting determinations, including as part of Defendants' initial disclosures in this case.  *See* Ex. L (WHITEDEFS0018034–37), as well as supporting documentation, i.e., historical documents regarding participation of certain relevant employers in the Plan and appendices to restatements of the Plan identifying participating employers as of certain dates throughout the Plan's history, *see* Lacy Decl. ¶¶ 2-3.[3]

---

[2]      The Plan defines "Participating Employer" to mean "the Company and any Participating Affiliate (other than a Related Company) that has elected to participate in the Plan."  *Id.* at 13. "Participating Affiliate" means "any Hilton Property that, by resolution of its board of directors . . . elects to participate in this Plan."  *Id.* at 12.  A "Hilton Property" is defined as "each business entity (including a Related Company of the Company), as designated from time to time by the Plan Sponsor, in which the Company, directly or indirectly, has an interest or with which it has a contractual relationship for hotel management."  *Id.* at 9.  As this Court recognized in its March 31, 2019 decision, under the Plan, a "Related Company" is one (not the only) category of "Hilton Property."  Dkt. 64 at 9.

[3]      Plaintiffs argue that this list differs from a list describing whether (and for what time period) non-participating properties were or were not "Related Companies."  Dkt. 83-1 (Mem. of Law) at 26-27.  But, per the Plan terms described above, a property is only non-participating if it is associated with neither a Related Company nor Participating Employer.

The fact that certain claimants were denied on the "same ground"—service at a non-participating property—is not a common issue appropriate for class-wide treatment. To prevail on behalf of all subclass members, Plaintiff would need to show, for each and every property, that Defendants' determination that the property was non-participating for the relevant time period was, in fact, contrary to the Plan.  Thus, this Court could not "resolve an issue that is central to the validity of each one of the claims"—i.e., whether a property was run by a "Participating Employer" or "Related Company" and should therefore be counted as "participating"—"in one stroke."  *DL v. Dist. of Columbia*, 713 F.3d at 125 (quoting *Wal-Mart, Inc. v. Dukes*, 564 U.S. at 350).

*Holt v. Winpisinger*, 811 F.2d 1532 (D.C. Cir. 1987), is not to the contrary.  While Plaintiffs insist *Holt* requires counting "all" non-participating service, in fact, *Holt* decided only whether an employee's first year of employment with the Plan provider, during which she was classified by the employer as an independent contractor, should be counted toward vesting.  *Id.* at 1537.  Neither *Holt* nor *Kifafi* ruled on when a Plan participant's employment by someone other than the Plan provider must be counted under ERISA or any other authority.  This issue must be resolved, if at all, on an individual basis for each of the nearly two dozen non-participating properties at issue.

Plaintiffs' renewed motion, like its prior filing, cites to language in just five management agreements produced by Hilton in support of its argument that Hilton was the "employer" for all non-participating properties.  These agreements cover just a subset of the universe of "non-participating properties" encompassed in its proposed subclass,[4] and therefore do not

---

[4]     Plaintiffs implicitly defend their citation to a small sample size by stating "they have not yet been permitted [to] conduct merits discovery."  Dkt. 83-1 (Mem. of Law) at 23.  In fact,

demonstrate a single common issue that can be decided once, and for all subclass members.  As this Court already held, Plaintiffs' citation to language in a selection of management agreements "only supports the conclusion that an individualized assessment of the various non-participating properties, including their operative management agreements, is needed to resolve the various class members' claims embedded within Plaintiffs' non-participating service subclass." Dkt. 81 at 13.

Plaintiffs' renewed motion does not advance any new arguments, other than citing additional cases decided in the Fair Labor Standards Act ("FLSA") context and isolated statements made by Hilton in its 10-K filings.  Neither supports the required finding of "commonality."

First, the FLSA cases are inapposite, as the definition of "employer" under FLSA is irrelevant to the question whether Hilton must provide vesting credit for ERISA purposes to individuals at non-participating properties.  The Plan only counts service at a "Participating Employer," which in turn means "the Company and any Participating Affiliate (other than a Related Company) that has elected to participate in the Plan."  Ex. A (2012 Plan) at 13.  The question whether an election to participate in the Plan has occurred, and for what time period, must be answered for each property and time period at issue.  In any event, even the FSLA cases illustrate that the determination whether an entity is an "employer" under that legislation is a fact-specific inquiry rather than a legal question that can be answered universally on a class-wide basis.  *See, e.g.*, *Brennan v. Arnheim & Neely, Inc.*, 410 U.S. 512, 513-14 (1972) ("maintenance, custodial, and operational workers at the buildings managed by the respondent [real estate

---

Plaintiff represented to the Court that they were ready to move for class certification without conducting any discovery.

management company] were 'employees,' and that the respondent was an 'employer'" under the FLSA where "respondent conducts the hiring, firing, payroll operations, and job supervision of those employed in the buildings," "fixes hours of work," "negotiates rates of pay and fringe benefits," and "engages in collective bargaining on behalf of the owners where the building employees are unionized").

Hilton's high-level description of its employees in securities filings and its management relationships does not support Plaintiffs' assertions of commonality.  To the contrary, Hilton's statement that "We *employ or manage* more than 169,000 individuals at our managed, owned and leased hotels and corporate offices," Dkt. 83-19 at 24 (emphasis added), underscores that Hilton's status as an employer for ERISA or other purposes varies by property.  *See also id.* at 12.

### 2. The Non-Participating Properties Subclass Contains Disparate Claims Based on Distinct Alleged Violations of Law

Throughout this case, Plaintiffs have amended their proposed class definition to obfuscate distinct issues that they have lumped together.  As with its prior motion, Plaintiffs' second renewed motion asserts that "[a]t least 135 class members" had vesting claims denied because some portion of their claimed service was with a property that did not participate in the Plan. Dkt. 83-2 (Renewed Mot.) at 9.  However, as the Court has already recognized, these 135 individuals were in fact comprised of at least *two* groups: those whose claims were denied because service at non-participating property or properties was not counted for vesting purposes, and those who were denied benefits because a 190-hour equivalency was not applied to certain non-participating service.  *See* Dkt. 81 (Decision) at 13; Dkt. 44-1 (Initial Class Cert. Mot.) at 7–8 (asserting that each group consisted of (1) Ms. Juneau and "106 other individuals," and (2) Ms. Juneau and "28 other vesting claimants"); *see also* Dkt. 74-2 (First Renewed Mot.) at 18 n.6

(acknowledging 29 class members were denied "without referring to 'non-participating' service as such, but because of the absence of actual hours records' or because the 'Plan's records indicate that you had insufficient earnings'").  The proposed subclass still includes those whose service at non-participating properties was not counted at all and those who contend the "proper equivalencies" were not applied—distinct issues entirely.[5]

This Court therefore ruled already that the proposed non-participating subclass "encompasses a variety of alleged ERISA violations under the rubric of a [single] violation," and by "packing 'multiple, disparate failures to comply' with ERISA into a single subclass, further vitiates the existence of commonality under Rule 23."  *See* Dkt. 81 at 13 (quoting *Kifafi v. Hilton Hotels Ret. Plan*, 189 F.R.D. 174, 179 (D.D.C. 1999) (declining to certify "service-counting" class for alleged "fail[ure] to credit all years of service, including years in unionized employment")).  Rather than narrow the subclass appropriately, Plaintiffs' renewed motion doubles down, asserting their "position" that "the common issue among everyone in this subclass, including those 29 individuals [denied due to absence of records of actual hours or sufficient earnings] is that 'non-participating' employment has not been counted for vesting." Dkt. 83-1 (Mem. of Law) at 27-28.  That is precisely the problem: Plaintiffs' use of a common label of "non-participating" obscures that the Court will need to answer multiple questions on the merits: whether each property characterized as "non-participating" by Hilton was, in fact, a "Related Employer," whether the Plan can deny vested retirement benefits when it lacks records

---

[5]     Plaintiffs' initial proposed class certification order was transparent about these distinct issues.  *See* Dkt. 44-15 (Proposed Order) ¶ 2(c)(2) (seeking classification with respect to alleged failures to "recogniz[e] Hilton properties as 'Related Companies' whether or not they participate in the Plan" or to "apply the proper equivalencies for non-participating service").

of actual hours, and whether the Plan can deny vested retirement benefits when its records indicate insufficient earnings.

Further, some of the proposed subclass members were denied for multiple reasons now challenged by Plaintiffs in this suit (e.g., failure to credit nonparticipating property service *and* use of the elapsed time method for pre-1976 service) and require winning on both claims to vest. Thus, on its face, Plaintiffs' motion fails to identify a "common contention" that will generate "common *answers* apt to drive the resolution of the litigation" with respect to this multifaceted claim.  *DL v. Dist. of Columbia*, 713 F.3d at 125 (emphasis in original).

### C.    Plaintiff Peter Betancourt Remains Atypical Of The Proposed Heirs Subclass

Rule 23(a) requires, in part, that "the claims or defenses of the representative parties are typical of the claims or defenses of the class" and that the proposed class representatives "will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(3),(4); *Ballard v. Branch Banking & Tr. Co.*, 284 F.R.D. 9, 11 n. 5 (D.D.C. 2012).  Generally, "a class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members."  *Falcon*, 457 U.S. at 156 (quoting *East Texas Motor Freight System, Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977)).

The typicality requirement asks whether "each class member's claim arises from the same course of events that led to the claims of the representative parties and each class member makes similar legal arguments to prove the defendant's liability."  *Healthy Futures of Texas v. Dep't of Health and Human Services*, 326 F.R.D. 1, 7 (D.D.C. 2018) (internal quotation omitted).  This Court held in its October decision that "Mr. Betancourt's claim is atypical on its face":  While Plaintiffs then sought to certify a subclass of purported heirs denied benefits "on the *sole* basis that the claimants are not the 'surviving spouse' of deceased vested participants,"

22

Mr. Betancourt's claim was denied also because it was untimely, and his deceased father died without commencing retirement benefits.  Dkt. 81 at 15-16.

Plaintiffs' renewed motion addresses this Court's ruling only cosmetically, by striking the word "sole" from its proposed class definition and expanding it to include anyone who was denied benefits because he or she is not the surviving spouse of a Plan participant, *among other reasons*.  As discussed *supra*, this change renders the proposed subclass fail-safe and unworkable.  Moreover, Betancourt remains atypical of the subclass he purports to represent:  "A claim is not typical when the representative parties are subject to unique defenses or when it is predictable that a major focus of the litigation will be on an arguable defense unique to the named plaintiff."  *Fleck v. Cablevision VII, Inc.*, 763 F. Supp. 622, 625 (D.D.C. 1991) (internal quotation omitted).[6]  Betancourt's unique claims history renders his claim dissimilar to those of other heirs who might comprise the subclass, and subjects him to unique, distracting defenses.

### 1.    Plaintiff Peter Betancourt's Claim Is Atypical Because His Father Died After Reaching Retirement Age and Left Behind a Surviving Spouse

Plaintiff Betancourt asserts two claims: for "back benefits, with interest, that Hilton should have paid his father" from the time he turned 65 through his death at age 71, and for "monthly back benefits that Hilton should have paid his mother . . . , as the surviving spouse of

---

[6]      The fact that a named plaintiff may be subject to unique defenses also negates a finding of adequate representation. *Kas v. Fin. Gen. Bankshares, Inc.*, 105 F.R.D. 453, 462 (D.D.C. 1984).  *See also Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 903 F.2d 176, 180 (2d Cir. 1990) (*abrogated on other grounds by Microsoft Corp. v. Baker*, 137 S. Ct. 1702 (2017)) ("Regardless of whether the issue is framed in terms of the typicality of the representative's claims . . . or the adequacy of its representation . . . there is a danger that absent class members will suffer if their representative is preoccupied with defenses unique to it."); *J.H. Cohn & Co. v. Am. Appraisal Assocs., Inc.*, 628 F.2d 994, 999 (7th Cir. 1980) ("[T]he presence of even an arguable defense peculiar to the named plaintiff or a small subset of the plaintiff class may destroy the required typicality of the class as well as bring into question the adequacy of the named plaintiff's representative.").

his father." Dkt. 50 (Compl.) ¶¶ 77A & 77B.  He is not similarly situated to professed heirs of a

Plan participant who were denied relief because the deceased Plan participant died without

leaving behind any surviving spouse and the Plan does not provide for benefit payments in those

circumstances.  Yet that is the crux of Plaintiffs' amended claim and proposed subclass.  *See*

Dkt. 50 (Compl.) ¶ 11(c)(3) (seeking to certify a class of claimants whose "claims to

back/retroactive benefits" were denied "solely on the ground that the claimant is 'not the

surviving spouse'"); Dkt. 83-2 (Proposed Order) ¶ 2(c)(3) (seeking to certify a subclass with

respect to "[d]enial of retroactive/back retirement benefit payments to heirs and estates on the

basis that the claimants are 'not the surviving spouse' of deceased vested participants").  Simply

put, Betancourt is dissimilar to claimants who seek benefits on behalf of a Plan participant

*without* a surviving spouse, because his father, Pedro Betancourt, *did* have one.

Moreover, Plaintiff Betancourt's claim denial letter explained that during the relevant

time period the Plan required his father "to commence his[] retirement benefits, at the latest, on

the first day of April following the later of the calendar year in which he[] attained age 70½ and

his retirement."  *See* Ex. I at 3.  Plaintiff Betancourt's assertion that his father was owed back

benefits beginning with his retirement at age 65 ignores that he could have made a conscious

decision over 35 years ago not to commence benefits at the earliest possible date.

### 2.    Plaintiff Betancourt Failed to Exhaust Administrative Remedies

At the time Plaintiff Betancourt filed his administrative claim, he referenced his father,

Pedro Betancourt, and identified himself as Pedro's son.  Ex. H (Claim Form).  Plaintiff

Betancourt's claim denial letter specifically informed him that his claim was being denied

because "the applicable Plan document does not provide for a death benefit to anyone other than

the surviving spouse."  Ex. I (Ltr. from C. Young to P. Betancourt, dated June 3, 2015).  At no

time during the administrative claims process did Plaintiff Betancourt alert Defendants to the fact

that his father left behind a surviving spouse; nor did he raise the argument that his mother was owed, and never received, a spousal benefit.  When he exercised his right to appeal, he again failed to alert Hilton to the existence of a surviving spouse (much less claim to be acting on behalf of a surviving spouse).  *See* Ex. J (Ltr. from S. Bruce dated July 22, 2015).  His failure to alert Defendants to his argument that his mother was owed, and never received, a spousal benefit renders him atypical, as some or all of his claims are subject to dismissal for failure to exhaust administrative remedies.

"It is well established that, barring exceptional circumstances, plaintiffs seeking a determination pursuant to ERISA of rights under their pension plans 'must . . . exhaust available administrative remedies under their ERISA-governed plans before they may bring suit in federal court.'" *Commc'ns Workers of Am. v. Am. Tel. & Tel. Co.*, 40 F.3d 426, 431 (D.C. Cir. 1994) (quoting *Springer v. Wal–Mart Assocs. Group Health Plan*, 908 F.2d 897, 899 (11th Cir. 1990)); *see also Kifafi v. Hilton Hotels Ret. Plan*, No. 98-cv-1517 CKK, 2004 WL 3619156, at *1 (D.D.C. Sept. 27, 2004) (where proposed intervenors "failed to exhaust the internal claims procedures available to them under the Hilton Retirement Plan," they could not "adequately represent the proposed service counting class").  Mere submission of an administrative benefits claim does not satisfy the exhaustion requirement if, like here, a plaintiff raises some, but not all, potential claims for relief: Any "distinct issue[s]" raised for the first time in litigation are waived. *Zalduondo v. Aetna Life Ins. Co.*, 845 F. Supp. 2d 146, 153 (D.D.C. 2012) (holding plaintiff "was required to seek an administrative resolution of this distinct issue [for improper denial of coverage] before asserting it as a claim in this Court, and to allege facts in her Amended Complaint that, if true, would prove that she did so").  *See also Becker v. Weinberg Grp., Inc. Pension Tr.*, 473 F. Supp. 2d 48, 60 (D.D.C. 2007) (where plaintiff chose to contest some but not

all decisions by an ERISA plan administrator, "despite an express invitation to do so 'at any time,' she failed to exhaust her administrative remedies"). *Compare Tesoro Ref. & Mktg. Co. v. F.E.R.C.*, 552 F.3d 868 (D.C. Cir. 2009) (new arguments challenging agency order were not administratively exhausted, precluding consideration of arguments on judicial review, where company had failed to raise arguments during administrative process).

To permit plaintiffs like Mr. Betancourt "who have not exhausted their administrative remedies to proceed with their claims would . . . burden this Court with making an independent, *de novo* determination of the claimants' eligibility for benefits without the benefit of an administrative record or even the certainty that these plaintiffs are actually the legal beneficiaries of the [Plan participants] under whom they claim." *Preston v. Am. Fed'n of Television & Radio Artists Health Fund*, No. 90 Civ. 7094(RJW), 2002 WL 1009458, at *5 (S.D.N.Y. May 16, 2002), *aff'd*, 63 F. App'x 536 (2d Cir. 2003) (dismissing claim by plaintiffs for life insurance proceeds).  Applying the exhaustion requirement here is particularly appropriate, as Plaintiff Betancourt's initial claim form and appeal letter identified him as the "son" of Pedro Betancourt but did not identify his mother nor include any argument or evidence establishing that he was the appropriate beneficiary of Pedro's Plan benefits or the lawful heir of either of his parents' estates.  *Compare* Dkt. 50 (Compl.) ¶¶ 77A-77B (alleging Plaintiff Betancourt is "the only child and sole heir of Pedro Betancourt" and "the sole heir of his mother," Delia, "the surviving spouse of Pedro").

### 3.    Plaintiff Betancourt's Claim Is Untimely

Plaintiff Betancourt's claim is also subject to a unique defense because it is untimely as a matter of law.  Plaintiffs allege that Pedro Betancourt's employment with Hilton terminated when he "reached age 65 in February 1979"; that he later "died in 1985 at the age of 71"; and that he left behind a surviving spouse who passed away in 1998.  Dkt. 50 (Compl.) ¶¶ 76, 76B.

Plaintiff Betancourt's claims are time-barred by any conceivable limitations period.[7]

Accordingly, the Plan also properly denied Plaintiff Betancourt's claim for benefits on the

ground that it was untimely. Ex. I (Ltr. from C. Young to P. Betancourt, dated June 3, 2015).

Plaintiffs allege that Plaintiff Betancourt's claim was timely in light of the "discovery

rule," which dictates that the limitations period begins to run when "the plaintiff discovers, or

with due diligence should have discovered, the injury that is the basis of the action." *Virtue*, 997

F. Supp. 2d at 16 (quoting *Connors*, 935 F.2d at 341). In the ERISA context, this rule has been

interpreted to mean a claim accrues only upon a "clear repudiation" of the plaintiff's claim for

benefits. *Id.* Plaintiffs allege that Pedro Betancourt, the Plan participant, "was never notified of

the denial or grant of any vested retirement benefit." Dkt. 50 (Compl.) ¶ 76B; *see also id.* ¶ 85B

(alleging tolling of the statute of limitations "based on the absence of any 'clear repudiation' of

vested rights"). This tolling theory assumes that the nonpayment of benefits beginning at the age

of 65 was wrongful. But, as Plaintiff Betancourt's claim denial letter explained, the Plan

required his father "to commence his[] retirement benefits, at the latest, on the first day of April

following the later of the calendar year in which he[] attained age 70½ and his retirement." *See*

Ex. I at 3. Thus, Pedro Betancourt may have chosen to delay commencement of retirement

benefits, as authorized under the Plan, to receive a higher benefit amount. Forty years after his

---

[7]      In *Kifafi*, the parties "agree[d] on the appropriate limitations period (three years), as well
as the appropriate standard for determining when the limitations period begins (the discovery
rule)." *Kifafi v. Hilton Hotels Ret. Plan*, 701 F.3d 718, 728 (D.C. Cir. 2012). Under applicable
law, the same limitations period should apply here. ERISA does not contain a limitations period
for benefits claims. Accordingly, courts "borrow the most closely analogous statute of
limitations from the state in which the court sits." *Connors v. Hallmark & Son Coal Co.*, 935
F.2d 336, 341 (D.C. Cir. 1991). "Consistent with this thinking, courts in this district have
applied the District of Columbia's three-year statute of limitations for breach-of-contract actions
to ERISA benefits suits." *Virtue v. Int'l Bhd. of Teamsters Ret. & Family Prot. Plan*, 997 F.
Supp. 2d 10, 15–16 (D.D.C. 2013), *aff'd*, 584 F. App'x 3 (D.C. Cir. 2014) (citations omitted).

death, Plaintiffs do not offer—and Defendants are unaware of—any evidence ruling out this possibility.

Moreover, receipt of a formal denial of benefits is not required in order for the limitations period to commence.  *Virtue*, 997 F. Supp. 2d at 16; *see also Witt v. Metropolitan Life Ins. Co.*, 772 F.3d 1269, 1275-76 (11th Cir. 2014) (rejecting argument that limitations period begins when employer issues "final, conclusive, and written decision").  To the extent Plaintiffs succeed in proving Pedro Betancourt should have received retirement benefits at age 65, the continuing nonpayment of benefits to Pedro Betancourt during his life constitutes a "clear repudiation" of any benefits owed to him.  *See Witt*, 772 F.3d at 1276–78 (finding ERISA benefit claim untimely where employer's "conduct . . . demonstrated a clear and continuing repudiation of [plaintiff's] rights by failing to provide him any monthly benefits after April 30, 1997").  Simply put, due to his failure to receive benefits upon terminating his employment at age 65, Pedro Betancourt would have had "reason to know that the claim administrator has clearly repudiated the claim or amount sought," and there is no evidence supporting application of tolling here.  *Witt*, 772 F.3d at 1276.[8]

Plaintiff Betancourt's claim with respect to benefits owed to his mother as a surviving spouse, who died in 1998, is also untimely.[9]  Likewise, there is neither factual allegations nor

---

[8]     While Plaintiffs purport to rely on it, *Intel Corp. Inv. Policy Comm, v. Sulyma*, 140 S. Ct. 768 (2020), is irrelevant, as it interprets the ERISA statute of limitations applicable to *breach of fiduciary duty* claims, 29 U.S.C. § 1113(2), which applies a three-year statute of limitations where a plaintiff has "actual knowledge of the breach or violation."   The standard for tolling the statute of limitations relevant to *benefit* claims—three years in this District, *see supra* n.7— requires the absence of a "clear repudiation" of benefits.  *See* Dkt. 50 (Compl.) ¶ 85B (alleging tolling of the statute of limitations "based on the absence of any 'clear repudiation' of vested rights").

[9]     Section 4.7 of the Plan provides, in relevant part, that where a vested participant dies on or after a date on which he could have retired, "[p]ayment of the Surviving Spouse Benefit shall commence on the first day of the month coinciding with or next following the Participant's date

evidence supporting a tolling theory as to any benefit owed to Delia Betancourt.  She, like her husband, may have chosen not to pursue spousal benefits at the time of her husband's death or thereafter for a host of reasons other than ignorance of her potential rights.  Regardless, "a reasonable widow in [her] shoes would have inquired into the extent of all available benefits at the time of her husband's death . . . or at least within the statute of limitations period." *Thompson v. Cont'l Cas. Co.*, 602 F. Supp. 2d 943, 946 (N.D. Ill. 2009) (internal footnote omitted)); *see also DiMarco v. Mich. Conference of Teamsters Welfare Fund*, 861 F. Supp. 599, 615 (E.D. Mich. 1994) ("In the end, Plaintiff's reasons for not receiving Mr. DiMarco's death benefits were . . . caused by her own failure to exercise her rights . . . .").

## II. Plaintiffs Do Not Meet Their Burden Under Rule 23 for Additional Reasons Not Addressed in the October 2020 Decision

### A. None of the Proposed Class Claims Meets the Commonality Requirement of Rule 23(a)

Plaintiffs are unable to show that their proposed subclasses meet the commonality requirements of Rule 23(a)(2) because any "common questions" raised by Plaintiffs' motion "must be answered separately for each [class member] based on individualized questions of fact and law, and the answers are unique to each [class member's] particular situation." *Jamie S. v. Milwaukee Pub. Sch.*, 668 F.3d 481, 498 (7th Cir. 2012).  Plaintiffs' argument that commonality is satisfied relies principally on the observation that proposed class members received "form letters" from the Committee denying vesting claims using some of the same language.  *E.g.*, Dkt. 83-1 (Mem. of Law) at 4, 17, 29-30, 32, 34.  But that is far from alleging, as required, "that all members of the putative class were subject to the same set of objective procedures or policies."

---

of death."  Ex. A (2012 Plan) § 4.7(a).  It has been over 30 years since Pedro Betancourt died and the Surviving Spouse Benefit, if any, was payable.

*Campbell v. Nat'l R.R. Passenger Corp.*, 311 F. Supp. 3d 281, 316 (D.D.C. 2018).  As detailed *supra*, the named Plaintiffs each submitted vesting claims through the Plan's administrative claims process, where their claims were individually evaluated.  The fact that the reason for the denials can be grouped into high-level categories—i.e., the method for calculating pre-ERISA service, not counting employment at one of nearly two dozen "non-participating properties," or denying claims by a non-Plan participant who was also not a surviving spouse—does not mean each subclass presents sufficiently common issues.   Templates for denial letters promote efficient and timely disposition of a large number of claims, and Plaintiffs do not and cannot argue that their use was improper or that they failed to appropriately advise claimants of the reasons their claims were denied or their rights for further relief.

Plaintiffs here challenge not a common policy or practice but a wide range of specific decisions by Defendants—decisions based on specific contractual arrangements; the election (or non-election) by nearly two dozen properties to participate in the Plan; judgments about the sufficiency of the factual basis for the claim, including proof of employment, and proof of heir status; and other issues that required individual resolution.  The absence of "common *proof* leading to a common *answer* to the common *question at the heart of each plaintiff's claim*" distinguishes this case from those on which Plaintiffs rely.  *Brown v. Dist. of Columbia*, 928 F.3d 1070, 1080 (D.C. Cir. 2019) (emphasis in original).

## 1.    The Proposed Subclass of Non-Surviving Spouses Presents No Common Question Regarding Heirs' Entitlement to Relief to Benefits Allegedly Owed to Deceased Plan Participants

The third subclass, corresponding to Claim Three, has no defining characteristic other than the fact that the claim was denied "on the basis" that the individual who submitted the claim is not a surviving spouse of a Plan participant.  That criterion has to do with the particular *claimant's* entitlement to benefits in his or her capacity as a professed heir, not whether or not

the Plan participant was vested.  Whether or not a professed heir of a deceased Plan participant is entitled to receive benefits is thus a highly individualized issue.

The Plan provides a "Surviving Spouse Benefit" for "a vested Participant" who dies prior to retirement that is payable only to the "Surviving Spouse."  *See* Ex. A (2012 Plan) § 4.7; *see also id.* at Article I (defining "Surviving Spouse").  The Plan does not provide for any other death benefits for participants who die prior to commencing a claim for retirement benefits, as this Court recognized in its motion to dismiss decision.  *See* Dkt. 21 at 5 (stating that the Plan authorizes payment to non-participants only in the case of surviving spouses or where the participant designates a beneficiary after electing to receive benefits in the form of an annuity).

Plaintiff Betancourt therefore amended his proposed claim, and corresponding subclass, to seek purported "retroactive" or "back benefits" allegedly owed under the remedial order in *Kifafi **or*** the terms of the Plan.  Dkt. 50 (Compl.) ¶¶ 77, 77A-D.  As this Court has acknowledged, its remedial orders in *Kifafi* were "made in the context of the narrow claims certified in *Kifafi*," and are therefore "not determinative of whether [a claimant] is entitled to benefits on a claim not adjudicated in that litigation."  Dkt. 21 at 4.  In other words, those rulings concerned remedial payments owed to deceased participants who qualified for relief under *Kifafi*'s class rulings.  *Kifafi* did not change the Plan's rules regarding payment of death benefits in the ordinary course.  Presumably to extend the subclass to include individuals who cannot allege a connection to *Kifafi*, the Amended Complaint also argues that Section 4.11 of the Plan, "[i]ndependent" of *Kifafi*, requires "retroactive" benefits where the Committee is unable to locate the appropriate participant or beneficiary to whom payment is due but later locates that individual.  Dkt. 50 (Compl.) ¶ 77C.  Thus, even crediting Plaintiffs' allegations, the proposed subclass of claimants who are "not surviving spouses" poses separate questions that will not

generate answers common to all, as some may (or may not) be claiming benefits that should have been paid in *Kifafi*, while others may be relying solely on provisions of the Plan and applicable law.  Thus, Plaintiffs' conclusory assertion that denial of retroactive/back benefits was a "common practice" is insufficient.  Dkt. 83-1 (Mem. of Law) at 32.

Indeed, in permitting Plaintiffs to amend their complaint to reassert Mr. Betancourt's own claim, the Court acknowledged a number of factual disputes between the parties as to whether Mr. Betancourt himself has a claim, including, "*inter alia*, whether 'Pedro Betancourt, who was [Plaintiff] Betancourt's father, became "newly vested" as a result of the vesting claim process ordered in the Kifafi litigation,' such that Pedro Betancourt allegedly now would be entitled to benefits that he previously could not have claimed"; and "whether Plaintiffs must allege in the Second Amended Complaint that Plaintiff Betancourt is the executor or an analogous official representative of his deceased father's estate—or rather, the substitute representative in place of his deceased mother—in order to qualify as a beneficiary entitled to any 'newly vested' benefits owed to his father under *Kifafi*."  Dkt. 49 at 2 (quoting the parties' motion papers).  These unique, and dispositive, factual issues—whether the deceased participant was newly vested because of *Kifafi*, whether the claimant seeking benefits is, in fact, authorized by law as the appropriate heir, and whether the heir's claim is barred by applicable statutes of limitation— preclude the generation of "common answers" or a one-size-fits-all legal ruling.  Many of the proposed subclass members seek benefits as professed heirs (but not surviving spouses) of Plan participants who died many years—even decades—ago.  Their entitlement to benefits requires at least two or three layers of individualized determinations:  whether the relevant Plan participant was entitled to benefits, under *Kifafi* or otherwise, whether the claimant is the lawful heir to the

Plan participant's estate (and if so, if there are others too), and whether the claim remains timely in light of the date benefits were owed to the Plan participant and/or the date of death.

Finally, Plaintiffs seek to prove a "common practice" to deny claims by pointing to (1) internal Plan worksheets showing "claimant is not the surviving spouse" as a potential defense to vested benefits, and (2) a Plan flowchart produced in Defendants' Initial Disclosures that "provides that retroactive benefits will be payable 'to the participant's estate' or to the 'spouse's estate' if there was a surviving spouse at death." Dkt. 83-1 (Mem. of Law) at 31 (quoting Dkt. 83-16 (Pls. Ex. 10) and 83-17 (Pls. Ex. 11)). The fact that internal documents support the Plan's straightforward interpretation of the Plan not to award benefits to non-surviving spouses does not create a common issue. As for the flowchart document, Plaintiffs mischaracterize what it is and what it was used for. It states that it "explains the rules for paying benefits due as a result of the *Kifafi* litigation. ***It does not address benefits payable in the ordinary course of administering the Plan absent the* Kifafi *litigation*.**" Dkt. 83-17 at WHITEDEFS0001221 (emphasis added). The flowchart expressly provides that, if the participant did not newly vest under *Kifafi*, "then no benefits are payable." *Id.* at WHITEDEFS0001222. Plaintiffs fail to show evidence that the Plan is failing to comply with that policy, which was also ordered by the Court in *Kifafi*. Plaintiffs themselves cite as an example a claimant who was newly vested due to *Kifafi* and whose benefits were paid to his son and heir. Dkt. 83-1 (Mem. of Law) at 29. In any event, this purported "common policy" does not apply across the board, as Plaintiffs have not shown, and cannot show, that all their proposed class members are seeking benefits with respect to participants who were "newly vested" in *Kifafi* as one of the limited subclass members certified in *Kifafi*.

**B.    Named Plaintiffs' Claims Are Not Typical of the Class and Named Plaintiffs Are Not Adequate Representatives Under Rule 23(a)**

  **1.    The Court's March 31, 2019 Decision Cast Significant Doubt on Plaintiffs' Claims**

On March 31, 2019, this Court denied Plaintiffs leave to amend their Complaint for the third time to add additional allegations, and a named plaintiff, related to the participating properties subclass.  In denying leave, the Court held that "Plaintiffs' presently operative . . . complaint[] propose[s] a subclass definition that seeks to rely on something that purportedly was established in *Kifafi*, but was not."  Dkt. 64 at 8.  For this reason, the Court held that adding another named plaintiff would be futile and called into doubt its prior decision upholding Ms. Juneau's claim.  *See id.* at 7 ("Earlier in this case, the Court [] found that Plaintiffs had stated a claim with respect to the proposed 'non-participating service' subclass. . . . A closer examination now casts doubt on that conclusion.")

Even a cursory review of Plaintiffs' renewed motion for class certification makes clear that Plaintiffs likewise—and erroneously—ground their additional claims in *Kifafi*.  *See* Dkt. 83-1 (Mem. of Law) at 15 ("Valerie White's vesting claim presents the kind of hanging 'fractional year' with no application of ERISA's 'hours of service' equivalencies to resolve whether the fractional year should constitute a 'year of service' under ERISA which this Court rejected in *Kifafi*."); *id.* at 30 ("Class counsel submit that the payments to Mr. Betancourt of the back benefits due both his parents from his father's vested right are required by this Court's rulings in *Kifafi*.").  However, for these claims, as the Court decided with respect to the non-participating subclass, "the specific issue underlying the claim at issue was not decided in *Kifafi*."  Dkt. 70

34

(Dec. 19 Order) at 7.[10]  Defendants therefore intend to seek dismissal of the named Plaintiffs'

claims at the earliest opportunity afforded by the Court.

> **2.      Ms. White's Claim Is Subject to a Unique Defense Because Her Claim Is Untimely Under the Terms of the Plan**

The Plan provides a 180-day limitations period "following a final decision on the claim

for benefits," to be applied "in any forum where a claimant initiates such suit or legal action."

Ex. A (2012 Plan) § 7.4.  The final decision letter sent to Ms. White on July 21, 2015,

specifically advised that she must bring any lawsuit within 180 days:

> The administrative process is complete.  You now have the right to bring a civil action under Section 502(a) of ERISA in federal court if you choose to further pursue this claim.  Please be aware that the Plan requires that any such suit be filed within 180 days of the date of this letter.

Ex. C.  Thus, the deadline for Ms. White to file a lawsuit was <u>January 17, 2016</u>.  This lawsuit

was not filed until May 6, 2016, rendering her claim untimely by almost four months.  Under

controlling Supreme Court precedent, a reasonable contractual limitations period in an ERISA

plan is enforceable.  *Heimeshoff v. Hartford Life & Accident Ins. Co.*, 134 S. Ct. 604, 610 (2013).

At least one court has already held that Hilton's 180-day contractual limitations period was

reasonable.  *See Horton v. Hilton Ret. Plan*, No. CV 17-9015, 2017 WL 5992096, at *3 (E.D. La.

Dec. 4, 2017) (finding Hilton's limitations period reasonable as it was "two months longer than

---

[10]      The *Kifafi* court (1) declined to rule whether use of an elapsed time method for service predating ERISA's enactment in 1976 is appropriate, *see Kifafi v. Hilton Hotels Ret. Plan*, 826 F. Supp. 2d 25, 36 (D.D.C. 2011) ("Plaintiff's claim that Defendants are improperly crediting pre-ERISA vesting service does not fall within these class claims, and therefore the Court finds that it is not appropriate to address this issue in its remedial order."); and (2) never addressed—let alone decided—whether purported beneficiaries of a deceased Plan participant other than a surviving spouse are entitled to vested benefits, *see id.* at 43–44 (where "[t]he parties agree that surviving spouses of participants who died after retiring should be awarded increased benefits in a lump sum payment," deciding the limited question of "how these lump sums should be calculated").

the 120-day period previously endorsed and enforced by the Fifth Circuit," it required "prompt notification to a claimant of the decision on appeal," and "the period did not begin to run until after the exhaustion of Hilton's internal claims review process").

At the motion to dismiss stage, the Court did not challenge the validity of this provision, but held that dismissal of Ms. White's claims was "inappropriate at this procedural juncture" in light of Plaintiffs' allegations that the 180-day contractual period should be tolled, reasoning that "the propriety of tolling will turn on the factual circumstances underlying these allegations." Dkt. 21 at 4.  Ms. White's unique statute of limitations defense renders her atypical, as she is "likely to spend a great deal of effort" in arguing against the defense and "expend time and resources on a theory that does not pertain to class members with timely claims."  *McIntyre v. Household Bank*, No. 02 C 1537, 2004 WL 2958690, at *7 (N.D. Ill. Dec. 21, 2004) ("Even an arguable defense that is peculiar to only a small subset of the class is enough to destroy typicality under Rule 23.").

### 3.    Plaintiff Eva Juneau's Claim Is Not Typical Of The Proposed Non-Participating Property Subclass

The proposed subclass for claimants whose vesting claims were denied because no vesting credit was awarded for non-participating properties lacks typicality as well as commonality.  Indeed, "[t]he commonality and typicality requirements . . . tend to merge," with "[b]oth serving as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence."  *Daskalea v. Washington Humane Soc.*, 275 F.R.D. 346, 358 (D.D.C. 2011) (quoting *Falcon*, 457 U.S. at 157–58 n. 13).

Plaintiffs have acknowledged the risk that the Court will find Ms. Juneau's claim is not

typical.  Their initial class certification motion argued that "Ms. Juneau's claim could be seen as

somewhat different from the people who worked at Hilton properties like the Atlanta Hilton,"

because "[t]he Reno Hilton where Ms. Juneau worked was not a Hilton Property prior to August

1, 1992" whereas, Plaintiffs contend, the Atlanta Hilton "was a 'Hilton Property' for a long

time."  Dkt. 44-1 (Mot.) at 18 n.4.[11]  Plaintiffs' renewed motion again suggests "Plaintiffs could

add an additional named plaintiff from another Hilton Property."  Dkt. 83-1 (Mem. of Law) at 33

n.11. While Defendants dispute that the length of association of a property with Hilton is in any

way relevant to the vesting claims at issue here, Plaintiffs' concession that there are key factual

differences between the nearly two dozen non-participating properties named in the Complaint—

not to mention the other properties not specifically named—illustrates why Ms. Juneau's claim is

not "typical" of the class.  Indeed, there is no "typical" claim within this subclass, as any

individual seeking credit for service at a property Defendants have deemed "non-participating"

within the meaning of the Plan will be differently situated from all other potential subclass

members who worked at one or more different properties entirely.  For these reasons, there is *no*

"single common question" in this subclass, nor a "uniform policy or practice that affects all class

members."  *Id.* (quoting *O.A. v. Trump*, 404 F. Supp. 3d 109, 156 (D.D.C. 2019)).[12]

---

[11]     Plaintiffs further allege that some of the individuals who worked at the Reno Hilton were
credited with vesting service, and so Ms. Juneau was treated inconsistently.  *See* Dkt. 50
(Compl.) ¶ 64A.  That portion of the claim, necessarily, is not common to or typical of the
subclass, most of whom did not work at the Reno Hilton.

[12]     In *O.A. v. Trump*, the court certified a proposed class of asylum seekers challenging a
rule "mak[ing] aliens (with the sole exception of lawful permanent residents) ineligible for
asylum if they enter the United States from Mexico outside a designated port of entry."  404 F.
Supp. 3d at 117.  The court found the typicality inquiry satisfied because the class
representatives, like all of the proposed class, "face the same threat of injury: loss of the right to
seek asylum because they entered the United States across the southern border after November 9,

### 4. All Three Plaintiffs Are Subject to a Laches Defense

"Where [a] plaintiff has not pursued her claim with diligence and the delay has prejudiced the defendant, laches will bar the action." *Corley v. Hecht Co.*, 530 F. Supp. 1155, 1159 (D.D.C. 1982). To establish a laches defense, a defendant must show that the plaintiff's delay in bringing the action was unreasonable, and that the delay prejudiced the defendant. *Powell v. Zuckert*, 366 F.2d 634, 636 (D.C. Cir. 1966). Prejudice may be shown if there is an "impairment of the ability to mount a defense due to circumstances such as loss of records, destruction of evidence, or witness unavailability." *Council of Athabascan Tribal Gov'ts v. United States*, 693 F. Supp. 2d 116, 122 (D.D.C. 2010). Furthermore, where the delay in bringing the suit is great, a lesser showing of prejudice will be required. *Id.* While the Court held earlier in this case that a laches defense "is not appropriately resolved upon a motion to dismiss," it acknowledged that the defense is highly "fact-intensive." Dkt. 21 at 6.

The named Plaintiffs here are each vulnerable to a laches defense that renders them atypical, as each waited more than a decade to assert claims for vested retirement benefits:

- Ms. Juneau did not first assert her claim for benefits until 2014, 14 years after she claims she was last employed by Hilton. Defendants have no record of her service after February 21, 1997 (*i.e.*, nearly 24 years ago). As discussed *supra*, Ms. Juneau failed to document the additional years of claimed employment, despite multiple requests—and opportunities—to do so.

- Ms. White terminated employment with Hilton on March 26, 1982, more than 35 years ago, and is only now challenging vesting credit for service prior to 1976, more than 40 years ago. *See* Dkt. 83-3 (White Decl.).

- Mr. Betancourt seeks to recover benefits allegedly owed to his father, Pedro Betancourt, who is alleged to have died in 1985 at the age of 71, and to his mother, who died in 1998—twenty-two years ago. *See* Dkt. 83-5 (Betancourt Decl.).

---

2018, outside a designated port of entry. All challenge the same Rule on the same grounds, and all seek the same remedy—invalidation of the Rule." *Id.* at 156.

Defendants' laches defense is merely one of a number of unique defenses, described at length *supra*, that would render the proposed class representatives atypical and inadequate to represent the proposed subclasses.  *See, e.g.*, *Arabian v. Sony Electronics, Inc.*, No. 05-CV-1741 WHQ (NLS), 2007 WL 627977, at *5 (S.D. Cal. Feb. 22, 2007) ("When the alleged defenses applicable to each representative are considered in combination, there is a significant danger that absent Class members would suffer by the time and preoccupation both [named plaintiffs] would have to devote to the defenses unique to them.").

### C.     Plaintiffs Fail To Meet the Requirements of Rule 23(b)

#### 1.     The Proposed Subclasses Are Not Cohesive

The mere request for injunctive relief is not sufficient to certify a class under Rule 23(b)(2).  The Court must examine whether "a single injunction . . . would provide relief to each member of the class."  *DL v. Dist. of Columbia*, 713 F.3d at 125 (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. at 360); *see also Eubanks v. Billington*, 110 F.3d 87, 92 (D.C. Cir. 1997) (describing declaratory and injunctive relief applicable to the class as a whole as the "defining characteristic of the (b)(2) class").  Thus, Rule 23(b)(2) is not satisfied "if as a substantive matter the relief sought would merely initiate a process through which highly individualized determinations of liability and remedy are made; this kind of relief would be class-wide in name only, and it would certainly not be final."  *Jamie S.*, 668 F.3d at 499.

Here, the "disparate factual circumstances of class members," detailed at length *supra*, render class relief inappropriate.  *Carter v. Butz*, 479 F.2d 1084, 1089 (3d Cir. 1973) (affirming denial of class certification motion in case alleging plaintiffs were deprived of food stamps due to administrative errors).  The proposed class members have already been denied vested retirement benefits on one or more grounds.  In the event the Court rules in Plaintiffs' favor on one or more of the myriad issues raised in their Complaint, such claimants may still not be

entitled to any retirement benefits, even if some of the other members of their proposed subclass

are, because of the "disparate factual circumstances" at play, including (for the nonparticipating

property subclass) the properties at which they worked; (for the heirs subclass) whether the

Participant was "newly vested" in *Kifafi* and/or the claimant is the rightful heir of any benefits

owed; and (for all proposed subclasses) the presence or absence of records of employment and

other issues of compliance with Plan terms, including contractual limitations periods.  These

issues preclude the requisite finding that the "Rule 23(b)(2) injunctive or declaratory class []

have strong commonality of interests."  *Gates v. Rohm & Haas Co.*, 655 F.3d 255, 264 (3d Cir.

2011).

Plaintiffs' reliance on this Court's certification rulings in *Kifafi* is therefore misplaced.

There, the Court held that "[t]he method used to calculate the rate of benefit-accrual is a practice

applicable across the board to all class members, thereby making appropriate final injunctive

relief or corresponding declaratory relief with respect to the class as a whole."  *Kifafi v. Hilton*

*Hotels Retirement Plan*, 189 F.R.D. at 177.  The "question common to the benefit-accrual class .

. . test[ed] the validity of a specific aspect of the Plan (its benefit accrual formula) against a

specific section of ERISA."  *Id.* at 179 (noting there can be no class in the absence of  "a

generally applicable practice that ought to be tried on a class-wide basis").  Here, in contrast,

Plaintiffs do not present to the Court for resolution any one common, discrete "practice" for each

subclass, but rather an "umbrella" of alleged violations.  *Id.* ("Mr. Kifafi's common legal

question appears to be an umbrella provision encompassing five separate statutory violations.

The problem with this approach is that Mr. Kifafi has not shown that the legal questions he

identifies are in fact common to the putative members of the early-retirement class, or that his

claims are typical of his proposed fellow class members.").  Plaintiffs' claims here also differ

markedly from the "narrow" vesting subclasses certified in *Kifafi*, Dkt. 21 at 1, which dealt with four discrete questions that could be answered on a global basis: (1) whether to credit years of union service, (2) whether to use an 870 (rather than 1000) hour service standard, (3) whether to credit leaves of absence, and (4) whether to credit the year in which employees became Plan participants, *Kifafi v. Hilton Hotels Ret. Plan*, 228 F.R.D. at 389.

For the reasons detailed above, Plaintiffs and the proposed subclasses are factually and legally distinct from one another such that the putative class is not amenable to "final injunctive relief," as no single form of relief can be crafted in a manner that is "appropriate respecting the class as a whole."  Fed. R. Civ. P. 23(b)(2); *see also Allison v. Citgo Petroleum Corp*., 151 F.3d 402, 413–14 (5th Cir. 1998) (recognizing that (b)(2) certification is appropriate where "uniform group remedies" are sought and that a (b)(2) class is "by its very nature, assumed to be a homogenous and cohesive group").

### 2.     Common Questions of Law and Fact Do Not Predominate Over Individualized Questions

Plaintiffs "alternatively request" certification under Rule 23(b)(3), which carries strict predominance and superiority requirements that are not met here.  Fed. R. Civ. P. 23(b)(3).

The "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  *Amchem Products, Inc. v. George Windsor*, 521 U.S. 591, 623 (1997); *see also Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. at 376.  Moreover, as Plaintiffs acknowledge, predominance tends to be found upon a showing of "generalized evidence [which] proves or disproves an element on a simultaneous, class-wide basis."  Dkt. 83-1 (Mem. of Law) at 40-41 (quoting *In re Vitamins Antitrust Litig.*, 209 F.R.D. 251, 262 (D.D.C. 2002)); *see also In re Rail Freight Fuel Surcharge Antitrust Litig.*, 725 F.3d 244, 252–53 (D.C. Cir. 2013) (noting that in determining if Rule 23(b)(3)'s requirements have been satisfied, a

district court may assess "whether the plaintiffs could show, through common evidence, injury in fact to all class members from the alleged [unlawful actions of the defendant]").

This is not such a case.  Indeed, Plaintiffs' own complaint is replete with evidence drawn from individual claim files, and Defendants' defenses to the denial of vesting claims will likewise require examination of individual claim correspondence and employment records, management documents and agreements for up to two dozen properties (for the non-participating properties claims), and death, estate and/or probate records (for the heirs claims).  For this same reason, a class action is not "superior" to individual suits.  Fed. R. Civ. P. 23(b)(3).

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court deny Plaintiffs' Second Renewed Motion for Class Certification with prejudice.

Dated:  December 21, 2020

Respectfully submitted,

_____/s/ Andrew M. Lacy_____
Andrew M. Lacy (DC Bar # 496644)
SIMPSON THACHER & BARTLETT LLP
900 G St. NW
Washington, D.C.  20001
Telephone:  (202) 636-5505
Facsimile:  (202) 636-5502
alacy@stblaw.com

Jonathan K. Youngwood (admitted *pro hac vice*)
Shannon K. McGovern (admitted *pro hac vice*)
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, New York
Telephone:  (212) 455-2000
Facsimile:  (212) 455-2502
jyoungwood@stblaw.com

*Counsel for Defendants Hilton Hotels Retirement Plan, Hilton Worldwide, Inc., Global Benefits*

*Administrative Committee, Mary Nell Billings, S.*
*Ted Nelson, and Casey Young*

-