# EXHIBIT A

**HILTON HOTELS RETIREMENT PLAN**

(As Amended and Restated Effective January 1, 2012)

TABLE OF CONTENTS

ARTICLE I        DEFINITIONS............................................................................................3
ARTICLE II       PARTICIPATION...................................................................................21
2.1    Eligibility Requirements .................................................................21
2.2    Breaks in Service ............................................................................21
2.3    Designation of Beneficiary .............................................................21
ARTICLE III      CONTRIBUTIONS ................................................................................23
3.1    Payment............................................................................................23
ARTICLE IV       RETIREMENT AND DEATH BENEFITS ...........................................24
4.1    Normal Retirement Benefit - Unmarried Participant.......................24
4.2    Early Retirement Benefit - Unmarried Participant ..........................26
4.3    Disability Retirement Benefit - Unmarried Participant ...................26
4.4    Late Retirement Benefit - Unmarried Participant............................27
4.5    Normal Form of Retirement Benefit.................................................27
4.6    Vesting; Breaks in Service...............................................................34
4.7    Surviving Spouse Benefit ................................................................35
4.8    Optional Retirement Benefits ..........................................................36
4.9    Payment of Retirement Benefit........................................................38
4.10   Suspension of Benefits.....................................................................47
4.11   Inability to Locate Participant.........................................................47
4.12   Benefit Freeze ..................................................................................48
4.13   Benefit Increase ...............................................................................48
ARTICLE V        LIMITATION ON BENEFITS AND PAYMENTS ...............................53
5.1    Section 415 Limitations....................................................................53
5.2    Top-Heavy Plan Requirement...........................................................54
5.3    Restriction of Benefits and Payments ..............................................59
5.4    Code Section 411(b)(1).....................................................................59
ARTICLE VI       ADMINISTRATION.............................................................................60
6.1    Powers and Authority; Action Conclusive ......................................60
6.2    Transmittal of Information................................................................61
6.3    Compensation, Bonding, Expenses and Indemnity ..........................62
6.4    Manner of Administering..................................................................62
6.5    Duty of Care......................................................................................62
6.6    Delegation .........................................................................................63
ARTICLE VII      CLAIMS REVIEW................................................................................64
7.1    Inquiries and Applications for Benefits ...........................................64
7.2    Denial of Claims ...............................................................................64
7.3    Review of Denied Claims .................................................................65
7.4    Exhaustion of Remedies ...................................................................66

i

TABLE OF CONTENTS

ARTICLE VIII    TRUST FUND ................................................................68
   8.1    Trust Fund ...............................................................................68
   8.2    Funding Limitations ................................................................68
ARTICLE IX    AMENDMENT AND TERMINATION ..............................73
   9.1    Amendments ............................................................................73
   9.2    Discontinuance of Plan ...........................................................73
   9.3    Termination of Plan ................................................................74
   9.4    Plan Merger or Consolidation:  Transfer of Plan Assets .........76
ARTICLE X    MISCELLANEOUS ............................................................77
   10.1    Contributions Not Recoverable ...............................................77
   10.2    Limitation on Participants' Rights ..........................................77
   10.3    Receipt or Release ...................................................................78
   10.4    Alienation ................................................................................78
   10.5    Persons Under Incapacity ........................................................78
   10.6    Governing Law ........................................................................79
   10.7    Headings, etc., Not Part of Plan ..............................................79
   10.8    Instrument in Counterparts .....................................................79
   10.9    Reorganization of Participating Employer ...............................79
   10.10    Masculine Gender Includes Feminine Gender .........................79
APPENDIX A    ACTUARIAL ASSUMPTIONS ..........................................81
   A.1    Actuarial Equivalent ...............................................................81
   A.2    Early or Disability Retirement Reduction Factors ...................82
APPENDIX B    RESTRICTION OF BENEFITS AND PAYMENTS ............83
   B.1    General ....................................................................................83
   B.2    Definitions ...............................................................................83
   B.3    Restriction of Benefits on Plan Termination ...........................84
   B.4    Restriction on Distributions ....................................................84
   B.5    Limitations on Restrictions .....................................................84
APPENDIX C    PARTICIPATING EMPLOYERS AS OF JANUARY 1, 2012 ....86
APPENDIX D    ELAPSED TIME METHOD ...............................................87

LEGAL02/33812181v1

HILTON HOTELS RETIREMENT PLAN

(As Amended and Restated Effective January 1, 2012)

## Preamble

**History of the Plan**. Hilton Hotels Corporation established the Hilton Hotels Salaried Employee's Pension Plan, effective in 1951 (the "Prior Plan") to provide retirement and other benefits for eligible employees. Effective as of January 1, 1976, the Prior Plan was amended, restated and renamed the Hilton Hotels Retirement Plan (the "Plan"). The Plan was subsequently amended and restated in its entirety, effective as of January 1, 1987, January 1, 2000 and January 1, 2007.

**Purpose**. This Plan is intended to be a qualified defined benefit pension plan under Code Section 401(a). The benefits described in the Plan are provided for the exclusive benefit of Participants and their Beneficiaries.

**Other Employers**. Whereas, from time to time, certain other employers have adopted the Plan as Participating Employers with the permission of Hilton Worldwide, Inc. (the "Company").

**Cessation of Benefit Accruals**. Effective as of the close of the day on December 31, 1996, the benefit accruals of all Participants in the Plan ceased and all benefit accruals under the Plan remain frozen.

**Plan is a Single Plan**. Effective as of January 1, 2007, the separate plans previously maintained under the Plan by each Participating Employer were merged into a single multiple employer plan as described in Code Section 413(c).

This Plan shall be considered a single plan for purposes of Treasury Regulations Section 1.414(1)-1(b)(1). All assets contributed to the Plan by the Participating Employer shall be held in a single fund together with the assets contributed by the Company; and so long as the Participating Employers continue to be designated as such, all assets held in such fund shall be available to pay benefits to all Participants and Beneficiaries covered by the Plan regardless of whether such Participant or Beneficiary is employed by the Company or by a Participating Employer. Nothing contained herein shall be construed to prohibit the separate accounting of assets contributed by the Company and the Participating Employers (including a separate accounting of the assets contributed by any Participating Employer) for purposes of cost allocation, if so directed by the Administrative Committee, or the holding of Plan assets in more than one Trust Fund with more than one Trustee.

**Amendment and Restatement**. The Company now wishes to amend and restate the Plan in its entirety effective as of January 1, 2012 to (i) to incorporate all of the changes to the Plan since January 1, 2007 into a new document, and (ii) to make various other changes set forth herein. The amended and restated Plan shall generally be effective as of

January 1, 2012; provided however, that certain provisions of the Plan may have different effective dates when expressly provided herein.

The provisions of this amended and restated Plan shall apply with respect to Employees who retire or otherwise terminate employment on or after January 1, 2012. The rights and benefits of Employees who retire or otherwise terminate employment prior to January 1, 2012 shall be determined in accordance with the terms of the Plan in effect at the time of their retirement or termination of employment.

LEGAL02/33812181v1

ARTICLE I.

DEFINITIONS

Certain terms of this Plan have defined meanings which are set forth in this Article and which shall govern unless the context in which they are used clearly indicates that some other meaning is intended.

Actuarial Equivalent shall mean a benefit of equivalent value computed using the interest rate and mortality assumptions contained in Appendix A.

Administrative Committee shall mean the Global Benefits Administrative Committee, which is the "Plan Administrator" of the Plan, as such term is defined under Section 3(16) of ERISA, and the "Named Fiduciary" of the Plan, as such term is defined under Section 402(a) of ERISA. The authority of the Administrative Committee is set forth in the Charter. This term includes any delegate of the Administrative Committee and any successor committee appointed pursuant to appropriate committee approvals.

Annuity Starting Date shall mean the first day of the first period for which an amount is payable as an annuity or any other form of benefit.

Approved Leave of Absence shall mean the period of absence with respect to a Participant who incurs a Break in Employment with a Participating Employer as a result of any of the causes listed below and who is reemployed by a Participating Employer within a period of 24 months from such Break in Employment. Such Participant shall be deemed to have been on an Approved Leave of Absence during the period such Break in Employment and reemployment, which period of Approved Leave of Absence (up to 24 months) shall be included in determining the Participant's Years of Vesting Service and Years of Benefit Service. The causes referred to above are as follows:

      (a)    A major destruction of the facility in which the Participant's services are customarily rendered;

      (b)    The closing or discontinuance of the business conducted in the facility in which the Participant's services are customarily rendered; or

      (c)    The sale or other disposition of the facility in which the Participant's services are customarily rendered to an entity other than a Participating Employer.

Average Monthly Compensation shall mean the greater of:

      (a)    the total Compensation paid to a Participant during the five consecutive Plan Years within the last ten consecutive Plan Years immediately preceding the earlier of January 1, 1997 or his Break in Employment in which his total Compensation is the highest divided by the number of months in which such Compensation was earned (with the provision that, if the Participant earned Compensation during less than five

consecutive Plan Years, his Average Monthly Compensation shall be computed by dividing the total Compensation paid during the consecutive Plan Years he did work by the number of months in such Plan Years), or

(b)      the monthly average of the Compensation paid to the Participant during the 60 consecutive months immediately preceding the earlier of January 1, 1997 or his Break in Employment (with the provision that, if the Participant earned Compensation for less than 60 consecutive months, the monthly average shall be based on the actual number of consecutive months in which he did receive Compensation).

Beneficiary or Beneficiaries shall mean any person(s), trust, estate or other entity or entities designated in writing by a Participant in accordance with procedures established by the Administrative Committee or its designee.  A Participant shall be required to designate a Beneficiary or Beneficiaries only if the Participant elects to receive his retirement benefit in the form of a Ten-Year Certain and Life Annuity described in Section 4.8(a)(iv) and such designation shall occur at the same time.  The Administrative Committee may require certification by a Participant in any form it deems appropriate of the Participant's marital status prior to accepting or honoring any Beneficiary designation.  Any beneficiary designation shall be void to the extent it conflicts with the terms of a qualified domestic relations order.

Board of Directors or Board shall mean the Board of Directors of the Company.

Break in Employment shall mean an Employee's termination of employment as a result of resignation, discharge, retirement, Disability, or death.  In determining whether and when a Break in Employment has occurred, the following rules shall apply:

(a)      A Break in Employment shall not occur during a leave of absence authorized by the Participating Employer of such Employee or a Related Company in accordance with established nondiscriminatory policies, or during a vacation period, temporary layoff for lack of work, or military leave.

(b)      A Break in Employment shall not occur if an Employee transfers from employment with one Participating Employer to another Participating Employer.

(c)      A Break in Employment shall not occur if an Employee transfers from employment with a Participating Employer to a Hilton Property that is not a Participating Affiliate ("Non-Participating Property"), nor shall a Break in Employment occur if such Employee subsequently transfers from employment with such Non-Participating Property to another Non-Participating Property.

(d)      Continuation on temporary layoff for lack of work for a period in excess of 12 months shall be considered a termination of employment effective as of the expiration of such 12-month period.

(e)     Failure to return to work after the expiration of any leave of absence or after recall from any temporary layoff shall be considered a resignation effective as of the expiration of such leave of absence or recall from layoff.

(f)     Failure of any Employee on military leave to make application for reemployment within the period of time during which he is entitled to retention of reemployment rights under applicable laws of the United States shall be considered a resignation effective as of the expiration date of such reemployment rights.

Charter means the Hilton Worldwide, Inc. Global Benefits Committee Charter, as adopted by Hilton Worldwide, Inc., and as may be amended from time to time.

Code shall mean the Internal Revenue Code of 1986, as amended from time to time.

Company shall mean Hilton Worldwide, Inc., a Delaware corporation, any predecessor corporation, or any successor corporation resulting from merger or consolidation.

Compensation shall mean an Employee's total Compensation, including base salary, overtime, cash bonuses, gratuity income paid in conjunction with or in lieu of base salary, the value of maintenance as established from time to time by the Administrative Committee, and such other amounts as determined by the Administrative Committee under rules adopted and uniformly applied (but excluding amounts so determined by the Administrative Committee paid to such Employee that is subject to employer tax under the Federal Insurance Contributions Act in accordance with Section 3111(a) of the Internal Revenue Code of 1954 as in effect on March 1, 1978 (without regard to the dollar limitations contained in Section 3121(a) thereof). Compensation shall not include any amount received by an Employee for services performed after December 31, 1996. An Employee's Compensation shall also include (i) amounts by which the Employee's base salary is reduced pursuant to Section 125 of the Code under a cafeteria plan maintained by his or her employer, and (ii) the Compensation which would have been considered during periods of leaves of absence for which Years of Benefit Service are granted based upon the rate applicable at the time the leave is granted as determined by rules adopted and uniformly applied by the Administrative Committee.

Compensation during any period for which an Employee is entitled to Years of Benefit Service under Subparagraph (c) of the definition of "Years of Benefit Service" hereunder shall be considered as Compensation; provided, however, that in no event shall (i) compensation attributable to air or automobile transportation, (ii) any amounts received pursuant to the provisions of the Hilton Deferred Compensation Plan, the Hilton Supplemental Executive Retirement Plan or the Hilton Hotels Retirement Benefit Replacement Plan, or (iii) any amounts which are attributable to a plan, program or other arrangement based on or involving capital stock of the Company, be taken into account in calculating an Employee's Compensation hereunder.

Pursuant to rules adopted and uniformly applied by the Administrative Committee, severance pay paid to an Employee upon a Break in Employment shall be considered as

- 5 -

Compensation, but only to the extent that such severance pay is paid in the form of periodic payments. Severance pay paid in the form of a single lump sum shall not be considered as Compensation.

Notwithstanding the foregoing, the maximum amount of an Employee's Compensation which shall be taken into account under the Plan ("Maximum Compensation Limitation") shall be (i) effective January 1, 1989, $200,000 for all Plan Years, (ii) effective January 1, 1994, $150,000 for all Plan Years, and (iii) such limitations shall be adjusted automatically without amendment to the Plan at the same time and in the same manner as under Sections 401(a)(17) and 415(d) of the Code. For any Plan Year of fewer than twelve months, the Maximum Compensation Limitation shall be reduced to the amount obtained by multiplying such limitation by a fraction having a numerator equal to the number of months in the Plan Year and a denominator equal to twelve. Notwithstanding the application of the Maximum Compensation Limitation, (i) the accrued benefit of a Participant determined as of December 31, 1988 shall not be reduced by reason of the $200,000 limitation, and (ii) the accrued benefit of a Participant determined as of December 31, 1993 shall not be reduced by reason of the $150,000 limitation. Furthermore, a Participant's accrued benefit, as calculated after December 31, 1988. shall be the greater of (i) or (ii), where (i) is his accrued benefit calculated under the Plan, as amended to comply with the Maximum Compensation Limitation, using all Years of Benefit Service and Compensation, and (ii) is the greater of (A) his accrued benefit determined as of December 31, 1988 plus his accrued benefit calculated under the Plan, as amended to comply with the Maximum Compensation Limitation, using only Years of Benefit Service and Compensation after December 31, 1988, or (B) his accrued benefit determined as of December 31, 1993 plus his accrued benefit calculated under the Plan, as amended to comply with the Maximum Compensation Limitation, using only Years of Benefit Service and Compensation after December 31, 1993.

Defined Benefit Plan shall mean a plan described in Section 414(j) of the Code.

Defined Contribution Plan shall mean a plan described in Section 414(i) of the Code.

Disability shall mean the total and presumably permanent incapacity of a Participant to engage in any remunerative occupation or employment by reason of mental or physical disability, as determined by the Administrative Committee in its sole and absolute discretion under rules established by the Administrative Committee and applied in a uniform and nondiscriminatory manner.

Disability Retirement Benefit shall mean the benefit provided under Sections 4.3 and 4.5 determined pursuant to the factors in Appendix A.

Disability Retirement Date shall mean, with respect to a Participant who incurs a Disability while employed by a Participating Employer, the first day of any calendar month coincident with or next following the date on which such Participant retires or terminates employment from all Participating Employers because of Disability if the Participant has at least 15 Years of Vesting Service. However, such a Participant may

- 6 -

elect to defer commencement of his Disability Retirement Benefit until the first day of any month prior to his Normal Retirement Date, in which case, solely for purposes of applying the reduction factors contained in Appendix A, these reduction factors shall be applied as if the date that his Disability Retirement Benefit actually commences is his Disability Retirement Date.

Early Retirement Benefit shall mean the benefit provided under Sections 4.2 and 4.5 determined pursuant to the factors in Appendix A.

Early Retirement Date shall mean (i) with respect to a Participant who retires from active status with all Participating Employers, the first day of the calendar month coincident with or next following the date on which such Participant retires prior to his Normal Retirement Date if he then has reached age 55, has at least 5 Years of Vesting Service and has elected to receive an Early Retirement Benefit, and (ii) with respect to a Participant who has at least 5 years of Vesting Service and incurs a Break in Employment prior to attaining age 55, the first day of any calendar month after his attainment of age 55 and prior to his Normal Retirement Date as of which such Participant elects to receive an Early Retirement Benefit. Notwithstanding the foregoing, the references to "5 Years of Vesting Service" in clauses (i) and (ii) in the preceding sentence shall be replaced by "10 Years of Vesting Service" for any Employee who was not employed on or after November 1, 2003 or any former Employee who, as of such date, did not have a deferred vested benefit under the Plan.

A Participant may elect to defer commencement of his Early Retirement Benefit until the first day of any month prior to his Normal Retirement Date, in which case, solely for purposes of applying the reduction factors contained in Appendix A (with respect to a Participant described in clause (i) of the preceding sentence or a Participant described in clause (ii) of the preceding sentence who has at least 20 Years of Vesting Service) or determining the Actuarial Equivalent benefit (with respect to a Participant described in clause (ii) of the preceding sentence who has less than 20 Years of Vesting Service), such reduction factors or Actuarial Equivalent determination, as applicable, shall be applied as if the date that his Early Retirement Benefit actually commences is the Participant's Early Retirement Date. A Participant is ineligible for an Early Retirement Date if on such date he is employed by a Related Company.

Effective Date shall mean with respect to the Company, January 1, 1951, and with respect to a Participating Employer, the effective date of adoption of the Plan by such Participating Employer.

Eligible Employee shall mean any Employee of a Participating Employer who has both attained age 21 and completed one Year of Eligibility Service prior to January 1, 1997; except that there shall be excluded (i) any "leased employee" as defined in Section 414(n)(2) of the Code, (ii) any Union Employee, unless such Union Employee is a member of a group of Employees to whom this Plan has been extended by the collective bargaining agreement covering such Union Employee, and (iii) any Employee of a Participating Affiliate who is included in a group or classification of Employees of such

-7-

Participating Affiliate to which the Plan is not extended, as provided under the definition of "Participating Affiliate" hereunder.  Notwithstanding the foregoing, no Employee shall become an Eligible Employee until the Effective Date with respect to his Participating Employer.

For purposes of this definition of "Eligible Employee," and notwithstanding any other provisions of the Plan to the contrary, individuals who are not classified by the applicable Participating Employer, in its discretion, as employees under Section 3121(d) of the Code (including, but not limited to, individuals classified by the Participating Employer as independent contractors and non-employee consultants) and individuals who are classified by the Participating Employer, in its discretion, as employees of any entity other than a Participating Employer, do not meet this definition of "Eligible Employee" and are ineligible for benefits under the Plan, even if the classification by the Participating Employer is determined to be erroneous, or is retroactively revised.  In the event the classification of an individual who is excluded from the definition of Eligible Employee under the preceding sentence is determined to be erroneous or is retroactively revised, the individual shall nonetheless continue to be excluded from the definition of Eligible Employee and shall be ineligible for benefits for all periods prior to the date the Participating Employer determines its classification of the individual is erroneous or should be revised.  The foregoing sets forth a clarification of the intention of the Participating Employers regarding participation in the Plan for any Plan Year, including Plan Years prior to the amendment of this definition of "Eligible Employee."

Eligibility Computation Period shall mean:

     (a)    The 12-consecutive month period commencing with the first day that an Employee completes an Hour of Service for a Participating Employer or a Related Company;

     (b)    The first 12-consecutive month period coinciding with the Plan Year which includes the first anniversary of the first day that an Employee completes an Hour of Service for a Participating Employer or a Related Company; and

     (c)    Each succeeding 12-consecutive month period coinciding with the Plan Year.

Notwithstanding the above, if an Employee completes more than 500 Hours of Service during any such Eligibility Computation Period and then fails to complete more than 500 Hours of Service during a subsequent Eligibility Computation Period, then future Eligibility Computation Periods shall be measured from the first day that the Employee completes an Hour of Service following the Eligibility Computation Period in which the Employee has been credited with not more than 500 Hours of Service.  In addition, any reemployed individual described in the preceding sentence who again incurs a Break in Employment shall measure Eligibility Computation Periods from the date of subsequent reemployment if no Hours of Service are performed during an Eligibility Computation Period ending subsequent to the Break in Employment.  For purposes of determining

whether an Employee has completed 500 or fewer Hours of Service during any Eligibility Computation Period, rules similar to the rules contained in the definition of "One Year Break in Service Year" shall apply, notwithstanding anything to the contrary contained therein.

Employee shall mean every person employed by a Participating Employer or a Related Company, including any "leased employee" described in Section 414(n) of the Code and any other individual required to be treated as employed by the Participating Employer or a Related Company under Section 414(o) of the Code.

ERISA shall mean the Employee Retirement Income Security Act of 1974, as amended from time to time.

Fiduciary shall mean all persons defined in Section 3(21) of ERISA associated in any manner with the control, management, operation, and administration of the Plan or the assets of the Plan, and such term shall be construed as including the term "Named Fiduciary" with respect to those Fiduciaries named in the Plan or who are identified as Fiduciaries pursuant to procedures specified in the Plan.

Gaming Group shall mean the following gaming properties: Benco, Inc.; Flamingo – Kansas City; Flamingo-Laughlin; Flamingo Casino Ledger; Flamingo Hilton – Las Vegas; Flamingo Hilton – Reno; Flamingo L&S; Hilton Gaming Corporation; Las Vegas Casino Ledger; Las Vegas Hilton; O'sheas Casino; Paco's Casino; Reno Casino Ledger; and Reno Hilton.

Hilton Property shall mean each business entity (including a Related Company of the Company), as designated from time to time by the Plan Sponsor, in which the Company, directly or indirectly, has an interest or with which it has a contractual relationship for hotel management.

Hour of Service shall mean an hour (a) for which an Employee is paid, or entitled to payment, for performance of duties for a Participating Employer or a Related Company; (b) for which the Employee is paid or entitled to payment by a Participating Employer or a Related Company on account of a period during which no duties are performed (irrespective of whether the employment relationship has terminated) due to vacation, holiday, illness, incapacity (including disability), layoff, jury duty, military duty, or leave of absence; or (c) for which back pay, irrespective of mitigation of damages, is either awarded or agreed to by a Participating Employer or a Related Company.

The following additional rules shall apply in calculating Hours of Service: (a) no more than 501 Hours of Service are required to be credited to an Employee on account of any single period during which the Employee performs no duties; (b) an hour for which an Employee is directly or indirectly paid, or entitled to payment, on account of a period during which no duties are performed is not required to be credited to the Employee if such payment is made or due under a plan maintained solely for the purpose of complying with applicable worker's compensation, unemployment compensation, or

LEGAL02/33812181v1

disability insurance laws; (c) Hours of Service are not required to be credited for a payment which solely reimburses an Employee for medical or medically related expenses incurred by the Employee; (d) a payment shall be deemed to be made by or due from a Participating Employer or Related Company regardless of whether such payment is made by or due from a Participating Employer or a Related Company directly, or indirectly through, among others, a trust fund, or insurer, to which a Participating Employer or a Related Company contributes or pays premiums and regardless of whether contributions made or due to the trust fund, insurer, or other entity are for the benefit of particular Employees or on behalf of a group of Employees in the aggregate; (e) no more than one Hour of Service shall be credited with respect to any hour of time; (f) an "Hour of Service" shall include any hour for which an Employee is entitled to payment by a "leasing organization" (as described in Section 414(n)(2) of the Code) for the performance of duties for a Participating Employer or a Related Company.

In lieu of the foregoing, in cases where no Hours of Service are available for an Employee, an Employee shall be credited with 190 Hours of Service for each month in which such Employee performs one Hour of Service for a Participating Employer or a Related Company.

The definition of "Hour of Service" set forth herein shall also be construed in accordance with, and shall include any additional periods of service, that may be required by regulations promulgated by the United States Department of Labor. The hour of service rules stated in the Department of Labor Regulations Section 2530.200b-2(b) and -2(c) are herein incorporated by reference.

Integrated Benefits shall mean the aggregate benefits payable to a Participant (or over which he has had or has exercised or released, any power or right of election, designation, appointment or disposition) under (i) any pension plan qualified as tax exempt under Section 401(a) of the Code, including any such plan established by the New York Hotel Association or pursuant to any collective bargaining or other agreement, to the extent that a Participating Employer, any Related Company, or any predecessors thereto have contributed or paid all or part of the costs thereof as determined by rules established from time to time by the Administrative Committee, and (ii) any federal, state, or other system now in existence or hereafter created or amended to which a Participating Employer is required by law to contribute or pay all or part of the costs, as determined by rules established from time to time by the Administrative Committee, including 50 percent of the Primary Social Security Benefit computed on the basis of the Social Security Act as in effect at the time at which the offset for Integrated Benefits is first applied as provided in the definition of "Primary Social Security Benefit" hereunder. The Administrative Committee, by uniform rules adopted from time to time, shall estimate the amounts of all Integrated Benefits expected to be payable to any Participant for the purpose of determining benefits under this Plan prior to the date of determination of the actual amount of any such Integrated Benefits, and adjustments shall be made, without interest, in benefit payments due after the Annuity Starting Date if later information so requires.

- 10 -

Investment Committee shall mean the committee with the full power and authority over the investment of assets of the Plan, as further set forth in the Charter.

Investment Manager shall mean a Fiduciary designated by the Investment Committee under this Plan to whom has been delegated the responsibility and authority to manage, acquire or dispose of Plan assets who (a)(1) is registered as an investment adviser under the Investment Advisers Act of 1940; (2) is a bank, as defined in that Act; or (3) is an insurance company qualified to perform investment advisory services under the laws of more than one state; and (b) has acknowledged in writing that he is a Fiduciary with respect to the management, acquisition, and control of Plan assets.

Late Retirement Benefit shall mean the benefit provided under Sections 4.4 and 4.5.

Late Retirement Date shall mean, with respect to a Participant who remains in the employ of a Participating Employer following his Normal Retirement Date, the first day of any month following his Normal Retirement Date on which he elects to retire.

Leased Employee shall mean any person who is not an employee of a Participating Employer or a Related Company and who provides services to a Participating Employer or a Related Company if: (i) such services are provided pursuant to an agreement between a Participating Employer or a Related Company and any other person; (ii) such person has performed such services for a Participating Employer or a Related Company on a substantially full-time basis for a period of at least one year; and (iii) such services are performed under primary direction or control of a Participating Employer or a Related Company.

Normal Retirement Age shall mean the date on which occurs the later of (a) or (b), where (a) is the date a Participant attains age 65, and (b) is the earlier of:

 (i) the date he has completed 5 Years of Vesting Service, or

 (ii) the earlier of (A) the tenth anniversary of the date he commenced participation in the Plan, or (B) the fifth anniversary of the first day of the first Plan Year beginning on or after January 1, 1988.

Normal Retirement Benefit shall mean the benefit provided under Sections 4.1 and 4.5.

Normal Retirement Date shall mean the first day of the month coincident with or next following the date the Participant attains his Normal Retirement Age. A Participant shall retire on his Normal Retirement Date; provided that, a Participant may elect to continue employment and retire on a Late Retirement Date subsequent to said Normal Retirement Date, in which event he shall remain a Participant in the Plan as long as he remains an Eligible Employee.

Notwithstanding the foregoing and effective for Annuity Starting Dates on or after July 1, 2006, a Participant may elect to commence his or her Normal Retirement Benefit on his

or her Normal Retirement Date, even if the Participant does not retire as of such date. The Participant shall make this election in the time and manner prescribed by the Administrative Committee or its authorized delegate, provided that such procedures shall comply with the requirements of Code Sections 411(a)(11) and 417, related regulations thereunder, and the other provisions of this Plan.  A Participant who does not retire as of his or her Normal Retirement Date, but commences his or her Normal Retirement Benefit as of that date, shall continue to be credited with Compensation and Years of Benefits Service under the terms of the Plan for service after his or her Normal Retirement Date and prior to January 1, 1997.  When the Participant subsequently retires, his or her benefit will be redetermined as a Late Retirement Benefit under Plan Section 4.4(a)(1) and without regard to Plan Section 4.4(a)(2).  The Late Retirement Benefit shall be paid in the same payment form that was elected by the Participant with respect to the Normal Retirement Benefit.

One Year Break in Service Year shall mean any Vesting Computation Period during which a Participant has not completed more than 500 Hours of Service.  Notwithstanding the preceding sentence and solely for purposes of this paragraph, if an Employee is credited with less than 501 Hours of Service during a 12-month period described in the preceding sentence by reason of an absence that arises because of her pregnancy, the birth or adoption of the Employee's child (or child care for a period immediately following such birth or adoption), such Employee shall not incur a One Year Break in Service Year; rather, the Employee shall be credited for any such 12-month period with (a) the Hours of Service for which the Employee would have received credit (but for such absence), if determinable, or (b) eight Hours of Service per day during such absence.  If, absent the preceding sentence, a One Year Break in Service Year would not occur because of such an absence during the 12-month period that includes the beginning of such absence, the Employee shall receive credit for the hours specified under (a) or (b) above in the Vesting Computation Period immediately following the Vesting Computation Period in which such absence initially occurs, solely to prevent the occurrence of a One Year Break in Service Year in any such Vesting Computation Period.  Notwithstanding any other provision of this paragraph, any Employee shall not be credited with more than 501 Hours of Service by reason of such absence.

Participant shall mean any Employee or former Employee who has been admitted to participation in the Plan prior to January 1, 1997 and who is or may become eligible to receive a benefit from the Plan.  A Participant does not include an Employee who incurs a Break in Employment and either:  (a) is not vested; or (b) has been paid the full amount of his nonforfeitable benefit.

Participating Affiliate shall mean any Hilton Property that, by resolution of its board of directors and with the approval of the Plan Sponsor, elects to participate in this Plan. Furthermore, in approving any Hilton Property as a Participating Affiliate, the Plan Sponsor may, in its discretion, determine that the Plan is extended only to a specific group or classification of Employees of such Participating Affiliate, so long as any such determination complies with the Code and ERISA.  By electing to participate in this Plan, a Participating Affiliate agrees to (i) be bound by any Plan or Trust amendment adopted

by resolution of the Board of Directors or by the written instrument of any person to whom the Board of Directors had delegated its authority to adopt the amendment, and (ii) execute such forms or documents (e.g., forms or other materials required by the Internal Revenue Service or Department of Labor) as are deemed necessary or desirable by the Plan Sponsor.

Participating Employer shall mean the Company and any Participating Affiliate (other than a Related Company) that has elected to participate in the Plan. Appendix C attached hereto lists all Participating Employers as of January 1, 2012. Effective as of January 1, 2007, each Participating Employer shall, pursuant to Code Section 413(c)(4), be considered as maintaining a separate plan for purposes of Code Section 412, but the Plan shall otherwise be considered a single plan.

Plan shall mean the Hilton Hotels Retirement Plan, as amended and restated effective as of January 1, 2012 and as set forth herein, as now in effect or hereafter amended.

Plan Sponsor shall mean the Company or Global Benefits Committee, a delegate of the Company, that has all authority of settlor and plan sponsor of the Plan, as such terms are commonly understood under ERISA, and as set forth in the Charter.

Plan Year shall mean each 12-consecutive month period beginning on January 1 and ending on December 31.

Primary Social Security Benefit shall mean the monthly amount available at the later of (i) the date a Participant attains age 65, or (ii) the Participant's Early, Normal, Late or Disability Retirement Date or earlier Break in Employment, excluding amounts available for spouses and dependents, as an unreduced old-age or disability insurance benefit under the provisions of Title II of the Social Security Act (or under the provisions of any similar federal Act or Acts now in existence, or as hereafter created or amended) as in effect on the Participant's Early, Normal, Late or Disability Retirement Date or earlier Break in Employment, whether or not payment of such amount is delayed, suspended or forfeited because of failure to apply, accept other work, or any other similar reason within the control of the Participant. Such amount shall be determined on the basis of the Participant's period of employment with the Participating Employers in accordance with uniform rules adopted by the Administrative Committee, subject to the following Paragraph. If a Participant retires or otherwise incurs a Break in Employment prior to age 65, the amount of his Primary Social Security Benefit shall be computed by assuming he receives no wages after such retirement or other Break in Employment.

In computing a Participant's Primary Social Security Benefit, the Participant's wages for Plan Years ending prior to his Break in Employment shall be calculated by using either (i) an estimated wage history, or (ii) to the extent the Administrative Committee has records, such Participant's actual wages. The estimated wage history shall be calculated by projecting backwards the Participant's wages during the Plan Year in which his Break in Employment occurs at a 6% annual rate. If the Participant provides evidence to the Administrative Committee of his actual wage history for the years before his Break in

- 13 -

Employment, the actual wages shall be used instead of the estimate. In order that it be taken into account, a Participant must provide the actual wage history no later than a reasonable period of time (as determined by the Administrative Committee after his Break in Employment or, if later, the date he is informed of the benefit to which he is entitled.

Qualified Joint and Survivor Annuity shall mean an annuity for the life of the Participant with a survivor annuity for the life of the Spouse of the Participant at the time his annuity payments commence which is 50% of the amount of the annuity payable during the life of the Participant. The amount of the Qualified Joint and Survivor Annuity shall be determined pursuant to the tables attached as Appendix A to the Plan.

Related Company shall be determined separately with respect to each Participating Employer, and shall mean, with respect to a Participating Employer, (i) each corporation which is a member of a controlled group of corporations (within the meaning of Section 1563(a) of the Code, determined without regard to Section 1563(a)(4) and (e)(3)(C) thereof) of which such Participating Employer is a component member, (ii) each entity (whether or not incorporated) which is under common control with such Participating Employer, as such common control is defined in Section 414(c) of the Code and Regulations issued thereunder, (c) any organization which is a member of an affiliated service group (within the meaning of Section 414(m) of the Code) of which such Participating Employer or a Related Company is a member and (d) any organization which is required by regulations issued under Section 414(o) of the Code to be treated as a Related Company. For purposes of Section 5.1 of this Plan the phrase "more than 50 percent" shall be substituted for the phrase "at least 80 percent" each place it appears in Section 1563(a)(1) of the Code. The term "Related Company" shall also include each predecessor employer to the extent required by Section 414(a) of the Code. Notwithstanding the foregoing, an organization shall not be considered a Related Company for any purpose under the Plan prior to the date it is considered affiliated under clauses (i) through (iv) above.

Same-Sex Spouse means a person of the same-sex as the Participant who is recognized under state law as legally married to the Participant on the Annuity Starting Date.

Section 203(a)(3)(B) Service shall mean the employment of an Employee, subsequent to the time the payment of benefits commenced or would have commenced if the Employee had not remained in or returned to employment during a calendar month, if the Employee completes in such month 40 or more Hours of Service for a Participating Employer as of the time that the payment of benefits commenced or would have commenced if the Employee had not remained in or returned to employment. In the case of an Employee for whom records of Hours of Service are not maintained, an Employee who receives payment for any such Hours of Service performed on each of 8 or more days in such month shall also be treated as employed in Section 203(a)(3)(B) Service.

Senior Officer shall mean each person who holds the office of Senior Vice President or higher with the Company.

Spouse shall mean the person that is legally married to the Participant on the Annuity Starting Date; provided, however that such person shall only be considered legally married if the respective marriage is recognized for purposes of federal law under the Defense of Marriage Act of 1996. A "Surviving Spouse" is a Spouse who survives the Participant, provided, however, that for purposes of the Surviving Spouse Benefit described in Section 4.7, "Surviving Spouse" shall mean the Spouse to whom the Participant was legally married for at least one year prior to his date of death.

Trust shall mean the Trust that is established to hold and invest contributions under this Plan.

Trustee (or Trustees, if more than one is appointed and acting) shall mean the Trustee or Trustees, whether original or successor, appointed under the Trust.

Union Employee shall mean an Employee covered by a collective bargaining agreement between his Participating Employer and any collective bargaining representative if retirement benefits were the subject of good faith bargaining between such representative and such Participating Employer.

Vesting Computation Period shall mean any Plan Year beginning on or after January 1, 1976 during which the Employee is employed with a Participating Employer or a Related Company.

Years of Benefit Service of a Participant, measured in years and fractional years, shall mean the aggregate (without counting any period more than once) of the years computed under (a) through (h) below:

(a)     A Participant who was a Participant under the Plan on December 31, 1975 shall be entitled to a full or fractional Year of Benefit Service for each full or fractional year of service to which he was entitled for purposes of determining benefit accruals under the Plan prior to January 1, 1976, in accordance with the terms of the Plan in effect prior to January 1, 1976.

(b)     Beginning January 1, 1976, Years of Benefit Service shall be counted from the Eligible Employee's date of hire by a Participating Employer immediately preceding commencement of participation in the Plan (or, if later, the date that he first becomes an Eligible Employee) and shall continue to be counted in completed days while the Participant is both employed by a Participating Employer and is an Eligible Employee; provided, however, that except for the Plan Year in which he is hired (or, if later, first becomes an Eligible Employee) or for the Plan Year in which he retires or otherwise incurs a Break in Employment after becoming vested pursuant to Section 4.6, a Participant shall not be entitled to any Years or fractional Years of Benefit Service for a Plan Year during which he completes less than 1,000 Hours of Service.

- 15 -

(c)     Beginning July 12, 1990, Years of Benefit Service shall continue to be counted in completed days while the Participant is both credited with Hours of Service by a Participating Employer and is an Eligible Employee; provided, however, that except for the Plan Year in which he is hired (or, if later, first becomes an Eligible Employee) or for the Plan Year in which he retires or otherwise ceases to complete Hours of Service under the Plan following completion of 5 or more Years of Vesting Service, a Participant shall not be entitled to any Years or fractional Years of Benefit Service for a Plan Year during which he completes less than 1,000 Hours of Service.

(d)     A Participant shall be entitled to a full or fractional Year of Benefit Service for each full or fractional Year of Vesting Service to which he is entitled under Subparagraph (d) of the definition of "Years of Vesting Service" hereunder.

(e)     Any period for which a Participant is entitled to receive a pension under a pension plan of a former employer (other than a Participating Employer) shall be disregarded in computing his Years of Benefit Service.

(f)     A period of leave of absence because of military service (or the equivalent of military service as determined by the Administrative Committee under such rules as it shall determine and uniformly apply) or an "Approved Leave of Absence" (as defined hereunder) shall be included in computing a Participant's Years of Benefit Service. A period of leave of absence for other reasons shall be disregarded in computing a Participant's Years of Benefit Service; provided, however, that the Administrative Committee may, in its sole and absolute discretion under such conditions and rules as it shall specify or establish and uniformly apply, allow credit for such leave of absence in computing a Participant's Years of Benefit Service.

(g)     Pursuant to rules adopted and uniformly applied by the Administrative Committee, the period of service, if any, attributable to severance pay paid to a Participant upon a Break in Employment shall be included in determining such Participant's Years of Benefit Service, but only to the extent that such severance pay is paid in the form of periodic payments. Service attributable to severance pay paid in the form of a single lump sum shall not be included in determining Years of Benefit Service.

(h)     The following additional rules shall apply in determining a Participant's Years of Benefit Service. If, at the date of a Participant's retirement or earlier Break in Employment (i) his period of employment (or a portion thereof) with a Participating Employer is otherwise excluded from his Years of Benefit Service because he was a Union Employee during such period ("Union Exclusion"), or (ii) his period of employment (or a portion thereof) with a Hilton Property is otherwise excluded from his Years of Benefit Service because said Hilton Property was not a Participating Affiliate under the Plan during such period ("Hilton Property Exclusion"), then:

(1)     If the Participant incurs a Break in Employment with all Participating Employers for any reason before he has both attained age 55 and completed 20 or more Years of Vesting Service, but the Participant has completed 10 or more

years of continuous participation in the Plan (measured from his initial date of participation in the Plan pursuant to Article II) immediately prior to his Break in Employment, then all periods used in determining his Years of Vesting Service (in the case of the Union Exclusion), or service with the Participating Employers and Hilton Properties (in the case of the Hilton Property Exclusion), shall be included in computing his Years of Benefit Service hereunder.

(2)     If the Participant incurs a Break in Employment with all Participating Employers for any reason after he has both attained age 55 and completed 20 or more Years of Vesting Service, and the Participant has completed 5 or more years of continuous participation in the Plan (measured from his initial date of participation in the Plan pursuant to Article II) immediately prior to his Break in Employment, then all periods used in determining his Years of Vesting Service (in the case of the Union Exclusion), or service with the Participating Employers and Hilton Properties (in the case of the Hilton Property Exclusion), shall be included in computing his Years of Benefit Service hereunder.

(3)     If a Participant incurs a Break in Employment with all Participating Employers for any reason after he has both attained age 65 and completed 10 or more Years of Vesting Service, and the Participant has completed 5 or more years of continuous participation in the Plan (measured from his initial date of participation in the Plan pursuant to Article II) immediately prior to his Break in Employment, then all periods used in determining his Years of Vesting Service (in the case of the Union Exclusion), or service with the Participating Employers and Hilton Properties (in the case of the Hilton Property Exclusion) shall be included in computing his Years of Benefit Service hereunder.

Notwithstanding the freeze on benefit accruals, service performed before January 1, 1997 that would otherwise be excluded under the Hilton Property Exclusion or the Union Exclusion shall be included in determining a Participant's Years of Benefit Service if a Participant satisfies (before, on or after January 1, 1997) the requirements set forth above which provide for inclusion of such service. However, under no circumstances shall service performed after December 31, 1996 be included as in determining a Participant's Years of Benefit Service a result of the preceding sentence.

Notwithstanding the foregoing, Years of Benefit Service shall be credited with respect to the Union Exclusion or the Hilton Property Exclusion only if in doing so the present value the Participant's Normal Retirement Benefit, as determined under Section 4.1 (but without regard to any additional offset of Integrated Benefits that would result from including such Years of Benefit Service), is greater than the present values of the sum of (i) the Participant's Normal Retirement Benefit, determined without regard to the Union Exclusion or Hilton Property Exclusion but with regard to any other offset for other benefits payable under Section 4.1 (*i.e.*, other Integrated Benefits), and (ii) the aggregate benefits payable to such Participant under any other pension plan qualified under Code Section 401(a) to the extent that such benefits would be offset as Integrated Benefits under Section 4.1, if Years of Benefit Service are credited with respect to a Union

Exclusion or Hilton Property Exclusion.  If Years of Benefit Service are credited pursuant to the preceding sentence with respect to a Union Exclusion or a Hilton Property Exclusion, then the aggregate benefits described in clause (ii) of the preceding sentence shall be included in determining the Participant's Integrated Benefits.  Years of Benefit Service shall not be credited with respect to a Union Exclusion or Hilton Property Exclusion, if the present value of the Participant's Normal Retirement Benefit, as determined under Section 4.1 (but without regard to any additional offset of Integrated Benefits that would result from including such Years of Benefit Service), is not greater than the present values of the sum of (i) the Participant's Normal Retirement Benefit, determined without regard to the Union Exclusion or Hilton Property Exclusion and (ii) the aggregate benefits payable to such Participant under any other pension plan qualified under Code Section 401(a) to the extent that such benefits would be offset as Integrated Benefits under Section 4.1.  For purposes of determining present values under this Paragraph, the "applicable mortality table" and the "applicable interest rate", as defined in Code Section 417(e)(3)(A)(ii), in effect for the November (the look-back month) that precedes the Plan Year (the stability period) which includes the Annuity Starting Date shall be used.

Year of Eligibility Service means each Eligibility Computation Period during which an Employee completes at least 1,000 Hours of Service.

Years of Vesting Service for any Employee, measured in years and fractional years, shall mean (i) prior to January 1, 1976, service, if any, described under Subparagraph (a) below, and (ii) on or after January 1, 1976, each Vesting Computation Period during which he completes at least 1,000 Hours of Service.  For purposes of determining Years of Vesting Service, no period shall be counted more than once, and the following rules shall apply:

      (a)     An Employee shall be entitled to a full or fractional Year of Vesting Service for each full or fractional year of service, if any, to which he was entitled under the Plan, for vesting purposes, prior to January 1, 1976, in accordance with the terms of the Plan in effect prior to January 1, 1976.

      (b)     A period of concurrent employment with two or more Participating Employers and/or Related Companies shall be considered as employment with only one such employer during such period.

      (c)     To the extent provided by the Administrative Committee, an Employee's employment with a predecessor employer shall be considered as employment with the Participating Employers.

      (d)     If a Participating Employer shall loan or assign an Employee to a Hilton Property that is not a Participating Affiliate, and such Employee subsequently resumes employment with such Participating Employer, then such period of employment with such Hilton Property shall be included for purposes of determining Years of Vesting Service.

(e)     A period of "Approved Leave of Absence" (as defined hereunder) shall be included in computing a Participant's Years of Vesting Service.

(f)     Pursuant to rules adopted and uniformly applied by the Administrative Committee, the period of service, if any, attributable to severance pay paid to an Employee upon a Break in Employment shall be included in determining such Employee's Years of Vesting Service, but only to the extent that such severance pay is paid in the form of periodic payments. Service attributable to severance pay paid in the form of a single lump sum shall not be included in determining Years of Vesting Service.

(g)     In the case of an Employee whose Compensation is determined on the basis of an hourly rate, the number of hours to be credited to the Employee in a Vesting Computation Period solely for the purpose of determining Years of Vesting Service will be determined on the basis of Compensation, if:

(1)     The Employee is credited with the number of hours equal to:  the total of the Employee's Compensation during the Vesting Computation Period divided by the Employee's hourly rate as in effect at such times during the Vesting Computation Period; or the Employee's total Compensation during the Vesting Computation Period divided by the Employee's lowest hourly rate during the Vesting Computation Period, or by the lowest hourly rate payable to an Employee in the same or a similar job classification reasonably defined; and

(2)     870 hours credited under Paragraph (1) of this Subsection (g) are treated as equivalent to 1,000 Hours of Service, and 435 hours credited under Paragraph (1) of this Subsection (g) are treated as equivalent to 500 Hours of Service.

For purposes of this Subsection (g), Compensation at premium rates for overtime, will be divided by the Employee's hourly rate for overtime, rather than the regular time hourly rate.

(h)     In the case of an Employee whose Compensation is determined on a basis other than an hourly rate, hours to be credited to the Employee in a Vesting Computation Period solely for the purpose of determining Years of Vesting Service will be determined on the basis of Compensation if:

(1)     The Employee is credited with the number of hours equal to the Employee's total Compensation during the Vesting Computation Period divided by the Employee's lowest hourly rate of Compensation during the Vesting Computation Period, determined under Subsection (i) below; and

(2)     750 hours credited under Paragraph (1) of this Subsection (h) are treated as equivalent to 1,000 Hours of Service, and 375 hours credited under Paragraph (1) of this Subsection (h) are treated as equivalent to 500 Hours of Service.

- 19 -

(i)     For purposes of Subsection (h) above, an Employee's hourly rate of Compensation shall be determined as follows:

(1)     In the case of an Employee whose Compensation is determined on the basis of a fixed rate for a specified period of time (other than an hour) such as a day, week or month, the Employee's hourly rate of Compensation shall be the Employee's lowest rate of Compensation during a Vesting Computation Period for such specified period of time divided by the number of hours regularly scheduled for the performance of duties during such period of time.  For purposes of the preceding sentence, in the case of an Employee without a regular work schedule, the Employee's hourly rate of Compensation shall be calculated on the basis of a 40-hour workweek or an 8-hour workday, or any other reasonable basis which reflects the average hours worked by the Employee over a representative period of time, provided that the basis so used is consistently applied to all Employees within the same job classifications reasonably defined.

(2)     in the case of an Employee whose Compensation is not determined on the basis of a fixed rate for a specified period of time, the Employee's hourly rate of Compensation shall be the lowest hourly rate of Compensation payable to Employees in the same job classification as the Employee, or, if no Employees in the same job classification have an hourly rate, the minimum wage as established from time to time under Section 6(a)(1) of the Fair Labor Standards Act of 1938, as amended.

(j)     During any period beginning after December 31, 1996 in which an Employee is not earning Years of Benefit Service, the Employee will earn a Year of Vesting Service for each Plan Year in which the Employee is credited with 870 hours as described in subsection (g) or 750 hours as described in subsection (h) unless use of the elapsed time rules of Section 2530.200b-9 of the Department of Labor Regulations as set forth in Appendix D to the Plan during such period results in a larger benefit to the Employee, in which case the methods set forth in Subsections (g) and (h) shall not be used during such period.

- 20 -

ARTICLE II.

PARTICIPATION

2.1     Eligibility Requirements.

Each Employee who was a Participant on December 31, 1998 shall continue to participate hereunder.  Each other Employee shall become a Participant on the day he becomes an Eligible Employee, provided, however, that as long as the benefit freeze under Plan Section 4.12 remains in effect, no new Participants shall be admitted for participation in the Plan after December 31, 1996.  Notwithstanding any other provision of the Plan to the contrary, contributions, benefits, and service credit with respect to qualified military service will be provided in accordance with Section 414(u) of the Code.

2.2     Breaks in Service.

A Participant who incurs a Break in Employment and is later reemployed with a Participating Employer as an Eligible Employee shall be deemed to have resumed participation immediately upon the date of such reemployment, provided he completes a Year of Eligibility Service after the date of such reemployment.

2.3     Designation of Beneficiary.

At least 30 days (seven (7) days if the Participant executes the appropriate waiver) and no earlier than 90 days before the Participant's Annuity Starting Date, the Administrative Committee or its authorized delegate shall provide an election form on which the Participant may elect an optional form of benefit.  If a Participant elects a Ten-Year Certain and Life optional form of benefit, the Participant shall, at that time, designate in writing the Beneficiary or Beneficiaries to whom such Participant desires to receive benefits payable under the Plan following the Participant's death.  However, if a married Participant wishes to designate a person other than his Spouse as Beneficiary for the Ten-Year Certain and Life optional form of benefit, such designation shall be consented to in writing by the Spouse, which consent shall acknowledge the effect of the designation and be witnessed by a Plan representative or a notary public.  The Participant may change any election designating a Beneficiary or Beneficiaries without any requirement of further spousal consent if the Spouse's consent so provides.  Notwithstanding the foregoing, spousal consent shall be unnecessary if it is established (to the satisfaction of a Plan representative) that there is no Spouse or that the required consent cannot be obtained because the Spouse cannot be located, or because of other circumstances prescribed by Treasury Regulations.

If the Participant elects to receive his benefit in the form of a Joint and Survivor Annuity Option or Same-Sex Spouse Contingent Annuity Option, the Participant's Spouse or Same-Sex Spouse, as applicable, shall be automatically designated as the Participant's Beneficiary and the Participant shall not be required to complete a beneficiary designation form.  The Participating Employer, the Administrative Committee and the

- 21 -

Trustee may rely upon a Participant's designation of Beneficiary or Beneficiaries last filed in accordance with the terms of this Plan.

ARTICLE III.

CONTRIBUTIONS

3.1     Payment.

(a)     Subject to subsection (c) below; the Participating Employers expect to pay the entire cost of the benefits provided by this Plan.  Such contributions shall be paid from time to time directly to the Trustee, or may instead be deposited in a depositary or depositaries selected by the Administrative Committee or Investment Committee, which depositary may be the Trustee or any other state or national bank having a capital in excess of $1,000,000.  In the event such depositary is a bank other than the Trustee, all such deposits shall be made in the Trustee's name and such depositary shall hold any funds so deposited with it subject to the directions and instructions of the Trustee.  The Trustee shall have no liability or responsibility for (i) the selection of any such depositary, nor (ii) for any action or non-action taken by such depositary, except to the extent that such action or non-action is taken in accordance with the directions of the Trustee.  The timing of all contributions shall be entirely discretionary with the Participating Employer making such contribution except as otherwise required by the Code or ERISA.

(b)     Expenses incurred in the administration of the Plan, including but not limited to legal, actuarial, and Trustee's fees and expenses, shall be paid by the Trust to the extent allowed by law except to the extent such amounts are paid by the Participating Employers in the sole discretion of the Company.

(c)     To the extent provided under Code Section 413(c)(4), separate computations shall be made under this Article with respect to each Participating Employer in the Plan to the end that each such Participating Employer shall bear the cost of funding benefits accrued hereunder for its own Participants.

(d)     Forfeitures under this Plan shall not be applied to increase the benefits any Participant would otherwise receive under this Plan but shall instead be used to reduce subsequent contributions.

(e)     No Participant can make contributions under this Plan.

LEGAL02/33812181v1

ARTICLE IV.

RETIREMENT AND DEATH BENEFITS

4.1     Normal Retirement Benefit - Unmarried Participant.

(a)     A Participant may retire and commence receiving his vested Normal Retirement Benefit on his Normal Retirement Date. A Participant shall be 100% vested in benefits under this Plan upon attainment of Normal Retirement Age if he is then an Employee. Except as hereinafter provided, the amount of the monthly retirement benefit payable each month for the life of a Participant, commencing on his Normal Retirement Date and ending with the benefit for the month during which his death occurs, which is his Normal Retirement Benefit, shall be equal to (1) reduced by (2), as follows:

(1)     If the Participant had completed 34 or more Years of Benefit Service as of December 31, 1983, then (1) is the greater of (A) or (B) and, if the Participant has completed less than 34 Years of Benefit Service as of December 31, 1983, then (1) is (B):

(A)     1-1/2% of the Participant's Average Monthly Compensation multiplied by his Years of Benefit Service, but not more than 60% of such Average Monthly Compensation; or

(B)     the sum of:

[i]     2% of the Participant's Average Monthly Compensation multiplied by his Years of Benefit Service (up to a maximum of 25 years), plus

[ii]     1/2% of his Average Monthly Compensation multiplied by his Years of Benefit Service in excess of 25, but not more than 60% of such Average Monthly Compensation.

(2)     Is the Participant's Integrated Benefits.

(b)     Notwithstanding Subsection (a) above, the following minimums shall apply in determining the Normal, Early or Late Retirement Benefit (as applicable) payable to a Participant who at the date of his retirement or earlier Break in Employment has either (i) completed 10 or more Years of Benefit Service, or (ii) both attained age 55 and completed 5 or more Years of Benefit Service:

(1)     The Normal or Late Retirement Benefit payable on or after January 1, 1986 to such a Participant who retires on or after that date on a Normal or Late Retirement Date, or who prior to January 1, 1986 had retired on a Normal or Late Retirement Date and is receiving a Normal or Late Retirement Benefit on January 1, 1986, shall not be less than $150.

- 24 -

(2)    The Early Retirement Benefit payable on or after January 1, 1986 to such a Participant who retires on or after that date on an Early Retirement Date, or who prior to January 1, 1986 had retired on an Early Retirement Date and is receiving or is entitled to receive benefit payments on January 1, 1986, shall not be less than an amount equal to the product of $150 multiplied by a fraction, the numerator of which is the Participant's Years of Benefit Service and the denominator of which is the sum of (I) Years of Benefit Service through December 31, 1996, plus (II) Years of Vesting Service after December 31, 1996 to which he would have been entitled had he remained in the employ of the Participating Employers to his Normal Retirement Date.

(3)    The vested Normal Retirement Benefit payable pursuant to Section 4.6 to such a Participant

    (A)    who incurred a Break in Employment prior to his retirement during the period beginning September 1, 1980 and ending December 31, 1985, and who qualified for a vested Normal Retirement Benefit, or

    (B)    who incurs a Break in Employment on or after January 1, 1986 prior to his retirement and who qualifies for a vested Normal Retirement Benefit,

shall not be less than an amount equal to the product of (i) $100 (if clause (A) above applies), or (ii) $150 (if clause (B) above applies), multiplied in either case by a fraction, the numerator of which is the Participant's Years of Benefit Service and the denominator of which is the sum of (I) Years of Benefit Service through December 31, 1996, plus (II) Years of Vesting Service after December 31, 1996 to which he would have been entitled had he remained in the employ of the Participating Employers to his Normal Retirement Date. If a Participant referred to in this Subsection 4.1(b) is eligible for and commences an Early Retirement Benefit, the appropriate reduction for early commencement shall be made to the minimum benefit.

The Normal Retirement Benefit or vested Normal Retirement Benefit computed under Paragraphs (1), (2) or (3) above, whichever applies, shall then be reduced by the aggregate benefits payable to such Participant under any other pension plan qualified under Section 401(a) of the Code, including any such plan established pursuant to any collective bargaining or other agreement, to the extent that the Participating Employers or a Related Company or any predecessors thereto have contributed or paid all or a part of the costs thereof as determined by rules established from time to time by the Administrative Committee. The minimum benefits described in this Subsection (b) shall be reduced as otherwise specified in this Plan if it is paid in the form of a Qualified Joint and Survivor Annuity or an optional form of benefit.

Participants whose retirement or earlier Break in Employment occurs on or after January 1, 1997 shall be eligible to receive the minimum benefits described in Section 4.1(b) of the Plan if, as of the date of retirement or earlier Break in Employment, the Participant has either (i) completed ten or more Years of Vesting Service, or (ii) attained age 55 and completed five or more Years of Vesting Service. For purposes of the foregoing sentence, only Years of Vesting Service completed on or before December 31, 1996 shall be considered. The rule described in the preceding two sentences applies only to determine eligibility for the minimum benefits. The amount of the Normal, Early or Late Retirement Benefit shall continue to be calculated based upon Years of Benefit Service as provided in Article IV of the Plan.

(c)     In no event shall the Participant's Normal Retirement Benefit be less than the benefit that would have been payable as of his Early Retirement Date.

4.2     Early Retirement Benefit - Unmarried Participant.

If the Participant elects to retire on an Early Retirement Date, his retirement benefit will be a monthly Early Retirement Benefit beginning on such Early Retirement Date, reduced for early commencement pursuant to Appendix A, and ending with the benefit for the month during which his death occurs. Notwithstanding the foregoing, if a Participant is employed by a property in the Gaming Group, such Participant shall be eligible to commence receiving his or her retirement benefit on or after his Early Retirement Date and shall not be required to have a Break in Employment prior to electing to receive his or her retirement benefit..

Further notwithstanding the foregoing, in the case of a Participant described in clause (ii) of the definition of Early Retirement Date who is entitled to a vested benefit pursuant to Section 4.6(b) but who has less than 20 Years of Vesting Service, the early commencement factors contained in Appendix A shall not apply, and his Early Retirement Benefit shall instead be the Actuarial Equivalent of his vested Normal Retirement Benefit.

4.3     Disability Retirement Benefit - Unmarried Participant.

(a)     If (i) the Administrative Committee determines that a Participant's Break in Employment with his Participating Employer is a result of his Disability prior to his Normal Retirement Date, and (ii) he is eligible for a Disability Retirement Date, such Participant shall be entitled to a Disability Retirement Benefit commencing on his Disability Retirement Date, reduced for early commencement pursuant to Appendix A, and ending with the benefit for the month during which his death occurs.

Notwithstanding the foregoing, in the case of a Participant entitled to a vested benefit pursuant to Section 4.6(b) whose Disability Retirement Date results from a Disability incurred after a Break in Employment, the early commencement factors contained in Appendix A shall not apply, and his Disability Retirement Benefit shall instead be the Actuarial Equivalent of his vested Normal Retirement Benefit.

(b)     In the event that a Participant ceases to be subject to a Disability after a Disability Retirement Benefit has commenced, Disability Retirement Benefit payments will be suspended until the Participant's Normal Retirement Date or applicable Early Retirement Date at which time benefits will be recalculated on the basis of the Participant's participation as of that date.

4.4     Late Retirement Benefit - Unmarried Participant.

(a)     A Participant may retire after his Normal Retirement Date on his Late Retirement Date.  The amount of monthly retirement benefit payable each month for the life of a Participant who retires on his Late Retirement Date shall be his Late Retirement Benefit, commencing as of his Late Retirement Date or the later date elected by the Participant, but no later than the date set forth in Section 4.9(b)(i), and ending with the benefit for the month in which his death occurs.  Such Late Retirement Benefit shall equal the sum of the Participant's Normal Retirement Benefit as determined under Section 4.1 above, plus, for each Plan Year ending on or after the Participant's Normal Retirement Date, the greater of (1) or (2):  (1) shall be the additional benefit accrued for each such Plan Year, taking into account Years of Benefit Service accrued (but not to exceed any limits on such Years of Benefit Service pursuant to Section 4.1) and Compensation earned in each such year through the Participant's Late Retirement Date; and (2) shall be the increase to the Participant's accrued benefit as of the end of the Plan Year preceding the Plan Year in question to take into account the nonpayment of benefits during any such period determined pursuant to the Actuarial Equivalent assumptions in Appendix A.

(b)     Participants who continue employment past Normal Retirement Date shall be given such notice with respect to suspension of their retirement benefit payments as is required by applicable Department of Labor regulations.

4.5     Normal Form of Retirement Benefit.

(a)     Normal Form of Retirement Benefit.  The normal form of retirement benefit with respect to any Participant who is not married on the Participant's Annuity Starting Date shall be a single life annuity.  Monthly retirement payments under the single life annuity shall commence on the Annuity Starting Date, but no later than the date set forth in Section 4.9(b)(i), as applicable, with the last payment being made for the month in which the Participant's death occurs.

Notwithstanding any other provision of the Plan, the normal form of retirement benefit with respect to any Participant who is married to a Spouse on the Participant's Annuity Starting Date shall be a Qualified Joint and Survivor Annuity.  Monthly retirement payments under the Qualified Joint and Survivor Annuity shall commence on the Annuity Starting Date selected by the Participant, but no later than the date set forth in Section 4.9(b), as applicable, with the last payment being made for the month in which the death of the Participant or the Participant's Spouse, as applicable, occurs.

(b)     Election Not to Take Qualified Joint & Survivor Annuity.  The Qualified Joint and Survivor Annuity shall be the benefit form unless the married Participant, after receiving a written explanation of the terms and conditions of the Qualified Joint and Survivor Annuity and the effect of not receiving the same shall elect not to take such Qualified Joint and Survivor Annuity.  Such election shall not be effective unless the Spouse of the Participant consents in writing to such election, which consent shall acknowledge the effect of such election and shall be witnessed by a Plan representative or notary public, or it is established to the satisfaction of the Plan representative that the consent required cannot be obtained because there is no Spouse, because the Spouse cannot be located or because of other circumstances set forth in Treasury Regulations. The Spouse's consent must specify the form of benefits to be paid and any contingent annuitant.  The form of benefits and any contingent annuitant may be changed only if the Spouse consents to such change in the manner provided in this Section.  However, the form of benefits and contingent annuitant may be changed without subsequent spousal consent if:

    (1)     The original consent acknowledged the right of the Spouse to limit consent to a specific contingent annuitant and form of benefits, and

    (2)     The original consent expressly permits changes to the form of benefits and contingent annuitant without any requirement of further spousal consent.

The Spouse's consent may not be revoked.  In the event the Qualified Joint and Survivor Annuity is waived, the benefit shall be paid in the optional form of benefit elected by the Participant as provided in Section 4.8.

(c)     QJSA Notice.  For purposes of this Section 4.5(c), the single life annuity payable to a single Participant as the normal form of benefit pursuant to Section 4.5(a) is the Qualified Joint and Survivor Annuity for the single Participant.  Each Participant shall be provided with a written explanation of:

    (1)     The terms and conditions of the Qualified Joint and Survivor Annuity,

    (2)     The Participant's right to make, and the effect of, an election not to take a Qualified Joint and Survivor Annuity,

    (3)     The rights of the Participant's Spouse, if any, with regard to such Spouse's required consent to the Participant's waiver of the Qualified Joint and Survivor Annuity, and

    (4)     The Participant's right to make, and the effect of, a revocation of an election to waive the Qualified Joint and Survivor Annuity.

The written explanation shall include an explanation of the eligibility conditions, other material features, and relative values of the optional forms of benefits under the Plan, as

- 28 -

well as a general explanation of the relative financial effect on a Participant's benefit of the waiver of the Qualified Joint and Survivor Annuity.

(d)     Elective Payment Commencement Date.  Where the Annuity Starting Date is not fixed under the terms of the Plan, if a Participant elects to start payment of the Participant's benefit before the date on which the benefit is required to begin under the terms of the Plan, then the Participant shall apply for a distribution at least fifteen days before the Annuity Starting Date proposed by the Participant.  Except as otherwise provided in this Section 4.5, the following rules shall apply:

(1)     The explanation referred to in Section 4.5(c) (the "QJSA Notice") shall be provided to the Participant no less than 30 and no more than 90 days before the Annuity Starting Date;

(2)     The Participant and, if applicable, the Participant's Spouse must consent to the distribution no earlier than 90 days before the Annuity Starting Date; and

(3)     The Participant's election to waive the Qualified Joint and Survivor Annuity may be revoked only before the Annuity Starting Date.

For purposes of this Section 4.5, if the QJSA Notice is mailed to the Participant, then it is deemed to have been provided on the date on which the QJSA Notice is mailed to the Participant (in contrast to the date on which the QJSA Notice is received by the Participant).  The date on which the first payment of the Participant's retirement income benefit is actually made shall be referred to as the "Actual Payment Commencement Date."  A form of payment for which the actuarial factors specified in Treasury Regulation Section 1.417(e)-1(d)(1) must be used, such as a lump sum, shall be referred to as a "Section 417(e) Form of Payment."

(e)     QJSA Notice Provided Less than 30 Days Before Annuity Starting Date. The Plan may provide the QJSA Notice less than 30 days before the Annuity Starting Date if all of the following requirements are satisfied:

(1)     The Annuity Starting Date is after the date on which the QJSA Notice is provided to the Participant, except as provided in Section 4.5(f).

(2)     The Participant is notified of his or her right to consider a waiver of the Qualified Joint and Survivor Annuity for at least 30 days and is provided an opportunity to consider the waiver for at least 30 days, unless the Participant elects otherwise in accordance with this Section 4.5(e).

(3)     The Participant affirmatively elects to waive the 30 day period and elects a form of distribution, with spousal consent if necessary.

(4)     The Actual Payment Commencement Date is no earlier than the eighth day after the QJSA Notice is provided to the Participant.

(5)     The Participant may revoke the distribution election until the day before the later of the Annuity Starting Date or the Actual Payment Commencement Date.

(f)     Limited Retroactive Annuity Starting Dates.  Except as provided in this Section 4.5(f), the Annuity Starting Date for a Participant's distribution may not precede the date on which the QJSA Notice is provided.  Notwithstanding the foregoing, effective for distributions commencing on or after January 1, 2004, the Plan may provide the QJSA Notice on or after the Annuity Starting Date, in the following circumstances if all of the requirements of Section 4.5(f)(4) are met:

(1)     Administrative Delay.  Payment may begin on the Annuity Starting Date selected by the Participant, even if the QJSA Notice is provided after that Annuity Starting Date, if the Participant applied for payment to begin at least fifteen days before the proposed Annuity Starting Date (and before the date on which benefit payments are required to begin under the terms of the Plan) but, for administrative reasons beyond the control of the Participant, the QJSA Notice is not provided before the Participant's proposed Annuity Starting Date.

(2)     Delay of Required Minimum Distributions.  If a Participant is required to start payment on an Annuity Starting Date on account of Section 4.9(b), but the QJSA Notice is not provided until after that Annuity Starting Date (e.g., because the Participant could not be located), then payment of the Participant's benefit shall commence on the Annuity Starting Date required under Section 4.9(b).

(3)     Late Commencement with Fixed Annuity Starting Date.  If a Participant is required under the terms of the Plan to start payment of benefits as of a particular Annuity Starting Date (such as the Participant's Normal or Late Retirement Date, as applicable) and that date is before the required beginning date under Section 4.9(b), and the QJSA Notice is provided on or after that Annuity Starting Date (e.g., because the Participant could not be located before the Annuity Starting Date), then payment shall begin as of the Annuity Starting Date required under the terms of the Plan.

(4)     Requirements for Retroactive Annuity Starting Dates.  Except as otherwise provided in Section 4.5(f)(4), the following requirements apply whenever the QJSA Notice is provided after the Annuity Starting Date.

(A)     The Actual Payment Commencement Date is no more than 90 days after the QJSA Notice is provided, unless the delay in payment is due solely to an administrative delay.  The Participant and, if applicable, his or her Spouse shall consent to the distribution no more than 90 days before the Actual Payment Commencement Date, unless this requirement is not satisfied solely because of an administrative delay in the start of payment.

- 30 -

(B)     The QJSA Notice is provided at least 30 and no more than 90 days before the Actual Payment Commencement Date.  However, the QJSA Notice may be provided less than 30 days before the Actual Payment Commencement Date if all of the following requirements are satisfied:

> (i)     The Actual Payment Commencement Date is after the date on which the QJSA Notice is provided to the Participant.

> (ii)    The Participant is notified of his or her right to consider a waiver of the Qualified Joint and Survivor Annuity for at least 30 days and is provided an opportunity to consider the waiver for at least 30 days, unless the Participant elects otherwise in accordance with this Section 4.5(f)(4).

> (iii)   After the QJSA Notice is provided, the Participant affirmatively elects to waive the 30 day period and elects a form of distribution, with spousal consent if necessary.

> (iv)    The Actual Payment Commencement Date is no earlier than the eighth day after the QJSA Notice is provided to the Participant.

> (v)     The Participant may revoke his or her distribution election until the day before the Actual Payment Commencement Date.

(C)     If the Participant is married on the Actual Payment Commencement Date, then the Participant's Spouse on the Actual Payment Commencement Date shall consent, in accordance with the requirements of this Section 4.5(f)(4), to payment of the Participant's retirement income benefit with the retroactive Annuity Starting Date and, if the Participant elects a form of payment other than the Qualified Joint and Survivor Annuity, to that form of payment.  If the Participant was married to an individual on the retroactive Annuity Starting Date and is not married to that individual on the Actual Payment Commencement Date, then no consent of the former spouse is required for the distribution, except as otherwise provided in a qualified domestic relations order, within the meaning of Code Section 414(p).

(D)     If payment will be made in an annuity form of payment, then the following rules shall apply:

> (i)     The amount of the monthly annuity payments (if any) made on or after the Actual Payment Commencement Date shall be the same as the amount of the monthly annuity payments (if any) that would have been due on or after the Actual Payment

- 31 -

Commencement Date had the annuity payments actually started on the retroactive Annuity Starting Date.

(ii)     The sum of any annuity payments that would have been due, had payment of the annuity actually started on the retroactive Annuity Starting Date, for months included in the period starting on the retroactive Annuity Starting Date and ending on the day before the Actual Payment Commencement Date, shall be paid in a single lump sum on the Actual Payment Commencement Date, or as soon thereafter as is practicable.  The sum of these missed annuity payments shall be increased, using 5% annual, compound interest, to reflect the delay in payment of each such annuity payment from the date on which it would have been paid, had payment of the annuity actually commenced on the retroactive Annuity Starting Date, to the date on which the lump sum make-up amount is actually paid.  For example, if the Actual Payment Commencement Date is May 1 and the retroactive Annuity Starting Date is March 1, then the annuity payments due on March 1 and April 1, increased by interest for the two months' and one month's delay in payment respectively, shall be paid on May 1 (along with the annuity payment due on May 1) or as soon thereafter as is practicable.

(iii)     A distribution that would have been a Qualified Joint and Survivor Annuity had payment actually begun on the retroactive Annuity Starting Date, shall be treated as a Qualified Joint and Survivor Annuity, including for purposes of Code Section 415(b)(2)(B), even though some annuity payments are paid in a lump sum in accordance with Section 4.5(f)(4)(D)(ii).  A distribution that otherwise would have been described in Code Section 72(t)(2)(A)(iv) (relating to substantially equal periodic payments) shall not be treated as failing to be described in Code Section 72(t)(2)(A)(iv) on account of the fact that some annuity payments are paid in a lump sum in accordance with this Section 4.5(f)(4).

(iv)     The limit under Section 5.1 (relating to the Code Section 415 limits) on the amount of the retirement income benefit paid on account of the retroactive Annuity Starting Date shall be calculated as of and using the factors that would apply for an annuity in the applicable form commencing on the retroactive Annuity Starting Date.  In addition, if the Actual Payment Commencement Date is more than 12 months after the retroactive Annuity Starting Date, then the amount of the annuity, including any interest paid on missed annuity payments in accordance with Section 4.5(f)(4), shall be subject to the limits of Section 5.1, calculated as of and

- 32 -

using the factors that would apply for an annuity in the applicable form commencing on the Actual Payment Commencement Date.

(E)     If the payment will be made in a Section 417(e) Form of Payment (such as a lump sum), then the following rules shall apply.

(i)     To determine whether the Participant or Beneficiary is eligible to elect an optional lump sum form of payment or is required to receive a lump sum payment, the value of the Section 417(e) Form of Payment shall be determined as of the retroactive Annuity Starting Date, using the factors for determining the Actuarial Equivalent lump sum amount that apply as of the retroactive Annuity Starting Date.

(ii)     The amount of the Section 417(e) Form of Payment that shall be paid is the larger of the following amounts:

(I)     The amount of the Section 417(e) Form of Payment, calculated as of the retroactive Annuity Starting Date, using the factors for determining the Actuarial Equivalent lump sum amount that apply as of the retroactive Annuity Starting Date. This amount shall be increased, using compound interest based on the annual rate of interest used (as of the retroactive Annuity Starting Date) to determine the Actuarial Equivalent amount, to reflect the delay in payment of the Section 417(e) Form of Payment from the retroactive Annuity Starting Date to the Actual Payment Commencement Date.

(II)     The amount of the Section 417(e) Form of Payment, calculated as of the Actual Payment Commencement Date, using the factors for determining the Actuarial Equivalent lump sum amount that apply as of the Actual Payment Commencement Date. In applying the rule in the preceding sentence, the rules in Treasury Regulation Section 1.417(e)-1(b)(3)(v)(C) (relating to which benefit is used to calculate the Actuarial Equivalent amount) shall apply.

(iii)     The limit under Section 5.1 (relating to the Code Section 415 limits) on the amount of the Section 417(e) Form of Payment benefit paid on account of the retroactive Annuity Starting Date shall be calculated as of and using the factors that would apply for a lump sum paid on the retroactive Annuity Starting Date. In addition, the amount of the Section 417(e) Form of Payment, including any interest paid on a delayed Section 417(e) Form of Payment

- 33 -

in accordance with this Section 4.5(f)(4), shall be subject to the limit under Section 5.1, calculated as of and using the factors that would apply for a lump sum with an annuity starting date that is the same as the Actual Payment Commencement Date.

(5)     If retirement income payments commence pursuant to Section 4.9(b) because a Participant attains his or her required beginning date, as described in that Section, additional benefits accrued after the Participant's initial Annuity Starting Date, if any, shall be paid in the same form in which the Participant is already receiving his or her retirement income payments, and no election of a form of payment with regard to such additional accruals shall be required or permitted.

4.6     Vesting; Breaks in Service.

(a)     Vesting at Normal Retirement Age.  A Participant shall become 100% vested in his Normal Retirement Benefit upon reaching his Normal Retirement Age if he is then employed by a Participating Employer or a Related Company.

(b)     Vesting Before Normal Retirement Age.  If a Participant incurs a Break in Employment for any reason other than retirement at his Normal or Late Retirement Date, he shall become vested in his Normal Retirement Benefit in accordance with the immediately following schedule:

| Years of Vesting Service | Percentage Vested |
|---|---|
| Less than 10 | 0% |
| 10 or more | 100% |

Notwithstanding the foregoing schedule, a Participant who has completed at least one Hour of Service on or after January 1, 1989 shall become vested in his Normal Retirement Benefit in accordance with the immediately following schedule:

| Years of Vesting Service | Percentage Vested |
|---|---|
| Less than 5 | 0% |
| 5 or more | 100% |

(c)     Breaks in Service.  In determining a Participant's accrued benefit, Years of Benefit Service and Years of Vesting Service for purposes of the Plan, if the Participant incurs a One Year Break in Service Year and if he had no nonforfeitable interest in his benefits under this Plan at the time of his Break in Employment, his

- 34 -

accrued benefit, Years of Benefit Service and Years of Vesting Service prior to such Break in Employment shall not be taken into account if the number of consecutive One Year Break in Service Years subsequent to such Break in Employment equals or exceeds the greater of the Participant's Years of Vesting Service completed prior to such termination of employment, or (effective January 1, 1985) five consecutive One Year Break in Service Years. If the preceding sentence would cause any accrued benefit, Years of Benefit Service or Years of Vesting Service to be disregarded as of December 31, 1984 if that sentence's reference to five consecutive One Year Break in Service Years were ignored, such accrued benefit or Years of Vesting Service shall continue to be disregarded. Years of Benefit Service and Years of Vesting Service previously eliminated by a prior application of this Paragraph shall not be counted for the purpose of the preceding sentences.

Participants who experience one or more breaks in service prior to 1976 shall be treated for all purposes of this Plan as new employees as of the first time after 1975 that they recommence employment with a Participating Employer after such breaks and any benefits payable under this Plan on account of such service prior to a break in service shall be computed without reference to any service by the Participant subsequent to reemployment.

Notwithstanding the foregoing, in the case of a Participant who dies while performing qualified military service (as defined in Section 414(u) of the Code), the Participant's Beneficiary is entitled to any additional benefits (other than benefit accruals relating to the period of qualified military service) provided under the Plan had the Participant resumed employment on the date before death and then terminated employment on account of death.

4.7     Surviving Spouse Benefit.

(a)     If a vested Participant dies prior to his Annuity Starting Date but on or after a date on which he could have retired, his Surviving Spouse shall receive a Surviving Spouse Benefit. The monthly Surviving Spouse Benefit shall be an annuity amount payable as if the Participant had retired and elected a Qualified Joint and Survivor Annuity on the day before his death. Payment of the Surviving Spouse Benefit shall commence on the first day of the month coinciding with or next following the Participant's date of death; provided, however, that if such Participant's death occurs before what would have been his Normal Retirement Date, his Surviving Spouse may elect to defer commencement of the Surviving Spouse Benefit until the first day of any following month, but no later than what would have been such Participant's Normal Retirement Date.

(b)     If a vested Participant dies before a date on which he could have retired, the Surviving Spouse Benefit shall be payable as if the following events had occurred: (1) the Participant incurred a Break in Employment because of resignation or discharge on the date of his death or, if earlier, the date of his actual Break in Employment, (2) the Participant survived to the earliest date on which he could have retired, (3) the Participant

retired with an immediate Qualified Joint and Survivor Annuity at the earliest date on
which he could have retired, and (4) the Participant died on the day after the day on
which such Participant would have attained the earliest date on which he could have
retired. Payment under this Subsection shall begin as of the first day of the month
coinciding with or next following the later of the Participant's date of death or the date he
would have attained age 55; provided, however, that his Surviving Spouse may elect to
defer commencement of the Surviving Spouse benefit until the first day of any following
month, but no later than what would have been such Participant's Normal Retirement
Date.

(c)     in addition to the Participant described above, a Participant who separated
from service before August 23, 1984 with at least 10 Years of Vesting Service shall have
the opportunity to also elect a Surviving Spouse Benefit in accordance with regulations
issued by the Department of Treasury.

4.8     Optional Retirement Benefits.

(a)     A Participant who retires may elect, in lieu of the retirement annuity
otherwise payable to him, one of the following optional forms of benefits commencing on
the Participant's Early, Normal, Late or Disability Retirement Date, as the case may be:

(i)     Single Life Annuity.  A retirement benefit payable to the Participant
during the Participant's lifetime with payments ending in the month during which
the Participant's death occurs.  The amount of such benefit shall be determined in
accordance with Section 4.1.

(ii)     Level Income Option.  A retirement benefit adjusted to take account of the
expected Primary Social Security Benefit of the Participant.  Such adjustment for
Primary Social Security benefits shall be made by providing (A) retirement
benefits on a temporary basis beginning on the Participant's Early or Disability
Retirement Date and terminating with the payment for the month preceding the
earliest date the Participant is entitled to receive an old age insurance benefit
under the Social Security Act or the date of his death, whichever first occurs, and
(B) an additional retirement benefit as chosen by the Participant in the form of a
single life annuity or a Joint and Survivor Annuity Option.  The amount of the
monthly retirement benefit payable on the temporary basis and the additional
benefit shall be determined in accordance with Appendix A.

(iii)     Joint and Survivor Annuity Option.  A retirement benefit payable each
calendar month to the Participant, for life, with a continuing annuity to the
Participant's Spouse, if the Spouse survives the Participant, in an amount equal to
a designated percentage (66-2/3% or 75%) of the monthly annuity payable to the
Participant, beginning with the calendar month following the Participant's death
and continuing for the Spouse's further lifetime.  If the Participant's Spouse,
determined as of the Annuity Starting Date, predeceases the Participant, no
payments shall be made after the Participant's death.  The amount of benefits

under this option shall be determined on an Actuarial Equivalent basis as specified under Appendix A.  A married Participant may elect a Joint and Survivor Annuity Option without obtaining spousal consent.

(iv)     Ten-Year Certain and Life Annuity.  A retirement benefit providing monthly payments to the Participant for life, with a provision that if the Participant dies prior to having received 120 monthly payments, any remaining monthly payments shall be paid as soon as practicable in a single sum to the Participant's primary Beneficiary or Beneficiaries then living, in equal shares, or if no primary Beneficiary is alive, to the Participant's contingent Beneficiary or Beneficiaries then living, in equal shares as soon as administratively feasible following the Participant's death.  If no primary or contingent Beneficiary is still living on the date of the Participant's death, the remaining guaranteed payments will be paid to the Participant's Spouse, if living and if there is no Spouse, to the Participant's estate in a single lump sum as soon as administratively feasible following the Participant's death.  For purposes of determining the value of commuted benefits, the applicable interest rate described in Code Section 417(e)(3) as determined under Appendix A shall be used.

For Annuity Starting Dates prior to January 1, 2006, the Beneficiaries of a Participant under the Ten-Year Certain and Life Annuity option could only be the Participant's mother, father, spouse or child.  Effective for Annuity Starting Dates on or after January 1, 2006, the Beneficiary or Beneficiaries designated by a Participant who elects the Ten-Year Certain and Life Annuity option may be any person or persons who meets the Plan's definition of a "Beneficiary".

(v)     Same-Sex Spouse Contingent Annuity Options.  A retirement benefit payable each calendar month to the Participant, for life, with a continuing annuity to the Participant's Same-Sex Spouse, in an amount equal to either 50%, 66-2/3% or 75% of the monthly annuity payable to the Participant, beginning with the calendar month following the Participant's death and continuing for the Same-Sex Spouse's further lifetime.  If the Participant's Same-Sex Spouse predeceases the Participant, no payment shall be made after the Participant's death.  The value of a benefit under the 50%, 66-2/3% and 75% options shall be determined on an Actuarial Equivalent basis using the same actuarial factors applied to determine the value of such options for opposite-sex Spouses as provided above and under Appendix A.  The Same-Sex Spouse Contingent Annuity Options may be combined with an election to receive the Level Income Option described above.  Where applicable, the value of a Same-Sex Spouse Contingent Annuity Option shall comply with the requirements of Code Section 401(a)(9) as though the Same-Sex Spouse were a non-spousal beneficiary.

(b)     Election Procedure.  Subject to the rules contained in Section 4.5, the election of one of the options provided for in this Section shall become effective on the Annuity Starting Date.  In addition, to be effective, any election made under this Section must be made by the Participant, must be in writing on a form or forms prescribed by the

- 37 -

Administrative Committee, if spousal consent is required, must be signed by the Participant and the Participant's Spouse, unless it is established to the satisfaction of the Plan representative that the consent required cannot be obtained because there is no Spouse or because the Spouse cannot be located, and must be filed with the Administrative Committee in accordance with the Plan's established procedures. An election may be rescinded or changed at any time on or prior to the Annuity Starting Date, and may not be rescinded or changed after the Annuity Starting Date. Any election hereunder involving a contingent annuitant shall be treated as revoked in the event of such contingent annuitant's death prior to the commencement of retirement payments.

4.9     Payment of Retirement Benefit.

        (a)     Unless a Participant elects otherwise, distributions from this Plan must commence no later than 60 days following the close of the later of the Plan Year in which (1) the Participant reaches Normal Retirement Age, (2) the Participant incurs a Break in Employment, or (3) occurs the 10th anniversary of the date the Participant commenced participation in the Plan. If, (i) the Participant elects to defer his or her receipt of his or her benefit to a date later than the date specified in (1), (2) or (3) but not later than the Participant's Required Beginning Date, (ii) the amount of the Participant's benefit has not been determined as of the date specified in (1), (2), or (3) above or, (iii) subject to Section 4.11, the Participant cannot be located, then the distribution shall be determined and paid, using the retroactive annuity starting date rules of Section 4.5(f)(4), no later than 60 days after the latest of (i) the date the Participant returns the properly completed election forms, (ii) the date payment can be calculated or, (iii) subject to Section 4.11, the date the Participant is located. For this purpose, a Participant shall be deemed to have elected to defer receipt of his or her benefit until the earlier of the date he or she elects to receive benefits or his or her Required Beginning Date, as defined in subparagraph (b)(i) below, if the Participant fails to respond to written communications from the Plan Administrator or its delegate regarding the Participant's eligibility to commence receipt of his or her benefit.

        (b)     Age 70-1/2 Special Distribution Rules.

        (i)     The rules of this Subsection (b) shall apply unless the Code is amended to change the application of Code Section 401(a)(9), in which case Paragraphs (i) through (iv) shall be considered to be amended in a manner that incorporates the change.

        Notwithstanding anything to the contrary contained herein, the distribution options under the Plan shall comply with Code Section 401(a)(9) and regulations promulgated thereunder. Accordingly, unless otherwise permitted by law, in the case of a Participant (other than a 5% owner of the Company) who attains age 70-1/2, distribution of such Participant's entire interest must commence not later than the first day of April following the later of the calendar year in which such Participant attains age 70-1/2 or the calendar year in which the Participant retires. In the case of a Participant who is a 5% owner of the Company who attains age

- 38 -

70-1/2 (and, prior to January 1, 2002, with respect to all Participants), distribution of such Participant's entire interest must commence not later than the first day of April following the calendar year in which such Participant attains age 70-1/2. The date by which benefits must be distributed, or commence to be distributed, is the "Required Beginning Date." Finally, Participants (other than 5% owners) who previously commenced benefits under this Paragraph upon attainment of age 70-1/2 may elect to stop receiving such distributions until the April 1 following the calendar year in which the Participant retires. In all cases, distributions shall be made in amounts determined in accordance with Code Section 401(a)(9) and the regulations thereunder.

(ii)     Distribution shall be made over the life of such Participant (or over the lives of the Participant and his Beneficiary) or over a period not extending beyond the life expectancy of the Participant (or over a period not extending beyond the life expectancy of the Participant and his Beneficiary).

(iii)    If a Participant dies before the distribution of his interest has begun, his entire interest shall be distributed within five years after the date of his death unless the requirements of one of the two following exceptions are satisfied:  (A) the Participant's interest will be distributed to a Beneficiary over the life of such Beneficiary or over a period not extending beyond the life expectancy of such Beneficiary and the distributions begin not later than one year following the date of the Participant's death (or such later date as permitted by law), or (B) the Participant's interest will be distributed to or for the benefit of his spouse over the life expectancy of such surviving spouse or over a period not extending beyond the life expectancy of such spouse and the distributions begin no later than the date on which the Participant would have attained age 70-1/2 (if the spouse dies before such distributions begin, this second exception shall be applied as if the spouse were the Participant).  For purposes of this Paragraph and to the extent permitted by law, any amount paid to a Participant's child shall be treated as if it had been paid to the Participant's spouse if such amount will become payable to the spouse upon such child reaching majority (or other designated event permitted by law).

(iv)     With respect to distributions under the Plan made for calendar years beginning after December 31, 2002, the following rules shall apply:

(A)      The Participant's entire interest will be distributed, or begin to be distributed, to the Participant no later than the Participant's Required Beginning Date.

(B)      If the Participant dies before distributions begin, the Participant's entire interest will be distributed, or begin to be distributed, no later than as follows:

- 39 -

Case 1:16-cv-00856-CKK   Document 84-3   Filed 12/21/20   Page 44 of 112

(1)     If the Participant's Surviving Spouse is the Participant's sole designated Beneficiary, then distributions to the Surviving Spouse will begin by December 31 of the calendar year immediately following the calendar year in which the Participant died, or by December 31 of the calendar year in which the Participant would have attained age 70-1/2, if later.

(2)     If the Participant's Surviving Spouse is not the Participant's sole designated Beneficiary, then distributions to the designated Beneficiary will begin by December 31 of the calendar year immediately following the calendar year in which the Participant died.

(3)     If there is no designated Beneficiary as of September 30 of the year following the year of the Participant's death, the Participant's entire interest will be distributed by December 31 of the calendar year containing the fifth anniversary of the Participant's death.

(4)     If the Participant's Surviving Spouse is the Participant's sole designated Beneficiary and the Surviving Spouse dies after the Participant but before distributions to the Surviving Spouse begin, this (iv)(B), other than (iv)(B)(1), will apply as if the Surviving Spouse were the Participant.

For purposes of this (iv)(B) and (iv)(I), (J) and (K), distributions are considered to begin on the Participant's Required Beginning Date (or, if (iv)(B)(4) applies, the date distributions are required to begin to the Surviving Spouse under (iv)(B)(1)). If annuity payments irrevocably commence to the Participant before the Participant's Required Beginning Date (or to the Participant's Surviving Spouse before the date distributions are required to begin to the Surviving Spouse under (iv)(B)(1)), the date distributions are considered to begin is the date distributions actually commence.

(C)     Unless the Participant's interest is distributed in the form of an annuity purchased from an insurance company or in a single sum on or before the Required Beginning Date, as of the first distribution calendar year distributions will be made in accordance with (iv)(D) through (K). If the Participant's interest is distributed in the form of an annuity purchased from an insurance company, distributions thereunder will be made in accordance with the requirements of Section 401(a)(9) of the Code and the Treasury Regulations. Any part of the Participant's interest which is in the form of an individual account described in Section 414(k) of the Code will be distributed in a manner satisfying the requirements of Section

LEGAL02/33812181v1

401(a)(9) of the Code and the Treasury Regulations that apply to individual accounts.

(D)     If the Participant's interest is paid in the form of annuity distributions under the Plan, payments under the annuity will satisfy the following requirements:

>   (1)     the annuity distributions will be paid in periodic payments made at intervals not longer than one year;
>
>   (2)     the distribution period will be over a life (or lives) or over a period certain not longer than the period described in (iv)(G) through (K);
>
>   (3)     once payments have begun over a period certain, the period certain will not be changed even if the period certain is shorter than the maximum permitted;
>
>   (4)     payments will either be nonincreasing or increase only as follows:
>
> >     (a)     by an annual percentage increase that does not exceed the annual percentage increase in a cost-of-living index that is based on prices of all items and issued by the Bureau of Labor Statistics;
> >
> >     (b)     to the extent of the reduction in the amount of the Participant's payments to provide for a survivor benefit upon death, but only if the beneficiary whose life was being used to determine the distribution period dies or is no longer the Participant's beneficiary pursuant to a qualified domestic relations order within the meaning of Section 414(p);
> >
> >     (c)     to provide cash refunds of Employee contributions upon the Participant's death; or
> >
> >     (d)     to pay increased benefits that result from a Plan amendment.

(E)     The amount that must be distributed on or before the Participant's Required Beginning Date (or, if the Participant dies before distributions begin, the date distributions are required to begin under (iv)(B)(1) or (2)) is the payment that is required for one payment interval. The second payment need not be made until the end of the next payment interval even if that payment interval ends in the next calendar year. Payment intervals

- 41 -

are the periods for which payments are received, e.g., bi-monthly, monthly, semi-annually, or annually. All of the Participant's benefit accruals as of the last day of the first distribution calendar year will be included in the calculation of the amount of the annuity payments for payment intervals ending on or after the Participant's required beginning date.

(F)     Any additional benefits accruing to the Participant in a calendar year after the first distribution calendar year will be distributed beginning with the first payment interval ending in the calendar year immediately following the calendar year in which such amount accrues.

(G)     If the Participant's interest is being distributed in the form of a joint and survivor annuity for the joint lives of the Participant and a nonspouse Beneficiary, annuity payments to be made on or after the Participant's Required Beginning Date to the designated Beneficiary after the Participant's death must not at any time exceed the applicable percentage of the annuity payment for such period that would have been payable to the Participant using the table set forth in Q&A-2 of Section 1.401(a)(9)-6T of the Treasury Regulations. If the form of distribution combines a joint and survivor annuity for the joint lives of the Participant and a nonspouse Beneficiary and a period certain annuity, the requirement in the preceding sentence will apply to annuity payments to be made to the designated beneficiary after the expiration of the period certain.

(H)     Unless the Participant's Spouse is the sole designated Beneficiary and the form of distribution is a period certain and no life annuity, the period certain for an annuity distribution commencing during the Participant's lifetime may not exceed the applicable distribution period for the Participant under the Uniform Lifetime Table set forth in Section 1.401(a)(9)-9 of the Treasury Regulations for the calendar year that contains the annuity starting date. If the annuity starting date precedes the year in which the Participant reaches age 70, the applicable distribution period for the Participant is the distribution period for age 70 under the Uniform Lifetime Table set forth in Section 1.401(a)(9)-9 of the Treasury Regulations plus the excess of 70 over the age of the Participant as of the Participant's birthday in the year that contains the annuity starting date. If the Participant's Spouse is the Participant's sole designated Beneficiary and the form of distribution is a period certain and no life annuity, the period certain may not exceed the longer of the Participant's applicable distribution period, as determined under this (iv)(H), or the joint life and last survivor expectancy of the Participant and the Participant's Spouse as determined under the Joint and Last Survivor Table set forth in Section 1.401(a)(9)-9 of the Treasury Regulations, using the Participant's and Spouse's attained ages as of the Participant's and Spouse's birthdays in the calendar year that contains the Annuity Starting Date.

- 42 -

(I)     If the Participant dies before the date distribution of his or her
interest begins and there is a designated Beneficiary, the Participant's
entire interest will be distributed, beginning no later than the time
described in (iv)(B)(1) or (2), over the life of the designated Beneficiary or
over a period certain not exceeding:

      (1)     unless the Annuity Starting Date is before the first
      distribution calendar year, the life expectancy of the designated
      Beneficiary determined using the Beneficiary's age as of the
      Beneficiary's birthday in the calendar year immediately following
      the calendar year of the Participant's death; or

      (2)     if the Annuity Starting Date is before the first distribution
      calendar year, the life expectancy of the designated Beneficiary
      determined using the Beneficiary's age as of the Beneficiary's
      birthday in the calendar year that contains the Annuity Starting
      Date.

(J)     If the Participant dies before the date distributions begin and there
is no designated Beneficiary as of September 30 of the year following the
year of the Participant's death, distribution of the Participant's entire
interest will be completed by December 31 of the calendar year containing
the fifth anniversary of the Participant's death.

(K)     If the Participant dies before the date distribution of his or her
interest begins, the Participant's Surviving Spouse is the Participant's sole
designated Beneficiary, and the Surviving Spouse dies before distributions
to the Surviving Spouse begin, then (iv)(I), (J) and (K) will apply as if the
Surviving Spouse were the Participant, except that the time by which
distributions must begin will be determined without regard to Section
(iv)(B)(1).

(L)     Definitions.

      (1)     Designated Beneficiary.  The individual or entity who is
      designated as the beneficiary under the definition of "Beneficiary"
      in Article II of the Plan and is the designated Beneficiary under
      Section 401(a)(9) of the Internal Revenue Code and Section
      1.401(a)(9)-1, Q&A-4, of the Treasury Regulations.

      (2)     Distribution Calendar Year.  A calendar year for which a
      minimum distribution is required.  For distributions beginning
      before the Participant's death, the first Distribution Calendar Year
      is the calendar year immediately preceding the calendar year that
      contains the Participant's Required Beginning Date.  For

distributions beginning after the Participant's death, the first Distribution Calendar Year is the calendar year in which distributions are required to begin.

(3)     Life Expectancy.  Life expectancy as computed by use of the Single Life Table in Section 1.401(a)(9)-9 of the Treasury Regulations.

(v)     Notwithstanding any other provision of Subsection (b), benefits under this Plan shall be paid pursuant to a Participant's election submitted before 1984 if such election choice was a form of benefit permitted by the Plan and complies with Section 242(b)(2) of the Tax Equity and Fiscal Responsibility Act of 1982.

(vi)     If a Participant (other than a 5% owner) continues employment after the calendar year in which he attains age 70-1/2, the Participant's accrued benefit shall be actuarially increased to take into account the period after such year in which the Participant is not receiving benefits under the Plan, but only to the extent that such increase exceeds the additional accrued benefits the Participant has otherwise earned during the period.

(c)     Direct Rollovers.

(i)     Notwithstanding any provision of the Plan to the contrary that would otherwise limit a Distributee's election under this Subsection (c), if a Distributee will receive an Eligible Rollover Distribution of at least $200, the Distributee may elect, at the time and in the manner prescribed by the Administrative Committee, to have any portion of an Eligible Rollover Distribution paid directly to an Eligible Retirement Plan specified by the Distributee in a Direct Rollover.  If a Distributee elects to have only a portion of an Eligible Rollover Distribution paid to an Eligible Retirement Plan, that portion must equal at least $500.

(ii)     Definitions.

(1)     An "Eligible Rollover Distribution" is any distribution of all or any portion of the balance to the credit of the Distributee, except that an Eligible Rollover Distribution does not include:  (A) any distribution that is one of a series of substantially equal periodic payments (not less frequently than annually) made for the life (or joint life expectancies) of the Distributee and the Distributee's designated Beneficiary, or for a specified period of ten years or more, (B) any distribution to the extent such distribution is required under Section 401(a)(9) of the Code, (C) the portion of any distribution that is not includible in gross income (determined without regard to the exclusion for net unrealized appreciation with respect to employer securities), and (D) any other type of distribution which the Internal Revenue Service announces (pursuant to regulation, notice or otherwise) is not an Eligible Rollover Distribution.

LEGAL02/33812181v1

(2)     An "Eligible Retirement Plan" is (A) an individual retirement account described in Section 408(a) of the Code, (B) an individual retirement annuity described Section 408(b) of the Code, (C) an annuity plan described in Section 403(a) of the Code, (D) a qualified trust described in Section 401(a) of the Code, that accepts the Distributee's Eligible Rollover Distribution, (E) an annuity contract described in Section 403(b) of the Code, (F) an eligible plan under Section 457 of the Code that is maintained by a state, political subdivision of the state, or any agency or instrumentality of a state or political subdivision of a state and that agrees to separately account for amounts transferred into such Plan from this Plan, or (G) a Roth IRA under Section 408A of the Code that accepts the Distributee's Eligible Rollover Distribution. The definition of Eligible Retirement Plan shall also apply in the case of a distribution to a Surviving Spouse or to a Spouse or former Spouse who is the alternate payee under a qualified domestic relations order, as defined in Section 414(p) of the Code.

(3)     "Distributee" includes an Employee or former Employee.  In addition, the Employee's or former Employee's Surviving Spouse and the Employee's or former Employee's Spouse or former Spouse who is the alternate payee under a qualified domestic relations order, as defined in Section 414(p) of the Code, are Distributees with regard to the interest of the Spouse or former Spouse. Notwithstanding the foregoing, effective January 1, 2010, a Distributee shall include any Beneficiary who is a "designated beneficiary" (as defined by Section 401(a)(9)(E) of the Code) and who is not the Surviving Spouse, former Spouse or alternate payee of the Participant.  Such a Beneficiary may elect a direct trustee-to-trustee transfer of the eligible portion of such distribution to (i) an individual retirement account, as described in Section 408(a) of the Code or (ii) an individual retirement annuity described in Section 408(b) of the Code, that is treated as an inherited individual retirement account or individual retirement annuity under Section 408(c)(3)(B) of the Code.

(4)     "Direct Rollover" is a payment by the Plan to the Eligible Retirement Plan specified by the Distributee.

(d)     In the event the Actuarial Equivalent of a Participant's vested accrued benefit is determined as of his Break in Employment, or the Surviving Spouse Benefit, is $1,000 or less, the Administrative Committee shall pay such Actuarial Equivalent in the form of a single lump sum as soon as administratively feasible, in lieu of all other benefits under the Plan. If the Actuarial Equivalent present value of the Participant's vested accrued benefit is greater than $1,000 when the Participant incurs a Break in Employment but is less than $5,000 on the Annuity Starting Date when the Participant chooses to commence his or her benefit under the Plan, the Participant will be able to elect a lump sum benefit of that accrued benefit. If the present value of the Participant's

vested accrued benefit exceeds $5,000 on the Annuity Starting Date elected by the Participant, then the Participant will not be eligible to elect a lump sum benefit and must instead elect either a normal form or optional form of annuity benefit under Article IV. No lump sum benefit other than the benefit described in this Section 4.9(d) will be available under the Plan.

Subject to Plan Section 4.5(f) regarding the calculation of benefit payments with Retroactive Annuity Starting Dates, the Actuarial Equivalent for any lump sum distribution shall be determined by applying the interest and mortality factors applicable to the year in which the Annuity Starting Date occurs.

(e)     A Participant who ceases to participate in the Plan and whose nonforfeitable percentage in his accrued benefit is zero shall be deemed to have received a complete distribution of the entire nonforfeitable portion of his accrued benefit at the time of his Break in Employment, and the forfeitable portion of his accrued benefit shall be forfeited at the time of his Break in Employment. Upon distribution, such accrued benefit and service attributable to such accrued benefit shall thereupon be disregarded for all purposes under this Plan. Notwithstanding the preceding sentence, if the distribution to a Participant as described above is less than the Actuarial Equivalent of such Participant's full accrued benefit, such Participant's full accrued benefit and related service shall be restored if he subsequently is reemployed by a Participating Employer and repays to the Plan his distribution under this Subsection. Such distribution must be repaid before the earlier of five years after the date of reemployment or the close of the fifth One Year Break in Service Year after distribution. In addition, the repaid amount must equal the distribution plus interest at 120% of the applicable federal mid-term rate (or such other rate as may be specified under Section 411(c)(2)(C) of the Code), compounded annually from the date of distribution to the date of repayment. In the case of a Participant whose nonforfeitable interest in his accrued benefit at the time of his Break in Employment is zero, such Participant shall be deemed to have repaid his distribution pursuant to the foregoing provisions as of his date of reemployment.

(f)     Notwithstanding Appendix A and the foregoing provisions of this Section (d), if the lump sum Actuarial Equivalent of (i) the vested accrued benefit of a Participant who incurred a Break in Employment prior to November 15, 1995 and who has not received a distribution prior to November 15, 1995, or (ii) a Surviving Spouse Benefit attributable to the death of a Participant prior to November 15, 1995, which benefit has not been distributed prior to November 15, 1995, is $3,500 or less (or $5,000 or less if distribution occurs on or after January 1, 1998, or $1.000 or less if distribution occurs on or after March 28, 2005), such benefit shall be paid in a single cash lump sum as soon as administratively feasible after November 15, 1995. The Actuarial Equivalent for such distributions shall be determined by applying the interest and mortality factors applicable to 1995, as adopted by the First Amendment to the Plan (as amended and restated effective January 1, 1987).

- 46 -

4.10    Suspension of Benefits.

(a)    If a Participant has commenced receiving benefits hereunder and is subsequently reemployed by a Participating Employer or a Related Company, his benefits will be discontinued during any month of such reemployment in which the Participant is employed in Section 203(a)(3)(B) Service unless the continued payment of benefits is required by Section 4.9(b)(i).  The previous sentence shall only apply if the Participant is delivered a notice that complies with Department of Labor Regulations Section 2530.203-3(b)(4).

(b)    A Participant reemployed as described in Subsection (a) shall upon reemployment again become a Participant under this Plan if he meets the then applicable requirements for participation.  Such Participant's benefit accrued during such reemployment shall be computed for each period of reemployment and the benefit payable to such Participant shall be increased as of his subsequently selected Early, Normal or Late Retirement Date, as applicable, to take into account such additional benefit, if any.  Any additional benefit shall be decreased by the Actuarial Equivalent of any benefit payments (other than Disability Retirement Benefit payments) paid to the Participant prior to his attaining his Normal Retirement Date. No additional accruals occurred under this Plan for any Participant after December 31, 1996.

(c)    In the case of a Participant reemployed after attaining his Normal Retirement Date, any additional accrual during a Plan Year shall increase the benefits payable to the Participant as of the first day of the next Plan Year.  Any additional accrual during a Plan Year shall be reduced, however, by the Actuarial Equivalent of any payments during the Plan Year to the Participant in any month in which the Participant is employed in Section 203(a)(3)(B) service.  No additional accruals occurred under this Plan for any Participant after December 31, 1996.

(d)    Effective for Participants who are reemployed on or after January 1, 1997, benefit payments shall continue to be made to such Participant notwithstanding such reemployment.

4.11    Inability to Locate Participant.

In the case of any benefit payable under this Plan, if the Administrative Committee is unable, within the time period established by the Administrative Committee in accordance with its procedures to locate the Participant or Beneficiary to whom payment is due, such benefit shall be forfeited and the assets of this Plan shall be relieved of the liability for payment of such benefit.  If after such forfeiture, the Participant or Beneficiary later claims such benefit, such benefit shall be reinstated and shall be paid retroactive to the date that such benefit first became payable.

4.12    Benefit Freeze.

Subject to Section 4.13, effective January 1, 1997, no further benefits shall be accrued by any Participant in this Plan. Accordingly, each Participant in this Plan shall be entitled to the benefit he or she earned through and including December 31, 1996, but shall not be credited with any additional benefit following December 31, 1996. Thus, by way of illustration and not limitation, Participants shall be entitled to benefits based only upon their Years of Benefit Service through December 31, 1996, and shall not be entitled to benefits based upon any portion of a Year of Benefit Service following December 31, 1996; provided, however, that as specifically set forth in the definition of Years of Benefit Service, certain service performed before January 1, 1997 which would otherwise be excluded under the Hilton Property Exclusion and the Union Exclusion shall be included as Years of Benefit Service even if the conditions for inclusion of such service are satisfied after December 31, 1996. As a further illustration, and not a limitation, increases in a Participant's Average Monthly Compensation based upon Compensation paid after December 31, 1996 shall not be considered under the Plan. As a further illustration, and not a limitation, no portion of a Year of Benefit Service after January 1, 1997 shall be included in determining whether a Participant is eligible for the minimum benefits referred to in Section 4.1(a), or the amount of any such minimum benefits. All Early Retirement Benefits, Late Retirement Benefits, Disability Retirement Benefits and Surviving Spouse Benefits shall be calculated based upon the frozen benefit earned through December 31, 1996. The benefit freeze shall apply to all Participants hereunder, whether employed by the Company or any Participating Employer or Participating Affiliate. Notwithstanding the foregoing, should the Plan become a top-heavy plan as set forth in Section 5.2, then the minimum accruals for Non-Key Employees shall continue to apply under Section 5.2.

4.13    Benefit Increase.

        (a)    The benefit attributable to each Participant shall be the greater of the benefit determined without respect to this Section 4.13 (the "Pre-Amendment Benefit"), or the benefit determined under this Section 4.13 (the "New Benefit"). For purposes of this Section 4.13, a Participant includes an individual who has previously been paid the full amount of the Pre-Amendment Benefit (such as an individual who received a lump sum cashout under Section 4.9(d)). The New Benefit attributable to the Participant shall be the benefit determined as if Section 4.1(a) of the Plan were the "Revised Section 4.1(a)," set forth in Subsection (b) of this Section 4.13.

        (b)    The "Revised Section 4.1(a)" is as follows:

        (a)    A Participant may retire and commence receiving his vested Normal Retirement Benefit on his Normal Retirement Date. A Participant shall be 100% vested in benefits under this Plan upon attainment of Normal Retirement Age if the Participant is then an Employee. Except as hereinafter provided, the amount of the monthly retirement benefit payable each month for the life of a Participant, commencing on his Normal Retirement Date and ending with the benefit for the

- 48 -

month during which his death occurs, which is his Normal Retirement Benefit, shall be equal to the amount determined by first multiplying (1) by (2), and then by deducting (3), as follows:

(1)     If the Participant had completed 34 or more Years of Benefit Service as of December 31, 1983, then (1) is the amount determined by deducting (C) from the greater of (A) or (B), or, if the Participant had not completed 34 or more Years of Benefit Service as of December 31, 1983, then (1) is the amount determined by deducting (C) from (B):

(A)     1-1/2% of the Participant's Average Monthly Compensation multiplied by his Potential Years of Benefit Service, but not more than 60% of such Average Monthly Compensation.

(B)     The sum of:  (i) 2% of the Participant's Average Monthly Compensation multiplied by his Potential Years of Benefit Service (up to a maximum of 25 years), plus (ii) 1/2% of his Average Monthly Compensation multiplied by his Potential Years of Benefit Service in excess of 25, but the sum of (i) and (ii) shall not be more than 60% of such Average Monthly Compensation.

(C)     Fifty percent (50%) of the "Potential Primary Social Security Benefit" of the Participant.  The Potential Primary Social Security Benefit shall be calculated in the same manner as set forth in the definition of the Primary Social Security Benefit in Article I, except that the last two sentences of the first Paragraph of the definition shall be replaced with the following:  "Such amount shall be determined on the basis of (i) the Participant's period of employment with the Participating Employers and (ii), if a Participant retires or otherwise incurs a Break in Employment prior to age 65, by assuming the Participant receives wages after such retirement or other Break in Employment until age 65 at the same rate the Participant received wages at the time of such retirement or other Break in Employment."

(2)     A fraction, the numerator of which is the Participant's Years of Benefit Service, and the denominator of which is the Participant's Potential Years of Benefit Service.  For purposes of the Plan, "Potential Years of Benefit Service" shall equal the greater of (i) the Participant's actual Years of Benefit Service or (ii) the Years of Benefit Service the Participant would complete, if, after first becoming a Participant, the Participant continued to serve as an active employee and Participant in the Plan through the Participant's Normal Retirement Date.  Potential Years of Benefit Service under this Section 4.13 are calculated including all Years of Benefit Service that would have been earned had Section 4.12

- 49 -

not been adopted. The value of the fraction described in this Subsection shall not exceed one.

(3)     The portion of the Participant's Integrated Benefits not related to Social Security benefits.

(c)     The New Benefit shall be calculated with respect to all benefits attributable to each Participant (whether or not the Participant was an active employee as of August 26, 1999, i.e., the date that Amendment 1999-1, which added this Section 4.13, was adopted). The benefit attributable to a Participant may be payable to the Participant, or may be payable in whole or in part to an alternate payee under a qualified domestic relations order, a joint or contingent annuitant receiving benefits following the death of a Participant (including the surviving spouse under a Qualified Joint and Survivor Annuity), or a surviving spouse entitled to the Surviving Spouse Benefit under the Plan. Each such person (including each Participant), for whom the New Benefit is greater than the Pre-Amendment Benefit is referred to in this Section 4.13 as an "Affected Person." Notwithstanding the foregoing, any former Employee who was not vested under the Plan at the time of his or her termination of employment shall not be an Affected Person, and shall not be entitled to benefit under this Section 4.13.

(d)     Except for the benefit increases set forth in this Section 4.13, the benefit freeze enacted by adding Section 4.12 to the Plan stays in effect. Accordingly, in calculating the Pre-Amendment Benefit and the New Benefit, no Participant shall earn actual Years of Benefit Service for service following December 31, 1996, and any increases to Average Monthly Compensation based upon Compensation paid after December 31, 1996 shall be disregarded.

(e)     As soon as administratively feasible following the adoption of Amendment 1999-1, which added this Section 4.13 to the Plan, the Company shall cause the amendment to be submitted to the IRS with a request that the IRS determine that the Plan, as amended, satisfies the qualification requirements of Section 401(a) of the Code. It is understood that such qualification requirements include satisfaction of Code Section 411(b)(1) and the regulations issued thereunder. As soon as administratively feasible following the adoption of Amendment 1999-1, the Company shall cause the New Benefits to be calculated. During the period that the New Benefits are being calculated and pending IRS approval, benefit payments shall temporarily continue at the Pre-Amendment Benefit level. As soon as administratively feasible following the later of the date the New Benefits have been calculated or the date the IRS issues a favorable determination letter concerning Amendment 1999-1, the payment amounts shall be revised as follows (the date on which an Affected Person's benefit payments are revised shall be the Affected Person's "New Benefit Date"):

(1)     If the Affected Person's Pre-Amendment Benefit is greater than the Affected Person's New Benefit, then no change to the Affected Person's Benefit shall be made.

(2)     If the Affected Person's New Benefit is greater than the Pre-Amendment Benefit, but no payments had been made to the Affected Person before the New Benefit Date, then the New Benefit shall apply to all payments made to the Affected Person.

(3)     If the Affected Person's New Benefit is greater than the Pre-Amendment Benefit, and if payments other than lump sum payments had been made under the Pre-Amendment Benefit, then the New Benefit shall apply to all payments made after the New Benefit Date, and in addition the following retroactive payment shall be made.  The retroactive payment shall be a single lump sum payment equal to the sum of the following amounts calculated with respect to each Pre-Amendment Benefit payment made to the Affected Person before the New Benefit Date:  The amount determined by first deducting (x) the monthly Pre-Amendment Benefit from (y) the monthly New Benefit, and then by increasing such remainder by (z) interest on the remainder for the period from the date the Pre-Amendment Benefit payment was made through the New Benefit Date at a rate (which shall be redetermined with respect to each Plan Year during such period) equal to the "applicable interest rate" as described in Section 417(e)(3) of the Code for the November immediately preceding each Plan Year during such period (or, for any Plan Year for which an "applicable interest rate" was not available under Code Section 417(e), the interest rate which would have been used during such Plan Year to determine the present value of a lump sum distribution).

(4)     If the Affected Person's New Benefit is greater than the Pre-Amendment Benefit, and payment of the Pre-Amendment Benefit had been made as a lump sum, then an additional lump sum payment shall be made.  The additional lump sum payment shall be determined by first deducting (x) the amount of the original lump sum payment, from (y) the actuarial equivalent lump sum which would have been paid had the New Benefit amount applied at the time the lump sum was originally paid, and then by increasing such remainder by (z) interest on the remainder for the period from the date the original lump sum payment was made through the New Benefit Date at an annual rate equal to the interest rate used to determine the amount of the original lump sum payment.

(5)     If any portion of the benefits earned with respect to a Participant had been split between a Participant and an alternate payee pursuant to a qualified domestic relations order, then any increase in benefits (including any retroactive payments) shall be divided proportionately according to the portion of the Pre-Amendment Benefit that had been assigned to the alternate payee.

(6)     If a Participant has died before the Participant's New Benefit date, any additional benefits payable on behalf of the Participant under this Section 4.13 shall be payable to the surviving beneficiary or beneficiaries, if any, under the optional form of benefit, if any elected by the Participant, or, if there is no such

surviving beneficiary, to the Participant's surviving Spouse or, if there is no surviving beneficiary or surviving Spouse, to the Participant's estate.

(7)     The benefit payments hereunder shall be appropriately adjusted under the actuarial factors set forth in the Plan, including but not limited to the factors applicable to early retirement benefits, qualified joint and survivor annuities, and other optional forms of benefits.

LEGAL02/38812181v1

ARTICLE V.

LIMITATION ON BENEFITS AND PAYMENTS

5.1     Section 415 Limitations.

In no event shall the annual benefit provided under this Plan (together with any annual benefit provided under all other defined benefit plans maintained by the Participating Employers or any other entity required to be aggregated with the Participating Employers under Sections 414(b), 414(c), 414(m) or 414(o)) of the Code for any Participant for a Plan Year exceed the maximum permissible annual benefit allowed under Section 415 of the Code, as it may be amended from time to time, or as allowed by regulations, rulings or notices issued under Section 415 of the Code.  The Plan shall comply with the relevant provisions of Section 415 of the Code, including the Final Treasury Regulations issued thereunder and any other regulations, rulings or other administrative guidance issued pursuant thereto by the Internal Revenue Service.  Section 415 of the Code is hereby incorporated by reference into the Plan.  Notwithstanding the foregoing, for purposes of determining annual benefit limit for the 2004 and 2005 Plan Years, the Plan shall use an interest rate assumption equal to the greater of the rate specified in the Plan or 5.5% in determining the actuarially equivalent straight life annuity for any form of benefit subject to Code Section 417(e)(3).

For purposes of applying the limitations in this Section 5.1, "compensation" shall mean a Participant's compensation within the meaning of Treas. Reg. Section 1.415(c)-2, including: (i) amounts paid after severance from employment that is regular compensation for services during the Employee's regular working hours, or compensation for services outside the Employee's regular working hours (such as overtime or shift differential), commissions, bonuses, or other similar payments, and the payment would have been paid to the Employee prior to a severance from employment if the Employee had continued in employment with the employer; (ii) amounts paid after severance from employment for unused accrued bona fide sick, vacation, or other leave, but only if the Employee would have been able to use the leave if employment had continued; and (iii) amounts received by an Employee after severance from employment pursuant to a nonqualified unfunded deferred compensation plan, but only if the payment would have been paid to the Employee at the same time if the Employee had continued in employment with the Participating Employer and only to the extent that the payment is includible in the Employee's gross income.  Notwithstanding the foregoing, amounts paid after severance from employment under this paragraph shall only be included in the definition of compensation under this paragraph to the extent such amounts are paid by the later of 2-1/2 months following the Employee's severance from employment or the end of the Plan Year in which the severance from employment occurred.

For all purposes of this Plan, the maximum permissible annual benefit under this Section 5.1 shall be automatically increased as permitted by Treasury Regulations to reflect cost-of-living adjustments.  Such increase due to cost-of-living adjustments are effective as of January 1 of a calendar year and are applicable with respect to this Plan to all payments

- 53 -

made during the Plan Year ending within such calendar year. As a result of such an adjustment, a benefit which had been limited by the provisions of this Section in a previous Plan Year may be increased with respect to future payments to the lesser of the adjusted maximum permissible annual benefit or the amount of the benefit which would have been payable under this Plan without regard to the provisions of this Section 5.1. For purposes of Section 415 of the Code, the Plan Year is the limitation year.

5.2     Top-Heavy Plan Requirement.

(a)     Notwithstanding anything else contained herein, for any Plan Year for which this Plan is a top-heavy plan, as defined in Section 5.2(d), this Plan will be subject to the provisions of this Section 5.2, which shall be construed separated with respect to each Participating Employer.

(b)     General. This Section 5.2 shall be interpreted in accordance with Section 416 of the Code and the regulations thereunder.

(c)     Definitions.

(i)     The "Benefit Amount" for any Employee means (1) in the case of any defined benefit plan, the present value of the Employee's normal retirement benefit, determined on the Valuation Date as if the Employee terminated on such Valuation Date, plus the aggregate amount of distributions made to such Employee within the five-year period ending on the Determination Date (except to the extent already included on the Valuation Date) and (2) in the case of any defined contribution plan, the sum of the amounts credited, on the Determination Date, to each of the accounts maintained on behalf of such Employee (including accounts reflecting any nondeductible employee contributions) under such plan plus the aggregate amount of distributions made to such Employee within the five-year period ending on the Determination Date. For purposes of this Section, the present value shall be computed using a 5% interest assumption and the mortality assumptions contained in the defined benefit plan for benefit equivalence purposes, provided that, if more than one defined benefit plan is being aggregated for top-heavy purposes, the actuarial assumptions which shall be used for testing top-heaviness are those of the plan with the lowest interest assumption, provided further that if the lowest interest assumption is the same for two or more plans, the actuarial assumptions used shall be that of the plan with the greatest value of assets on the applicable date.

Notwithstanding the foregoing, with respect to Determination Dates occurring after December 31, 2001, the Benefit Amount shall be increased by the distributions made with respect to the Participant under the Plan and any plan aggregated with the Plan under Section 416(g)(2) of the Code during the 1-year period ending on the Determination Date. The preceding sentence shall also apply to distributions under a terminated plan which, had it not been terminated, would have been aggregated with the Plan under Section 416(g)(2)(A)(i) of the

- 54 -

Code.  In the case of a distribution made for a reason other than a severance from employment, this provision shall be applied by substituting "5-year period" for "1-year period." In addition, the accrued benefits and accounts of any individual who has not performed services for a Company during the 1-year period ending on the Determination Date shall not be taken into account.

(ii)  "Company" means any company (including unincorporated organizations) participating in the Plan or plans included in the "aggregation group" as defined in this Section 5.2.

(iii)  "Determination Date" means the last day of the preceding Plan Year or, in the case of the first Plan Year of the Plan, the last day of the Plan Year.

(iv)  "Employees" means employees, former employees, beneficiaries, and former beneficiaries who have a Benefit Amount greater than zero on the Determination Date.

(v)  "Key Employee" means any Employee or former Employee (including any deceased Employee) who at any time during the Plan Year that includes the Determination Date was an officer of a Company having annual compensation greater than $165,000 (as adjusted under Section 416(i)(1) of the Code for Plan Years beginning after December 31, 2012), a 5-percent owner of a Company, or a 1-percent owner of a Company having annual compensation of more than $150,000.  For this purpose, annual compensation means compensation within the meaning of Section 415(c)(3) of the Code.  The determination of who is a Key Employee will be made in accordance with Section 416(i)(1) of the Code and the applicable Regulations and other guidance of general applicability issued thereunder.

(vi)  A "Non-Key Employee" means an Employee who is not a Key Employee.

(vii)  "Valuation Date" means the first day (or such other date which is used for computing plan costs for minimum funding purposes) of the 12-month period ending on the Determination Date.

(viii)  A "Year of Service" shall be calculated using the Plan rules that normally apply for determining vesting service.

(d)  <u>Top-Heavy Definition</u>.  This Plan shall be top-heavy for any Plan Year if, as of the Determination Date, the "top-heavy ratio" exceeds 60%.  The top-heavy ratio is the sum of the Benefit Amounts of all Employees who are Key Employees divided by the sum of the Benefit Amounts for all Employees.  For purposes of this calculation only, the following rules shall apply:

(i)  The Benefit Amounts of all Non-Key Employees who were Key Employees during any prior Plan Year shall be disregarded.

- 55 -

(ii)     The Benefit Amounts of all Employees who have not performed any services for any Company at any time during the one-year period ending on the Determination Date shall be disregarded; provided, however, if an Employee performs no services for one year and then again performs services, such Employee's Benefit Amount shall be taken into account

(iii)    (A)    Required Aggregation.  This calculation shall be made by aggregating any plans, of the Company or a Related Company, qualified under Section 401(a) of the Code in which a Key Employee participates or which enables this Plan to meet the requirements of Section 401(a)(4) or 410 of the Code; all plans so aggregated constitute the "aggregation group."

(B)    Permissive Aggregation.  The Company may also aggregate any such plan to the extent that such plan, when aggregated with this aggregation group, continues to meet the requirements of Sections 401(a)(4) and 410 of the Code.

If an aggregation group includes two or more defined benefit plans, the actuarial assumptions used in determining an Employee's Benefit Amount shall be the same under each defined benefit plan and shall be specified in such plans.  The aggregation group shall also include any terminated plan which covered a Key-Employee and which was maintained within the five-year period ending on the Determination Date.

(iv)     This calculation shall be made in accordance with Section 416 of the Code (including 416(g)(4)(A)) and the regulations thereunder and such rules are hereby incorporated by reference.  For purposes of determining the accrued benefit of a Non-Key Employee who is a participant in a defined benefit plan, this calculation shall be made using the method which is used for accrual purposes for all defined benefit plans of the Company, or if there is no such method, as if such benefit accrued not more rapidly than the slowest accrual rate permitted under Section 411(b)(1)(C) of the Code.

(e)     Vesting.  Notwithstanding the vesting provisions of this Plan, if the Plan is top-heavy for any Plan Year, any Participant who completes one Hour of Service during any day of such Plan Year or any subsequent Plan Year and who has a Break in Employment during any day of such Plan Year or any subsequent Plan Year shall be entitled to a vested benefit which is the greater of the Participant's vested interest pursuant to Section 4.6(b) of the Plan or a vested interest at least equal to the product of (a) the benefit such Participant would receive under this Plan if such Participant was 100% vested on the date of such Break in Employment times (b) the percentage shown below:

| Number of Company Years of Service | Percentage |
|---|---|
| 2 | 20% |
| 3 | 40% |
| 4 | 60% |
| 5 | 80% |
| 6 | 100% |

Notwithstanding the foregoing, the nonforfeitable percentage of a Participant's benefit under the Plan shall not be less than that determined under the Plan without regard to the preceding vesting schedule. Such benefit shall be payable in accordance with the provisions of this Plan regarding payments to terminated Participants.

Notwithstanding the preceding Paragraph, if the Plan is no longer top-heavy in a Plan Year following a Plan Year in which it was top-heavy, a Participants vesting percentage shall be computed under the vesting schedule that otherwise exists under this Plan. In no event, however, shall a Participant's vested percentage in his or her accrued benefit be reduced. In addition, a Participant shall have the option of remaining under the vesting schedule set forth in this Section if the Participant has completed three Years of Service. The period for exercising such option shall begin on the first day of the Plan Year for which the Plan is no longer top-heavy and shall end 60 days after the later of such first day or the day the Participant is issued written notice of such option by the Company or the Administrative Committee.

 (f) <u>Minimum Benefits or Contributions, Compensation Limitations and Section 415 Limitations</u>. If the Plan is top-heavy for any Plan Year, the following provisions shall apply to such Plan Year:

  (i) (A) Except to the extent not required by Section 416 of the Code or any other provision of law, notwithstanding any other provision of this Plan, if the Plan and all other plans which are part of the aggregation group are defined contribution plans, each Participant (and any other employee required by Section 416 of the Code) other than Key Employees shall receive an allocation of employer contributions and forfeitures from a plan which is part of the aggregation group at least equal to 3% (or, if lesser, the largest percentage allocated to any Key Employee for the Plan Year) of such Participant's compensation for such Plan Year (the "defined contribution minimum"). For purposes of this Subsection, salary reduction contributions on behalf of a Key Employee must be taken into account. For purposes of this Subsection, a Non-Key Employee shall be entitled to a contribution if the Non-Key Employee is employed on the last day of the Plan Year (1) regardless of his or her level of compensation, (2) regardless of whether he or she has made any mandatory contributions required under the Plan, and (3) regardless of whether he or she has less

LEGAL02/33812181v1

1000 Hours of Service (or the equivalent) for the accrual computation period.

(B)     Except to the extent not required by Section 416 of the Code or any other provision of law, notwithstanding any other provisions of this Plan, if this Plan or any other plan which is part of the aggregation group is a defined benefit plan each Participant who is a participant in any such defined benefit plan (who is not a Key Employee) who accrues a full Year of Service during such Plan Year shall be entitled to an annual normal retirement benefit from a defined benefit plan which is part of the aggregation group which shall not be less than the product of (1) the Employee's average compensation for the five consecutive years when the Employee had the highest aggregate compensation and (2) the lesser of 2% per Year of Service or 20% (the "defined benefit minimum"). A Non-Key Employee shall not fail to accrue a benefit merely because the Non-Key Employee is not employed on a specified date or is excluded from participation because (1) his or her compensation is less than a stated minimum or (2) he or she fails to make mandatory employee contributions. For purposes of calculating the defined benefit minimum, (1) compensation shall not include compensation in Plan Years after the last Plan Year in which the Plan is top-heavy and (2) a Participant shall not receive a Year of Service in any Plan Year before January 1, 1984 or in any Plan Year in which the Plan is not top-heavy. This defined benefit minimum shall be expressed as a life annuity (with no ancillary benefits) commencing at Normal Retirement Age. Benefits paid in any other form or time shall be the Actuarial Equivalent (as provided in the plan for retirement benefit equivalence purposes) of such life annuity. Except to the extent not required by Section 416 of the Code or any other provisions of law, each Participant (other than a Key Employee) who is not a participant in any such defined benefit plan shall receive the defined contribution minimum (as defined in Paragraph (i)(A) above).

(C)     If a Non-Key Employee is covered by plans described in both Paragraphs (A) and (B) above, the Non-Key Employee shall only be entitled to the minimum described in Paragraph (A), except that for the purpose of Paragraph (A), "3%, or if less the largest percentage allocated to any Key Employee for the Plan Year" shall be replaced by 5%. Notwithstanding the preceding sentence, if the accrual rate under the plan described in Paragraph (B) would comply with this Subsection (f) absent the modifications required by this Section, the minimum described in Paragraph (A) above shall not be applicable.

(D)     With respect to Plan Years beginning after December 31, 2001, for purposes of satisfying the minimum benefit requirements of Section 416(c)(1) of the Code and the Plan, in determining years of service with a Company, any service with a Company shall be disregarded to the extent

- 58 -

that such service occurs during a Plan Year when the Plan benefits (within the meaning of Section 410(b) of the Code) no Key Employee or former Key Employee.

(ii)     For purposes of this Subsection, "compensation" shall mean all earnings included in the Employee's Form W-2 for the calendar year that ends within the Plan Year, not in excess of $200,000, adjusted at the same time and in the same manner as under Section 415(d) of the Code.  With respect to Plan Years commencing on or after January 1, 1989, the $200,000 limitation in the preceding sentence shall not apply; instead, the limitations described in the Plan's definition of "Compensation" under Section 1.2 shall apply with respect to such Plan Years.

5.3     Restriction of Benefits and Payments.

For Plan Years beginning on or after January 1, 1994, notwithstanding anything else contained herein, upon termination of the Plan or in the case of a payment to any of the 25 highest paid "Highly Compensated Employees" (as defined in Appendix B), the restrictions of Appendix B shall apply.

5.4     Code Section 411(b)(1).

The method of computing a Participant's accrued benefit under the provisions of Article IV is intended to satisfy the requirements of Section 411(b)(1) of the Code.

LEGAL02/33812181v1

ARTICLE VI.

ADMINISTRATION

6.1     Powers and Authority; Action Conclusive.

        (a)     Except as otherwise expressly provided in the Plan or in the trust
agreement for the Plan, the Administrative Committee shall be the Plan Administrator (as
defined in Section 3(16)(A) of ERISA) and the Named Fiduciary of the Plan (as defined
in Section 402(a) of ERISA). Except to the extent delegated to one or more persons or
committees, the Administrative Committee shall also act as the Fiduciary with respect to
control and management of the Plan for purposes of ERISA on behalf of the Participants
and their Beneficiaries, shall enforce the Plan in accordance with its terms, shall be
charged with the general administration of the Plan, and shall have all powers necessary
to accomplish its purposes, including, but not by way of limitation and as further
provided in the Charter, the following:

        (i)     To determine all questions relating to the eligibility of Employees to
        participate;

        (ii)    To construe and interpret the terms and provisions of the Plan;

        (iii)   To compute, certify to, and direct the Trustee, either directly or through a
        delegate, with regard to the amount and kind of benefits payable to Participants
        and their Beneficiaries;

        (iv)    To authorize, either directly or through a delegate, all disbursements by
        the Trustee from the Trust;

        (v)     To maintain all records that may be necessary for the administration of the
        Plan other than those maintained by the Trustee;

        (vi)    To provide for the disclosure of all information and the filing or provision
        of all reports and statements to Participants, Beneficiaries or governmental
        agencies as shall be required by ERISA or other law, other than those prepared
        and filed by the Trustee;

        (vii)   To make and publish such rules for the regulation of the Plan as are not
        inconsistent with the terms hereof;

        (viii)  To appoint a plan administrator or, any other agent, and to delegate to
        them or to the Trustee such powers and duties in connection with the
        administration of the Plan as the Administrative Committee may from time to
        time prescribe, and to designate each such administrator or agent as Fiduciary
        with regard to matters delegated to him; and

- 60 -

(ix)    To make decisions on claims in a manner consistent with regulations of the Secretary of Labor for presentation of claims by Participants and Beneficiaries for Plan benefits, which shall include consideration of such claims, review of claim denials and issuance of a decision on review. Such claims decisions shall be made in accordance with the claims procedures set forth in Article VII.

(b)    With respect to management or control of investments and as further set forth in the Charter, the Investment Committee shall have the power to direct the Trustee in writing with respect to the investment of the Trust assets or any part thereof. Where investment authority, management and control of Trust assets have been delegated to the Trustee by the Investment Committee, the Trustee shall be the Fiduciary with respect to the investment, management and control of the Trust assets contributed by the Employers and Participants with full discretion in the exercise of such investment, management and control.  Except as otherwise provided by law, the Investment Committee may appoint one or more Investment Managers to invest the Trust assets or any part thereof. Where investment authority; management, and control of Trust assets is not specifically delegated to the Trustee, the Trustee shall be subject to the direction of the Investment Committee or the Investment Manager(s) appointed by the Investment Committee, if any, regarding the investment, management and control of such assets, and in such case the Investment Committee, or the Investment Manager(s), as the case may be, shall be the Fiduciary with respect to the investment, management and control of such assets.

(c)    Each Fiduciary under the Plan and Trust shall be solely responsible for its own acts or omissions. Except to the extent required by ERISA or the Code, no Fiduciary shall have the duty to question whether any other Fiduciary is fulfilling any or all of the responsibilities imposed upon such other Fiduciary by ERISA or by any regulations or rulings issued thereunder. No Fiduciary shall have any liability for a breach of fiduciary responsibility of another Fiduciary with respect to the Plan or Trust unless he knowingly participates in such breach, knowingly undertakes to conceal such breach, has actual knowledge of such breach and fails to take reasonable remedial action to remedy said breach or, through his negligence in performing his own specific fiduciary responsibilities, has enabled such other Fiduciary to commit a breach of the latter's fiduciary responsibilities.

6.2    Transmittal of Information.

In order to enable the Administrative Committee and Investment Committee to perform their functions, Employers shall supply to these Committees, as appropriate, such pertinent facts concerning Participants and Beneficiaries as may be required to administer the Plan. The Administrative Committee or Investment Committee, as the case may be, shall advise the Trustee and the Investment Manager, as appropriate, of such of the foregoing facts as may be pertinent to the duties of the Trustee and Investment Manager under the Plan.

6.3     Compensation, Bonding, Expenses and Indemnity.

(a)     The members of the Administrative Committee and Investment Committee shall serve without compensation for their services hereunder.

(b)     Members of the Committees and any delegates shall be bonded to the extent required by Section 412(a) of ERISA and the regulations thereunder. Bond premiums and all expenses of the Committees or of any delegate who is an employee of the Company shall be paid by the Company and the Company shall furnish the Committees and any such delegate with such clerical and other assistance as is necessary in the performance of their duties.

(c)     The Committees are authorized at the expense of the Company to employ such legal counsel as they may deem advisable to assist in the performance of its duties hereunder. Expenses and fees in connection with the administration of the Plan and the Trust shall be paid from the Trust assets to the fullest extent permitted by law, unless the Company determines otherwise.

(d)     To the extent permitted by applicable state law, the Company shall indemnify and save harmless the Committees and each member thereof, the Compensation Committee of the Board, the Board and any delegate of the Committees who is an employee of the Company against any and all expenses, liabilities and claims, including legal fees to defend against such liabilities and claims arising out of their discharge in good faith of responsibilities under or incident to the Plan, other than expenses and liabilities arising out of willful misconduct. This indemnity shall not preclude such further indemnities as may be available under insurance purchased by the Company or provided by the Company under any by-law, agreement or otherwise, as such indemnities are permitted under state law. Payments with respect to any indemnity and payment of any expenses and fees under this Section shall be made only from assets of the Company and shall not be made directly or indirectly from Trust assets.

6.4     Manner of Administering.

The Administrative Committee and Investment Committee shall have full discretion to construe and interpret the terms and provisions of the Plan, which interpretation or construction shall be final and binding on all parties, including but not limited to the Employers and any Participant or Beneficiary, except as otherwise provided by law. The Administrative Committee and Investment Committee shall administer such terms and provisions in a uniform and nondiscriminatory manner and in full accordance with any and all laws applicable to the Plan.

6.5     Duty of Care.

In the exercise of the powers and duties of the Administrative Committee and Investment Committee with respect to the investment, management and control of the Plan, each member of the Committees shall use the care, prudence, and diligence under *the*

circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

6.6     Delegation.

The Administrative Committee and Investment Committee shall have the authority to delegate any authority and duty hereunder to such other person or persons as set forth in the Charter.

LEGAL02/33812181v1

ARTICLE VII.

CLAIMS REVIEW

7.1    Inquiries and Applications for Benefits.

(a)    All inquiries concerning the Plan or present or future rights to benefits under the Plan and all applications for benefits under the Plan shall be submitted to the Administrative Committee or its authorized delegate in the form and manner prescribed by the Administrative Committee. The Administrative Committee shall have the discretionary authority to grant or deny benefits under the Plan. Benefits under the Plan will be paid only if the Administrative Committee decides in its discretion that the applicant is entitled to them.

(b)    If any Participant, Spouse, Same-Sex Spouse or Beneficiary disagrees with the Administrative Committee's response to such individual's inquiry or application for benefits, the Participant, Spouse, Same-Sex Spouse or Beneficiary shall notify the Administrative Committee in writing and shall request a review of such response. Any such notice shall be treated as a claim for benefits hereunder.

7.2    Denial of Claims.

In the event that any claim for benefits is denied, in whole or in part, the Administrative Committee shall notify the claimant in writing of such denial and of the claimant's right to a review thereof. Such written notice shall set forth, in a manner calculated to be understood by the claimant: the specific reason or reasons for the denial; specific reference to pertinent Plan provisions on which the denial is based; a description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary; and an explanation of the Plan's procedure for review of the denied or partially denied claim, including the claimant's right to bring a civil action under ERISA Section 502(a) following an adverse benefit determination on review.

If the claim is for a Disability Retirement Benefit, the written notice shall also include: if the reason for the denial is an internal rule, protocol, guideline, or similar criterion, a copy of it or a statement that it will be provided free of charge on request; and if the reason for the denial is a medical necessity, experimental treatment, or similar exclusion or limit, either an explanation of the scientific or clinical judgment for the determination, applying the terms of the Plan to the claimant's medical circumstances, or a statement that such an explanation will be provided to the claimant free of charge on request.

Such written notice shall be given to the claimant within ninety (90) days after the Administrative Committee receives the claim (forty-five (45) days for Disability Retirement Benefit claims), unless special circumstances require an extension of time, up to an additional ninety (90) days (up to two thirty-day periods for Disability Retirement Benefit claims), for processing the claim. If such an extension is required, written notice

- 64 -

of the extension shall be furnished to the claimant prior to the end of the initial ninety-day period. Such notice of extension shall indicate the special circumstances requiring the extension of time and the date by which the Administrative Committee expects to render its decision on the claim for benefits.

7.3     Review of Denied Claims.

(a)     Administrative Committee.  Unless provided otherwise by the Administrative Committee, the Administrative Committee has the authority to act with respect to any appeal from a denial of a claim for benefits.

(b)     Requests for Review.  Any person whose claim for benefits is denied, in whole or in part, or such person's duly authorized representative, may appeal from such denial by submitting a request for a review of the claim to the Administrative Committee within sixty (60) days after receiving written notice of such denial from the Administrative Committee (one-hundred-eighty (180) days for Disability Retirement Benefit claims). A claimant or the claimant's authorized representative will have, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to the claimant's claim for benefits (as determined by 29 CFR § 2560.503-1(m)(8)) and may submit written comments, documents, records and other information. A request for review shall set forth all of the grounds on which it is based, all facts in support of the request and any other matters that the claimant deems pertinent. The Administrative Committee may require the claimant to submit such additional facts, documents or other material as it may deem necessary or appropriate in making its review.

(c)     Decision on Review.  The Administrative Committee shall act on each request for review within sixty (60) days after receipt thereof unless special circumstances require an extension of time, up to an additional sixty (60) days (no extension is available for Disability Retirement Benefit claims), for processing the request. If such an extension is required, written notice of the extension shall be furnished to the claimant within the initial sixty-day (60) period. The Administrative Committee shall consider the claim, and all comments, documents, records and other information submitted by the claimant relating to the claim, without regard to whether such information was submitted or considered in the initial benefit determination.

An appeal of a Disability Retirement Benefit claim shall be conducted by members of the Administrative Committee who did not decide the initial claim and who are not that individual's subordinate. The members who conduct the appeal of a Disability Retirement Benefit claim shall not afford deference to the initial claims decision. The members shall base their decision on input from a health care professional who has appropriate training and experience in the field of medicine involved in the medical judgment if the review of the disability retirement benefit claim will be decided in whole or part on a medical judgment. The health care official the review official consults shall not be the same one utilized in the initial claim stage or his or her subordinate.

- 65 -

The Administrative Committee shall give prompt, written notice of its decision to the claimant and to the Company. In the event that the Administrative Committee affirms the denial of the claim for benefits, in whole or in part, such notice shall set forth, in a manner calculated to be understood by the claimant: the specific reason or reasons for the adverse determination; specific reference to pertinent Plan provisions on which the adverse determination is based; a statement that the claimant is entitled to receive, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to the claimant's claim for benefits (as determined by 29 CFR § 2560.503-1(m)(8)); and a statement describing any voluntary appeal procedures offered by the Plan and the claimant's right to obtain the information about such procedures, as well as a statement of the claimant's right to bring an action under ERISA section 502(a).

If the claim is for a Disability Retirement Benefit, the written notice shall also include: if the reason for the denial is an internal rule, protocol, guideline, or similar criterion, a copy of it or a statement that it will be provided free of charge on request; and if the reason for the denial is a medical necessity, experimental treatment, or similar exclusion or limit, either an explanation of the scientific or clinical judgment for the determination, applying the terms of the Plan to the claimant's medical circumstances, or a statement that such an explanation will be provided to the claimant free of charge on request.

(d)     Rules and Procedures.  The Administrative Committee shall establish such rules and procedures, consistent with the Plan and ERISA, as it may deem necessary or appropriate in carrying out its responsibilities under this Subsection. The Administrative Committee may require a claimant who wishes to submit additional information in connection with an appeal from the denial of benefits to do so at the claimant's own expense.

7.4     Exhaustion of Remedies.

No legal action for benefits under the Plan shall be brought unless and until the claimant:

(a)     Has submitted an application for benefits in accordance with this Article;

(b)     Has been notified by the Administrative Committee that the application is denied;

(c)     Has filed a written request for a review of the application; and

(d)     Has been notified in writing that the Administrative Committee has affirmed the denial of the application.

Notwithstanding the foregoing, if any claimant is not provided the notification(s) required by Sections 7.2 and 7.3 within the time periods set forth in those Sections, the claimant may bring a legal action for benefits under the Plan without any further administrative review of the claim.

- 66 -

Effective for claims initially filled under this Article VII on or after January 1, 2011, any suit or legal action initiated by a claimant under the Plan must be brought by the claimant no later than one hundred eighty (180) days following a final decision on the claim for benefits by the Administrative Committee. The one hundred eighty (180) day limitation on suits for benefits will apply in any forum where a claimant initiates such suit or legal action.

ARTICLE VIII.

TRUST FUND

8.1    Trust Fund.

The contributions to fund this Plan described in Section 3.1 shall be held, administered and invested in accordance with the Trust executed by the Investment Committee and the Trustee, who shall be selected by the Investment Committee. The Trust Fund shall be held, administered, invested and reinvested in the manner provided in the Trust, and the Trustee shall not be required to invest separately any share of any Participant in the fund. The Trust may provide for the commingling of the assets held in the Trust Fund with respect to a particular Participating Employer with (i) assets held with respect to other Participating Employer(s) (provided that the Plan, with respect to such other Participating Employer(s), remains tax qualified), and (ii) assets held in connection with other tax qualified retirement plans. Effective January 1, 2007, except as required under Code Section 413(c)(4), the assets of the Trust shall be held as a single fund with respect to all Participating Employers, such that the Plan constitutes a single plan.

8.2    Funding Limitations.

Notwithstanding any provision to the contrary, effective as of January 1, 2008, the following limitations shall apply, as required by the Pension Protection Act of 2006. This Section 8.2 shall be interpreted and applied consistent with Section 436 of the Code and any guidance issued thereunder.

    (a)    Unpredictable Contingent Event Benefits. In accordance with Section 436(b) of the Code, an "unpredictable contingent event benefit" (as defined in Section 436 of the Code) to which a Participant would otherwise be entitled during any Plan Year shall not be provided to such Participant if the "adjusted funding target attainment percentage" for such Plan Year:

        (i)    is less than 60%; or

        (ii)    would be less than 60% taking into account the event for which such benefit is payable.

The preceding sentence shall cease to apply with respect to any Plan Year, effective as of the first day of such Plan Year, upon payment by the Participating Employers of a contribution (in addition to any minimum required contribution under Section 430 of the Code) equal to: (A) in the case of clause (i), the amount of the increase in the funding target of the Plan (under Section 430 of the Code) for the Plan Year attributable to the event for which such benefit is payable, or (B) in the case of clause (ii), the amount sufficient to result in an adjusted funding target attainment percentage of 60%.

- 68 -

(b)     Plan Amendments Increasing Liability for Benefits.  In accordance with Section 436(c) of the Code, an amendment to the Plan which would have the effect of increasing the Plan's liabilities by increasing benefits, establishing new benefits, changing the rate of benefit accrual or changing a vesting formula, may not take effect during any Plan Year in which the Plan's "adjusted funding target attainment percentage" for such Plan Year:

(i)     is less than 80%; or

(ii)     would be less than 80% taking into account such amendment.

The preceding sentence shall cease to apply with respect to any Plan Year, effective as of the first day of such Plan Year or, if later, the original effective date of the amendment, upon payment by the Participating Employers of a contribution (in addition to any minimum required contribution under Section 430 of the Code) equal to: (A) in the case of clause (i), the amount of the increase in the funding target of the Plan (under Section 430 of the Code) for the Plan Year attributable to the amendment, or (B) in the case of clause (ii), the amount sufficient to result in a "funding target attainment percentage" of 80%. Notwithstanding the foregoing, this subsection shall not apply to an amendment providing for an increase in benefits under a formula which is not based on a Participant's compensation, but only if the rate of such increase is not in excess of the contemporaneous rate of increase in average wages of all Participants subject to the amendment.

(c)     Accelerated Benefit Distributions.

(i)     In accordance with Section 436(d)(1) of the Code, in any case in which the Plan's "adjusted funding target attainment percentage" for a Plan Year is less than 60%, the Plan may not pay any "prohibited payment" (as defined in clause (iv)) after the valuation date for the Plan Year.

(ii)     In accordance with Section 436(d)(2) of the Code, during any period in which the Participating Employer is a debtor in a case under Title 11 of the United States Code, or similar Federal or State law, the Plan shall not pay any prohibited payment. The preceding sentence shall not apply on or after the date on which the enrolled actuary of the Plan certifies that the adjusted funding target attainment percentage of such Plan is not less than 100%.

(iii)     In accordance with Section 436(d)(3) of the Code, in any case in which the Plan's adjusted funding target attainment percentage for a Plan Year is 60% or greater but less than 80%, the Plan shall not pay any prohibited payment after the valuation date for the Plan Year to the extent the amount of the payment exceeds the lesser of: (A) 50% of the amount of the payment which could be made without regard to the limits in Section 436(d) of the Code, or (B) the present value (determined under guidance prescribed by the Pension Benefit Guaranty Corporation, using the interest and mortality assumptions under Section 417(e) of

- 69 -

the Code) of the maximum guarantee with respect to the Participant under ERISA Section 4022. In addition to the foregoing restriction as to payment amount, only one payment meeting the requirements of this paragraph may be made with respect to any Participant during any period of consecutive Plan Years to which the limitations under clause (i) or (ii) of this subsection apply. For purposes of the foregoing, a Participant and any Beneficiary on his behalf (including an alternate payee, as defined in Section 414(p)(8) of the Code) is treated as one Participant. As a result, if the Participant's benefit is allocated to an alternate payee and one or more other persons, the amount under this clause shall be allocated among such persons in the same manner as the benefit is allocated, unless a qualified domestic relations order (as defined under Section 414(p)(1)(A) of the Code) provides otherwise.

A Participant or Beneficiary who elects an optional form of benefit that, as of the annuity starting date (as defined in Section 436 of the Code and the Treasury regulations thereunder), is a prohibited payment due to the application of this clause shall have the option either to (A) defer payment to a later date (to the extent permitted under the Plan); or (B) bifurcate the benefit into restricted and unrestricted portions. If the Participant or Beneficiary elects to bifurcate payment of the benefit, he or she may elect to receive payment of the unrestricted portion in any optional form of benefit then available under the Plan, and the restricted portion in any optional form of benefit then available under the Plan is not a prohibited payment. For purposes of this clause, the "unrestricted portion" of the benefit is the lesser of 50% of the benefit, or the present value (determined under guidance prescribed by the Pension Benefit Guaranty Corporation, using the interest and mortality assumptions under Section 417(e) of the Code) of the maximum guarantee with respect to the Participant or Beneficiary under ERISA Section 4022; provided, however, for any level income option payable under the Plan, the unrestricted portion is the benefit that would apply if the Participant's or Beneficiary's benefit was reduced by one-half.

(iv)    For purposes of this subsection, a "prohibited payment" shall mean (A) any payment in excess of the monthly amount paid under a single life annuity (plus any social security supplements paid in accordance with Section 411(a)(9) of the Code) to any Participant or Beneficiary whose annuity starting date (as defined in Section 417(f)(2) of the Code) occurs during a limitation period described in clauses (i) or (ii) other than an amount paid as a lump sum pursuant to Section 4.9(d); (B) any payment for the purchase of an irrevocable commitment from an insurer to pay benefits; or (C) any other payment specified in the Treasury regulations.

(v)    In the event payments are restricted under this Section, any payments so restricted shall not resume after the payments are no longer restricted until a Plan amendment is adopted resuming such payments.

(d)     Future Benefit Accruals.  In accordance with Section 436(e) of the Code, in any case in which the Plan's "adjusted funding target attainment percentage" for a Plan Year is less than 60%, benefit accruals under the Plan shall cease as of the valuation date for the Plan Year.  The preceding sentence shall cease to apply with respect to any Plan Year, effective as of the first day of such Plan Year, upon payment by the Participating Employer of a contribution (in addition to any minimum required contributions under Section 430 of the Code) equal to the amount sufficient to result in an adjusted funding target attainment percentage of 60%.  In the event accruals are restricted under this paragraph, such accruals shall not resume after accruals are no longer restricted until a Plan amendment is adopted resuming such accruals.

(e)     Presumed Underfunding.

(i)     For purposes of this Section 6.4, "adjusted funding target attainment percentage" shall have the meaning assigned to it under Section 436 of the Code.

(ii)     In accordance with Section 436(h)(1) of the Code, in any case in one or more of the limits under this Section 7.2 applied to a Plan Year preceding the current Plan Year, the Plan's "adjusted funding target attainment percentage" for the current Plan Year is presumed to be equal to the Plan's adjusted funding target attainment percentage for such preceding Plan Year until the Plan's enrolled actuary certifies the adjusted funding target attainment percentage for the current Plan Year.

(iii)     In accordance with Section 436(h)(2) of the Code, in any case in which no certification of the Plan's adjusted funding target attainment percentage for a Plan Year is made before the first day of the tenth month of the Plan Year, (A) such first day shall be deemed the Plan's valuation date for the Plan Year, and (B) as of such date, the Plan's adjusted funding target attainment percentage shall be conclusively presumed to be less than 60%.

(iv)     In accordance with Section 436(h)(3) of the Code, in any case in which –

(A)     one or more of the limits under this Section 7.2 did not apply with respect to a Plan Year preceding the current Plan Year, but the Plan's adjusted funding target attainment percentage for the preceding Plan Year was not more than 10% greater than the percentage which would have caused such funding limitation to apply with respect to the preceding Plan Year, and

(B)     as of the first day of the fourth month of the current Plan Year, the Plan's enrolled actuary has not certified the adjusted funding target attainment percentage for the current Plan Year,

until the enrolled actuary certifies the adjusted target attainment percentage, the first day of the fourth month shall be deemed the Plan's

LEGAL02/33812181v1

valuation date for the Plan Year for purposes of such funding limitation identified in clause (A) of this paragraph, and, as of such date, the Plan's adjusted funding target attainment percentage shall be presumed to be 10% less than the adjusted funding target attainment percentage for the preceding Plan Year.

## ARTICLE IX.

## AMENDMENT AND TERMINATION

9.1    Amendments.

The Plan Sponsor reserves the right at any time and from time to time, and retroactively if deemed necessary or appropriate, to amend in whole or in part any or all of the provisions of the Plan by resolution of the Plan Sponsor and as further set forth in the Charter. Any amendment shall be stated in an instrument in writing, executed in the same manner as the Plan. Except as may be required to permit the Plan and Trust to meet the requirements for qualification and tax exemption under the Code, or the corresponding provisions of other or subsequent revenue laws or of ERISA, no amendment may be made which may:

(a)    Cause any of the assets of the Trust, at any time prior to the satisfaction of all liabilities with respect to Participants and their Beneficiaries, to be used for or diverted to purposes other than for the exclusive benefit of Participants or their Beneficiaries;

(b)    Decrease the accrued benefit of any Participant or Beneficiary within the meaning of Section 411(d)(6) of the Code;

(c)    Create or effect any discrimination in favor of Participants who are "Highly Compensated Employees" (as defined in Appendix B); and

(d)    Increase the duties or liabilities of the Plan Sponsor or the Trustee without the written consent of the Plan Sponsor or Trustee, as applicable.

9.2    Discontinuance of Plan.

It is the Plan Sponsor's expectation that this Plan and the payment of contributions hereunder will be continued indefinitely, but continuance of the Plan is not assumed as a contractual obligation, and the Plan Sponsor reserves the right (subject to Section 9.3(e)), by action of the Plan Sponsor, to terminate the Plan at any time, in full or in part, or with respect only to a particular Participating Employer, or to reduce, suspend, or discontinue contributions hereunder at any time. No Participating Employer shall be liable for the payment of any benefits under this Plan, and prior to January 1, 2007, all benefits hereunder with respect to Participants of a particular Participating Employer shall be payable solely from the assets of the Trust with respect to such Participating Employer except as otherwise required by ERISA. On and after January 1, 2007, all assets of the Trust shall be available to pay all benefits hereunder.

Notwithstanding the foregoing, no Participating Employer who is a "substantial employer" within the meaning of ERISA Section 4001(a)(2) may withdraw from the Plan or otherwise cease to be a Participating Employer subject to the funding requirements of

- 73 -

Code Section 413(c)(4) with respect to this Plan, unless and until the requirements of
ERISA Section 4063 have been fully satisfied.

9.3     Termination of Plan.

(a)     In the event of a complete termination of this Plan, the rights of all
affected Participants and Beneficiaries to benefits then accrued, to the extent then funded,
shall thereupon become 100% vested and nonforfeitable, subject to the order of priority
set forth below, and a prompt determination of the fair market value of the Trust Fund
shall be made and it shall then be applied so as to provide (to the extent not already
provided) benefits in said order of priority.  In the event of partial termination of the Plan
or termination with respect only to a particular Participating Employer, the rights of all
affected Participants and Beneficiaries to benefits accrued to the date of such termination
to the extent funded as of such date, shall be 100% vested and nonforfeitable.  Benefits
for each such person shall be computed on the basis of employment up to the date of said
termination.

(b)     In the case of the Plan's termination, partial termination (to the extent
required by Section 411 of the Code) or termination with respect only to a particular
Participating Employer, the assets thereof (available to provide benefits) shall be
allocated among the affected Participants and Beneficiaries of the Plan in accordance
with Sections 4044(a)(1) through (a)(6) of ERISA.

(c)     Any residual assets of the Plan resulting from such termination shall be
distributed to the affected Participating Employer(s), if:

(1)     all liabilities of the Plan to affected Participants and their Beneficiaries
have been satisfied; and

(2)     the distribution does not contravene any provision of law.

(d)     To the extent permitted by ERISA, the allocations and provision for
retirement benefits described in this Section shall be accomplished through either
continuance of the Trust, the creation of a new trust, or the purchase of annuity contracts;
provided, however, that the Plan Sponsor may, upon finding that it is not practicable or
desirable under the circumstances to do any of the foregoing with respect to one or more
of the groups listed above, provide some other means, including the offering of
immediate single lump sum cash payments representing the Actuarial Equivalent of the
monthly retirement benefit to which the Participant or Beneficiary would otherwise be
entitled (provided, however, that if the Actuarial Equivalent of such a lump sum cash
payment exceeds $5,000, a monthly annuity commencing as of the time such lump sum
would otherwise be payable must also be offered, in an amount equal to the Actuarial
Equivalent of such lump sum cash payment, and in one of the forms of annuity and under
the rules provided in Sections 4.5 and 4.8, in accordance with Treasury Regulation
Section 1.417(e)-1(b)(1)), but no change shall be effected in the order of precedence and
the basis of allocation established under ERISA.

(e)     The Plan may be terminated in its entirety or in part on any date specified by the Plan Sponsor (subject to the requirements of the Code and ERISA and regulations thereunder) if thirty days' advance written notice of the termination is given to the Plan Sponsor, the Trustee and each Participating Affiliate.  The Plan will terminate only with respect to a particular Participating Employer on the first to occur of the following:

(1)     The termination date selected by such Participating Employer if thirty days' advance written notice of the termination is given to the Plan Sponsor, the Trustee and the other Participating Employers.

(2)     The effective date such Participating Employer is judicially declared bankrupt or insolvent.

(3)     The effective date such Participating Employer completely discontinues its contributions under the Plan (a mere failure of such Participating Employer to make a contribution for any Plan Year shall not be considered a discontinuance so long as the Plan with respect to such Participating Employer does not have an accumulated funding deficiency under Section 412 of the Code at the end of such Plan Year).

(4)     The effective date of dissolution, merger, consolidation or reorganization of such Participating Employer, the effective date of sale by such Participating Employer of all or substantially all of its assets, or (if such Participating Employer is a Hilton Property), the date such Participating Employer ceases to be a Hilton Property, except that:

(A)     in any event, arrangements may be made with the consent of the Plan Sponsor whereby the Plan with respect to such Participating Employer will be continued by any successor to such Participating Employer or any purchaser of all or substantially all of its assets, in which case the successor or purchaser will be substituted for such Participating Employer under the Plan and the Trust; and

(B)     if such Participating Employer is merged, dissolved or in any other way reorganized into, or consolidated with, any other Participating Employer, the Plan with respect to such former Participating Employer will automatically continue in effect without a termination thereof.

(f)     Notwithstanding any provision of this Section 9.3 to the contrary, no Participating Employer who is a "substantial employer" within the meaning of ERISA Section 4001(a)(2) may withdraw from the Plan, terminate the Plan, or otherwise cease to be a Participating Employer subject to the funding requirements of Code Section 413(c)(4) with respect to this Plan, unless and until the requirements of ERISA Section 4063 have been fully satisfied.  If the entire Plan is terminated under ERISA Sections

LEGAL02/33812181v1

4041(c) or 4042, the liability, if any, of each Participating Employer shall be determined in accordance with ERISA Section 4064.

9.4     Plan Merger or Consolidation:  Transfer of Plan Assets.

(a)     This Plan shall not be merged or consolidated with, nor shall its assets or liabilities be transferred to, any other plan unless each Participant in this Plan (if the Plan then terminated) would receive a benefit immediately after the merger, consolidation or transfer which is equal to or greater than the benefit he would have been entitled to receive immediately before the merger, consolidation, or transfer (if this Plan had been terminated).  Where the foregoing requirement is satisfied this Plan and Trust Fund may be merged or consolidated with another qualified plan and trust.  This Subsection shall also apply with respect to the merger, consolidation or transfer of assets or liabilities with respect to only a particular Participating Employer.

(b)     The Plan Sponsor may in its discretion authorize a plan-to-plan transfer, provided that such a transfer will meet the requirements of Section 414(1) of the Code and regulations thereunder, and that all other actions legally required are taken.  In the event of a transfer of assets from the Plan (or from the Plan with respect to a particular Participating Employer to the Plan with respect to another Participating Employer) pursuant to this Subsection, any corresponding benefit liabilities shall also be transferred.

LEGAL02/33812181v1

ARTICLE X.

MISCELLANEOUS

10.1   Contributions Not Recoverable.

Except where contributions are permitted or required to be returned to a Participating Employer by the provisions of this Plan as permitted or required by ERISA or the Code, it shall be impossible at any time prior to the satisfaction of all liabilities with respect to Participants and their Beneficiaries for any part of the contributions made under this Plan to be used for or diverted to purposes other than the exclusive benefit of Participants or Beneficiaries. Notwithstanding this or any other provision of the Plan, a particular Participating Employer shall be entitled to recover, and the Participants of such Participating Employer under this Plan shall have no interest in (a) any contribution made under this Plan by such Participating Employer by a mistake of fact, so long as the contribution is returned within one year after payment; (b) in the event that such Participating Employer receives an adverse determination from the Internal Revenue Service with respect to the initial qualification of the Plan with respect to such Participating Employer with the result that the Trust with respect to such Participating Employer is not exempt from federal income tax and such Participating Employer's contributions to the Trust are not deductible in determining its federal income tax, any contributions made prior to that time, so long as the contribution is returned within one year after such determination and the application for determination was made by the time prescribed by law for filing such Participating Employer's return for the taxable year in which the Plan was adopted by such Participating Employer or such later date as the Secretary of the Treasury may prescribe, and (c) any contributions for which a deduction is disallowed under Section 404 of the Code, so long as such contributions are returned to such Participating Employer within one year following such disallowance or as permitted or required by ERISA or the Code. In the event of such mistake of fact, determination by the Commissioner, or disallowance of deductions, contributions shall be returned to such Participating Employer, subject to the limitations, if any, of Section 403(c) of ERISA.

10.2   Limitation on Participants' Rights.

Participation in this Plan shall not give any Employee the right to be retained as an Employee of any Participating Employer or any right or interest under the Plan or Trust other than as herein provided. Each Participating Employer reserves the right to dismiss any Employee without any liability for any claim against the Trustee, the Trust except to the extent provided in the Trust, the Plan Sponsor, Administrative Committee or any Participating Employer. All benefits under the Plan with respect to Participants of a particular Participating Employer shall be provided solely from the assets of the Trust with respect to such Participating Employer and a Participant shall not have any recourse towards satisfaction of such benefit becoming fixed under the terms of the Plan from other than assets of the Plan attributable to his Participating Employer's contributions to the Trust or guarantee of benefits hereunder by the Pension Benefit Guaranty Corporation.

LEGAL02/33812181v1

10.3    Receipt or Release.

Any payment to any Participant or Beneficiary in accordance with the provisions of the
Plan shall, to the extent thereof, be in full satisfaction of all claims against the Trustee,
the Plan Sponsor, Administrative Committee and all Participating Employers. The
Trustee may require such Participant or Beneficiary, as a condition precedent to such
payment, to execute a receipt and release to such effect.

10.4    Alienation.

(a)    None of the benefits, payments, proceeds or claims of any Participant or
Beneficiary shall be subject to any claim of any creditor and, in particular, the same shall
not be subject to attachment or garnishment or other legal process by any creditor, nor
shall any such Participant or Beneficiary have any right to alienate, anticipate, commute,
pledge, encumber or assign any of the benefits or payments or proceeds which he may
expect to receive, contingently or otherwise, under this Plan or the Trust.

(b)    The provisions of this Section shall also apply to the creation, assignment,
or recognition of a right to any benefit payable with respect to a Participant pursuant to a
domestic relations order, unless (1) such order is determined to be a "qualified domestic
relations order," as defined in Section 414(p) of the Code, or (2) the Administrative
Committee determines in its discretion to treat any domestic relations order entered
before January 1, 1985 as a qualified domestic relations order. The Administrative
Committee shall establish reasonable procedures to determine the qualified status of
domestic relations orders and to administer distributions under such qualified orders. In
the event a qualified domestic relations order exists with respect to a benefit payable
under the Plan, the benefits otherwise payable to the affected Participant or Beneficiary
shall be payable to the alternate payee specified in the qualified domestic relations order,
and the benefits otherwise payable to such Participant or Beneficiary under this Plan shall
be reduced by the amounts payable to such alternate payee.

(c)    Notwithstanding Subsection (a), the Plan may offset against the accrued
benefit of a Participant any amount that the Participant is ordered or required to pay
under a judgment, order, decree or settlement agreement described in ERISA Section
206(d)(4), subject to the joint and survivor requirements of ERISA Section 206(d)(4)(C)
and ERISA Section 206(d)(5), if applicable.

10.5    Persons Under Incapacity.

(a)    In the event any amount is payable under the Plan to a person for whom a
conservator has been legally appointed, the payment shall be distributed to the duly
appointed and currently acting conservator, without any duty on the part of the
Administrative Committee to supervise or inquire into the application of any funds so
paid.

(b)      In the event any amount is payable under the Plan to a minor, payment shall not be made to the minor, but instead shall be paid (1) to that person's then living parent(s) to act as custodian, (2) if that person's parents are then divorced, and one parent is the sole custodial parent, to such custodial parent, or (3) if no parent of that person is then living, to a custodian selected by the Administrative Committee to hold the funds for the minor under the Uniform Transfers or Gifts to Minors Act in effect in the jurisdiction in which the minor resides.  If no parent is living and the Administrative Committee decides not to select another custodian to hold the funds for the minor, then payment shall be made to the duly appointed and currently acting guardian of the estate for the minor or, if no guardian of the estate for the minor is duly appointed and currently acting within 60 days after the date the amount becomes payable, payment shall be deposited with the court having jurisdiction over the estate of the minor.

10.6    Governing Law.

This Plan shall be construed, administered, and governed in all respects under applicable federal law, and to the extent that federal law is inapplicable, under the laws of the Commonwealth of Virginia provided, however, that if any provision is susceptible to more than one interpretation, such interpretation shall be given thereto as is consistent with this Plan's remaining qualified within the meaning of Section 401(a) of the Code.  If any provision of this instrument shall be held by a court of competent jurisdiction to be invalid or unenforceable, the remaining provisions hereof shall continue to be fully effective.

10.7    Headings, etc., Not Part of Plan.

Headings and subheadings in this Plan are inserted for convenience of reference only and are not to be considered in the construction of the provisions hereof.

10.8    Instrument in Counterparts.

This Plan may be executed in several counterparts, each of which shall be deemed an original, and said counterparts shall constitute but one and the same instrument, which may be sufficiently evidenced by any one counterpart.

10.9    Reorganization of Participating Employer.

This Plan shall inure to the benefit of, and be binding upon the parties hereto and their successors and assigns.  Subject to Section 9.3(e), if a Participating Employer merges or consolidates with or into a successor, this Plan shall continue in effect with respect to such Participating Employer unless the successor terminates this Plan with respect to such Participating Employer.

10.10   Masculine Gender Includes Feminine Gender.

As used in this Plan, the masculine gender shall include the feminine gender.

LEGAL02/33812181v1

**IN WITNESS WHEREOF**, the undersigned being duly authorized to act on behalf of the Company hereby approves the Hilton Hotels Retirement Plan, as amended and restated, effective as of January 1, 2012 on this _____ / 3 _ th day of _____ *Dec* . _____ , 2012.


Hilton Worldwide, Inc.
Global Benefits Committee

By: _____
Diane Heyman, Global Head of Compensation and Benefits, as the Duly Authorized Delegate of the Global Benefits Committee

- 80 -

APPENDIX A

ACTUARIAL ASSUMPTIONS

A.1     Actuarial Equivalent.

"Actuarial Equivalent" as defined in Article 1, shall mean an amount of equivalent value when calculated, using as actuarial assumptions,

>     (i)     for purposes other than a Qualified Joint and Survivor Annuity or Surviving Spouse Benefit, a unisex rate based on the 1951 Group Annuity Mortality Table for males projected to 1965 pursuant to Scale C and a 5% interest rate, and

>     (ii)     for purposes of a Qualified Joint and Survivor Annuity or Surviving Spouse Benefit, retiree mortality based on the preceding clause (i), but with joint annuitant mortality determined using a unisex rate based on the 1951 Group Annuity Mortality Table for females projected to 1965 pursuant to Scale C and a 5% interest rate; provided, however, that for cash lump sum calculation purposes, "Actuarial Equivalent" shall mean an amount of equivalent value when computed using (i) for cash lump sum distributions made prior to January 1, 1995, the average of the weekly bond yield on the Standard & Poor's AAA Industrial Bond Index for the four weeks preceding the Annuity Starting Date, but no greater than (A) 120% of the "Applicable Interest Rate" if the present value of the vested accrued benefit exceeds $25,000 (determined using the "Applicable Interest Rate") and provided that the use of 120% of such rate does not reduce the present value of the benefit below $25,000, or (B) the "Applicable Interest Rate," and (ii) for cash lump sum distributions made on or after November 15, 1995, the "applicable mortality table" and the "applicable interest rate" as described in Section 417(e)(3) of the Code for the November immediately preceding the Plan Year in which the distribution is made. For purposes of the level income annuity, "Actuarial Equivalent" shall mean an amount of equivalent value when computed using either (i) the "applicable mortality table" and the "applicable interest rate" as described in Section 417(e)(3) or (ii) a unisex rate based on the 1951 Group Annuity Mortality Table for males projected to 1965 pursuant to Scale C and a 5% interest rate, whichever results in a greater benefit. For purposes of this Section A.1, "Applicable Interest Rate" shall mean the interest rate or rates which the Pension Benefit Guaranty Corporation (the "PBGC") would use, as of the first day of the month in which falls the Annuity Starting Date, to determine the present value of a lump sum distribution on plan termination if the Plan had terminated as of the first day of the month in which such distribution occurs with insufficient assets to provide benefits guaranteed by the PBGC.

Notwithstanding the foregoing, with respect to any distribution with an Annuity Starting Date on or after December 31, 2002, for the purposes of determining the amount of any lump sum distribution pursuant to Section 417(e) of the Code, the

LEGAL02/33812181v1

"applicable mortality table" for lump sum benefits shall mean the table prescribed by Revenue Ruling 2001-62.

(iii)    For purposes of determining benefits under the joint and 66-2/3% option or the joint and 75% option, "Actuarial Equivalent" shall mean an amount of equivalent value when computed using either (i) the same interest and mortality factors used to determine benefits under the Qualified Joint and Survivor Annuity, or (ii) using 5% interest and the 1984 Unisex Pension Mortality Table with no setbacks, whichever yields the greater benefit.

(iv)    With respect to any distribution with an Annuity Starting Date on or after January 1, 2008, for purposes of determining the amount of any lump sum distribution pursuant to Section 417(e) of the Code, the "applicable interest rate" is the rate prescribed by the Department of Treasury from time to time under Code Section 417(e) for the month of November preceding the Plan Year containing the date of distribution and the "applicable mortality table" is the mortality table prescribed by the Department of Treasury from time to time under Code Section 417(e).

A.2    Early or Disability Retirement Reduction Factors.

The amount of a Participant's Early or Disability Retirement Benefit shall equal the Normal Retirement Benefit accrued to his or her Early or Disability Retirement Date, reduced as follows:

(a)    If the Participant (i) retires from active status with all Participating Employers after attaining age 55 with at least 5 Years of Vesting Service (or if prior to November 1, 2003, with at least 10 Years of Vesting Service) or (ii) has at least 20 Years of Vesting Service, by 1/4 of 1% for each of the first 60 months that the Participant's Early or Disability Retirement Date precedes his or her Normal Retirement Date and by 1/12 of 5% for each of the next 60 months that his Early or Disability Retirement Date precedes his Normal Retirement Date; or

(b)    In all other cases, using the Actuarial Equivalent assumptions contained in Section A.1.

APPENDIX B

RESTRICTION OF BENEFITS AND PAYMENTS

B.1   General.

This Appendix B shall be construed separately with respect to each Participating Employer, and shall be effective for (a) distributions (whether before or after Plan termination) to the top 25 highest paid Highly Compensated Employees made on or after January 1, 1994, and (b) Plan terminations occurring on or after January 1, 1994.  This Appendix shall be interpreted in accordance with Section 401(a)(4) of the Code and the regulations thereunder.  Regardless of how the terms defined in this Appendix are otherwise defined in the Plan, the definitions in this Appendix shall govern for the purposes of this Appendix.

B.2   Definitions.

(a)      "Benefits" for any Employee include, among other benefits, loans in excess of the amounts set forth in Section 72(p)(2)(A) of the Code, any periodic income, any withdrawal values payable to a living Employee, and any death benefits not provided for by insurance on the Employee's life.

(b)      "Current Liabilities" means the value of current liabilities as defined in Section 412(1)(7) of the Code.  For this purpose, the applicable Participating Employer may use the value as reported on Schedule B of such Participating Employer's most recent, timely filed Form 5500 or Form 5500 C/R with respect to the Plan, or may use the value as of any subsequent date.

(c)      "Highly Compensated Employee" shall mean

(1)      Any Employee who performs services for his Participating Employer or any Related Company during the Plan Year who (i) was a 5% owner of such Participating Employer or any Related Company at any time during the Plan Year or the preceding Plan Year; or (ii) for the preceding Plan Year, received compensation from such Participating Employer or any Related Company in excess of $110,000 (as adjusted pursuant to Section 415(d) of the Code) and (if applied by such Participating Employer, at its election) for the preceding Plan Year was a member of the "top-paid group" for such year.  For purposes of this definition of "Highly Compensated Employee," "compensation" means compensation within the meaning of Section 415(c)(3) of the Code, but including elective or salary reduction contributions to a cafeteria plan, cash or deferred arrangement or tax-sheltered annuity.

(2)      Any former Employee who separated from service (or was deemed to have separated) prior to the current Plan Year, who performs no services for such Participating Employer or any Related Company during the current Plan Year,

and who met the description in (a) above for the year of his separation or any year after he attained age 55.

(3)     The "top-paid group" for a Plan Year shall consist of the top 20% of Employees ranked on the basis of compensation received during the year excluding Employees described in Section 414(q)(5) of the Code and Treasury Regulations thereunder.

(4)     This definition of "Highly Compensated Employee" shall be effective for Plan Years beginning on or after January 1, 1997, except that for purposes of determining if an Employee was a Highly Compensated Employee in 1997, this definition will be treated as having been in effect in 1996.

(d)     "Restricted Employee," for purposes of this Appendix B, means an Employee who is one of the 25 Highly Compensated Employees who received the highest Compensation from the Participating Employer during the current calendar year or any prior calendar year.  Accordingly, the group of Restricted Employees may change from year to year, or within a single year.

B.3     Restriction of Benefits on Plan Termination.

In the event of a Plan termination, the benefit of any Highly Compensated Employee shall be limited to a benefit that is nondiscriminatory under Section 401(a)(4) of the Code.

B.4     Restriction on Distributions.

The annual payments to a Restricted Employee shall be limited to an amount equal in each year to the payments that would be made on behalf of the employee under

(a)     straight life annuity that is the Actuarial Equivalent of the accrued benefit and other Benefits to which the Employee is entitled under the Plan (other than a social security supplement), and

(b)     the amount of the payments that the Employee is entitled to receive under a social security supplement.

B.5     Limitations on Restrictions.

(a)     The restrictions of Section B.4 shall not apply if any of the following requirements is satisfied:

(1)     after payment to a Restricted Employee of all Benefits payable to the Restricted Employee under the Plan, the value of Plan assets (determined as of the same date the Current Liabilities are determined) equals or exceeds 110 percent of the value of Current Liabilities;

(2)   the value of the Benefits payable to the Restricted Employee is less than 1 percent of the value of Current Liabilities before distribution; or

(3)   the value of the Benefits payable to the Restricted Employee does not exceed $5,000.

(b)   The restrictions of Section B.4 shall not apply if, as of the date this Plan terminates, the value of Plan assets is not less than the present value of all accrued benefits (whether or not forfeitable), distributions of assets are made to each Participant equal to the present value of that Participant's accrued benefit, and the formula for computing benefits as of the date of termination is not discriminatory. All present values and the value of Plan assets will be computed using assumptions satisfying Section 4044 of ERISA.

(c)   If the Plan otherwise allows a lump sum distribution, Section B.4 shall not restrict the payment in one lump sum of the entire amount to which a terminating Participant is entitled, provided that the Employee enters into such written agreements and makes any other arrangements (including, for example, providing adequate security for repayment) necessary or desirable, as determined solely by the Administrative Committee, to comply with revenue rulings or other pronouncements of the Internal Revenue Service permitting lump sum distributions to Restricted Employees.

(d)   If permitted by the Administrative Committee, the restrictions in Section B.4 shall not apply to the extent the conditions set forth in any revenue ruling or other pronouncements of the Internal Revenue Service are met. The Administrative Committee shall have sole discretion to determine whether such conditions are met.

LEGAL02/33812181v1

APPENDIX C
PARTICIPATING EMPLOYERS AS OF JANUARY 1, 2012

| Name of Employer | Special Employee Classification Limitation |
|---|---|
| Plan Sponsor: | |
| Hilton Worldwide, Inc. (and its Controlled Group Members) | None |
| Non-Controlled Group Subsidiaries | None |
| Hilton Hawaiian Village, LLC | None |
| Hilton Reservations Worldwide, LLC | |
| Participating Affiliates: | |
| Airport Center, Ltd. (Palm Beach Airport Hilton) | None |
| Anaheim Hotel Partnership (Anaheim Hilton) | None |
| Association of Apartment Owners | None |
| Bel Air Hotel Company (Mobile Hilton) | None |
| Bristol Corp (Anchorage Hilton) | None |
| Broadway Brown Partnership | None |
| Dallas Hilton Inn | None |
| DeSoto, Inc. (DeSoto Hilton) | None |
| Equitable Assurance Company (Meadowlands Hilton) | None |
| Fortuna Enterprises (Los Angeles Airport) | None |
| Hilton at the Park | None |
| Hotelarama Associates (Fontainbleu Hilton) | None |
| International River Center (New Orleans Hilton) | None |
| Kauia Beach Villas Hotels | None |
| Koar-Pasadena Investment Partnership (Pasadena Hilton) | None |
| Kuilima Resort Company (Turtle Bay Hilton) | None |
| Magnum Hotel Corporation (Arlington Park) | None |
| Northfield Hotel Corporation (Northfield Hilton) | None |
| Pacific West Company (University Hilton) | None |
| Palacio del Rio, Inc. (Palacio del Rio) | None |
| Pleasant Travel Service (Kona Hilton) | None |
| Queen of New Orleans | None |
| Somerset Operating Company (Somerset Hilton) | None |
| Springhill Lake Hotel (Greenbelt Hilton) | None |
| Standard Financial Corp. (Novi Hilton) | None |

APPENDIX D

ELAPSED TIME METHOD

This Appendix D sets forth the definitions and rules applicable for determining Years of Vesting Service for Employees who are subject to Subsection (j) of the definition of "Years of Vesting Service" in Article 1.

Break in Employment means an Employee's resignation, discharge, death or retirement from or by the Company and all Related Companies, effective as of the date of the applicable event or the first anniversary of the first date on which an Employee remains absent from work (with or without pay) with the Company and all Related Companies for any reason other than resignation, discharge, death or retirement (unless such event occurs during such one-year period). In determining whether a Break in Employment has occurred, the following rules shall apply:

      (a)     A Break in Employment shall not occur solely by reason of leaves of absence authorized by the Company or a Related Company before or after the absence, in accordance with established policies, and vacation periods, temporary layoffs for lack of work, and military leaves.

      (b)     Continuation upon temporary layoff for lack of work for a period in excess of one year shall be considered a discharge effective as of the anniversary date of the commencement of such period.

      (c)     Failure to return to work after expiration of any leave of absence or after recall from any temporary layoff, unless such failure is excused by the Company or a Related Company shall be considered a resignation, effective as of the earlier of the end of such leave of absence or layoff or the anniversary date of the commencement of such leave of absence or layoff.

      (d)     Failure of an Employee on military leave to make application for reemployment within the period during which he is entitled thereto under laws of the United States shall be considered a resignation effective as of the earlier of the end of such military leave or the anniversary date of commencement of such military leave.

Employment Date means the date on which an Employee first completes an Hour of Service on initial employment by the Company or a Related Company.

Reemployment Date means the date (following a Break in Employment) on which an Employee first completes an Hour of Service with the Company or a Related Company.

Service means (i) each period, commencing on the Employee's Employment Date and continuing until such Employee's Break in Employment, and (ii) each period, commencing on the Employee's Reemployment Date and continuing until such Employee's subsequent Break in Employment. "Service" also includes the period

- 87 -

commencing on the date of the Employee's resignation, discharge, death or retirement from or by the Company and all Related Companies and ending on the Employee's Reemployment Date if such period is one year or less.

Sixty Month Break in Service means a period of 60 consecutive months following a Break in Employment during which the individual involved is not employed by the Company or a Related Company. However, if the Break in Employment occurred by virtue of maternity or paternity reasons set forth in the definition of One Year Break in Service Year, then the period used to determine if a Sixty Month Break in Service has occurred shall not commence until the second annual anniversary of the first date of such Break in Employment.

If a Participant incurs a Sixty Month Break in Service prior to obtaining any vested interest under this Plan, his Years of Vesting Service completed prior to the Sixty Month Break in Service shall be taken into account if, and only if the period of absence (not counting the first 12 months of absence in the case of a Break in Employment caused by maternity or paternity) following his Break in Employment is less than the Participant's Service completed prior to his Break in Employment.

In the case of an Employee who transfers from a class of Employees whose service is determined on the basis of Vesting Computation Periods to a class of Employees whose service is determined under the elapsed time method under this Appendix D, the Employee shall receive credit for a period of service consisting of

(A)     A number of Years of Vesting Service equal to the number of Years of Vesting Service credited to the Employee before the Vesting Computation Period during which the transfer occurs; and

(B)     The greater of (1) the period of Service that would be credited to the Employee under the elapsed time method for his service during the entire Vesting Computation Period in which the transfer occurs or (2) the service taken into account under the Vesting Computation Periods method as of the date of the transfer.  In addition, the Employee shall receive credit for Service subsequent to the transfer commencing on the day after the last day of the Vesting Computation Period in which the transfer occurs.

In the case of an Employee who transfers from a class of Employees whose service is determined under the elapsed time method under this Appendix D to a class of Employees whose service is determined on the basis of Vesting Computation Periods:

(A)     The Employee shall receive credit, as of the date of the transfer, for a number of Years of Vesting Service equal to the number of 1-year periods of Service credited to the Employee as of the date of the transfer, and

(B)     The Employee shall receive credit, in the Vesting Computation Period which includes the date of the transfer, for ten Hours of Service for each day the

- 88 -

Employee is credited with at least one Hour of Service for any fractional part of a year credited to the Employee under this Appendix D as of the date of the transfer.

LEGAL02/33812181v1

## AMENDMENT ONE TO THE
## HILTON HOTELS RETIREMENT PLAN

**WHEREAS,** Hilton Worldwide, Inc. (the "Company") maintains the Hilton Hotels Retirement Plan as amended and restated effective January 1, 2012 (the "Plan");

**WHEREAS,** pursuant to Section 9.1 of the Plan, the Company has the authority to amend the Plan and such authority has been delegated to the Global Benefits Committee (the "Committee"); and

**WHEREAS,** the Committee desires to amend the definition of "Years of Vesting Service" included in Article One of the Plan to remove the temporal limitation included in Subsection (j) such that the "greater of" method for counting non-participating service will apply to all participants beginning January 1, 1976;

**NOW THEREFORE,** the Plan is hereby amended as follows:

1. Subsection (j) of the definition of "Years of Vesting Service" in Article One of the Plan is amended by deleting the words "beginning after December 31, 1996" from the first sentence thereof.

\*      \*      \*      \*      \*

**IN WITNESS WHEREOF,** the undersigned, being duly authorized to act on behalf of the Committee hereby approves and executes Amendment One to the Plan on this _5th_ day of March 2013.

Hilton Worldwide, Inc.
Global Benefits Committee

By: _Diane Heyman_
Diane Heyman, Global Head of Compensation and Benefits, as the Duly Authorized Delegate of the Global Benefits Committee

**AMENDMENT 2013-1**
**TO THE**
**HILTON HOTELS RETIREMENT PLAN**
(As Amended and Restated Effective January 1, 2012)

WHEREAS, Hilton Worldwide, Inc. (f/k/a Hilton Hotels Corporation) (the "Company") maintains the Hilton Hotels Retirement Plan (the "Plan"); and

WHEREAS, pursuant to Section 9.1 of the Plan, the Company has the authority to amend the Plan and such authority has been delegated to the Global Benefits Committee (the "Committee"); and

WHEREAS, the Company has been ordered to amend the Plan to comply with the court order entered on August 31, 2011 in the case styled *Jamal Kifafi v. Hilton Hotels Retirement Plan, et al.*, Case No. 1:98cv1517 (CKK), pending in the United States District Court for the District of Columbia (the "Kifafi Litigation"); and

NOW, THEREFORE, upon the occurrence of the Appendix E Effective Date, the Plan shall be deemed amended to add Appendix E to the end of the Plan, in the form that follows:

APPENDIX E

MINIMUM BENEFIT INCREASES

E.1     General

    (a)    Purpose and Effective Date. This Appendix E is intended to comply with the order entered in the Kifafi Litigation on August 31, 2011. Except as otherwise provided, this Appendix E shall be effective as of 90 days from date of Court's final order resolving the Plaintiff's motion for attorney's fees.

    (b)    Implementation. This Appendix E shall be implemented as soon as administratively feasible, but no later than 90 days from date of Court's final order resolving the Plaintiff's motion for attorney's fees, with respect to any payment required, or required to be increased, by this Appendix E.

    (c)    Operation of Certain Other Provisions. This Appendix E shall be read together with Sections 4.1(a) and 4.13 of the Plan to determine the minimum benefit that can be provided under the plan solely with respect to Appendix E Participants.

    (d)    Affected Participants. For purposes of this Appendix E, an "Appendix E Participant" includes all current or former Participants who accrued a

benefit under the Plan and were employed by a Participating Employer (as of the relevant time) after December 31, 1975 and have, or may obtain, a vested right to pension benefits from the Plan, and whose Plan benefits will be increased by application of this Appendix E, including an individual who has previously been paid the full amount of the benefit determined without regard to this Appendix E (such as an individual who received a lump sum cashout under Section 4.9(d)).

(e)     Benefit Payable.  The vested benefit attributable to each Appendix E Participant shall be the greater of the vested benefit determined without regard to this Appendix E or the vested benefit determined under this Appendix E. The benefits of any Participant who is not an Appendix E Participant shall be determined without regard to this Appendix E.

(f)     Vesting.  Nothing in this Appendix E is intended to limit, alter, supersede or suspend any part of the District Court for the District of Columbia's August 31, 2011 Order in the Kifafi Litigation with respect to the ordered remedies relating to the vesting violations found by the Court. August 31, 2011 Order at pp. 7, 11.

E.2     Minimum Accrual Formula.  The Normal Retirement Benefit shall be determined as follows:

(a)     For Participants who separated from service after December 31, 1981, the Normal Retirement Benefit shall be determined in accordance with the terms of the Plan in effect on the date of the Participant's Break in Employment, except that the Integrated Benefits (as defined in the Plan) used as an offset in determining the Participant's Normal Retirement Benefit under Section 4.1(a) of the Plan (or Section 4.1 of the Plan as in effect prior to January 1, 1987), shall not exceed the sum of:

(1)     the lesser of (a) 50% of the Participant's Primary Social Security Benefit and (b) 0.5675% of the Participant's Average Monthly Compensation multiplied by his Years of Benefit Service (up to a maximum of 25 years) plus 0.125% of the Participant's Average Monthly Compensation multiplied by his Years of Benefit Service in excess of 25 (but not more than 45) years, plus

(2)     offsets for union and New York Hotel Association plan benefits as provided in the Plan.

The Average Monthly Compensation used in this computation shall be limited to no more than $12,500 per month, or $150,000 per year, consistent with 26 U.S.C. § 401(a)(17) during the relevant time period.

(b)     For Participants who separated from service prior to January 1, 1982, the Normal Retirement Benefit shall be determined in accordance with the terms of the Plan in effect on the date of the Participant's Break in Employment, except that the Integrated Benefits used as an offset in determining the Participant's Normal Retirement Benefit under Section 4.1 of the Plan shall not exceed the sum of:

(1)     the lesser of (a) 50% of the Participant's Primary Social Security Benefit and (b) 0.375% of the Participant's Average Monthly Compensation multiplied by his Years of Benefit Service, plus

(2)     offsets for union and New York Hotel Association plan benefits as provided in the Plan.

E.3     Calculation, Adjustment and Payment of Benefits

(a)     The provisions of Sections 4.13(c) through (e) of the Plan, as modified below, shall apply for purposes of determining (i) Participants' benefits under this Appendix E, (ii) the amount of any required corrections or adjustments to any previous calculations of payments, (iii) the time, form and amount of any required retroactive payments, and (iv) if the Participant is deceased, the payee of any required retroactive payments.

(b)     For purposes of applying Sections 4.13(c) through (e) under this Appendix E, (i) Amendment 2013-1 and its Date of Execution, subject to Section E.1(b), replaces references to Amendment 1999-1 and its date of adoption, (ii) Appendix E replaces references to Section 4.13, (iii) New Benefit shall mean the benefit determined under this Appendix E, (iv) Pre-Amendment Benefit shall mean the benefit determined under the Plan without regard to this Appendix E, (v) any payments required by this Appendix E, after the Appendix E Effective Date, shall not be delayed pending a request that the IRS determine that the Plan, as amended, satisfies the qualification requirements of Section 401(a) of the Code, and (vi) the interest rate used to calculate "z" in the formula provided in Sections 4.13(e)(3) and (e)(4) shall be 6% compounded annually up to August 31, 2011, and 0.1% thereafter.

(c)     For the purposes of Section 4.13(e)(2), payment of any new of increased benefits to which a Participant is entitled under this Appendix E, and which is payable in the form of an annuity, shall begin on the date the Participant elects to receive benefits in accordance with the Plan. If that date is after the Participant's Normal Retirement Date (as defined in the Plan), no retroactive payments shall be made, but instead of the Participant shall receive an actuarially equivalent annuity commencing on the date they elect to receive benefits in accordance with the terms of the Plan.

E.4     Legal Compliance

Nothing in this Appendix E shall require any benefit to be paid to a Participant or Beneficiary in an amount, in a form or at a time that is prohibited by, or would otherwise violate, the Code, ERISA or any other applicable law.

WHEREFORE, the undersigned, being duly authorized to act on behalf of the Company, hereby approves Amendment 2013-1 to the Plan.

Date of Execution:  _November 21_____, 20_13_.

<div style="margin-left:40%">

Hilton Worldwide, Inc.
Global Benefits Committee

By: _Diane Heyman_____
Diane Heyman, Global Head of Compensation and Benefits, as the Duly Authorized Delegate of the Global Benefits Committee

</div>

**AMENDMENT 2014-1**
**TO THE**
**HILTON HOTELS RETIREMENT PLAN**
(As Amended and Restated Effective January 1, 2012)

**WHEREAS,** Hilton Worldwide, Inc. (f/k/a Hilton Hotels Corporation) (the "Company") maintains the Hilton Hotels Retirement Plan (the "Plan"); and

**WHEREAS,** pursuant to Section 9.1 of the Plan, the Company has the authority to amend the Plan and such authority has been delegated by the Compensation Committee of Hilton Worldwide Holdings, Inc. to the Chairperson of the Global Benefits Administrative Committee (the "Chairperson"), with such individual acting in her settlor capacity; and

**WHEREAS,** the Chairperson wishes to amend the Plan in various respects;

**NOW, THEREFORE,** the Chairperson hereby amends the Plan as follows:

1.     Effective as of January 1, 2014, the definition of "Charter" in Article I of the Plan is amended in its entirety to read as follows:

"<u>Charter</u> means the Hilton Worldwide, Inc. Global Benefits Administrative Committee Charter, as adopted and approved by the Compensation Committee of Hilton Worldwide Holdings, Inc., as may be amended from time to time."

2.     Effective as of January 1, 2014, the definition of the term "Plan Sponsor" in Article I of the Plan is amended in its entirety to read as follows:

"<u>Plan Sponsor</u> shall mean the Company.  For purposes of the Plan, the Plan Sponsor shall act through the Chairperson of the Global Benefits Administrative Committee."

3.     Effective as of January 1, 2014, the definition of the term "Same-Sex Spouse" is deleted in its entirety from Article I of the Plan.

4.     Effective as of June 26, 2013, the definition of the term "Spouse" in Article I of the Plan is amended in its entirety to read as follows:

"<u>Spouse</u> shall mean, effective on and after June 26, 2013, the individual recognized as the spouse of a Participant for federal tax purposes to whom the Participant is legally married on the Participant's Annuity Starting Date.  A "Surviving Spouse" is a Spouse who survives the Participant, provided, however, that for purposes of the Surviving Spouse Benefit described in Section 4.7, "Surviving Spouse" shall mean the Spouse to whom the Participant was legally married for at least one year prior to his date of death."

5.    Effective as of January 1, 2014, the second paragraph of Section 2.3 of the Plan is deleted in its entirety and replaced with the following:

"If the Participant elects to receive his benefit in the form of a Joint and Survivor Annuity, the Participant's Spouse shall be automatically designated as the Participant's Beneficiary and the Participant shall not be required to complete a beneficiary designation form. The Participating Employer, the Administrative Committee and the Trustee may rely upon a Participant's designation of Beneficiary or Beneficiaries last filed in accordance with the terms of this Plan."

6.    Effective as of January 1, 2014, Section 4.8(a)(v) of the Plan is deleted in its entirety from the Plan.

7.    Effective as of January 1, 2014, Section 7.1(b) of the Plan is amended in its entirety to read as follows:

"(b)    If any Participant, Spouse or Beneficiary disagrees with the Administrative Committee's response to such individual's inquiry or application for benefits, the Participant, Spouse or Beneficiary shall notify the Administrative Committee in writing and shall request a review of such response. Any such notice shall be treated as a claim for benefits hereunder."

8.    Effective as of January 1, 2014, the first paragraph in Section 9.1 of the Plan is deleted in its entirety and replaced with the following:

"The Plan Sponsor reserves the right at any time and from time to time, and retroactively if deemed necessary or appropriate, to amend in whole or in part any or all of the provisions of the Plan through the action of the Chairperson of the Global Benefits Administrative Committee. Any amendment shall be stated in an instrument in writing, executed in the same manner as the Plan. Except as may be required to permit the Plan and Trust to meet the requirements for qualification and tax exemption under the Code, or the corresponding provisions of other or subsequent revenue laws or of ERISA, no amendment may be made which may:"

**WHEREFORE,** the undersigned, being duly authorized to act on behalf of the Company with respect to the execution of this Amendment 2014-1 to the Plan, hereby executes Amendment 2014-1 to the Plan.

Date of Execution: _12/5/14_

By: _____

Name: Laura Fuentes

Title SVP Total Rewards & People Analytics

As the Duly Authorized Delegate of the Compensation Committee of Hilton Worldwide Holdings, Inc.

2

**AMENDMENT 2015-1**
**TO THE**
**HILTON HOTELS RETIREMENT PLAN**
(As Amended and Restated Effective January 1, 2012)

WHEREAS, Hilton Worldwide, Inc. (f/k/a Hilton Hotels Corporation) (the "Company") maintains the Hilton Hotels Retirement Plan (the "Plan"); and

WHEREAS, pursuant to Section 9.1 of the Plan, the Company has the authority to amend the Plan and such authority has been delegated by the Compensation Committee of Hilton Worldwide Holdings, Inc. to the Chairperson of the Global Benefits Administrative Committee (the "Chairperson"), with such individual acting in her settlor capacity; and

WHEREAS, the Chairperson wishes to amend the Plan in various respects;

NOW, THEREFORE, the Chairperson hereby amends the Plan as follows:

1.      Effective as of March 1, 2015, Section 4.9(d) of the Plan is amended in its entirety to read as follows:

"(d)    Notwithstanding any other provision of the Plan, including but not limited to Section 4.5, effective March 1, 2015, if, upon a Participant's Break in Employment (including a Break in Employment before March 1, 2015), or any time thereafter, the Actuarial Equivalent present value of the Participant's vested accrued benefit determined as of the Annuity Starting Date does not exceed $5,000, the Participant shall be notified (i) that he or she may elect to either receive a lump sum payment of the Actuarial Equivalent present value of his or her vested accrued benefit or to have all or a portion of the Actuarial Equivalent present value of such vested accrued benefit paid in a Direct Rollover (as defined in Section 4.9(c)(ii) above) to an Eligible Retirement Plan (as defined in Section 4.9(c)(ii) above) specified by the Participant, and (ii) of the Plan's default procedure if he or she fails to make an election in accordance with clause (i) within the time period specified by the Plan Administrator.  Under the Plan's default procedure, if the Participant fails to make such an election within sixty days after such notification and the Actuarial Equivalent present value of the Participant's vested accrued benefit does not exceed $5,000, then the Plan shall pay the total amount of the Actuarial Equivalent present value of the Participant's vested accrued benefit in a Direct Rollover (as defined in Section 4.9(c)(ii) above) to an individual retirement account established on the Participant's behalf by the Administrative Committee, so long as the amount eligible for a Direct Rollover does not exceed $5,000 at the time of the rollover.

If the Actuarial Equivalent present value of the Participant's vested accrued benefit payable to the Participant exceeds $5,000 when the actual payment elected by the Participant or the Direct Rollover is to be made but did not exceed $5,000

1

on the Participant's Annuity Starting Date (if under age 65) or retroactive Annuity Starting Date (if age 65 or over), then the Participant will be eligible to elect a lump sum benefit, provided that in the absence of an election by the Participant, the Plan shall not make a Direct Rollover to an individual retirement account established on the Participant's behalf by the Administrative Committee.

If the Actuarial Equivalent present value of the Participant's vested accrued benefit exceeds $5,000 on the Annuity Starting Date elected by the Participant, then the Participant will not be eligible to elect a lump sum benefit and must instead elect either a normal form or optional form of annuity benefit under Article IV of the Plan. No lump sum benefit other than the benefit described in this Section 4.9(d) will be available under the Plan.

Subject to Section 4.5(f) of the Plan regarding the calculation of benefit payments with Retroactive Annuity Starting Dates, the Actuarial Equivalent present value for any lump sum distribution shall be determined by applying the interest and mortality factors applicable to the year in which the Annuity Starting Date occurs."

**WHEREFORE,** the undersigned, being duly authorized to act on behalf of the Company with respect to the execution of this Amendment 2015-1 to the Plan, hereby executes Amendment 2015-1 to the Plan.

Date of Execution: 3-2-2015

By: _____

Name: Laura Fuentes
Title:  SVP Total Rewards & People Analytics
As the Duly Authorized Delegate of the
Compensation Committee of Hilton Worldwide
Holdings, Inc.

2

AMENDMENT 2015-2
TO THE
HILTON HOTELS RETIREMENT PLAN
(As Amended and Restated Effective January 1, 2012)

WHEREAS, Hilton Worldwide, Inc. (f/k/a Hilton Hotels Corporation) (the "Company") maintains the Hilton Hotels Retirement Plan (the "Plan"); and

WHEREAS, pursuant to Section 9.1 of the Plan, the Company has the authority to amend the Plan and such authority has been delegated by the Compensation Committee of Hilton Worldwide Holdings, Inc. to the Chairperson of the Global Benefits Administrative Committee (the "Chairperson"), with such individual acting in her settlor capacity; and

WHEREAS, the Chairperson wishes to amend the Plan in various respects;

NOW, THEREFORE, the Chairperson hereby amends the Plan as follows:

1.      Effective as of March 1, 2015, a new Section 4.7(d) is added to the Plan to read as follows:

"(d)    Notwithstanding any other provision of the Plan (including Section 4.9(d)), effective March 1, 2015 and any time thereafter, if the Actuarial Equivalent present value of the Surviving Spouse Benefit, determined based on the date of the Participant's death (including deaths prior to March 1, 2015) payable to the Surviving Spouse does not exceed $5,000, the Surviving Spouse shall be notified (i) that he or she may elect to either receive a lump sum payment of the Actuarial Equivalent present value of the Surviving Spouse Benefit or to have all or a portion of the Actuarial Equivalent present value of such Surviving Spouse Benefit paid in a Direct Rollover (as defined in Section 4.9(c)(ii)(4) below) to an Eligible Retirement Plan (as defined in Section 4.9(c)(ii)(2) below) specified by the Surviving Spouse, and (ii) of the Plan's default procedure if he or she fails to make an election in accordance with clause (i) within the time period specified by the Plan Administrator. Under the Plan's default procedure, if the Surviving Spouse fails to make such an election within sixty days after such notification and the Actuarial Equivalent present value of the Surviving Spouse Benefit does not exceed $5,000, then the Plan shall pay the total amount of the Actuarial Equivalent present value of the Surviving Spouse Benefit in a Direct Rollover to an individual retirement account established on the Surviving Spouse's behalf by the Administrative Committee, so long as the amount eligible for a Direct Rollover does not exceed $5,000 at the time of the rollover.

If the Actuarial Equivalent present value of the Surviving Spouse Benefit payable to the Surviving Spouse exceeds $5,000 when the payment elected by the Surviving Spouse or the Direct Rollover is to be made, but did not exceed $5,000 at the time of death, then the Surviving Spouse will be eligible to elect a lump sum

1

benefit, provided that in the absence of an election by the Surviving Spouse, the Plan shall not make a Direct Rollover to an individual retirement account established on the Surviving Spouse's behalf by the Administrative Committee.

If the Actuarial Equivalent present value of the Surviving Spouse Benefit exceeds $5,000 on the date of death and the payment date elected by the Surviving Spouse, then the Surviving Spouse will not be eligible to elect a lump sum benefit. No lump sum benefit other than the benefit described in this Section 4.7(d) will be available to Surviving Spouses under the Plan, and the lump sum described in Section 4.9(d) shall be the only lump sum available to individuals who are not Surviving Spouses.

The Actuarial Equivalent present value for any lump sum distribution under this Section 4.7(d) shall be determined by applying the interest and mortality factors applicable to the year in which the Surviving Spouse Benefit first became payable."

2.      Effective as of March 1, 2015, Section 4.9(f) of the Plan is amended in its entirety to read as follows:

(f)      Notwithstanding anything to the contrary in Appendix A and the foregoing provisions of Sections 4.7(d) and 4.9(d), for (i) the vested accrued benefit of a Participant who incurred a Break in Employment prior to November 15, 1995 and who has not received a distribution prior to November 15, 1995, or (ii) a Surviving Spouse Benefit attributable to the death of a Participant prior to November 15, 1995, which benefit has not been distributed prior to November 15, 1995, the Actuarial Equivalent for distributions under Sections 4.7(d) and 4.9(d) shall be determined by applying the interest and mortality factors applicable to 1995, as adopted by the First Amendment to the Plan (as amended and restated effective January 1, 1987).

**WHEREFORE,** the undersigned, being duly authorized to act on behalf of the Company with respect to the execution of this Amendment 2015-2 to the Plan, hereby executes Amendment 2015-2 to the Plan.

Date of Execution: _6 / 8 / 15_____

By: _____
Name: Laura Fuentes
Title: SVP Total Rewards & People Analytics
As the Duly Authorized Delegate of the
Compensation Committee of Hilton Worldwide
Holdings, Inc.

**AMENDMENT 2015-3**
**TO THE**
**HILTON HOTELS RETIREMENT PLAN**
(As Amended and Restated Effective January 1, 2012)

WHEREAS, Hilton Worldwide, Inc. (f/k/a Hilton Hotels Corporation) (the "Company") maintains the Hilton Hotels Retirement Plan (the "Plan"); and

WHEREAS, pursuant to Section 9.1 of the Plan, the Company has the authority to amend the Plan and such authority has been delegated by the Compensation Committee of Hilton Worldwide Holdings, Inc. to the Chairperson of the Global Benefits Administrative Committee (the "Chairperson"), with such individual acting in her settlor capacity; and

WHEREAS, the Chairperson wishes to amend the Plan in various respects;

NOW, THEREFORE, the Chairperson hereby amends the Plan as follows:

1.      Effective as of July 1, 2015, a new Section 4.14 is added to the Plan to read as follows:

"4.14   Special Limited-Time Lump Sum Payment Option

(a)      A Participant who: (i) was employed by the Company and its Related Companies immediately prior to termination of employment; (ii) terminated employment with the Participating Employers or Related Companies before July 1, 2015; (iii) has not reached his Annuity Starting Date (without regard to Section 4.14(d)); and (iv) has a vested accrued benefit under the Plan with an Actuarial Equivalent lump sum present value exceeding $5,000 but less than $20,000, shall be eligible to elect to receive a lump sum payment of the Actuarial Equivalent lump sum present value of his vested accrued benefit under the Plan beginning September 16, 2015 and ending November 1, 2015.  This special lump sum payment option is not available to:

- a Participant whose Required Beginning Date was before July 1, 2015;

- a Participant who was employed by the following Participating Affiliates immediately prior to termination of employment:

  - Bristol Corp (Anchorage Hilton)

  - Fortuna Enterprises (Los Angeles Airport)

  - Hotelarama Associates (Fontainbleu Hilton)

  - Palacio del Rio, Inc. (Palacio del Rio)

- Queen of New Orleans

- a Participant who is employed by a Participating Employer or Related Company on any day after June 30, 2015;

- a Participant or former Participant who has been or is paid all or a portion of his Plan benefit at any time before December 1, 2015.

- a Participant whose benefits under the Plan are subject to a domestic relations order, whether or not such order has been determined to be a "qualified domestic relations order" ("QDRO"), as defined in Section 414(p) of the Code;

- an alternate payee under a QDRO;

- a Participant whose current address is not available or whose vested accrued benefit cannot be determined based upon the available data;

- any Beneficiary of a deceased Participant; or

- a Surviving Spouse.

(b)     The amount of the lump sum payment described in Section 4.14(a) shall be calculated using the Actuarial Equivalent factors set forth in Appendix A of the Plan and the vested accrued benefit payable at Normal Retirement Date.  If the Participant has a Spouse on his Annuity Starting Date, the Participant must have spousal consent in order for his election of the lump sum payment to be effective.

(c)     In lieu of the lump sum payment described in Section 4.14(a), a Participant described above who is not married on his Annuity Starting Date shall be eligible to elect to receive his benefits under the Plan in the form of an immediate single life annuity, and a Participant who is married on his Annuity Starting Date shall be eligible to receive his benefits under the Plan in the form of an immediate single life annuity (with spousal consent), an immediate joint and 75% survivor annuity with his Spouse as Beneficiary, or an immediate qualified joint and 50% survivor annuity with his Spouse as Beneficiary.  The annuity forms of payment available to a Participant described above who, as of the Annuity Starting Date, is not otherwise entitled to an immediate commencement of his vested accrued benefit under the Plan shall be the Actuarial Equivalent of the vested accrued benefit payable at the Participant's Normal Retirement Date, using the same interest rate(s) and mortality table specified in subsection (b) above.

(d)     The annuity forms of payment available to a Participant described above who, as of the Annuity Starting Date, is otherwise entitled to an immediate commencement of his vested accrued benefit under the Plan shall be determined

using the factors and provisions otherwise generally available to the Participant's vested accrued benefit under the terms of the Plan.

     (e)    The Annuity Starting Date for any benefit paid or commencing under this Section 4.14 of the Plan shall be December 1, 2015."

*[signature page follows]*

**WHEREFORE,** the undersigned, being duly authorized to act on behalf of the Company with respect to the execution of this Amendment 2015-3 to the Plan, hereby executes Amendment 2015-3 to the Plan.

Date of Execution:   10/13/15

By: _____

Name: Laura Fuentes

Title:   SVP Total Rewards & People Analytics

As the Duly Authorized Delegate of the
Compensation Committee of Hilton Worldwide
Holdings, Inc.

### AMENDMENT SEVEN TO THE
### HILTON HOTELS RETIREMENT PLAN
(As Amended and Restated Effective January 1, 2012)

### AND

### ASSUMPTION OF THE
### PLAN AND RELATED AGREEMENTS
### BY HILTON DOMESTIC OPERATING COMPANY INC.

**WHEREAS**, Park Hotels & Resorts Inc. (f/k/a Hilton Worldwide, Inc.) ("Park") sponsors the Hilton Hotels Retirement Plan, as amended and restated effective January 1, 2012 (the "Plan"); and

**WHEREAS,** Hilton Worldwide Holdings, Inc. ("Hilton Worldwide"), the parent corporation of Park, intends to enter into that certain Distribution Agreement (the "Distribution Agreement"), by and among Hilton Worldwide, Park, and Hilton Grand Vacations Inc. ("HGV") and including that certain Employee Matters Agreement, as defined in Section 1.1(31) of the Distribution Agreement, pursuant to which Hilton Worldwide, Park, and HGV will become three separate publicly traded companies (the "Transaction"); and

**WHEREAS,** pursuant to the Employee Matters Agreement, Hilton Worldwide, Park, and HGV have agreed to a certain course of dealing with respect to the Plan, pursuant to which (i) Hilton Worldwide will cause Hilton Domestic Operating Company Inc. ("Hilton Domestic") to assume the Plan as Plan Sponsor (as defined in Article I of the Plan) and (ii) Park will assign, and Hilton Domestic will assume, each of the service provider and related agreements to which Park is party in its capacity as Plan Sponsor of the Plan before assumption of the Plan by Hilton Domestic; and

**WHEREAS,** pursuant to Section 9.1 of the Plan, the Plan Sponsor has the authority to amend the Plan and such authority has been delegated by the Compensation Committee of Hilton Worldwide Holdings, Inc. to the Chairperson of the Global Benefits Administrative Committee (the "Chairperson"), with such individual acting in her settlor capacity; and

**WHEREAS,** the Chairperson wishes to amend the Plan to make various changes arising in connection with the Transaction;

**NOW, THEREFORE, BE IT:**

**RESOLVED,** that, effective as of the Plan Effective Time (as defined in the Employee Matters Agreement), Hilton Domestic hereby assumes the Plan as Plan Sponsor; and further

**RESOLVED,** that, effective as of the Plan Effective Time, Hilton Domestic hereby assumes each service provider and related agreement to which Park was party immediately before the Plan Effective Time in its capacity as Plan Sponsor of the Plan; and further

**RESOLVED,** that, contingent upon Hilton Domestic becoming Plan Sponsor of the Plan at the Plan Effective Time, the Chairperson hereby amends the Plan as follows:

1.     Effective as of the Plan Effective Time, the section titled "Other Employers" in the Preamble of the Plan is deleted in its entirety and replaced with the following:

<u>Other Employers</u>.  From time to time, certain other employers have adopted the Plan as Participating Employers with the permission of the Plan Sponsor.

2.     Effective as of September 8, 2016, the definition of the term "Charter" in Article 1 of the Plan is deleted in its entirety and replaced with the following:

<u>Charter</u> shall mean the Global Benefits Administrative Committee Charter, as adopted and approved by the Compensation Committee of Hilton Worldwide Holdings, Inc., and as amended from time to time.

3.     Effective as of the Plan Effective Time, the definition of the term "Company" in Article 1 of the Plan is deleted in its entirety and replaced with the following:

<u>Company</u> shall mean Hilton Domestic Operating Company Inc., a Delaware corporation, any predecessor corporation, or any successor corporation resulting from merger or consolidation.

4.     Effective as of the Plan Effective Time, the definition of the term "Participating Employer" in Article 1 of the Plan is amended to delete the second sentence thereof and replace that sentence with the following new second sentence:

Appendix C attached hereto lists all Participating Employers as of September 15, 2016.

5.     Effective as of the Plan Effective Time, Appendix C to the Plan is deleted in its entirety and replaced with the Appendix C attached hereto as Exhibit A to this amendment.

**WHEREFORE,** the undersigned, being duly authorized to act on behalf of Hilton Worldwide with respect to assumption of the Plan as Plan Sponsor and assumption of each service provider and related agreement to which Park was party immediately before the Plan Effective Time in its capacity as Plan Sponsor of the Plan and further being duly authorized to act on behalf of the Plan Sponsor with respect to the execution

-2-

of this Amendment Seven to the Plan, hereby executes this assumption of the Plan and other agreements and this Amendment Seven to the Plan.

Date of Execution:  11/28/16

By: _____

Name: Laura Fuentes

Title: SVP Talent & Rewards

As a Duly Authorized Officer of Hilton Worldwide Holdings, Inc. With Respect to the Assumption of the Plan and the Related Agreements by Hilton Domestic, and

As the Duly Authorized Delegate of the Compensation Committee of Hilton Worldwide Holdings, Inc. With Respect to the Amendment of the Plan

**Exhibit A**

APPENDIX C

PARTICIPATING EMPLOYERS AS OF SEPTEMBER 15, 2016

Hilton Domestic Operating Company Inc.

Hilton Reservations Worldwide, L.L.C.

International Rivercenter

Bristol Corporation

Fortuna Enterprises, L.P.

Hotelerama Associated Limited

Palacio del Rio, Inc.

The Queen of New Orleans at the Hilton