## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| VALERIE R. WHITE, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No. 16-CV-856 (CKK) |
| | ) | |
| HILTON HOTELS RETIREMENT PLAN, | ) | |
| *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## PLAINTIFFS' REPLY IN SUPPORT OF
## SECOND RENEWED MOTION FOR CLASS CERTIFICATION

Stephen R. Bruce (DC Bar #289066)
STEPHEN R. BRUCE LAW OFFICES
1667 K St. NW, Suite 410
Washington, DC 20006-1583
202-289-1117
stephen.bruce@prodigy.net

Attorney for Plaintiffs and Plaintiff Class

## Table of Contents

Introduction. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

I.  Valerie White's "Fractional Year of Service" Subclass Satisfies the Rule 23(a)
    Standards for Certification. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4

II.  Eva Juneau's "Non-Participating Service" Subclass Satisfies the Rule 23(a)
     Standards for Certification. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6

III.  Peter Betancourt's "Heirs and Estates" Subclass Satisfies the Rule 23(a)
      Standards for Certification. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  14

IV.  This Action for Appropriate Injunctive Relief May Be Maintained Under Rule
     23(b)(2), or Alternatively Rule 23(b)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  18

Conclusion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  21

**Introduction**

There is no dispute that the standards for class certification are *not* the same as the standards for prevailing on summary judgment or at trial. If they were the same, cases would conclude with the class certification ruling. For class certification, plaintiffs are charged with satisfying the requirements of Rule 23(a), and one or more of Rule 23(b)(1), (2), or (3). The court's mission at the Rule 23 stage "is to select the method best suited to adjudication of the controversy fairly and efficiently." *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 460 (2013). "Merits questions may be considered to the extent – but only to the extent – that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *D.L. v. District of Columbia*, 713 F.3d 120, 125-26 (D.C. Cir. 2013). "What matters to class certification ... is 'the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation.'" *Brown v. District of Columbia*, 928 F.3d 1070, 1080 (D.C. Cir. 2019).

In this case, class certification should not be difficult because the Hilton Defendants have denied retirement benefits to the members of all three subclasses on identical or nearly identical grounds which Plaintiffs allege violate specific ERISA requirements. Plaintiffs also allege, and have records to prove, that other plan participants were granted retirement benefits in all three of these same circumstances during the vesting review conducted in the *Kifafi* litigation. But in the course of the claim procedure mandated by this Court and the Circuit, Hilton reverted to the non-compliant positions at issue here.

1

Plaintiffs' renewed motion for class certification addresses the "fail-safe" class definition issue raised by the Court's October 7, 2020 decision, and also the class certification "issues" or "defects" identified in that decision regarding the "non-participating service" and the "heirs and estates" subclasses. Dkt.#81 at 12-14, 15-16. The renewed motion presents additional supporting evidence and additional legal authority. The supporting evidence includes excerpts from each of the five managed property agreements that Hilton has, to date, produced. The common provision in those managed property agreements is a provision granting Hilton the authority to "hire, promote, discharge, and supervise" the employees of those properties. Pls. Mem. at 21 (citing Ex. 12 (Dkt.#83-18)). Plaintiffs have also offered excerpts from Hilton's 2018 10-K in which Hilton describes the employees of the managed properties as "our" employees. Pls. Mem. at 21, 23-24 (citing Ex. 13 (Dkt.#83-19)).

With respect to the "heirs and estates" subclass, Plaintiffs' renewed motion presents evidence that Peter Betancourt is *not* the only "heirs and estates" subclass member where Hilton has asserted a statute of limitations defense, so that any such limitations defense is *not* "unique" to him. Plaintiffs' renewed motion further shows that Hilton's statute of limitations defense against him and others runs counter to the Supreme Court's February 26, 2020 ruling in *Intel Corp Inv. Policy v. Sulyma* on "actual knowledge" and this Circuit's 2012 ruling in *Kifafi* on "clear repudiation."

Hilton's opposition does not apply the standards set out in *Amgen* or any of the

2

standards in this Circuit. Instead, Hilton tries to transform class certification into a proceeding in which plaintiffs would have not just the burden they have on summary judgment or at trial, which is already improper at the class certification stage, but the burden to disprove every "possibility" of a merits defense, Opp. at 28, and each assertion of "individualized" issues made by defense counsel. *See id.* at 15-16, 39-40. In staking out these extreme positions, Hilton's opposition does not dispute Plaintiffs' additional evidence or legal authority (except an effort to distinguish the *Sulyma* decision), and Hilton offers no evidence or additional legal authority of its own. Hilton tries to dismiss Plaintiffs' refined language to address the "fail-safe" issue in the proposed order as "superficial," "minor," and "cosmetic[]," without suggesting any stronger language. Opp. at 1, 12, 23. As if this were not enough, Hilton seeks to dismiss any application of the "law of the case" based on this Court's earlier decisions in *White*, asserting that "this Court cast significant doubt on its prior decisions upholding each of Plaintiffs' individual claims." Opp. at 3; *see also id.* at 34.

As is the case in practically every jurisdiction, counsel's statements of fact are "not evidence." *See, e.g., Wood, ex rel United States v. Am. Inst. In Taiwan*, 286 F.3d 526, 535 (D.C. Cir. 2002); *Brown v. INS*, 775 F.2d 383, 388 (D.C. Cir. 1985); *Johnston v. Hundley*, 987 A.2d 1123, 1129 (D.C. 2010). Hilton's opposition nevertheless repeatedly relies on its counsel's factual assertions as if they were evidence. Hilton thus repeatedly asserts through counsel that there are "myriad[s]" of "individualized" issues without saying what

they are. Opp. at 4, 14, 15-16, 19, 29, 39-40. Hilton also asserts through counsel that the identical language that Hilton has used in denying retirement benefits just reflects "high-level categories" and that these denials were actually "individually evaluated," *id*. at 30, that Plaintiffs are offering quotes from only a "selection" of nearly "two dozen" managed property agreements, *id*. at 19, and that the disclosures to which Hilton's CEO and CFO have certified under the Sarbanes-Oxley Act are only "high-level descriptions of its employees," *id*. at 20.

Plaintiffs go over Hilton's arguments about each of the three subclasses in more detail below:

## I.   Valerie White's "Fractional Year of Service" Subclass Satisfies the Rule 23(a) Standards for Certification.

Hilton argues that to address the "fail-safe" definition issue, it is not sufficient for Plaintiffs to change "[h]ave vested rights that have been denied," to '[h]ave been denied vested rights." Opp. at 1-2. But the basis for this Court's "fail-safe" ruling was this exact language. Dkt.#81 at 6. This Court recognized, moreover, that the "fail-safe problem" "can and often should be solved by refining the class definition rather than by flatly denying class certification on that basis." *Id*. at 10. As refined, the proposed definition addresses the "fail-safe" issue. For instance, Ms. White "has been denied vested rights" by Hilton. Hilton is free to continue to argue that it is not required to apply ERISA's standards to fractional years of service, but it is an objective fact that Ms. White "has been denied vested rights" by Hilton, and it does not require Plaintiffs to prevail on the merits to

4

determine this.

Hilton contends that Ms. White's claim is precluded by a 180-day contract period. Opp. at 35-36. This Court already recognized that Plaintiffs are alleging that this 180-day period should be equitably tolled, including because the "Preamble" to the 2013 Plan document that adopted this provision states that it will not apply in these circumstances. *See* Dkt.#19 at 25. This Court ruled that "[b]ecause the propriety of tolling will turn on the factual circumstances underlying these allegations, dismissal on statute of limitations grounds is inappropriate at this procedural juncture." Dkt.#21 at 3-4.

Hilton argues alternatively that Ms. White and the two other named Plaintiffs should be barred from pursuing their claims by "laches." *See* Opp. at 38-39. Hilton's denials of their claims were not based on laches, which is mentioned nowhere in any denial letter. And this Court has already ruled "Defendants' laches argument is not appropriately resolved upon a motion to dismiss, given the fact-intensive nature of this equitable defense, and because dismissal based on the defense is not self-evident from the face of the complaint." Dkt.#21 at 6.

Hilton's opposition offers no substantive response to the commonality or typicality of Valerie White's claim to her tenth year of vesting service based on the years and fractional year (9.52957) that Hilton left hanging without conversion to ERISA's 1,000 hours of service standard for vesting. Hilton fails to mention the Labor Department and Treasury regulations on counting pre-ERISA hours of service and on transitioning from

elapsed time to hours of service at 29 C.F.R. 2530.200b-3 and Treas. Reg. 1.410(a)-7.

Hilton does not even mention this Court's decision in *Kifafi,* 616 F.Supp.2d at 34 on how

"[it is] mathematically possible for an employee to have fewer years of service under the

elapsed time method than under an hours standard," or this Court's earlier ruling in *White*

that Hilton's practice of leaving the fractional years hanging appears contrary to the

regulations requiring "fractional years [as of December 31, 1975 to] be converted to an

hourly amount." Dkt.#21 at 3. Hilton has also not contested that in the *Kifafi*-ordered

vesting review, Hilton properly converted fractional years to the ERISA standard for a

year of service in similar circumstances. *See* Pls. Mem. at 16; Dkt.#50 at ¶50A.

## II.    Eva Juneau's "Non-Participating Service" Subclass Satisfies the Rule 23(a) Standards for Certification.

In *Kifafi*, the D.C. Circuit mandated that Hilton "fund and administer a claim

procedure open to all participants whose vesting status turns on nonparticipating service."

701 F.3d at 733. Plaintiffs' counsel sent notices to plan participants and submitted claims

under this mandate to fulfill the requirement in ERISA §203(b), 29 U.S.C. §1053(b), that

for vesting "all of an employee's years of service with the employer or employers

maintaining the plan shall be taken into account." At first, it did not seem like it was going

to be difficult to get Hilton to count nonparticipating service for vesting because Hilton

had represented to this Court and the D.C. Circuit that "[t]he Plan ... credits ... non-

participating employment (primarily union employment and employment with a property

not participating in the Plan) for vesting service." Dkt.#219 in 98-1517, at 21; *accord*

7/3/2012 Appellees Br. in C.A. 11-7113, at 49. But then during the claim process the Hilton Defendants reverted to denying benefits on the basis that "non-participating service" does not count for vesting, and class certification discovery in this case unearthed the explicit instructions under which the Hilton Defendants had reversed course. *See* Exhibit 6 (Dkt.#83-12) at 1276.

Hilton's opposition repeatedly misstates the issue for the non-participating service subclass. As stated in the proposed class issues, the issue is:

> "Whether the Hilton Defendants' refusal to count "non-participating" service for vesting, notwithstanding [i] that the service was with the "employer" under ERISA §3(5), [ii] that the Hilton Defendants counted service at the same "Hilton Properties" in *Kifafi* and represented to this Court and the D.C. Circuit in *Kifafi* that Hilton had counted "non-participating" service with Hilton for vesting, and [iii] that the "records requested and received from Defendants do not identify any non-participating property that is also not a Related Company," is a violation of ERISA §§3(5) and 203(b)(1) and the related case law, including *Holt v. Winpisinger*, 811 F.2d 1532, 1537 (D.C. Cir. 1987), and ERISA's fiduciary duties and regulations on applying plan provisions "consistently with respect to similarly situated claimants" and keeping records necessary "to determine hours of service."

Dkt.#83-2 at 2-3. Hilton confuses compliance with the vesting standards in ERISA §§3(5) and 203 with "an election to participate" and arguments about what is "contrary to the Plan," or what "the Plan only counts." *See* Opp. at 17-19, 30.

With respect to commonality for the non-participating service subclass, Hilton is not accepting that "even a single common question will do," i.e., "a single aspect or feature of the claim [that] is common to all proposed class members." *D.L. v. District of*

*Columbia*, 713 F.3d at 129. Here, the denial letters flatly told claimants that "you are not entitled to any vesting credit" for "your employment at a non-participating property." Defs. Ex. E and G (Dkt.#84-7 and 84-9). Hilton's efforts to explain why denial letters identically stating that vesting service is denied for "your employment at a non-participating property" do not show "a single aspect or feature of the claim [that is] common" are absurd. *See* Opp. at 18, 30. Hilton's counsel counter-factually assert that the identical language in each of the denials only offers "high-level categories," and that the vesting claims actually were "individually evaluated." *Id.* at 30. Hilton's counsel are testifying because the evidence consists of the denial letters using identical language based on categorical instructions to the Hilton benefits committee that "Service at non-participating properties does not count for vesting purposes." Exhibit 6 (Dkt.#83-12) at 1276. When retirement benefits are denied on this basis, even though ERISA §203(b) provides that "all of an employee's years of service with the employer or employers maintaining the plan shall be taken into account," there clearly is a "common issue" for this Court to resolve.

In addition to this issue, this Court already found two other common issues in its ruling that Plaintiffs have "pleaded sufficient factual matter to stake out a plausible claim under Rule 12(b)(6)" that Eva Juneau should be vested, namely, that

> (i) the Hilton Defendants "made inconsistent determinations [in *Kifafi*] regarding vesting credit for non-participating properties" and

> (ii) "records requested and received from [the Hilton] Defendants do not identify any non-participating property that is also not a Related Company."

Dkt. #21 at 4.

In response to this Court's October 7, 2020 criticism that whether "'non-participating service' was rendered while Hilton was 'the employer' under ERISA §3(5) is not susceptible to common resolution amongst the proposed class," Dkt.#81 at 12,[1] Plaintiffs presented additional evidence about the common provisions in Hilton's managed property agreements along with the Supreme Court's holding in *Falk v. Brennan*, 414 U.S. 190, 195 (1973), that "the expansiveness of the [Fair Labor Standard] Act's definition of 'employer,'" on which the ERISA definition is based, and the management company's "substantial control of the terms and conditions of the work of these employees" make the management company the "employer" of the employees. Hilton does not challenge, or even cite, *Falk v. Brennan*, or any of the decisions in this jurisdiction on "joint employers," *e.g.*, *Harris v. Medical Transp. Mgmt.*, 300 F.Supp.3d 234, 240-46 (D.D.C. 2018).

Hilton tries instead to sweep aside the provisions of its own managed property agreements, saying that they only represent a "selection" of such agreements. Opp. at 19. But the five managed property agreements from which Plaintiffs quote are all that Hilton has produced as "reasonably available." Pienta Decl. (Dkt.#83-6) at ¶12. Each of those agreements provides that Hilton has the power to "hire, promote, discharge, and supervise"

---

[1] This Court separately criticized the definition of the "non-participating service" subclass because it depended on a determination of whether Hilton was the employer under ERISA §3(5). Dkt.#81 at 7. Plaintiffs refined the definition to address this.

the employees who work at the managed properties. Hilton has produced no managed

property agreement that does *not* contain such a provision. Plaintiffs have also shown that

Hilton's 2018 10-K confirms that Hilton has 169,000 "employees" which includes all of

the managed properties. Ex. 13 (Dkt.#83-19) at 24.

Hilton's counsel assert that there are other "individualized" issues in regard to the

non-participating properties, Opp. at 15-16, 19, but Hilton has offered *no evidence* of that

and essentially demands that Plaintiffs disprove its unfounded assertions.[2] Hilton tries to

dismiss its own disclosures, which the Sarbanes-Oxley Act requires to be certified by

Hilton's CEO and CFO, as a "high-level description of its employees." Opp. at 20.

Alternatively, Hilton tries to twist the certified disclosures into a positive, using the verb

"underscores" as though it supported other proof:

> "Hilton's statement that "We *employ or manage* more than 169,000
> individuals at our managed, owned and leased hotels and corporate offices,"
> Dkt. 83-19 at 24 (emphasis added), underscores that Hilton's status as an
> employer for ERISA or other purposes varies by property."

*Id.* Hilton's counsel's efforts to reinterpret Hilton's own certified disclosures are again

"not evidence." [3]

_____

[2] Even though Plaintiffs and the Court have said the members of the subclass are in
a "dozen" other Hilton Properties, *see, e.g.,* Dkt.#81 at 12, Hilton's counsel doubles that
to "two dozen" in *eight* places without citing any evidence. *See* Opp. at 3, 14, 16, 18, 30,
37, 42.

[3] Plaintiffs further call this Court's attention to a "cease and desist" order the
Securities & Exchange Commission issued on September 30, 2020 prohibiting Hilton
Worldwide from "committing or causing any violations and any future violations of
Sections 13(a) and 14(a) of the Exchange Act." *See*

Hilton's opposition to class certification does not distinguish, or even cite, this Court's recognition in *Kifafi,* 616 F.Supp.2d at 12, that *Holt v. Winpisinger* establishes the controlling precedent in this Circuit on counting non-participating service for vesting. *Holt* holds that under ERISA §203, "[o]nce an employee participates in a pension plan, all of his or her years of service, whether completed before or after participation begins, count statutorily toward the ten years of vesting credit." 811 F.2d at 1537. Instead of following the Circuit precedent in *Holt,* Hilton would like this Court to confine *Holt* to its facts, *see* Opp. at 18. But district courts lack the power to narrow circuit precedent and this Court has already recognized what *Holt* stands for in *Kifafi.*

As Plaintiffs suggested in their initial class certification motion, the more viable argument for Hilton might be Ms. Juneau's "typicality." Hilton briefly argues this, but its argument merely repeats what Plaintiffs said. Opp. at 37 (quoting Plaintiffs' Dkt.#44-1 and 88-1). As Plaintiffs also said in that initial motion, a plaintiff's claim may differ factually and still be "typical" of the claims of class members where, as here, "the legal theories are all fundamentally the same." Dkt.#44-1 at 18 (citing *Disability Rights Council v. WMATA*, 239 F.R.D. 9, 28 (D.D.C. 2006)); *accord*, *Healthy Futures of Texas v. HHS*, 326 F.R.D. 1, 7 (D.D.C. 2018) (typicality doesn't require identical facts, but that the named representative's claims be "sufficiently similar" so that the representative

---

https://www.sec.gov/news/press-release/2020-242 . The 10-K annual reports are issued under Section 13(a) of the Exchange Act.

11

"acts on behalf of, and safeguards the interests of the class"). Here, the Reno Hilton where Ms. Juneau was employed was a "Hilton Property" for which Hilton's Plan did not credit service for vesting unless it was counted for participation. But ERISA §203(b)(1) mandates that "all of an employee's years of service with the employer or employers maintaining the plan shall be taken into account" for vesting. Ms. Juneau's claim is "sufficiently similar" and her "legal theories are all fundamentally the same" to allow her to act on behalf of the class and safeguard their interests.[4]

As the Complaint alleges, Ms. Juneau also worked at a second Hilton hotel property, the Flamingo Hilton, which was a non-participating property after 1996. Dkt.#50 at ¶70A. Hilton's Retirement Plan has also not credited that service for vesting as ERISA §203 mandates. In response to this Court's criticism that Plaintiffs are "fold[ing] a unique ERISA issue into the non-participating service subclass," Dkt.#81 at 13, Plaintiffs' opening memo explains how the denials stating that claimants like Ms. Juneau lacked sufficient hours or earnings were because "the Plan" did not keep such records for "non-

---

[4] If this Court wanted to remove any conceivable issue, the Court could allow Plaintiffs to add Darryl Hemphill from the Atlanta Hilton. The *Manual for Complex Litigation* says the district court can conditionally certify and add additional representatives to satisfy Rule 23(a). *MCL (4th),* §21.26. The Court's earlier ruling that it would be "futile" to add Darryl Hemphill was predicated on his claim to "non-participating service" being based on the Court having "specifically decide[d] the right that Plaintiffs now purport to enforce based on *Kifafi*." Dkt.#64 at 11-12. This Court's reconsideration decision recognizes that Plaintiffs are also arguing "issue preclusion" based on *Kifafi*, Dkt.#70 at 6-7, and the October 7, 2020 decision recognizes that Plaintiffs contend that ERISA §3(5) in conjunction with §203(b) requires non-participating service with the "employer" to count for vesting. Dkt.#81 at 12.

participating properties." *See* Pls. Mem. at 27-28 and *see, e.g.*, Defs. Ex. G (Dkt.#84-9) at

2 (denial letter to Eva Juneau based on "the Plan's records"). This Court already

determined in *Kifafi* that "no one [at Hilton's Plan] kept track of the non-participating

properties' employees (hours/earnings) to give them vesting." 616 F.Supp.2d at 19. Ms.

Juneau illustrates this poignantly: Hilton says "the Plan ... lacks records" of her service at

the Flamingo Hilton, Opp. at 21, not that the Flamingo Hilton lacks records. Indeed,

Plaintiffs showed the Flamingo Hilton has records of Eva Juneau, e.g., Ms. Juneau's son

received a college scholarship from the Flamingo Hilton in 2000. Ex. 3 (Dkt.#83-9).

Hilton's opposition nevertheless devotes itself to trying to exclude from this subclass the

claims of the 29 people, which includes Ms. Juneau, for whom it says "the Plan" doesn't

have records of hours/earnings for periods of non-participating service. Opp. at 20-22.

That "the Plan" did not keep track of the non-participating properties' employees

(hours/earnings) to give them vesting" is precisely the point, and the basis for this claim.

The "aspect or feature of the claim [that] is common to all proposed class members" is that

Hilton is refusing to count service is with "non-participating properties" contrary to

ERISA §203(b).[5]

---

[5] If the Court does not want to certify a single "non-participating service" subclass,
it could certify two "non-participating service" subclasses with Ms. Juneau as the lead
Plaintiff for both. Mr. Kifafi was the lead Plaintiff for four subclasses. *See* 228 F.R.D.
382, at 386-89.

III.   **Peter Betancourt's "Heirs and Estates" Subclass Satisfies the Rule 23(a) Standards for Certification.**

In the *Kifafi* vesting review, the records of participants like Peter Betancourt's father, Pedro Betancourt, were re-examined and changed from "Non-Vested Term[ination]" to "Vested." Ex. 4 (Dkt.#83-10). "Analysis Spreadsheets" later developed by Hilton's counsel suggested, however, a new reason that could be used to deny payment of retroactive benefits if the participant is deceased. After claimants like Leonard Walch, III, were paid considerable amounts following instructions that retroactive benefits due a deceased participant were payable "to the participant's estate," *see* Pls. Mem. at 29, Opp. at 33, Hilton developed "Additional defenses related to deceased participants" under which Hilton would deny vested benefits if a participant is "Deceased" and the "claimant is not the surviving spouse." Pls. Mem. at 29, 31 and Ex. 10 (Dkt.#83-16). Hilton's position thus changed from paying heirs like Leonard Walch to telling heirs like Peter Betancourt that they could not receive back payments of vested benefits "because you are not the surviving spouse" of the deceased participant. Defs. Ex. K (Dkt.#84-13).

This Court's October 7, 2020 decision criticized Plaintiffs' renewed motion for saying this was "the sole basis" for Hilton's denial of Peter Betancourt's claim when Hilton had also asserted a statute of limitations defense. Dkt.#81 at 15-16. Hilton's opposition argues that it is insufficient for Plaintiffs to respond to this by changing "the sole basis" to "the basis" in the class definition and class issues. Opp. at 2, 14. But that is not all Plaintiffs did in response to the Court's decision: Plaintiffs showed that Hilton's

14

statute of limitations defense is not "unique" to Peter Betancourt because Hilton asserted

the same defense against about half of the subclass. Pls. Mem. at 34; Pienta Decl.

(Dkt.#83-6) at ¶14; Ex. 14 (Dkt.#83-20).

In addition to showing that Hilton's limitations defense is not "unique" to Peter

Betancourt, Plaintiffs have shown that Hilton's defense is not viable in light of the

Supreme Court's February 2020 holding in *Sulyma* that "actual knowledge" "must be more

than 'potential, possible, virtual, conceivable, theoretical, hypothetical, or nominal,'" 140

S.Ct. 768, at 775-76, and this Circuit's 2012 ruling in *Kifafi* that "the requirement that the

repudiation be clear and made known to the plan beneficiaries is not an idle one," 701 F.3d

at 729. Though Hilton drops the assertion that its limitations defense is "unique" to Peter

Betancourt, Hilton still argues for this defense, trying to distinguish *Sulyma* as applicable

only to "*breach of fiduciary claims*." Opp. at 28 n.8 (emph. in orig.). But *Sulyma* is not

distinguishable on that ground because Plaintiffs are alleging breach of fiduciary duty and

violation of ERISA's nonforfeitability requirement, which is also a breach of fiduciary

duty. Dkt.#50 at ¶77E; Dkt.#83-2 at 3.[6] As this Court has ruled, there is no basis for

denying class certification based on an affirmative defense "unless it will skew the focus

of the litigation and create a danger that absent class members will suffer if their

representative is preoccupied with defenses unique to it." *Meijer, Inc. v. Warner Chilcott*

---

[6] Even if *Sulyma* were distinguishable for non-statutory benefit claims, this
Circuit's decision in *Kifafi* on "clear repudiation" would apply.

*Holdings Co.*, 246 F.R.D. 293, 302 (D.D.C. 2007). There is no such danger here.

Hilton floats a new argument that "maybe" Peter Betancourt's deceased father or his deceased mother, who died in 1985 and 1998, respectively, made a "conscious decision ... not to commence benefits." Opp. at 24, 27-28, 29. While that may be clever, it is a fantasy because there were no retirement benefits for Pedro or Delia Betancourt to "conscious[ly]" decide not to commence: Hilton's records show that Pedro Betancourt was only recategorized in 2015 from "Non-Vested Term[ination]" to "Vested" as a result of the *Kifafi* review process. Ex. 4 (Dkt.#83-10). Alternatively, Hilton contends that not paying the retirement benefits by itself is a "clear repudiation." Opp. at 27-28. This is a construction of "clear repudiation" that this Circuit's decision in *Kifafi* rejects, *see* 701 F.3d at 729, and that no other circuit has adopted. Ignoring precedent, Hilton tries to place the burden of disproving its limitations theories on Plaintiffs at the class certification stage, demanding "evidence ruling out this possibility." Opp. at 28. This is not the law at the class certification stage, nor is it the law on a motion for summary judgment or at trial.[7]

Hilton reprises an argument it made in a footnote opposing Plaintiffs' leave to

---

[7] Hilton also resorts to a plan provision requiring benefit distributions to commence by the "later of" the year in which a participant attains age 70-1/2 or termination of employment. Opp. at 24, 27. Hilton overlooks that: (i) Plaintiffs already pointed out that the appeal denial letter drops any reference to age 70-1/2, Pls. Mem. at 36 n.12 and *compare* Dkt.#84-11 *with* #84-13, (ii) this provision actually requires *the Plan* to commence benefits by that date, regardless of what the participant does, Defs. Ex. A (Dkt.#84-3) at 38-44, and (iii) the Plan was at the time of the Betancourts' deaths classifying Pedro Betancourt as a "Non-Vested Termination" with no benefits to distribute, Ex. 4 (Dkt.#83-10).

amend in which Hilton contended that Peter Betancourt had failed to "exhaust" the claim

for back benefits to his mother. Opp. at 25; and Dkt. #35 at 8 n.4. Exhaustion is not

required for statutory claims and only "claim-exhaustion" rather than "issue-exhaustion" is

required for non-statutory claims because of the "non-adversarial nature" of ERISA claim

procedures. *See, e.g., Stephens v. Pension Benefit Guar. Corp.*, 755 F.3d 959, 966 (D.C.

Cir. 2014); *Sims v. Apfel*, 530 U.S. 103, 110 (2000). Following these principles, Plaintiffs

stated that "Hilton obviously was not going to grant Peter Betancourt those benefits when

it was broadly pronouncing that Hilton was not going to pay back benefits to anyone

except the Plan participant and the participant's surviving spouse." Dkt.#36 at 7 n.2. This

Court's Opinion granting the Motion to Amend said it was not going to decide every

dispute Defendants had raised and directed Defendants to file a notice if they intended to

pursue a "specific dispositive motion." Dkt.#49 at 2-3. In response, Defendants said they

"do not intend to file a dispositive motion at this time" while "reserv[ing] the right to file a

dispositive motion following resolution of Plaintiffs' pending motion for class

certification." Dkt.#52.

Hilton similarly tries to make whether a plan participant is "newly vested because

of Kifafi" into an individualized question of fact that may bar class certification. Opp. at

31-32. Hilton's records show that Pedro Betancourt was recategorized from "Non-Vested

Term[ination]" to "Vested" as part of the *Kifafi* review process. Ex. 4 (Dkt.#83-10).

Again, this is an issue Hilton raised in opposing Plaintiffs' Motion to Amend and as with

Hilton's footnote on exhaustion, this Court ruled that this was "not the proper posture to resolve" whatever dispute Hilton is trying to develop, Dkt.#49 at 2-3, and directed Hilton to say if it intended to file a specific dispositive motion. *Id*. Hilton responded was that it was *not* going to do so. Dkt.#52.

## IV.    This Action for Appropriate Injunctive Relief May Be Maintained Under Rule 23(b)(2), or Alternatively, Rule 23(b)(3).

Rule 23(b)(2) provides that a class action may be maintained if "the party opposing the class has acted or refused to at on grounds that apply generally to the class, so that final injunctive relief ... is appropriate respecting the class as a whole." Here, the Prayer at the end of Plaintiffs' Second Amended Complaint is for injunctive and other appropriate equitable relief  respecting the class as a whole as provided in ERISA §502(a)(3), 29 U.S.C. §1132(a)(3). Dkt.#50 at 40-42.

Hilton appears to argue that the appropriate injunctive relief must be self-executing and cannot require the court to make any determinations, e.g., related to "non-participating properties" or "heirs and estates." The core mission of the courts, however, is to carry out the law, e.g., if ERISA §203(b), 29 U.S.C. §1053(b), provides that "all of an employee's years of service with the employer or employers maintaining the plan shall be taken into account," and it is shown that an employer has not counted "years of non-participating service," the court must enjoin compliance with that requirement, and make the injunction sufficiently detailed to remedy the violations. In *Kifafi*, this Circuit held that "[o]nce the court determined the Plan violated ERISA, it entered the world of equity" and that:

18

"Hilton's premise that a plan's prospective compliance with ERISA's ... mandate circumscribes a court's remedial options in the face of past violations cannot be sustained... [T]he standard for prospective compliance does not ipso facto establish the adequacy of a retroactive amendment or court-imposed relief. To reduce the district court's remedy to nothing more than a demand that Hilton comply with any of the ... rules would—like evaluating a movie by analyzing a single frame—ignore too much."

701 F.3d at 726-727.

It is also no defense for a defendant to suggest that class certification should be denied because if it is granted, the defendant will refuse to cooperate with an injunction or will force this Court to make as many "individualized" rulings as defendants can imagine, e.g., about who are "heirs." An enjoined party has a duty to carry out an injunction as if there is an "actual fiduciary relation." *Leman v. Krentler-Arnold Hinge Last Co.*, 284 U.S. 448, 456-457 (1932). Whatever the level of specificity in the injunction, there is no right for the enjoined party to take it upon itself to interpret the injunction in its favor, or to refuse to cooperate in carrying it out the injunction by requiring the court to issue more and more individualized rulings. Indeed, it is contempt to engage in such behavior.

Here, Hilton suggests that if the class is certified and Plaintiffs prevail, Hilton will force this Court to make individualized determinations on "non-participating service" without identifying what those issues are. Opp. at 15-16, 19. And Hilton also argues that even "heirs and estates" cannot be a subclass because this involves "records." *Id*. at 30-31, 32-33, 42. Hilton's counsel go so far as to describe whether "a professed heir of a deceased Plan participant is entitled to receive benefits" as "a highly individualized issue,"

19

*id.* at 31 – even though this is a determination that Hilton's Plan has made repeatedly before. Litigation postures such as this provide no basis for declining to certify a class action under Rule 23(b)(2).

If this Court were not to certify this class, or any subclass of it, under Rule 23(b)(2), the class, or subclass, can, in the alternative, be certified under Rule 23(b)(3) for the reasons given in Plaintiffs' opening memorandum. Pls. Mem. at 40-41. Hilton argues that Rule 23(b)(3)'s "predominance" and "superiority" requirements are not satisfied here by asserting that "Defendants' defenses to the denial of vesting claims will ... require examination of individual claim correspondence and employment records, management documents and agreements ... and death, estate and or/probate records." Opp. at 42. Hilton offers no examples of how individual issues would "predominate" over the common issues, or how forcing the members of each the proposed subclasses to proceed individually is in any way "superior" to the obvious advantages of allowing them to proceed together as a class.

Hilton suggests that if this Court denies class certification, Hilton will move to dismiss "at the earliest opportunity," Opp. at 34-35, not mentioning that Hilton has already filed two such motions, *see* Dkt.#14, 18, and declined an invitation to file more. On the Court's schedule, a discussion regarding discovery and consideration of ADR is to follow the decision on class certification. Dkt.#29 at 6. In addition, FRCP 23(f) provides for a petition for permission to appeal that must be filed within 14 days after an order is entered

"granting or denying class action certification."

**Conclusion**

For the foregoing reasons, Plaintiffs respectfully request that this Court grant the

second renewed motion to certify the class.

DATED: January 11, 2021

/s/ Stephen R. Bruce
Stephen R. Bruce (D.C. Bar No. 289066)
STEPHEN R. BRUCE LAW OFFICES
1667 K Street, N.W., Suite 410
Washington, D.C. 20006
(202) 289-1117
stephen.bruce@prodigy.net

Attorney for Plaintiffs and Plaintiff Class

**<u>Certificate of Service</u>**

I hereby certify that on January 11, 2021, a true and correct copy of the Plaintiffs'

Reply in Support of Second Renewed Motion for Class Certification was sent via

CM/ECF electronic filing to the following attorneys:

>Andrew M. Lacy
>Simpson Thacher & Bartlett, LLP
>900 G St. NW
>Washington, DC 20001
>
>Jonathan K. Youngwood
>Shannon K. McGovern
>Simpson Thacher & Bartlett, LLP
>425 Lexington Ave.
>New York, NY 10017
>
>Attorneys for Defendants

>>/s/ Stephen R. Bruce
>>Stephen R. Bruce