UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| VALERIE R. WHITE, *et al.*,<br><br>    Plaintiffs,<br><br>v.<br><br>HILTON HOTELS RETIREMENT PLAN, *et al.*,<br><br>    Defendants. | Civil Action No. 16-856 (CKK) |

**MEMORANDUM OPINION**
(March 22, 2022)

This putative class action comes before the Court on Plaintiff's [83] Second Renewed Motion for Class Certification. The Court has now offered Plaintiffs three opportunities to craft an appropriate class definition, yet Plaintiffs' proposed class definition remains improperly "fail-safe." This threshold defect renders certification of the proposed class impermissible. This fatal flaw bars Plaintiffs from converting this case into a class action. Accordingly, upon consideration of the briefing,[1] the relevant legal authorities, and the record as a whole, the Court shall **DENY** Plaintiffs' [83] Second Renewed Motion for Class Certification.

**I.  BACKGROUND**

The Court shall briefly summarize the factual background already addressed in the Court's prior two orders denying without prejudice Plaintiffs' motions for class certification. Plaintiffs Valerie

---

[1] The Court's consideration has focused on the following documents:
- Second Am. Class Action Compl. ("Second Am. Compl."), ECF No. 50;
- Plaintiffs' Memorandum of Law in Support of Second Renewed Motion for Class Certification ("Mot."), ECF No. 83-1;
- Defendants' Memorandum of Points and Authorities in Opposition to Plaintiffs' Second Renewed Motion for Class Certification ("Opp."), ECF No. 84; and
- Plaintiffs' Reply in Support of Second Renewed Motion for Class Certification., ("Repl."), ECF No. 85.

In an exercise of its discretion, the Court finds that holding oral argument in this action would not be of assistance in rendering a decision. *See* LCvR 7(f).

R. White, Eva Juneau, and Peter Betancourt ("Plaintiffs") bring this putative class action under the Employee Retirement Income Security Act of 1974 ("ERISA") with respect to certain vesting determinations made by the Hilton Hotels Retirement Plan (the "Plan"). This matter was noticed as related to *Kifafi v. Hilton Hotels Retirement Plan*, No. 98–cv–1517 (CKK) (D.D.C.) ("*Kifafi*"), an action over which the Court concluded its jurisdiction in December 2015, after more than 17 years of litigation. *See Kifafi*, 752 F. App'x 8, 9 (D.C. Cir. Feb. 15, 2019) (Mem.) (per curiam). In this action, Plaintiffs, who are former Hilton employees and putative beneficiaries of the Plan, seek to address grievances that did not fall within the narrow classes certified in the *Kifafi* litigation. Now, after the Court denied their first two motions for certification without prejudice, ECF Nos. 62, 80, Plaintiffs have filed their third motion for class certification, which is presently pending before the Court. Plaintiffs ground this motion in the allegations within their Second Amended Complaint. Mot. at 2.

Specifically, Plaintiffs seek to represent three separate subclasses of claimants. First, Plaintiff Valerie R. White alleges that Hilton unlawfully applied a so-called "elapsed time method" to employee service rendered before 1976, resulting in an improper calculation of her years of vesting credit under the Plan. *See* Second Am. Compl. ¶¶ 41–44. Plaintiff Eva Juneau alleges that Hilton improperly denied vesting credit to employees, like her, for service rendered at certain "non-participating" locations. *See* Second Am. Compl. ¶¶ 57–58. Additionally, Plaintiffs allege that Hilton failed to keep proper documentation for services rendered by certain employees, like Ms. Juneau, and that Hilton should have, but failed to, credit appropriate time "equivalencies" to these employees, in the absence of that proper documentation. *See* Second Am. Compl. ¶¶ 68–73. Finally, Plaintiff Peter Betancourt alleges that Hilton also improperly denied claims made by surviving beneficiaries "solely on the grounds that the claimant is 'not the surviving spouse'" of the original Plan participant. *Id.* ¶ 75. According to Plaintiffs, this is not a valid "basis for a denial of a claim to retroactive benefits." *Id.*

In their second motion for class certification, Plaintiff sought to certify a class that comprises three distinct subclasses corresponding to the Plaintiffs' distinctive claims outlined above. In full, Plaintiffs sought to certify a class of "any and all persons who:

(a) Are former or current employees of Hilton Worldwide, Inc. or Hilton Hotels Corp., or the surviving spouses or beneficiaries of former Hilton employees;

(b) Submitted a claim for vested retirement benefits from Hilton under the claim procedures ordered by the District Court and the Court of Appeals in *Kifafi, et al., v. Hilton Hotels Retirement Plan, et al.*, C.A. 98-1517; and

(c) Have vested rights to retirement benefits that have been denied by the Hilton Defendants':

(1) Use of "fractional" years of vesting service under an "elapsed time" method to count periods of employment before 1976 with no resolution of whether the fractions constitute a "year of service" under ERISA;

(2) Refusal to count "non-participating" service for vesting purposes notwithstanding that the service was with the "employer" under ERISA §3(5), that the Hilton Defendants counted service at the same "Hilton Properties" in *Kifafi* and represented to this Court and the D.C. Circuit in *Kifafi* that Hilton had counted "non-participating" service with Hilton for vesting, and that the "records requested and received from Defendants do not identify any non-participating property that is also not a Related Company"; and

(3) Denial of retroactive/back retirement benefit payments to heirs and estates on the sole basis that the claimants are "not the surviving spouse" of deceased vested participants."

Pls.' Proposed Order on Class Cert., ECF No. 74-1. Plaintiffs allege that this class comprises at least 220 distinct individuals throughout the United States. *See* Second Am. Compl. ¶ 12. On October 7, 2020, the Court rejected this definition, holding, among other things, that the term "have vested rights to retirement benefits that have been denied" is concomitant with the merits of the case.

Plaintiffs' third proposed class definition is now:

A class consisting of any and all persons who:

(a) Are former or current employees of Hilton Worldwide, Inc. or Hilton Hotels Corp., or the surviving spouses or beneficiaries of former Hilton employees,

(b) Submitted a claim for vested retirement benefits from Hilton under the claims procedures ordered by the District Court and the Court of Appeals in *Kifafi, et al. v. Hilton Hotels Retirement Plan, et al.*, C.A. 98-1517; and

(c) Have **been denied** vested rights to retirement benefits ~~that have been denied~~ by the Hilton Defendants:'

   (1) Use of 'fractional' years of vesting service under an 'elapsed time' method to count periods of employment before 1976 with no resolution of whether fractions constitute a 'year of service' under ERISA;

   (2) Refusal to count 'non-participating' service for vesting purposes notwithstanding that the service was with ~~the 'employer' under ERISA §3(5)~~ <u>a hotel property that Hilton operated under a management agreement</u>, that the Hilton Defendants counted service at the same "Hilton Properties" in *Kifafi* and represented to this Court and the D.C. Circuit in *Kifafi* that Hilton had counted "non-participating service with Hilton for vesting, and that 'records requested and received from Defendants who not identify any non-participating property that is also not a Related Company; and

   (3) Denial of retroactive/back retirement benefit payments to heirs and estates on the ~~sole~~ basis that the claimants are 'not the surviving spouse' of deceased vested participants.

*Compare White v. Hilton Hotels Ret. Plan*, 2020 WL 5946066 at *2 (D.D.C. Oct. 7, 2020) *with* ECF 83-2.  Defendants oppose Plaintiffs' revised definition.

## II.    LEGAL STANDARD

In deciding whether to certify a class, a court must consider whether the proposed class meets the requirements of Federal Rule of Civil Procedure 23.  *Kottaras v. Whole Foods Mkt., Inc.*, 281 F.R.D. 16, 20 (D.D.C. 2012). The party seeking class certification must "affirmatively demonstrate" that the requirements of Rule 23 have, in fact, been satisfied.  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).  "Certification is proper only if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied," and that "actual, not

4

presumed, conformance with Rule 23(a) remains indispensable." *Id.* at. 350–51 (cleaned up). At the certification stage, "[m]erits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013).

The Rule 23 analysis proceeds in two parts. First, the putative "class plaintiff has the burden of showing that the requirements of Rule 23(a)" are met. *Richards v. Delta Air Lines, Inc.*, 453 F.3d 525, 529 (D.C. Cir. 2006). Under Rule 23(a), a member of a class may sue on behalf of the class if "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). Next, the putative class plaintiff must also demonstrate "that the class is maintainable pursuant to one of Rule 23(b)'s subdivisions." *Richards*, 453 F.3d at 529. Here, Plaintiffs request certification under Rule 23(b)(2) or, alternatively, Rule 23(b)(3). *See* Pls.' Mot. at 31–33. Certification under Rule 23(b)(2) is proper where "final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Certification under Rule 23(b)(3) is appropriate where common questions within the proposed class predominate over non-common questions, and where class resolution is superior to other methods of adjudication. Fed. R. Civ. P. 23(b)(3); *see also Cohen v. Warner Chilcott Public Ltd. Co.*, 522 F. Supp. 2d 105, 116–17 (D.D.C. 2007).

Finally, in addition to the strictures of Rule 23, courts also consider the "implied requirement" of "definiteness" before certifying a class. *Thorpe v. District of Columbia*, 303 F.R.D. 120, 139 (D.D.C. 2014). Traditionally, the "definiteness" requirement is not excessively

stringent. *Id.* Nonetheless, it does demand that plaintiffs are "able to establish that the general outlines of the membership of the class are determinable at the outset of the litigation." *Id.* (quotation omitted). "Accordingly, a class may be certified only when 'an individual would be able to determine, simply by reading the [class] definition, whether he or she [is] a member of the proposed class.'" *Campbell v. Nat'l R.R. Passenger Corp.*, 311 F. Supp. 3d 281, 313 (D.D.C. 2018) (quoting *Artis v. Yellen*, 307 F.R.D. 13, 23 (D.D.C. 2014)).

### III.  DISCUSSION

For the reasons set forth herein, the Court concludes that Plaintiffs' proposed class remains impermissibly "fail-safe," as presently defined. This precludes certification.

As the Court explained when confronting Plaintiffs' last proposed class definition, a fail-safe class exists where the class definition "depend[s] on the merits of the underlying claim." *Id.* Put otherwise, a fail-safe class arises where the class "is defined so that whether a person qualifies as a member depends on whether the person has a valid claim." *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 825 (7th Cir. 2012). For example, the class definition: "*All Black CBA employees who have been discriminated against because of their race or color in regard to competitive promotion selections*," is impermissibly "fail-safe" because it "makes membership in the class contingent on individualized merits determinations as to whether the individual suffered discrimination because of his race." *Campbell*, 311 F. Supp. 3d at 314. "Such a class definition is improper because a class member either wins or, by virtue of losing, is defined out of the class and is therefore not bound by the judgment." *Messner*, 669 F.3d at 825. "Moreover, by using a future decision on the merits to specify the scope of the class, a fail-safe class definition makes it impossible to determine who [is] in the class until the case ends." *Campbell*, 311 F. Supp. 3d at 314 (cleaned up).

In its last Memorandum Opinion on the subject, the Court agreed that the term "*have vested rights to retirement benefits that have been denied*[,]" ECF No. 74-1, at ¶ 2(c), was a "fail-safe" provision. *White*, 5946066 at *5. On its face, this class requirement may have appeared objective, but, in fact, the question of whose rights have vested is central to the merits of this action. Consider Ms. Valerie White, for example, who possesses "a total of 9.52957 years of vesting service," leaving her a fraction short of the ten years of credit needed for her rights to vest. Second Am. Compl. ¶ 44. Therefore, Ms. White will "have vested rights" and become a member of the proposed class, only if the Court agrees with her merits assertion that fractional years of service must be "rounded up." *See* Second. Am. Compl. ¶ 44. But of course, this is the very question at the heart of Plaintiffs' claim in Count I of the Second Amended Complaint. *See id.* ¶¶ 40–51.

Plaintiffs have proposed to remedy this issue by changing "have vested rights to benefits that have been denied" to "[h]ave been denied vested rights to retirement benefits." The problem remains the same. In order to determine who qualifies as a member of the class, the Court must first make legal determinations on the propriety of the alleged actions as to each of the three sub-classes. As explained, "[s]uch a class definition is improper because a class member either wins or, by virtue of losing, is defined out of the class and is therefore not bound by the judgment." *Messner*, 669 F.3d at 825. Nevertheless, as the Court shall definitively settle class certification in this Memorandum Opinion and the accompanying Order, it shall restate its broader discussion of the state of the law on "fail-safe" class definitions.

As the Court has previously explained, the rule against such classes is not entirely settled. In this jurisdiction, at least one district court has adopted the rule and denied certification thereunder, *see Campbell*, 311 F. Supp. 3d at 313–15, while two other district courts have considered the rule against fail-safe classes, without concluding that it is definitively established

7

as a criteria for class certification, *see Ramirez v. United States Immigration & Customs Enf't*, 338 F. Supp. 3d 1, 49 (D.D.C. 2018); *Afghan & Iraqi Allies Under Serious Threat Because of Their Faithful Serv. to the United States v. Pompeo*, 334 F.R.D. 449, 464 (D.D.C. 2020).  The D.C. Circuit has not opined directly on this matter.  Yet, the absence of a clear directive from the D.C. Circuit does not negate the rule against fail-safe classes, but rather leaves open the question of the rule's applicability.

And here, the Court finds multiple factors weighing strongly in favor of an operative rule against fail-safe classes.  First, of the nine circuits to consider the matter, eight circuits have either adopted a categorical rule against fail-safe classes[2] or discussed such a rule with approval.[3]  Only the Fifth Circuit has rejected the applicability of the rule against fail-safe classes.  *See In re Rodriguez*, 695 F.3d 360, 370 (5th Cir. 2012).  This Fifth Circuit precedent, however, stands as an outlier amongst the circuits and is post-dated by more recent circuit precedent adopting the rule against fail-safe classes.  Moreover, numerous district courts throughout the country have applied

---

[2] *See, e.g.*, *Orduno v. Pietrzak*, 932 F.3d 710, 716 (8th Cir. 2019) ("That sort of class is prohibited because it would allow putative class members to seek a remedy but not be bound by an adverse judgment . . . "); *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 660 (7th Cir. 2015) ("[C]lasses that are defined in terms of success on the merits—so-called 'fail-safe classes'—also are not properly defined."); *In re Nexium Antitrust Litig.*, 777 F.3d 9, 22 (1st Cir. 2015) ("[E]xcluding all uninjured class members at the certification stage is almost impossible in many cases, given the inappropriateness of certifying what is known as a 'fail-safe class'—a class defined in terms of the legal injury."); *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 538 (6th Cir. 2012) ("[A] class definition is impermissible where it is a 'fail-safe' class, that is, a class that cannot be defined until the case is resolved on its merits.").

[3] *See, e.g.*, *Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1276–77 (11th Cir. 2019) ("We do not hold today that a court is required to ensure that the class definition does not include any individuals who do not have standing before certifying a class. Such a rule would run the risk of promoting so-called 'fail-safe' classes, whose membership can only be determined after the entire case has been litigated and the court can determine who actually suffered an injury."); *Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1138 n.7 (9th Cir. 2016) ("[D]efining the class to include only those individuals who were 'injured' by non-disclosure threatens to create a 'fail safe' class."); *Byrd v. Aaron's Inc.*, 784 F.3d 154, 167 (3d Cir. 2015) ("[R]equiring such specificity may be unworkable in some cases and approaches requiring a fail-safe class."); *EQT Prod. Co. v. Adair*, 764 F.3d 347, 360 n.9 (4th Cir. 2014) ("Although the issue was briefed and argued below, the district court did not address whether it is possible to define the classes without creating a fail-safe class . . . . On remand, the district court should consider this issue as part of its class-definition analysis.").

the rule against fail-safe classes in denying class certification.[4]  And even where debate exists regarding the contours of a broader "ascertainability" requirement for class certification, the narrow rule against fail-safe classes has persisted.  *See Mullins*, 795 F.3d at 660 (rejecting an expanded "ascertainability" requirement while applying the rule against "fail-safe" classes as "well-settled").

Furthermore, beyond the weight of this precedent, the gravamen of the rule itself is rooted in compelling principles of fairness and common-sense.  As a practical matter, putative members of a fail-safe class are not identifiable after class certification, because the definition of a class member turns on the final result of the litigation itself.  This creates tangible administrative problems for the courts, including difficulty in providing proper notice to class members.  *See Orduno*, 932 F.3d at 716–17.  Fail-safe classes are also inherently unfair to the defendant, who "is forced to defend against the class, but if a plaintiff loses, she drops out and can subject the defendant to another round of litigation."  *Mullins*, 795 F.3d at 660.  In this way, fail-safe classes also contravene the notions of efficiency critical to Rule 23 and the class action mechanism.  A merits ruling against a fail-safe class does not resolve a class-wide dispute, but instead hollows out the fail-safe class at issue, leaving further litigation for a later date.

---

[4] *See, e.g.*, *Day v. Humana Ins. Co.*, 335 F.R.D. 181, 200 (N.D. Ill. 2020) (denying certification of an ERISA class where "the class Plaintiff [ ] attempted to define [wa]s 'fail-safe'—that is, defined so that whether a person qualifies as a member depends on whether the person has a valid claim") (quotation omitted); *Bais Yaakov of Spring Valley v. ACT, INC.*, 328 F.R.D. 6, 14 (D. Mass. 2018) (denying class certification where "the class fit[ ] squarely within the definition of a 'fail-safe class' because class membership [wa]s defined by whether or not members have a valid claim"); *Quevedo v. Macy's, Inc.*, No. CV091522GAFMANX, 2011 WL 13124445, at *5 (C.D. Cal. Mar. 9, 2011) ("For the independent reason that Plaintiff's proposed sub-classes constitute such impermissible 'fail-safe' classes against which no adverse judgment could be entered, the Court denies certification.").

In view of the foregoing, the Court will apply the rule against fail-safe classes in this case. Indeed, it would be improvident to certify a fail-safe class like Plaintiffs' where the D.C. Circuit has not approved of such classes and where numerous circuit courts, and at least one district court in this jurisdiction, have applied a common-sense rule against them. Having offered Plaintiffs three opportunities to remedy this problem, each to no avail, the Court shall deny class certification.[5]

## IV.   CONCLUSION

For the reasons set forth in this Memorandum Opinion, the Court **DENIES** Plaintiffs' [83] Second Renewed Motion for Class Certification.

An appropriate order accompanies this Memorandum Opinion.

**Date**: March 22, 2022

                                               /s/
                                       **COLLEEN KOLLAR-KOTELLY**
                                       United States District Judge

---

[5] Although the problems with the second and third proposed subclasses as explained in the Court's [82] Memorandum Opinion remain, *id.* at 10-16, the Court need not reach them here, having concluded that the broader class definition is an impermissible "fail-safe."