# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| VALERIE R. WHITE, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 16-CV-856 (CKK) |
| | ) | |
| HILTON HOTELS RETIREMENT PLAN, | ) | |
| *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFFS' REPLY TO DEFENDANTS' SUPPLEMENTAL MEMORANDUM**

Stephen R. Bruce
1667 K St., NW, Suite 410
Washington, D.C. 20006
(202) 289-1117
stephen.bruce@prodigy.net

Attorney for Plaintiffs

# TABLE OF CONTENTS

Introduction. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I.      The Non-Participating Service Subclass Presents Common Questions that Are
        Susceptible to Common Answers. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

II.     The Group where the Defendants Maintains the Plan Has No Records of
        Hours/Earnings in a Non-Participating Period May Be Certified as a Subset of the
        Non-Participating Service Subclass or an Additional Subclass. . . . . . . . . . . . . . . . . . . . 7

III.    Peter Betancourt's Claim to Back Benefits Is Typical of the Heirs/Estates Subclass. . . . . 9

IV.     The "Fail-Safe" Concerns with the Proposed Class Definition Have Been Addressed
        in Accordance with the Remand. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Conclusion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

# TABLE OF AUTHORITIES

## CASES

*In re APA Assessment Fee Litigation*, 311 F.R.D. 8 (D.D.C. 2015)................................. 4

*Afghan & Iraqi Allies v. Pompeo*, 334 F.R.D. 449 (D.D.C. 2020). ................................ 13

*Bolden v. Walsh Construction Co.*, 688 F.3d 893 (7th Cir. 2012)................................... 12

*Brennan v. Arnheim & Neely, Inc.*, 410 U.S. 512 (1972).. ............................................. 4

*C.G.B. v. Wolf*, 464 F.Supp.3d 174 (D.D.C. 2020)............................................................ 5

*Damus v. Nielsen*, 313 F. Supp. 3d 317 (D.D.C. 2018). .................................................. 5

*Faciane v. Sun Life Assur. Co.*, 931 F.3d 412 (5th Cir. 2019)........................................ 11

*Falk v. Brennan*, 414 U.S. 190 (1973). ........................................................................... 4

*Harris v. Medical Transport Mgmt., Inc.*, 77 F.4th 746 (D.C. Cir. 2023). ..................... 2, 4

*Hoggard v. Nationstar Mortg. LLC*, 2021 WL. 7162301, 2021 U.S. Dist.
    LEXIS 254141 (D.D.C. Dec. 30, 2021*)*. ............................................................... 8-9

*Intel Corp. Investment Policy Comm. v. Sulyma*, 140 S.Ct. 768 (2020). ........................ 11

*Kifafi v. Hilton Hotels Ret. Plan*, 701 F.3d 718 (D.C. Cir. 2012)............................... 8, 10

*Kifafi v. Hilton Hotels Ret. Plan*, 616 F. Supp. 2d 7 (D.D.C. 2009).............................. 5,7

*Kifafi v. Hilton Hotels Ret. Plan,* 736 F. Supp. 2d 64 (D.D.C. 2010)............................... 5

*In re Louisville-Jefferson Cnty.*, 2022 U.S. App. LEXIS 12150 (6th Cir.
    May 4, 2022). ........................................................................................................ 13

*Mansor v. United States Citizenship & Immigr. Services*, 345 F.R.D. 193
    (W.D. Wash. 2023). ............................................................................................... 15

*Meijer, Inc. v. Warner Chilcott Holdings Co.*, 246 F.R.D. 293 (D.D.C. 2007)................ 9

*Ramirez v. United States Immigration & Customs Enf't*,
    338 F.Supp.3d 1 (D.D.C. 2018) ............................................................................ 13

*In re White*, 64 F.4th 302 (D.C. Cir. 2023). ....................................................... 1, 10, 12-13

*Witt v. Metropolitan Life Ins. Co.*, 772 F.3d 1269 (11th Cir. 2014) . ............................... 11

*Young v. Nationwide Mutual Insurance Co.*, 693 F.3d 532 (6th Cir. 2012).................... 12

## STATUTES AND RULES

ERISA § 3(5), 29 U.S.C. 1002(5). ....................................................................... 3

ERISA § 203(b)(1), 29 U.S.C. 1053(b)(1)........................................................... 3

Fed. R. Civ. P. 23................................................................................... *passim*

**Introduction**

The D.C. Circuit's April 2023 opinion focused on whether there is a "free-standing bar" to class certification based on a "fail-safe" class definition, and how to cure such a class definition if there is not. The opinion also recognizes that "commonality issues with one subclass [the non-participating service subclass] and typicality issues with another [the heirs and estates subclass]" "continued to trouble" this Court. 64 F.4th at 306. Plaintiffs' supplemental memorandum addresses the subclass issues, as well as the class definition.

Defendants' 33-page supplemental memorandum reflects Defendants' efforts to reargue issues that were neither part of this Court's March 2022 decision nor the Plaintiffs' appeal to the D.C. Circuit. Defendants even repeat in two places discussions of numerosity, commonality, typicality, and adequate representation issues, and pay considerable attention to Rule 23(b)(3), when this Court did not even mention Rule 23(b) as an "impediment" to certification.[1]

Law of the case and following the circuit mandate requires that Defendants adhere to the scope of the remand "for further proceedings consistent with this opinion." This Court's October 2020 description of the "additional impediments" to class certification, Dkt. 81 at 1, 10, was not to establish a platform on which Defendants could build additional arguments.

Even with respect to Defendants' discussion of the "additional impediments" to class certification, the supplemental memorandum appears to misread what this Court meant when in the concluding footnote to the March 2022 decision it said problems "remain" that this Court

---

[1] A footnote to the Defendants' section of the Joint Status Report presaged that Defendants would argue that "none of the proposed class claims satisfy commonality, [all of the] named plaintiffs' claims are atypical, all of the named plaintiffs are not adequate representatives, and Plaintiffs fail to satisfy Rule 23(b)." Dkt. 97 at 4 n.2.

"need not reach" because it had "concluded that the broader class definition is an impermissible 'fail-safe.'" Dkt. 88 at 10 n.5. Plaintiffs understood this footnote to mean that this Court had not "reach[ed]" Plaintiffs' or Defendants' arguments on those issues, including the additional evidence that Plaintiffs presented in November 2020. *See* Dkt. 83-3 to 83-14. Defendants, by contrast, appear to read this footnote to mean that this Court has "already reasoned through" Plaintiffs' arguments and additional evidence and "reached a conclusion opposite" to Plaintiffs. *See* Opp. at 16; *id.* at 14, 23.

As a result of that misreading, or because they lack persuasive responses, Defendants largely bypass the arguments and additional evidence that Plaintiffs provided in November 2020 and restated in their supplemental memorandum. Defendants even skip over the D.C. Circuit's decision on commonality in *Harris v. Medical Transport Mgmt.*, 77 F.4th 746, 759 (D.C. Cir. 2023), in order to reaffirm the decision that this Court made in October 2020. Opp. at 16. Defendants' supplemental memorandum then keeps revisiting the October 2020 decision for rulings such as that an "individualized assessment of the various non-participating properties, including their operative management agreements, is needed." *Id*. Defendants ignore, as if it was pro forma, that the October 2020 decision on which it is relying prominently said it was **"WITHOUT PREJUDICE"** to refiling. *See* Dkt. 81, at 1, 10, 16.

The present filing by Plaintiffs is a reply and, as stated, Defendants have largely not responded to Plaintiffs' November 2020 renewed motion or their February 2024 supplemental memorandum so Plaintiffs shouldn't need to repeat their points. Defendants had the opportunity to respond to Plaintiffs' arguments and additional evidence but chose not to, e.g., where the certified 2023 10-K stated that "for hotels we manage ... the employees are legally employed by

us." Dkt. 99-1 at 46.

**I.     The Non-Participating Service Subclass Presents Common Questions that Are Susceptible to Common Answers.**

The D.C. Circuit's remand calls for proceedings by this Court to determine whether it still has difficulty with the commonality of the non-participating service subclass, or whether Plaintiffs have addressed those concerns. The legal foundation for the claims of the nonparticipating service subclass are found in ERISA § 203(b)(1), 29 U.S.C. 1053(b)(1) and ERISA § 3(5), 29 U.S.C. 1002(5). ERISA § 203(b)(1) provides that "all of an employee's years of service with the employer or employers maintaining the plan shall be taken into account" for vesting, with specified exceptions. ERISA § 3(5) defines "employer" to encompass persons "acting indirectly in the interest of an employer, in relation to an employee benefit plan."

Defendants' supplemental memorandum practically concedes that Hilton is not complying with these rules, but is only counting vesting service with "Participating Employers" during the time when those Participating Employers were participating in the Plan (with participation for all Employers being frozen at the end of 1996) and only counting service with "Related Companies" during the time when they were related in a "control group" sense. Opp. at 13-14. This does not comply with ERISA § 203(b)(1), but goes back to the restrictive practices on counting vesting service the Hilton followed prior to the *Kifafi* litigation.

The additional evidence Plaintiffs offered to this Court in November 2020 was five of Hilton's managed property agreements and the 2018 10-K for Hilton Worldwide. *See* Dkt. 83-6 (Pienta Decl.) ¶ 12-13 and Dkt. 83-18 and 83-19. Plaintiffs' supplemental memorandum also offers Hilton's 2023 10-K. *See* Dkt. 99-1. This evidence indicates that Hilton acts indirectly as the employer for the managed properties by its power to "hire, promote, discharge, and

supervise" employees, Dkt. 83-18 at 3-4, 7-8, 10-12, 14, and 16-18, and that Hilton recognizes

that "for hotels that we manage ... the employees are legally employed by us." Dkt. 99-1 at 46.

Instead of responding directly, Defendants argue that non-participating vesting service

can only be counted through "individualized" assessments and not based on the answers to

common questions. Opp. at 13-14, 16, 18. In asserting this, Defendants fail to account for the

common issues shown in the managed property agreements and in the 2018 and 2023 10-Ks

about the "employees" who work for Hilton under managed property agreements and Hilton's

certified statements that it is the legal "employer" of 178,000 individuals without making the

individual-by-individual assessments that Defendants' supplemental memorandum professes to

be required.

The additional case law that Plaintiffs offered is on the joint employer cases and on

adding subclasses. The joint employer cases show that the power to exercise "substantial control

of the terms and conditions of the work of these employees" makes a "management" company

the "employer," or at least a "joint employer." *Falk v. Brennan,* 414 U.S. 190, 195 (1973).

Defendants cite *Brennan v. Arnheim & Neely, Inc.*, 410 U.S. 512, 513-14 (1972), while omitting

*Falk*, which is the case on which Plaintiffs relied. The recent decision in *Harris v. Medical*

*Transport Mgmt., Inc.*, 77 F.4th 746, 759 (D.C. Cir. 2023) (opinion by Millett, J.) further shows

that classes can be certified in joint employer cases based on common questions of law or fact.

The additional case law on commonality that Defendants' supplemental memorandum

cites is consistent with Plaintiffs' position. In *In re APA Assessment Fee Litig.*, 311 F.R.D. 8, 15

(D.D.C. 2015) (Bates, J.),  commonality was found where the "central question for each of

plaintiffs' claims is whether the APA's dues statements (and other communications)  omitted or

misrepresented material facts about the Practice Assessment. Because all class members received

the same statements, the answer to this question will be common to the class." There are similar issues here because Defendants used form letters to deny the claims of the members of the non-participating subclass.

*C.G.B. v. Wolf*, 464 F.Supp.3d 174, 202 (D.D.C. 2020) (Cooper, J.), which is cited at Opp. at 11-13, is a case where no commonality was shown, but in circumstances plainly different than here, to wit:

> Plaintiffs struggle to crystallize precisely what discrete actions or policies of ICE constitute its purported failure to protect transgender detainees. They vaguely allege that the failure is ICE's "lack of any policies or practices sufficient to protect transgender persons in detention." ... But that allegation hardly identifies "a uniform policy or practice that affects all class members."

Obviously, Plaintiffs' non-participating service claims do not rest on a "vague" allegation about the "lack of any policies," but are based on specific allegations about counting vesting service under ERISA. *C.G.B.* draws, moreover, a sharp contrast with *Damus v. Nielsen*, 313 F. Supp. 3d 317, 332-33 (D.D.C. 2018), in which Judge Boasberg certified a class "of asylum applicants who had been denied parole based on the common contention that ICE offices were engaged in a "system of de facto parole denial" in contravention of ICE's own Parole Directive."

Here, the leading decisions in this jurisdiction related to the obligation in ERISA § 203(b)(1) to count "all of an employee's years of service with the employer or employers maintaining the plan" for vesting are from the *Kifafi* litigation. In *Kifafi*, this Court's decision at 616 F.Supp.2d 7, 19 (D.D.C. 2009), found that Hilton's Vera Stoicof had written that "no one kept track of the non-participating properties' employees (hours/earnings) to give them vesting." In a second decision at 736 F.Supp.2d 64, 76 (D.D.C. 2010), this Court discussed how it would use the "equivalencies" in Department of Labor regulations to make up for Hilton's failure to keep those records of "hours/earnings."

Based on the implementation of the remedies in the *Kifafi* litigation, all or almost all of the non-participating properties where service should be counted for vesting have been identified. Dkt. 50 ¶ 65. While this Court never certified a non-participating service subclass, Hilton represented in the *Kifafi* litigation that it would count non-participating service for vesting and, with the guidance of consultants, hundreds of former Hilton employees became vested in that way. But in denying the claims in *White*, Hilton has gone back to defending its prior practices of not counting non-participating service for vesting, and has even memorialized those practices in its form denial letters. *See, e.g.,* Dkt. 84-7 at page 3 of 4 ("Vesting credit is not available for your employment at a non-participating property"); Dkt. 84-9 at page 3 of 4 (identical).

Defendants' supplemental memorandum offers an impressive array of cognate terms about "individual" or "individualized assessments," assessments made "on an individual basis," "individual discretionary [] decisions," and "fact-intensive claims," to act as though the denials of vesting to the members of the nonparticipating service were not based on any common practices related to "employment at a non-participating property." But there is nothing in the form denial letters to actually support this, and no examples are offered. Essentially, Hilton is saying that while there could possibly be some non-participating service that Hilton should have counted for vesting, none of it can be counted without individualized assessments to "determine ... whether Defendants' determination that such property was non-participating for the relevant time period was, in fact, contrary to the Plan." Opp. at 17 (citing Dkt. 84); *see also id.* at 15-16 (asserting that "time period" of a Participating Employer's participation also would need to be determined). Plaintiffs have not challenged Defendants' records of the relevant "time periods" of participation or not participating. Plaintiffs are challenging Defendants' common practice of refusing to count "all" of the employees' "years of service with the employer or employers

6

maintaining the plan" for vesting. Defendant's arguments fail to take into account the common

issues shown by the evidence, namely, their own denial letters, the managed property

agreements, and the statements in the certified 10-K Annual Reports.

II.    **The Subgroup where the Defendants Maintains the Plan Has No Records of Hours/Earnings in a Non-Participating Period May Be Certified as a Subset of the Non-Participating Service Subclass or as an Additional Subclass**.

 While this Court's October 2020 decision was ultimately "**WITHOUT PREJUDICE**,"

this Court also took  issue with whether the non-participating service where Hilton said it had no

records of hours/earnings could be part of the same subclass with where Hilton said the service

was at a non-participating property without mentioning the absence of records of hours/earnings.

Dkt. 81 at 13. These are common claims because they stem from what this Court found in *Kifafi*

in 2009: "no one kept track of the non-participating properties' employees (hours/earnings) to

give them vesting." 616 F.Supp.2d at 19. As that quote so vividly demonstrates, the issue of

"non-participating" service and no records of "hours/earnings" are inextricably linked because

"no one kept track of the non-participating properties' employees," i.e., their "hours/earnings ...

to give them vesting."

 There is one slight distinction between a non-participating property and and non-

participating service. Some of the 29 individuals without hours or earnings in some period or

periods are individuals who worked at a property like the Flamingo Hilton in Reno which

participated in the Plan at some time, but not during the time period corresponding with where

there are no "hours/earnings" for the employee (or where there was only a "placeholder" like 500

hours). *See, e.g.,* Dkt. 83-8 (Eva Juneau record for 1997). While it is satisfactory not to count

these periods as "years of participation" for benefit accruals, this is unsatisfactory for

determining years of service for vesting under ERISA § 203(b)(1). This subgroup where the

Defendants maintain that Plan has no records of hours/earnings in a non-participating period may be certified as a subset of the non-participating service subclass or as an additional subclass.

For its part, Hilton seems to be taking the side of including this group as a subset of the non-participating service subclass. Hilton complains that if there were two non-participating service subclasses, it would have to distinguish "those whose claims were denied benefits because service at non-participating properties was not counted for vesting purposes, and those who were denied benefits because a[n] equivalency was not applied to certain non-participating services." Opp. 17 ("[s]plitting the subclass would be futile, as some of the proposed subclass members were denied for *multiple* reasons").

Plaintiffs submit that the non-participating subclass can be certified either with a separate subclass for the 29 participants or as one non-participating service subclass including these participants. This Circuit's precedents are in favor of using subclasses if appropriate, as is Rule 23(c)(5). Defendants' supplemental memorandum fails to recognize the authority in Rule 23(c)(5) to divide a class into subclasses when appropriate, and it leaves out this Circuit's decisions in *Fink v. National Sav. & Trust* and the second *D.L. v. District of Columbia* appeal which affirmed the certification of four subclasses. Defendants also omit that the D.C. Circuit recognized in *Kifafi*, 701 F.3d at 732, that this Court had not just adopted Plaintiff's proposed subclass definitions, but exercised its discretion to craft "reasonable" ones.

Judge Kelly's footnote in *Hoggard v. Nationstar Mortg. LLC*, 2021 WL 7162301, at *15 n.11, 2021 U.S. Dist. LEXIS 254141,*43 n.11 (D.D.C. Dec. 30, 2021*), which Defendants cite at 32, does not change the D.C. Circuit's decisions on subclasses in *Fink*, the *D.L.* decisions, or *Kifafi*. In *Hoggard*, the district court determined that the lead Plaintiffs lacked "standing" to lead the classes that they had proposed. Nevertheless, "Plaintiffs suggest[ed] that, if the Court finds

their proposed classes or class definitions deficient, it should redefine the classes itself to make them viable." *Hoggard* ruled that "[e]ven if a viable subclass could be formed in this case—an unlikely proposition given the Court's predominance analysis—the Court declines to form one on its own motion." That footnote is not precedential and it is not like here.

### III.  Peter Betancourt's Claim to Back Benefits Is Typical of the Heirs/Estates Subclass.

The D.C. Circuit's remand also includes for this Court to decide whether it continues to have difficulty with Peter Betancourt's "typicality" for the heirs and estates subclass, or whether that concern has been addressed. This Court's October 2020 decision was concerned with whether Peter Betancourt's claim was atypically "untimely" and "relatedly" because Peter Betancourt's father died "after the age of 70.5 without commencing his retirement benefits." Dkt. 81 at 16. In *Meijer, Inc. v. Warner Chilcott Holdings Co.*, 246 F.R.D. at 302, this Court explained that the test for typicality is not whether there is any affirmative defense, but whether the lead plaintiff would be "preoccupied" with an affirmative defense unique to him or her. There is no indication that Mr. Betancourt is preoccupied with Hilton's affirmative limitations defense or any related age 70.5 defense. But, albeit **WITHOUT PREJUDICE,** this Court's October 2020 decision suggested that Hilton's affirmative defenses against Peter Betancourt's claims were "fundamental components of [his] claim placing him outside the definition of the very subclass he purports to represent." Dkt. 81 at 16.

The additional evidence that Plaintiffs offered in November 2020 was that Hilton had revised the classification of Peter Betancourt's father from not vested to vested in 2015 (three decades after he passed away at age 71 in 1985, and 17 years after Peter's mother passed away in 1998) and that Peter Betancourt was not the only claimant for whom Hilton added untimeliness as an additional ground in its claim denial letters. Dkt. 83-6 at ¶ 14, Dkt. 83-4 page 2 of 2, and

Dkt. 83-20. What do Defendants say about this additional evidence? They don't address it.

As the D.C. Circuit recognized, the Hilton Defendants changed their position on whether Defendants "owed Pedro Betancourt retirement benefits when it was forced to review its records as part of a separate class action lawsuit," namely, the *Kifafi* litigation. 64 F.4th at 304. Plaintiffs' additional evidence dated that change in position to 2015, Dkt. 83-4, page 2 of 2. The changed position on whether Defendants "owed Pedro Betancourt retirement benefits" renewed any statute of limitations, including based on clear repudiation. And since Pedro Betancourt and his spouse died long before 2015, any repudiation subsequent to that date not only had to be "clear" but to be "made known" to their beneficiary, Peter Betancourt, which no one contends occurred.

Plaintiffs' November 2020 memorandum also explained that the point about Pedro Betancourt dying after "age 70.5" without commencing his retirement benefits was misplaced, in large part, because Hilton did not recognize its obligation until 30 years later. Dkt. 83-1 at 36 n.12. Defendants' supplemental memorandum now drops any argument about "age 70.5" and switches to different "additional ... grounds for Betancourt's denial." Opp. at 22-23. There is thus no reason for Peter Betancourt to be "preoccupied" with an "age 70.5" defense. [2]

Despite Defendants not having recognized Pedro Betancourt's vested status until 30 years after his death and despite the *Kifafi* decision on "clear repudiation," 701 F.3d at 729, Defendants continue to argue that clear repudiation is relevant here. Opp. at 23-24. Defendants argue that Peter's father should have known Hilton was repudiating his right to benefits "due to his failure to receive benefits upon terminating his employer at age 65." *Id*. Defendants quote *Witt v.*

---

[2] Defendants switch to saying that Peter Betancourt is "atypical" not just because of untimeliness, but because his father died with a surviving spouse and because his mother somehow failed to exhaust. *Id*. These affirmative defenses appear to be waived, and Mr. Betancourt, in any event, is not "preoccupied" with them.

*Metropolitan Life Ins. Co.*, 772 F.3d 1269, 1276 (11th Cir. 2014), but *Witt* was concerned with

the repudiation that an insurer's "*conduct ... demonstrated*" by ceasing to provide monthly

benefits to an annuitant as of a certain date, i.e., "[i]t is undisputed that MetLife ceased providing

benefit payments to Witt after April 30, 1997 and for over 12 years thereafter. Even assuming

that Witt did not receive MetLife's termination letter sent on May 22, 1997, MetLife's *conduct ...*

*demonstrated* a clear and continuing repudiation of Witt's rights by failing to provide him any

monthly benefits after April 30, 1997." *Id.* at 1277-78 (emph. added).

Defendants also argue that what the Supreme Court said in 2020 about "actual

knowledge" of a claim in *Intel Corp. Investment Policy Comm. v.* "*Sulyma* is not relevant here."

Opp. at 23. But *Sulyma* is relevant because, even if it is dicta, it shows that whether a repudiation

has been "made known" to a beneficiary has to "be more than 'potential, possible, virtual,

conceivable, theoretical, hypothetical, or nominal." 140 S.Ct. at 775-76. Thus, even if *Sulyma* is

dicta, Supreme Court dicta is important. Mr. Betancourt doesn't need more authority because of

the clarity of the precedents that a repudiation must be "clear and made known" to the

beneficiary, including in *Kifafi* and *Faciane v. Sun Life Assur. Co.*, 931 F.3d at 418, which

expressly relied on *Kifafi*, but *Sulyma* further shows that a repudiation cannot be "made known"

based on theories of "conceivable" or "potential" notice.

## IV.    The "Fail-Safe" Concerns with the Proposed Class Definition Have Been Addressed in Accordance with the Remand.

The primary concern this Court had in March 2022 with Plaintiffs' class certification

motion was with the class definition. Plaintiffs had already changed the possessory part of the

proposed definition that had described class members as "hav[ing] vested rights that have been

denied" and Plaintiffs also eliminated the reference to the "'employer' under ERISA § 3(5)." But

this Court ruled that the definition remained "impermissibly" fail-safe. Dkt. 88 at 4, 6-10.

The D.C. Circuit agrees with this Court that words or phrases like "hav[ing] vested rights" should generally be eliminated from a class definition, and has given other examples, like "unlawfully" as in "unlawfully denied" and "defrauded" as in "whom Company X defrauded" and even "their contractual bonus" as in "who were denied their contractual bonus" because that phrase can be read to assume the conclusion that the individuals have a right to a "contractual bonus." 64 F.4th at 303, 314. But the D.C. Circuit has also said that such "fail-safe" words or phrases are generally "curable" by editing out the words or phrases from the class definition or describing the practice in objective terms and "rephrasing" the legal conclusion "as a counterfactual" or conditional statement. *Id.* at 314-15.

The D.C. Circuit's directions on curing class definitions are in line with the directions given in other circuits, including cases that Defendants cite in their supplemental memorandum. In *Bolden v. Walsh Constr. Co.*, 688 F.3d 893, 895 (7th Cir. 2012), cited in Defendants' memorandum at 31, the Seventh Circuit found a "fail-safe" issue when an overtime class "defined its members as persons who did not earn more "because of their race." *Bolden* holds that using "because of their race" to "specify the scope of the class makes it impossible to determine who is in the class until the case ends, and it creates the prospect that, if the employer should prevail on the merits, this would deprive the judgment of preclusive effect: any other former worker could file a new suit, given that the losing "class" lacked any members." Here, Plaintiffs have already eliminated any "fail-safe" phrases like this.

In *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 538 (6th Cir. 2012), which Defendants' memorandum cites at 29, the proposed class definition "include[d] persons "who were charged local government taxes on their payment of premiums which were either not owed,

or were at rates higher than permitted." Defendants asserted that "the determination of whether premium taxes were charged that were not owed or were at rates higher than permitted . . . impermissibly determines a required element of each claim against them." But *Young* explained that a "fail-safe" class is one that includes *only* those who are entitled to relief," and that this proposed class "will include both those entitled to relief and those not." Other examples of class definitions that were challenged but determined not to be fail-safe include *In re Louisville-Jefferson Cnty.*, 2022 U.S. App. LEXIS 12150, *11-12 (6th Cir. May 4, 2022) ("[t]he district court did not certify a fail-safe class. To the contrary, it deleted text from Plaintiffs' proposed class definition presuming the illegality of Defendant's actions").

Within this District, Judge Contreras in *Ramirez v. United States Immigration & Customs Enf't*, 338 F.Supp.3d 1, 49 (D.D.C. 2018), has ruled that while a proposed definition referred to children as to whom "ICE did not consider placement in the least restrictive setting available," it also "identified clear and objective criteria on which to show membership in the proposed class" and therefore met any "ascertainability" requirement for certification. In *Afghan & Iraqi Allies v. Pompeo*, 334 F.R.D. 449, 464 (D.D.C. 2020), Judge Chutkan similarly rejected a defense argument that class members "stand to benefit from success, but will not be bound by a loss" when the class was defined so that if the court were find to relief was "not warranted, res judicata would apply to the class members."

Here, Plaintiffs have "rephras[ed] the vested rights in "counterfactual" terms as the D.C. Circuit instructed, 64 F.4th at 314, and have objectively defined what Defendants now describe as "the various practices in question" related to "fractional" years of service, "non-participating" service, and the refusal to pay back benefits to anyone besides a deceased participant's spouse.

Defendants offer only two sentences about Plaintiffs' proposal to define "'who would

13

have vested rights to retirement benefits if the Hilton Defendants did not use' the various practices in question." Opp. at 28. As Defendants implicitly recognize, the class definition as revised describes "the various practices in question" in objective terms using the counterfactual phrasing the D.C. Circuit described. This is essentially all Defendants have to say about the wording of the revised class definition.

But despite describing "the various practices in question" in objective terms, Defendants still maintain that "[i]f the Court ultimately agrees with Defendants that class members' rights should *not* be vested, the class would end up empty." Opp. 28. Defendants also describe how the class members "would fall out of the class" or "each subclass could consist of *zero* members." *Id*. at 29. The simple response to all this imagery is that the D.C. Circuit did not think everyone "would fall out of the class" under either of the approaches to curing the class definition that its opinion prescribes. If the Hilton Defendants were to prevail before this Court, the class members would not "fall out of the class," but still would still identifiable as the individuals who would have had vested rights if Plaintiffs had prevailed on "the various practices in question." To illustrate, if this Court were to decide that the "fractional year" subclass that Valerie White leads should have the "fractional" years left "as is" with no application of equivalencies, the persons who would have vested rights if the decision had gone the other way would still be identifiable based on the "practice in question," and would still be bound by this Court's resolution of that issue. No one is seriously contending that they would be able to refile in the District or anywhere else on the common issues that this Court resolved.

Rule 23(c)(3) provides additional insurance that "[w]hether or not favorable to the class," the judgment will be binding by providing that "the judgment in a class action must ... include and describe those whom the court finds to be class members." *Accord, Mansor v. United States*

*Citizenship & Immigr. Servs.*, 345 F.R.D. 193, 208 (W.D. Wash. 2023) (if the court "issue[s] a judgment against Plaintiffs and conclude[s] that the TPS statute and regulations do not entitle prima facie eligible TPS applicants ... such a judgment would bind all class members"). If Defendants were to prevail here, this Court certainly will adhere to Rule 23(c)(3) by drafting the judgment consistent with the class definition to ensure that it "include[s] and describe[s] those whom the court finds to be class members."

Without regard to the D.C. Circuit's mandate, Defendants nevertheless contend in a footnote that "this Court is not obligated to fix Plaintiffs' definition for them," Opp. at 32 n.9, and that Defendants also have no duty "to help" with the class definition. *Id*. But when the United States Court of Appeals directs this Court to "either work with counsel to eliminate the problem or for the district court to simply define the class itself," the direction to this Court is clear and the reference to "counsel" unmistakably includes both parties' counsel.

Defendants' resistance to helping with the class definition is especially ungainly because Defendants are complaining that if this case is certified as a class action and if they prevail, the members of the class will still not be bound by the judgment. To protect their interests in those circumstances, Defendants have a duty to the Court to cooperate in making proposals for the class definition and the judgment so that class members will be bound. That Defendants have dropped a footnote saying that they have no duty "to help" indicates that their concern is with blocking class certification, and that their complaints about a binding judgment are pretextual.

**Conclusion**

This Court should consider the Plaintiffs' additional evidence and arguments on the common questions and answers for the non-participating service subclass and the typicality of the heirs and estates subclass, as well as the revisions Plaintiffs have proposed to the class

15

definition in accordance with the D.C. Circuit's opinion, and if any difficulties remain, "work

with *counsel* to eliminate the problem or ... simply define the class itself."

Dated: March 29, 2024                              Respectfully submitted,

                                                  /s/ Stephen R. Bruce
                                                  Stephen R. Bruce
                                                  1667 K St., NW, Suite 410
                                                  Washington, DC 20006
                                                  202-289-1117
                                                  stephen.bruce@prodigy.net

                                                  Attorney for Plaintiffs

**<u>Certificate of Service</u>**

I hereby certify that the foregoing Plaintiffs' Reply to Defendants' Supplemental

Memorandum was served on March 29, 2024 through the CM-ECF system on Defendants'

counsel addressed to:

> Jonathan K. Youngwood
> Simpson Thacher & Bartlett LLP
> 425 Lexington Ave.
> New York, NY 10017
>
>                               /s/ Stephen R. Bruce
>                               Stephen R. Bruce
>                               Attorney for Plaintiffs